IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **Kevin M. And Patricia S. Keefer**, *Plaintiffs* | § § § | Case No. 3:20-cv-00836-B |
| v. | § § | Jury Trial:  _X_ Yes    _ No |
| **United States of America**, *Defendant* | § § § | |

### SECOND AMENDED COMPLAINT

#### I.     Parties

1.     Plaintiffs Kevin M. Keefer and Patricia S. Keefer are husband and wife residing at 4723 Byron Circle, Irving, Texas 75038. The last first digits of their social security numbers are 7478 and 4014, respectively.[1]

2.     The defendant is the United States of America.

#### II.    Summary

3.     The IRS improperly disallowed plaintiffs' deduction for a 2015 appraised charitable contribution to a qualified charity of an asset worth $1,257,000.  Plaintiff taxpayers seek recovery from defendant United States of overpaid federal income tax and related penalties totaling up to $507,964.80 wrongfully assessed by the IRS for the taxable year 2015. Alternatively, even assuming the disallowance of the deduction for plaintiffs' charitable contribution was correct, the IRS then improperly calculated both plaintiffs' basis in the asset

---

[1] Plaintiffs file this Second Amended Complaint to add allegations of alternative relief arising out of defendant's recent disclosure of its IRS agent who recently has done calculations of alternative grounds for and amounts of tax refunds and other relief due to plaintiff taxpayers in the event of certain fact or legal findings. *See* paragraphs 34, 35, 36, 38, and 39 below.

---

and the additional taxes resulting from the disallowance of the deduction. IRS calculated and assessed plaintiffs these erroneous additional amounts, plaintiffs paid the erroneous assessment and promptly filed for a refund. The IRS improperly refused plaintiffs' request for a refund, claiming it was untimely.

4. Plaintiffs seek judgment for ordering the US (a) to allow the 2015 charitable contribution and refund the amounts owed to plaintiffs, (b) alternatively, to recalculate plaintiffs' basis in the transferred asset and adjust plaintiffs' taxes accordingly, (c) alternatively, if the contribution transaction is held to be an assignment of income, a tax refund due to plaintiffs of at least $327,520 and a cancellation or refund of the related penalties and interest amounts; (d) alternatively, if the contribution is not allowed, and the "bargain sale" calculation changed, judgment for or a refund of $136,875 and the related penalties and interest amounts; and (e) to pay costs, prejudgment and post judgment interest allowed by law and general relief.

### III.   Jurisdiction and venue

5. This is an action by taxpayers to recover federal income tax and interest erroneously or illegally assessed and collected. This Court has jurisdiction pursuant to 28 USC 1346(a)(1).

6. The United States is a defendant, this is a civil action under 28 USC 1346(a), and plaintiffs reside in this district. Venue is proper under 28 USC §1402(a)(1).

### IV.   Facts

**Plaintiff Kevin Keefer's 2015 charitable contribution**

7. In June 2015, plaintiff Kevin Keefer assigned a 4% limited partner interest in Burbank HHG Hotel, LP, a Texas limited partnership, to the PI Foundation, a Utah non-profit

corporation. PI qualified as a charity for Section 501(c)(3) of the Internal Revenue Code of 1986. Kevin's assignment qualified as a charitable contribution. Kevin's contribution was acknowledged by PI Foundation, and PI Foundation gave the required statement regarding a lack of receipt of goods and services by Kevin, contemporaneous to the transaction of gift in June 2015 and prior to filing of the plaintiffs' Form 1040 in 2015. Kevin also obtained an appraisal of the contributed asset.

### Plaintiffs' 2015 deduction of the contribution

8.   The appraised value of Kevin's contributed limited partnership interest was $1,257,000.

9.   On or before October 15, 2016, plaintiffs timely filed their joint federal income tax return (Form 1040) for the year 2015. That return was filed electronically. Plaintiffs timely reported and paid income taxes, self-employment taxes, Medicare taxes, and net investment income taxes on account of this 2015 return. Plaintiffs deducted the PI charitable contribution of $1,257,000 from income in their 2015 return on Schedule A.

### IRS' 2019 Notice disallowing the contribution as a deduction

10.   About 3 years later, on August 7, 2019, the IRS sent plaintiffs a Notice of Deficiency for the year 2015. In its Notice, the IRS disallowed plaintiffs' 2015 charitable contribution to PI, and thereby increased plaintiffs' 2015 tax by $423,304.00, along with penalties or additions of $84,660.80 plus accruing interest. Plaintiffs disagreed with the IRS Notice, but in October 2019, plaintiffs paid the additional taxes and other charges.

### IRS' denial of plaintiffs' request for a refund

11.   Within about 2 weeks of paying the newly assessed taxes and charges, plaintiffs filed for a refund from the IRS of the wrongfully assessed taxes paid as provided by law. The

IRS denied plaintiffs' request for a refund, saying it was untimely because plaintiffs filed the refund claim "more than 3 years after" plaintiffs filed their original 2015 return. In the same denial, the IRS admitted a refund claim "is late if you filed it after the later of . . . 2 years after you paid the tax."

### IRS improperly claims no exclusive control statement from charity

12. The IRS claimed that plaintiffs failed to timely obtain a contemporaneous written acknowledgment from PI that PI, after the donation, had exclusive legal control over the assets contributed, that is, Kevin's contributed limited partnership interest, as required by Section 170(f)(18), Internal Revenue Code.

13. The IRS misunderstands what an "acknowledgment" is. PI's acknowledgement contained that required statement that PI, as the donor advised fund, had exclusive legal control over the assets contributed. PI prepared this acknowledgment, put it on PI's letterhead, presented it to Kevin for his signature, Kevin signed it, and Kevin returned the signed original to PI as part of the contribution transaction. In the document PI declared Kevin "hereby transfers as an irrevocable gift" the asset, the asset would be "subject to The PI Fund Procedures" for "investing and administering the Fund." PI said, "The Board of Directors of the Foundation shall have full authority and discretion as to investment and reinvestment of the assets of the Fund. It is understood and agreed that the Fund and all funds therein shall be administered by the Foundation subject to its Articles and Bylaws, including the power contained therein for the Board of Directors of the Foundation to modify any restrictions or conditions . . . in their sole judgment. . . ."

### IRS rejects appraisal for containing only the individual appraiser's employer's tax ID number

14. The IRS claimed the $1,257,000.00 appraisal of Kevin's contributed partnership interest to PI was deficient because "the appraisal did not include the identifying number of the appraiser." The IRS apparently was referring to 26 C.F.R. Section1.170A-16(e)(1)(ii)(entitled "Substantiation and reporting requirements for noncash charitable contributions"), which requires a "qualified appraisal" as defined in 26 C.F.R. Section 1.170A-17(a)(1)(entitled "Qualified appraisal and qualified appraiser"), which in turn requires the appraisal to contain the "taxpayer identification number" of "the appraiser." *See* 26 C.F.R. Section 1.170A-17(a)(3)(iv)(A).

15. Kevin obtained a qualified appraisal of the fair market value of his partnership interest contribution. The appraiser firm performed the appraisal, issued the written appraisal dated February 19, 2016, and concluded Kevin's contributed partnership interest value was $1,257,000.00. The appraisal complied in all respects with the express provisions of the regulations save one -- it omitted the individual signing appraiser's social security number. Another document, Form 8283, submitted with plaintiffs' 2015 tax return showed the appraisal firm's tax ID number, and the appraisal firm is the one who actually performed and rendered the appraisal.

16. The IRS disallowance for the failure to expressly state the individual appraiser's tax ID number was improper for six reasons.

### The taxpayers substantially complied with the reporting requirements.

17. Plaintiffs substantially complied with 26 C.F.R. Section1.170A-16(e)(1)(ii)(entitled "Substantiation and reporting requirements for noncash charitable contributions"), which requires a "qualified appraisal" as defined in 26 C.F.R. Section 1.170A-

17(a)(1)(entitled "Qualified appraisal and qualified appraiser"), which in turn requires the appraisal to contain the "taxpayer identification number" of "the appraiser." See 26 C.F.R. Section 1.170A-17(a)(3)(iv)(A). Plaintiffs' failure to include the individual taxpayer identification number of the individual who signed the appraisal in the appraisal itself was no more than merely a procedural requirement that did not "go to the heart of the statute's purpose" and therefore is subject to the doctrine of substantial compliance. *See John Crimi et al. v. Commissioner*, T.C. Memo. 2013-51. To determine if substantial compliance applies, the court should determine whether the requirements of the regulations are mandatory or directory with respect to its statutory purpose. *Consolidated Invest. Group, et al. v. Commissioner*, TC Memo 2009-290. The Tax Court holds "the reporting requirements do not relate to the substance or the essence of whether or not a charitable contribution was actually made. We conclude, therefore, that the reporting requirements are directory and not mandatory." *Id.*

**Alternatively plaintiffs had reasonable cause and no willful neglect.**

18. The IRS, in denying the deduction for its stated reason, failed to consider the express provisions of the Internal Revenue Code written by Congress. Congress declared in IRC Section 170(f)(11)(A)(i)(entitled "Charitable, etc., contributions and gifts") that charitable deductions of the size here are not allowed without a "qualified appraisal," but Congress then expressly declared that requirement "shall not apply" if the facts show the taxpayer's failure to meet that requirement is "due to reasonable cause and not to willful neglect." IRC Code §170(f)(11)(A)(ii)(II)("[Denial of deduction for failure to meet the documentation tests] shall not apply if it is shown that the failure to meet such requirements is due to reasonable cause and not to willful neglect.")

19. The facts here show reasonable cause for the omission and no willful neglect by plaintiffs.

**IRS violated Congress' mandate to include proper instructions.**

20. The IRS violated Congress' mandate when it created its Form 8283 in a manner that creates confusion on this technical point. Congress commanded the IRS to add a separate line for claiming deductions for donations of property as to which a qualified appraisal is required and commanded that the "**instructions for the return are to include instructions as to the appraisal requirement**." *See* COMREP ¶ 66,591.005 "Changes in valuation overstatement penalty; appraisal requirements." ('84 TRA, PL 98-369, 7112184)(emphasis added). The IRS failed to follow this last command.

21. There is no official IRS form for an appraisal itself and thus no checklist reminder of this technical inclusion in the appraisal itself. Moreover, the IRS's own Form 8283 submitted with the appraisal accompanying the tax return has an express blank for the "Declaration of Appraiser" to be signed by someone with a "Title" (a designation normally reserved for persons employed by others). Form 8283 asks for a "Business address." The form has no space asking for the signing person's individual address. This IRS form 8283 only included **some** of the instructions IRS now complains about, leaving out an instruction or a space calling for the individual appraiser's social security or taxpayer identification number. Instead, the IRS, adjacent to its demand for the "Title" of the person signing the form, shows a space only for one ambiguously described entry -- "Identifying number." The IRS chose not to instruct which or whose "Identifying number" the IRS wants in this space. The IRS chose not to instruct providing the social security number of the individual signing the appraiser declaration.

22. The IRS knows how to properly instruct about whose tax ID number it wants. For example, the IRS in its same form 8283 expressly states in the "Donee Acknowledgement" section, that it wants the "donee" as an "organization" to provide an "Authorized signature" of some person, and to provide the "**Employer** identification number" of that organization, not the social security number of person who signed (emphasis added).

23. Plaintiffs hired an experienced appraisal firm to perform the appraisal. Plaintiffs' retained expert tax accountants and legal counsel to review the appraisal, among other things, and file it with plaintiffs' return. The IRS's failure to give full instructions as Congress commanded caused the technical defect here.

**The omission of the individual appraiser's personal identification number was *de minimus*.**

24. The omission of the individual appraiser's tax ID does not degrade the quality of the appraisal, the paramount purpose of the appraisal. Section 1.170A-13(c) of the regulations has over 18 subsections of requirements for a "qualified appraisal," all of which deal with the quality of the appraisal and any conflict of interest of the appraiser, save this one – the inclusion of the individual appraiser's tax ID number as described in Section 1.170A-13(c)(3)(ii)(E). The IRS made no complaint here about either the quality of the appraiser, any conflicts of interest of the appraiser, or any other complaints at all except the omitted individual tax ID. There is no suggestion the failure of the individual appraiser's tax ID number affected the quality of the appraisal.

**Plaintiffs' appraisal was done by the appraiser firm, not an individual.**

25. The appraisal made it clear that the "appraiser" was the appraisal business firm. The appraisal repeatedly stated that the appraiser was the firm Katzen, Marshall & Associates,

Inc., not one individual. The appraisal said: the firm had completed "its" appraisal; as part of "our" assignment, "KM personnel" reviewed documents and "[w]e" spoke with witnesses; "[w]e" discounted certain factors; and it was "our" opinion. The firm's appraisal was on its letterhead and signed for the firm "by" the individual signing. Thus the firm's taxpayer ID was the "Identifying number" of the real appraiser, the entity, and complied with the regulation. The only reason an individual appraisal's taxpayer ID was needed was the Treasury put it in the long list of technical requirements.

26. There was reasonable cause and not willful neglect in the omission of the signing individual's "Identifying number." Any *de minimus* omission of the individual appraiser's tax ID did not affect the quality of the appraisal. The IRS committed error by not following the statutory exception command of Congress in the Code, and denying plaintiffs' charitable deduction because of the lack of the individual appraiser's tax ID.

**Regulation disallowing charitable deductions for failure to state the individual appraiser's tax ID number is arbitrary, capricious and manifestly contrary to the statute.**

27. If the US, under a Treasury regulation, is allowed to disallow an over $1 million charitable deduction solely because the appraisal initially fails to expressly state the tax ID number of the individual who signed the appraisal, then the regulation is unenforceable as arbitrary or capricious or manifestly contrary to the statute. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984).

28. Congress itself told the IRS that charitable deductions are not to be disallowed for a "good faith failure" to comply with the "substantiation regulations." See COMREP ¶ 66,591.005 Changes in valuation overstatement penalty; appraisal requirements. ('84 TRA, PL 98-369, 7112184). Congress commanded, "If the IRS, in processing returns as filed, finds that

the taxpayer claimed deductions on the separate line relating to donations of property for which a qualified appraisal is required but failed to attach the summary appraisal, then the IRS (to the extent administratively practicable) is to so notify the taxpayer and request the filing of the summary." *Id.*  Here, the IRS violated this Congressional command, never requesting that plaintiffs supply the individual appraiser's personal "Identifying number," and instead just disallowed the charitable deduction.

**The IRS wrongfully rejected plaintiffs' timely requested refund.**

29. The IRS wrongfully denied plaintiffs' request for refund of the overpaid tax. Plaintiffs paid the assessed $507,964.80 tax increase on October 19, 2019.  On November 7, 2019, plaintiffs filed their Form 1040X claim for refund of that payment.  On March 19, 2020, the IRS disallowed plaintiffs' claim for refund.  The IRS admitted it received plaintiffs' claim for refund November 7, 2019, about 2 weeks after the tax was paid. The IRS denied the refund saying plaintiffs filed their claim "more than three years after" they filed their 2015 return.  But in the same notice, IRS admitted that a claim for refund is late only if the taxpayer filed the claim for refund "2 years after you *paid* the tax." (Emphasis added).

30. The IRS wrongfully refused to refund plaintiffs' overpaid taxes and plaintiffs are entitled to the refund and allowable interest.

**Alternatively, IRS wrongfully failed to recalculate plaintiffs' basis in the contributed asset after the denial of charitable deduction.**

31. In their amended Form 1040 for 2015, plaintiffs properly allocated the property adjusted basis for the contributed partnership interest as required by Section 1011(b) of the Code for a charitable contribution deduction.  Section 1011(b) provides that a charitable deduction by a "bargain sale" of the asset to the charity is allowable under Section 170 of the Code but the

taxpayer must adjust the basis allocated using a particular method set forth in Section 1011(b). That method adjusts the taxpayer's basis downward for the charitable "bargain sale" contribution to only a percentage of the normal basis.

32. But if the IRS later disallows the charitable deduction for whatever reason, Section 1011(b) then commands the taxpayer's basis be recalculated back upward for purpose of calculating any taxable gain, which will arithmetically reduce the taxable gain in the transfer, which in turn reduces the tax on the disallowed deduction.  The IRS failed to do this readjustment of plaintiffs' basis back up when IRS disallowed the contribution.  IRS thus caused plaintiffs "gain" on the transfer to be greater, and increased the calculated tax owed after the disallowance actually to be more than if the deduction had never been taken by plaintiffs in the first place.

33. IRS failed to follow Section 1011(b).  If the IRS had complied with Section 1011(b), plaintiffs' additional tax assessed should have been only $318,106.00, with any penalty properly reduced as required.  Plaintiffs' tax should be at least $125,000.00 less than the amount assessed by the IRS.  Even if the IRS properly disallowed the charitable deduction, the IRS erroneously failed to refund to plaintiffs the portion of taxes paid that were the result of the IRS's erroneous basis calculation in violation of Section 1011(b).

**IRS lately disclosed IRS alternative positions and admissions by IRS witness**

34. The IRS in the last 30 days has now newly disclosed alternative arguments presented by newly calculations of an IRS agent in which the IRS makes unpled two alternative defensive positions.

35. First, the defendant now argues through its lately identified witness, alternatively, the PI contribution transaction was really initially an assignment of income by plaintiffs, then a

following charitable contribution by plaintiffs of cash of $1,280,000, so that the charitable contribution, if properly allowed, results in tax refund due to plaintiffs not of $507,964.80 as set out above, but of $327,520. In that event, plaintiffs alternatively, and only in that alternative event, seek judgment against defendant for that amount of refund and a cancellation or refund of the related penalties and interest amounts.

36. Another newly disclosed alternative position by defendant is that if the plaintiffs' charitable contribution is not allowed, then the defendant, though its new witness, agrees the capital gains based on the taxpayers' recalculated basis as a result results in plaintiffs being entitled to a tax refund not of at least $125,000 as set out above in paragraph 33, but of $136,875. The logical result of that alternative, if it turns out to be so, means plaintiffs are alternatively entitled to that amount of that refund, $136,875, a cancellation or refund of the related penalties plus applicable interest amounts.

## V. CLAIMS

### Claim 1 – Refund of excess tax paid after partnership interest charitable contribution upheld

37. Plaintiffs have overpaid their federal income tax for the year 2015 in the amount of $507,964.80, including penalties. Plaintiffs seek judgment ordering the US to allow plaintiffs' 2015 charitable contribution, to refund the paid tax erroneously assessed and the related penalty and interest amounts owed to plaintiffs, or a judgment against the US for those amounts.

### Alternative Claim 2 – Refund of excess tax paid if assignment of income and then charitable contribution of cash

38. Plaintiffs deny that the partnership interest contribution transaction was an assignment of income, as the defendant lately asserts. But alternatively, if the Court holds the PI

contribution transaction was first really an assignment of income by one or more plaintiffs, and then a charitable contribution of cash, then the defendant admits the charitable contribution, if properly allowed, results in tax refund due to plaintiffs of $327,520, Then, in that event, plaintiffs alternatively, and only in that alternative event, seek judgment against defendant for that amount of refund, a cancellation or refund of the related penalties and payment of applicable interest amounts.

**Alternative claim 3 – Refund of excess tax paid if no deduction for charitable contribution but plaintiffs' basis recalculation**

39. Alternatively, if the Court holds the contribution deduction is disallowed, plaintiffs seek judgment ordering the US to recalculate plaintiffs' basis in the asset transferred to the charity, and reduce their tax and charges accordingly, and refund all amounts overpaid of $136,875.00, as admitted by the defendant through its new witness, plus related penalty and payment of applicable interest amounts.

### V.  JURY DEMAND

40. Plaintiffs request that all issues not decided by summary judgment and allowed to be tried by jury actually be tried by jury.

### VI.  RELIEF REQUESTED

41. Plaintiffs request the Court enter judgment against the defendant United States as set out above and for:

(a) Under Claim 1 above, judgment or refund for $507,964.80 and the related penalties and interest amounts.

(b) Alternatively, and only in the alternative, under Alternative Claim 2 above, if the contribution is disallowed, for judgment or refund based on the IRS's failure to recalculate

plaintiffs' basis in the contributed asset and capital gain as set out above for at least $$327,520, a cancellation or refund of the related penalties and payment of applicable interest amounts.

 (c) Alternatively, and only in the alternative, under Alternative Claim 3 above if the contribution is not allowed, and the "bargain sale" basis calculation corrected, judgment for or a refund of $136,875 and the related penalties and payment of applicable interest amounts.

 (d) Cost of court.

 (e) Prejudgment and post judgment interest on all the above at the highest rates allowed by law.

 (f) General relief.

Respectfully submitted,

**GLAST, PHILLIPS & MURRAY, P.C.**

by: _/s/ Richard E. Young_
Richard E. Young
Texas State Bar No. 22204800

14801 Quorum Drive, Suite 500
Dallas, Texas 75254-1449
972.419.8376
972.419.8329 facsimile
ryoung@gpm-law.com

COUNSEL FOR PLAINTIFFS
KEVIN M. and PATRICIA S. KEEFER

### CERTIFICATE OF SERVICE

I certify that on October 29, 2021, a copy of this document was served upon all counsel for the parties through the Court's CM/ECF system.

_/s/ Richard E. Young_
RICHARD E. YOUNG