UNITED STATES DISTRICT COURT
For The Northern District Of Texas
Dallas Division

| | | |
|---|---|---|
| KEVIN M. AND PATRICIA S. KEEFER, | § | |
| Plaintiffs | § | |
| | § | CIVIL ACTION NO. 3:20-CV-0836-B |
| v. | § | |
| | § | NON-JURY TRIAL |
| UNITED STATES OF AMERICA, | § | |
| Defendant | § | |

---

PLAINTIFFS' BRIEF IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT

---

**GLAST, PHILLIPS & MURRAY, P.C.**

Richard E. Young
Texas State Bar No. 22204800

14801 Quorum Drive, Suite 500
Dallas, Texas 75254-1449
972.419.8376
972.419.8329 facsimile
ryoung@gpm-law.com

COUNSEL FOR PLAINTIFFS
KEVIN M. and PATRICIA S. KEEFER

November 16, 2021

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS................................................................................iii

INDEX OF AUTHORITIES.........................................................................ivv

I.  SUMMARY OF MOTION ........................................................................ 1

    A.  Timely refund request.......................................................................... 2

    B.  Appraisal document correctly supplied appraiser's
       "identifying number" ......................................................................... 2

    C.  Supplied exclusive legal control acknowledgment ............................ 2

    D.  Even if IRS can require an identification number in both the Form
       8283 and in the appraisal itself, the Keefers had reasonable cause
       and no willful neglect in supplying it only in Form 8283.......................... 2

    E.  The omission of the individual appraiser's identification
       number was *de minimus* ....................................................................... 3

    F.  Alternatively – IRS failed to provide opportunity to correct
       appraisal document ............................................................................... 3

II.  SUMMARY JUDGMENT ARGUMENT ..................................................... 4

    A.  Keefers' made timely refund request within 2 years of tax payment ........................... 5

       1.  Keefers' 2015 charitable deduction ................................................. 5

       2.  IRS notice of deficiency in 2019 ...................................................... 5

       3.  Keefers' timely refund request and IRS refusal to refund
          saying it was untimely ..................................................................... 6

    B.  Keefers' appraisal gave the "identifying number" of the appraiser
       in their appraisal by attaching the appraisal to their Form 8283................... 6

       1.  The Keefers substantially complied with the tax identification
          number reporting regulations in Form 8283 and
          attached appraisal............................................................................. 7

       2.  The substantial compliance test ....................................................... 7

       3.  Congress' Instructions to the IRS are Consistent with the
          Substantial Compliance Test............................................................. 9

       4.  IRS Itself Repeatedly Admitted the Appraiser's
          Employer's Tax ID in Form 8283 is Sufficient Even in
          Light of the Statute and Regulations............................................... 10

5. IRS recognized the authority of substantial compliance doctrine
   but refused to apply it here................................................................ 12

6. The Keefers substantially Complied as a Matter of Law ............................... 13

C. Keefers provided an exclusive control acknowledgment from the donee .................. 15

D. Even if the appraiser's identifying number was not in the appraisal,
   the Keefers had reasonable cause and no willful neglect ............................... 19

E. Alternatively, the omission of the individual appraiser's........................... 23

F. Even if technically correct, the IRS failed to give the Keefers an
   opportunity to correct, and the regulation, without that opportunity, is
   arbitrary, capricious and manifestly contrary to the statute......................... 24

III. CONCLUSION....................................................................30

IV. RELIEF REQUESTED .................................................................. 31

CERTIFICATE OF SERVICE .................................................................. 32

## <u>INDEX OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................ 4

*Averyt v. Commissioner*,
    Nos. 18034-10, 18035-10, 18036-10, 18037-10, 2012 Tax Ct. Memo
    LEXIS 199, at *16 (T.C. 2012) ....................................................................... 15

*Bond v. Commissioner*,
    100 T.C. 32 (1993) ........................................................................ 7, 8, 13, 14

*Brannan Sand & Gravel Co., LLC v. Commissioner*,
    2020 Tax Ct. Memo LEXIS 76, at *13 (T.C. 2020) ......................................... 11

*Cave Buttes, L.L.C. v. Commissioner*,
    147 T.C. 338 (2016) ............................................................................. 8, 12, 23

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ......................................................................................... 20

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
    467 U.S. 837 (1984) ......................................................................................... 24

*Consol. Inv'rs Grp. v. Commissioner*,
    2009 Tax Ct. Memo LEXIS 294, at *67 (T.C. 2009) .............................. 8, 12, 14

*Crimi v. Comm.*,
    TC Memo 2013-51 ............................................................................................ 20

*Estate of Clause v. Commissioner*,
    122 T.C. 115, 122 (2004) ................................................................................ 12

*Estate of Evenchik v. Commissioner*,
    T.C. Memo. 2013-34, 105 T.C.M. (CCH) 1231 ............................................... 12

*Schrimsher v. Commissioner*,
    No. 945-09, 2011 Tax Ct. Memo LEXIS 68, at *6 (T.C. 2011) ....................... 15

*Southern Calif. Gas. Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003) ........................................................................... 20

*United States v. Boyle*,
    469 U.S. 241 (1985) ..................................................................................... 22-23

*United States v. Shimer*,
    367 U.S. 374, 382 (1961) ................................................................................ 24

**Statutes**

26 U.S.C. § 170(f)(18)(B) ........................................................................ 2, 15, 16, 19

26 U.S.C. § 170(f)(11)(A)(i) ........................................................................................ 19

26 U.S.C. § 170(f)(11)(A)(ii)(II) ........................................................................... 3, 19

26 U.S.C. § 170(f)(11)(D) ............................................................................................ 7

26 U.S.C. § 6511(a) ............................................................................................ 2, 6

**Other Authorities**

Federal Register Volume 83, Number 146 (Monday, July 30, 2018) [Rules and Regulations]
    [Pages 36417-36428] at II. B ................................................................... 11, 23
H. Conf. Rept. 103-213, at 565 n.32 (1993),
    1993-3 C.B. 393, 443 .................................................................................... 15
H.R. Conf. Rept. No. 103-213, at 565 n.30 (1993), 1993-3 C.B. 393, 443 ................................. 16

**Rules**

Fed. R. Civ. P. 56 .................................................................................................. 4

**Regulations**

26 C.F.R. §1.170A-13(c) ............................................................................ 3, 10, 23
26 C.F.R. §1.170A-13(c)(3) ........................................................................... 7, 21
26 C.F.R. §1.170A-13(c)(3)(ii)(E) ........................................................................ 23
26 C.F.R. §1.170A-13(c)(4)(i) ............................................................................ 11
26 C.F.R. §1.170A-16(e)(1)(ii) ....................................................................... 8, 12
26 C.F.R. §1.170A-17(a)(1) ........................................................................... 8, 12
26 C.F.R. §1.170A-17(a)(3)(iv)(A) ............................................................... 2, 8, 12

UNITED STATES DISTRICT COURT
For The Northern District Of Texas
Dallas Division

KEVIN M. AND PATRICIA S. KEEFER,    §
                    Plaintiffs    §
                                  §    CIVIL ACTION NO. 3:20-CV-0836-B
v.                                §
                                  §    NON- JURY TRIAL
UNITED STATES OF AMERICA,          §
                    Defendant     §

PLAINTIFFS' BRIEF IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT

## I. SUMMARY OF AMENDED MOTION FOR SUMMARY JUDGMENT

The Keefers, taxpayer plaintiffs, seek recovery from defendant United States of overpaid federal income tax and related penalties arising out of the IRS's improperly disallowed deduction for a charitable contribution of a limited partnership interest worth $1,257,000. Based on the disallowance, the IRS assessed the Keefers an additional tax and other charges of $507,964.80 for the taxable year 2015. The Keefers paid the additional taxes and charges and requested a refund. The IRS refused the refund request.

The Keefers seek summary judgment on the following four issues:

### Claim 1 –
### Refund of excess tax paid after partnership interest charitable contribution upheld

The Keefers have overpaid their federal income tax for the year 2015 in the amount of $507,964.80, including penalties. The Keefers seek judgment ordering the defendant to allow plaintiffs' 2015 charitable contribution, to refund the paid tax erroneously assessed and the related penalty and interest amounts owed to plaintiffs, or a judgment against the defendant for

those amounts; and holding:

A. **Timely refund request** -- Contrary to the IRS's assertion that the Keefers' request for refund was untimely, the Keefers timely filed their claim for refund of the tax within 2 years of paying the tax as allowed by 26 U.S.C. 6511(a).

B. **Appraisal document correctly supplied appraiser's "identifying number"** -- Contrary to the IRS's contention, the Keefers' appraisal was attached to their Form 8283, and that Form 8283 showed the "identifying number" of the "appraiser" as required by 26 C.F.R. Section 1.170A-17(a)(3)(iv)(A), and that disclosure satisfied the "identifying number" requirement.

C. **Supplied exclusive legal control acknowledgment** -- Contrary to the IRS's contention, the Keefers received a contemporaneous written acknowledgment from the charity, that when read in its entirety, including the attachments part of the acknowledgment, show that the charity, after the Keefers' charitable donation, had exclusive legal control over the assets contributed as required by 26 U.S.C. § 170(f)(18)(B).

D. **Even if IRS can require an identification number in both the Form 8283 and in the appraisal itself, Keefers had reasonable cause and no willful neglect in supplying it only in Form 8283.**

The technical appraisal reporting requirements the IRS has asserted "shall not apply" if the facts show the taxpayers' failure to meet that requirement is "due to reasonable cause and not to willful neglect," under 26 U.S.C.

§170(f)(11)(A)(ii)(II) which the Keefers show as a matter of law here.

E. **The omission of the individual appraiser's identification number was** *de minimus.*

The omission of the individual appraiser's tax ID does not degrade the quality of the appraisal, the paramount purpose of the appraisal under 26 C.F.R. §1.170A-13(c).

F. **Alternatively – IRS failed to provide opportunity to correct appraisal document** -- Alternatively, the IRS was required to but failed to notify the Keefers that the appraisal summary in the form required by the regulations with the "identifying number" was not attached to their return and give the Keefers an opportunity to correct the claimed error as IRS is required to do by COMREP ¶ 66,591.005 Changes in valuation overstatement penalty; appraisal requirements. ('84 TRA, PL 98-369, 7112184).

**Alternative Claim 2 –**
**Refund of excess tax paid if assignment of income and then charitable contribution of cash**

Alternatively, if (a) the Court does not now grant summary judgment on the Keefers' Claim 1 above that the contribution of the partnership interest asset should be allowed as a charitable contribution and award the relief requested, and (b) the Court finds now or at trial the Keefers' contribution transaction was really an assignment of income by one or more plaintiffs and a charitable contribution of cash or that income, then, in that event, the Keefers request summary judgment that the charitable contribution results in a tax refund due to the Keefers of at least $327,520.  In that event and only in that alternative event, the Keefers seek judgment against U.S. for that amount of refund, a cancellation or refund of the related penalties and payment of applicable interest amounts.

**Alternative claim 3 –**
**Refund of excess tax paid if no deduction for charitable contribution**
**but after plaintiffs' basis recalculation**

In the further alternative, if (a) the Court does not grant summary judgment on the Keefers' Claim 1 that the contribution of the partnership interest asset should be allowed as a charitable contribution and award the relief requested in Claim 1 and Claim 2 above, and (b) the Court finds now or at trial the Keefers' contribution transaction is disallowed entirely, then, in that event, the Keefers request summary judgment ordering the U.S. to recalculate the Keefers' basis in the asset transferred to the charity, and reduce the Keefers' tax and charges accordingly, and refund all amounts overpaid of at least $136,875.00, plus related penalty and payment of applicable interest amounts.

**In any event, summary judgment denying U.S. defense of variance**

The Keefers seek summary judgment denying the U.S. variance defense pled by the U.S. in its Answer to Second Amended Complaint as a matter of law.

## II. SUMMARY JUDGMENT ARGUMENT

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* There is no genuine dispute as to the material facts and evidence cited in this motion proven by the documents in the Plaintiffs' Appendix to Plaintiff's Amended Motion for Summary Judgment ("P. Amd. App.") at P. Amd. App. 1–100, the declarations at P. Amd. App. 101 – 107), and the cited U.S.'s own

evidence shown it the U.S. appendix to the U.S. original motion for summary judgment, Doc. 51 with Doc. 51 – 1 through Doc 51-7.

**Claim 1 –**
**Refund of excess tax paid after partnership interest charitable contribution upheld**

**A.  Keefers' made timely refund request within 2 years of tax payment.**

**1.  Keefers' 2015 charitable deduction**

In 2016 the Keefers timely filed their joint 2015 federal income tax return.  P. Amd. App. 1 - 3 (relevant cited portions and at highlights).  The Keefers deducted a charitable contribution to the PI Foundation in the form of a limited partner interest with a value of $1,257,000.00 from income in their 2015 return.  P. Amd. App. 3, at highlight.

**2.  IRS notice of deficiency in 2019**

In July 2019, the IRS sent the Keefers an examination report denying the charitable deduction.  P. Amd. App. 4.  The IRS gave two reasons for the denial:  (a) the IRS claimed the charity did not give the Keefers an acknowledgement that the charity had "exclusive legal control over the assets contributed," (P. Amd. App. 5 – 6, 7 - 8); and (b) the Keefers' Form 8283 with its attached appraisal "did not include the employer identification number (EIN) or Social Security number of the qualified appraiser."  (P. Amd. App. 7).

The IRS sent the Keefers a Notice of Deficiency.  P. Amd. App. 9 – 10, 11 - 20.  The IRS disallowed the Keefers' deduction for the 2015 charitable contribution to PI for the same two reasons (P. Amd. App. 20), and increased the Keefers' 2015 tax by $423,304.00, along with penalties or additions of $84,660.80 plus accruing interest.  P. Amd. App. 15 - 17.  The Keefers paid the $507,964.80 additional taxes and other charges in October 2019. P. Amd. App. 21 – 24.

### 3.  Keefers' timely refund request and IRS refusal to refund saying it was untimely.

On November 7, 2019, the Keefers filed their amended return and claim for refund of that payment, including $423,304.00 as a tax refund.  P. Amd. App. 27, 29, full filing at 25 - 64.

In March 2020, the IRS disallowed the Keefers' claim for refund.  P. Amd. App. 80 - 83. In its notice denying the Keefers' refund claim, the IRS admitted it received the Keefers' claim for refund back on November 7, 2019. P. Amd. App. 80.  The IRS denied the refund on the basis that plaintiffs filed their claim "more than three years after" they filed their 2015 return.   P. Amd. App. 80.

In the same notice denying the claim for refund, IRS admitted that a claim for refund is late only if the taxpayer filed the claim for refund more than "2 years after you **paid** the tax."  P. Amd. App. 80 (emphasis added); 81.  Title 26 U.S.C. § 6511(a) declares "Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed *or 2 years from the time the tax was paid*, <u>*whichever of such periods expires the later*</u> . . . ." (emphasis added).  The Keefers' timely requested their refund for overpaid taxes, and the Court should hold the IRS's claimed basis of untimely request for refund was erroneous as a matter of law.

### B.  Keefers' appraisal gave the "identifying number" of the appraiser in <u>their appraisal by attaching the appraisal to their Form 8283.</u>

One reason the IRS gave for denying the Keefers' charitable deduction was the Keefers' appraisal attached to the Keefers' Form 8283 was deficient because "the **appraisal** did not include the identifying number of the appraiser."  P. Amd. App. 7, 67, 71 (emphasis added).

The IRS "Examiner" admitted the Keefers' Form 8283, which included the appraisers' name, address, employer, title and employer's tax ID number, was filed and "Met" all the

regulations.  P. Amd. App. 66, 70.  But the examiner said the attached "appraisal" itself was not

"qualified" because "it," the "appraisal", did not include "the employer identification number

(EIN) *or* Social Security number of the qualified appraiser or the person who employs or

engages the qualified appraiser."  P. Amd. App. 67, 71 (emphasis added).    As a matter of law,

this IRS basis for denying the deduction was error.

### 1. The Keefers substantially complied with the tax identification number reporting regulations  in Form 8283 and attached appraisal.

In its instructions for Form 8283, the IRS instructed to attach the appraisal itself to the

Form 8283 – "**Note: In certain cases, you *must attach* a qualified appraisal of the property. See**

instructions."  P. Amd. App. 35, 85 (emphasis added); *see* 26 U.S.C. §170(f)(11)(D)(applies

here).  The IRS also instructed to fill in the "Identifying number" in the "Appraiser's

Declaration" on Form 8283 which can be either the appraiser's social security number or, if the

appraiser was working for an employer, the appraiser's employer identification number:

> "**Identifying number.** The appraiser's taxpayer identification
> number (*social security number __or__ employer identification
> number*) must be entered in Part III [of Form 8283]."

P. Amd. App. 92 (emphasis added).  The Keefers did both:  (i) in their Form 8283 they gave the

IRS the "Identifying number" of the appraiser's employer, and (ii) they attached the appraisal to

their Form 8283.  P. Amd. App. 7, 36, 66, 70.

### 2. The substantial compliance test

The Tax Court in *Bond v. Commissioner*, 100 T.C. 32 (1993), said:  "[T]he reporting

requirements [of Section 170 of the Code which 26 C.F.R. 1.170A -13 was designed to enforce]

do not relate to the substance or essence of whether or not a charitable contribution was actually

made," concluding "the reporting requirements are directory and not mandatory."  *Bond v.*

*Commissioner*, 100 T.C. 32, 41 (1993).  Even "[t]he fact that a Code provision conditions the

entitlement of a tax benefit upon compliance with [the IRS's] regulation does not mean that literal as opposed to substantial compliance is mandated." *Id.* Taxpayers need only to have "substantially complied with section 1.170-13A" in order to qualify for a charitable contribution deduction. *Id. at 42.* "Strict compliance with the requirements is sufficient to win a deduction, but it isn't necessary." *Cave Buttes, L.L.C. v. Commissioner,* 147 T.C. 338, 349 (2016). The IRS cited *Bond* and admitted "substantial compliance" is all that is necessary so long as the "essential requirements" are met. P. Amd. App. 68.

The fundamental purpose of the regulations involved here -- 26 C.F.R. §1.170A-16(e)(1)(ii)(entitled "Substantiation and reporting requirements for noncash charitable contributions"), 26 C.F.R. §1.170A-17(a)(1)(entitled "Qualified appraisal and qualified appraiser"), and 26 C.F.R. §1.170A-17(a)(3)(iv)(A)(describing a "qualified appraisal") – is to provide reliable appraisals for charitable contributions. So long as "[t]he information provided to [the IRS] was sufficient to permit respondent to evaluate the partnership's reported contribution and monitor and address concerns about overvaluation and other aspects of the reported charitable contribution," a taxpayer "has substantially complied with the regulations." *Consol. Inv'rs Grp. v. Commissioner*, 2009 Tax Ct. Memo LEXIS 294, at *67 (T.C. 2009). If the taxpayer fails to meet certain of the many technical requirements "within the dense regulation" but otherwise gives sufficient information to show a reliable appraisal, "We'd hesitate to say this wasn't good enough." *Cave Buttes, L.L.C. v. Commissioner*, 147 T.C. 338, 352 (2016).

Applying the *Consol. Inv'rs Grp. v. Commissioner* analysis of 26 C.F.R. Section 1.170A-13(c)(3) shows all of the sixteen regulation requirements, save a portion of one reporting requirement, go to the quality of the appraisal itself– "generally accepted appraisal standards," proximate time of appraisal, signed and dated, no prohibited fee, description of property,

condition of property, expected date of contribution, qualifications of appraiser, tax purposes, method of valuation, basis of valuation, and appraised value.

The one requirement that does not go to the quality of the appraisal is the one the IRS hangs its hat on here -- subsection (3)(ii)(E) calling for the *appraisal itself* to contain the taxpayer identification number of the qualified appraiser who signs the appraisal summary and the identifying number of the person who employs the appraiser. The appraisal here contains names and addresses for both the appraisal firm and the signing individual to permit easy identification and location by the IRS of both. P. Amd. App. 50 – 61. The failure to include that number in the appraisal itself does not preclude the substantial compliance doctrine, nor preclude the appraisal and the Form 8283 to be properly read in conjunction with each other and to substantially comply and sufficiently support the Keefers' deduction.

### 3. Congress' instructions to the IRS are consistent with the substantial compliance test.

Congress told the IRS that charitable deductions are not to be disallowed for a good faith failure to comply with the "substantiation regulations." "If the IRS finds that the taxpayer . . . failed to attach the summary appraisal, then the IRS (to the extent administratively practicable) is to so notify the taxpayer and request the filing of the summary. ***The deduction is not disallowed for a good faith failure to comply with the substantiation requirements if the taxpayer in fact had timely obtained a qualified appraisal and furnishes the appraisal summary***." *See* P. Amd. App. 95 [COMREP ¶ 66,591.005 Changes in valuation overstatement penalty; appraisal requirements. ('84 TRA, PL 98-369, 7112184)(emphasis added)]. The IRS admitted that the Keefers' appraisal is otherwise qualified. P. Amd. App. 71.

Placing the appraiser's tax identification number in the attached Form 8283 instead of setting it out in the body of the appraisal text itself when the appraisal is attached to the Form

8283 is substantial compliance with those regulations, does not damage the quality or reliability of the appraisal, and does not damage the purpose of those regulations in any material way.

### 4. IRS itself repeatedly admitted the appraiser's employer's tax ID in Form 8283 is sufficient even in light of the statute and regulations.

The IRS recognized in four separate actions here that the tax identification number of the individual appraiser on both the appraisal itself and the Form 8283 is not fundamentally important to the IRS's ability test the validity of the appraisal.

First, the IRS work papers admitted the Keefers' Form 8283 "Met" the requirements of disclosing *both* the tax ID of the individual appraiser *and* his employer –

| Appraisal Summary - Form 8283 | Cite | Met | Not Met |
|---|---|---|---|
| Information is provided on Form 8283 | 1.170A-13(c)(4)(ii)(A) | | |
| The name, address, and taxpayer identification number of the qualified appraiser who signs the appraisal summary (and if the appraiser is acting in the capacity as a partner, employee or independent contractor engaged other than by the donor, the name, address, and identifying no. of the partnership or the person who employs or engages the appraiser); | 1.170A-13(c)(4)(ii)(I) | ✓ | |

P. Amd. App. 70.

Second, in another place the IRS work-papers admit the Keefers' "Qualified Appraisal" attached to the Form 8283 "Met" all sixteen specific requirements of Section 1.170A-13(c), save a portion of one – a reporting statement in subsection (3)(ii)(E) calling for the "identifying number" of the qualified appraiser who signs the appraisal summary **and** the "identifying number" of who employs the appraiser (the latter appearing in the Keefers' Form 8283). P. Amd. App. 71. All the other fifteen requirements of the regulations for the appraisal the IRS admits the Keefers "Met" go to the quality of the appraisal – "generally accepted appraisal standards," proximate time of appraisal, signed and dated, no prohibited fee, description of

property, condition of property, expected date of contribution, qualifications of appraiser, tax purposes, method of valuation, basis of valuation, and appraised value. P. Amd. App. 71. The appraisal itself, like the Form 8283, did contain the appraiser's name, address and employer. P. Amd. App. 50, 56, 58, 60.

Third, the IRS admitted in 2018 it needed to modify its Form 8283 instructions to "make clear" even though "the *regulations* require an appraiser to use a taxpayer identification number *on an appraisal* . . . that number does not need to be the appraiser's social security number. An appraiser may use an employer identification number . . . ." P. Amd. App. 77 [Federal Register Volume 83, Number 146 (Monday, July 30, 2018)] [Rules and Regulations] [Pages 36417-36428] at II. B (emphasis added).

Fourth, the IRS expressly instructs the public that the "Identifying number" in the "Appraiser's Declaration" on Form 8283 can be *either* the appraiser's social security number *or* the appraiser's employer identification number:

> "**Identifying number.** The appraiser's taxpayer identification number (*social security number or employer identification number*) must be entered in Part III [of Form 8283]."

P. Amd. App. 92 (emphasis added). The regulation in 26 CFR 1.170A-13(c)(4)(i) commands, "the term appraisal summary means a summary of a qualified appraisal that (A) Is made *on the form prescribed by the Internal Revenue Service*. . . ." Form 8283 is that form. *Brannan Sand & Gravel Co., LLC v. Commissioner,* 2020 Tax Ct. Memo LEXIS 76, at *13 (T.C. 2020)("The IRS has prescribed Form 8283 to be used as the "appraisal summary."). The IRS's Form 8283 has only a single line for the "Identifying number" under "Declaration of Appraiser," not two. P. Amd. App. 36. As the Tax Court said about Form 8283 in another case, "Although we recognize that instructions to forms are not binding sources of law, they are useful in illustrating

understandable taxpayer confusion. Why else would the IRS have changed the instructions to be more clear?" *Cave Buttes, L.L.C. v. Commissioner*, 147 T.C. 338, 353 (2016). Thus the IRS's failure to give full instructions as Congress commanded contributed to the IRS's complained of technical defect here.

### 5. IRS recognized the authority of substantial compliance doctrine but refused to apply it here.

The IRS recognized the substantial compliance doctrine. "While substantial compliance may excuse minor, technical, or merely procedural defects, it offers no relief to taxpayers who have failed to disclose information that goes to the essential requirements of the governing statute," citing *Estate of Evenchik v. Commissioner*, T.C. Memo. 2013-34, 105 T.C.M. (CCH) 1231, 1234 (quoting *Estate of Clause v. Commissioner*, 122 T.C. 115, 122 (2004)). P. Amd. App. 68. The IRS misunderstands what an "essential requirement" in a charitable contribution appraisal is.

Again, the fundamental purpose of the regulations involved here -- 26 C.F.R. §1.170A-16(e)(1)(ii)(entitled "Substantiation and reporting requirements for noncash charitable contributions"), 26 C.F.R. §1.170A-17(a)(1)(entitled "Qualified appraisal and qualified appraiser"), and 26 C.F.R. §1.170A-17(a)(3)(iv)(A)(describing a "qualified appraisal") – is to provide reliable appraisals for charitable contributions. So long as "[t]he information provided to [the IRS] was sufficient to permit respondent to evaluate the partnership's reported contribution and monitor and address concerns about overvaluation and other aspects of the reported charitable contribution," a taxpayer "has substantially complied with the regulations." *Consol. Inv'rs Grp. v. Commissioner*, 2009 Tax Ct. Memo LEXIS 294, at *67 (T.C. 2009). The *Evenchik* court gave examples of the kinds of failures to meet "essential requirements" that can result in the denial of a charitable contribution deduction:

• failing to get an appraisal.

• failing to fill out section B of Form 8283 (the appraisal summary).

• having someone without expertise in appraisals complete the appraisal.

• having an appraisal prepared after the return was filed.

• including insufficient or inappropriate information in an appraisal.

2013 Tax Ct. Memo LEXIS 34, at *13 (T.C. 2013)(internal citations omitted).  These all go to

the "substance or essence of whether or not a charitable contribution was actually made," not to

the appraiser's personal or his or her employer's identifying number, or where that number is

located.  *See Bond v. Commissioner*, 100 T.C. 32, 41 (1993).  Placing an identification number

on an IRS form in the prescribed block, as the appraiser did here on the Form 8283, provides the

IRS with an ability to search its database for that number.

### 6.  The Keefers substantially complied as a matter of law.

*Bond, supra,* which held the taxpayers' actions were sufficient as a matter of law, is

instructive here:

- In *Bond*, the taxpayers had an appraisal done, but failed to even prepare a written
  appraisal at all, much less attach an appraisal itself to the Form 8283.   100 T.C.
  32, at 35-36.   Here the IRS denied the Keefers' deduction not because the
  Keefers' failed to show the appraiser's tax identifying number in their Form 8283
  – they did.  P. Amd. App. 36, 66, 70.  Here the IRS denied the Keefers' deduction
  because "the [attached] ***appraisal*** did not include the identifying number of the
  appraiser."  P. Amd. App. 20 (emphasis added); 67; 71.

- Like the Keefers here, in *Bond* "the name, title, and place of employment of the appraiser also appeared on the Form 8283 together with the identification number assigned to his employer." *Id.* at 42.

- The taxpayers in *Bond* "met all of the elements required to establish the substance or essence of a charitable contribution, but merely failed to obtain and attach to their return a separate written appraisal containing the information specified in respondent's regulations even though substantially all of the specified information except the qualifications of the appraiser appeared in the Form 8283 attached to the return." 100 T.C. 32, 42 (1993). Here, the IRS does not attack the Keefers' appraisal itself for any fundamental errors, nor dispute the appraisal's valuation. Even less than their attack on taxpayers in *Bond, supra,* for failure to attach an appraisal at all, the IRS here only charges the Keefers with a technical violation of one subpart of the regulations of where an identifying number was to be placed (perhaps buried) at a location of the appraiser's choosing in a multi-page document.

- The *Bond* court ***granted summary judgment*** for the taxpayers, saying, "The denial of a charitable deduction under these circumstances would constitute a sanction which is not warranted or justified." *Bond v. Commissioner*, 100 T.C. 32, 42 (1993). And so it is here -- this Court should grant the Keefers summary judgment on this issue. In *Bond*, the taxpayers substantially complied even though they submitted no written appraisal at all, only the Form 8283. If the total absence of submittal of an appraisal document at all can be part of substantial compliance in *Bond*, then the mere fact of absence of an additional

single number within an actually submitted and otherwise undisputed quality

appraisal document should not bar substantial compliance, *a fortiori.*

See *Consolidated Investment Group v. Comm.*, TC Memo 2009-290, *67 (the appraisal was

untimely and failed to disclose three other specified items of information:

"The information provided to Respondent was sufficient to permit Respondent to evaluate the partnership's reported contribution and monitor and address concerns about overvaluation and other aspects of the reported charitable contribution.  Accordingly, the partnership has substantially complied with the regulations.").

The IRS given basis to deny a charitable contribution for failure to place the appraiser's

"identifying number" in an unspecified place in the multi-page appraisal document is erroneous

as a matter of law.

## C.  Keefers provided an exclusive control acknowledgment from the donee.

The IRS also claimed that Keefers failed to timely obtain a contemporaneous written

acknowledgment from PI that PI, after the donation, had exclusive legal control over the assets

contributed as required by Section 170(f)(18)(B), Internal Revenue Code.  P. Amd. App. 5, 6, 8,

20, 67, 69.    The IRS misunderstands what an "acknowledgment" is.

Title 26 USC § 170(f)(18)(B) required the Keefers to obtain "a contemporaneous written

acknowledgment" from PI showing that PI, after the contribution, "has exclusive legal control

over the assets contributed."

The IRS issues no form for this "acknowledgment."   "The contemporaneous written

acknowledgment 'need not take any particular form. Thus, for example, acknowledgments may

be made by letter, postcard, or computer-generated forms.' H. Conf. Rept. 103-213, at 565 n.32

(1993), 1993-3 C.B. 393, 443."  *Schrimsher v. Commissioner*, No. 945-09, 2011 Tax Ct. Memo

LEXIS 68, at *6 (T.C. 2011).  Letters from the donee to the donor can be considered together to

decide whether the required acknowledgment has be made.  *See Averyt v. Commissioner*, Nos.

18034-10, 18035-10, 18036-10, 18037-10, 2012 Tax Ct. Memo LEXIS 199, at *16 (T.C. 2012)(a written acknowledgement is not required to "take any particular form or contain any particular wording," three letters from donee to donor all together used to determine the required acknowledgment.)

An "acknowledgment" requires no magic words nor even any signature so long as its terms are in writing and show the facts to be acknowledged. The legislative history of section 170(f)(8) (the rules for which also apply to the Section 170(f)(18) acknowledgement as set forth in Section 170(f)(18)(B)) show it is ***the effect*** of the words actually used that determines an acknowledgment: "If the donee organization provided no goods or services to the taxpayer in consideration of the taxpayer's contribution, the written substantiation is required to include a statement ***to that effect***." H.R. Conf. Rept. No. 103-213, at 565 n.30 (1993), 1993-3 C.B. 393, 443 (emphasis added).

PI's acknowledgement to the Keefers contained the required terms. PI prepared two documents on PI letterhead, one of which was for Kevin Keefer to sign. One document was a one page document dated June 6, 2015, signed by the Executive Director of PI saying PI received the "donation" and that "[n]o goods or services were provided in exchange. . . ." P. Amd. App. 97. The second was a 12 page document also on PI letterhead dated June 8, 2015. P. Amd. App. 38 - 49 for Kevin Keefer's signature. Both documents were prepared by PI, put on PI's letterhead, with the second presented by PI to Kevin for his signature; Kevin Keefer signed as requested and returned the signed document to PI as part of the contribution transaction. P. Amd. App. 106 at ¶ 3.

The twelve page June 8, 2015 document contains all the terms showing the required acknowledgment that PI had exclusive control of the donated property after the donation – no

one else had the power to do anything with the asset except PI.   In the document and its attachments, PI said and Keefer agreed to all the following:

a)  Kevin Keefer "hereby transfers as an irrevocable gift." P. Amd. App. 38.

b)  "The asset shall be available for charitable purposes subject to The PI Fund Procedures for Operation" for "investing and administering the Fund."  P. Amd. App. 38.

c)  "Fund will be administered for charitable purposes in accordance with the PI Fund Procedures for Operation … and the Foundations How to Operate …, copies of which have been provided to the Donor(s) and are incorporated by reference …" P. Amd. App. 38.

d)  PI "shall have full authority and discretion as to investment and reinvestment of the assets of the Fund. It is understood and agreed that the Fund and all funds therein shall be administered by the Foundation subject to its Articles and Bylaws, including the power contained therein for the Board of Directors of the Foundation to modify any restrictions or conditions . . . in their sole judgment. . . ."  P. Amd. App. 38; 39.

e)  PI "has authorized the adoption of these procedures for the establishment and administration of DAF [Donor Advised Fund]. These procedures may be amended from time to time, when deemed necessary or desirable by the Board of Directors." P. Amd. App. 41.

f)  PI "shall have the ultimate authority and control of all assets in the DAF, and the income derived therefrom, for the charitable purposes of the Foundation."  P. Amd. App. 41.

g) "A Donor may not impose any material restriction or condition that prevents the Foundation from freely and effectively employing the contributed assets, or the income derived therefrom, in furtherance of a charitable purpose of the Foundation." P. Amd. App. 41.

h) PI "has the right to direct all distributions of income or principal of DAFs." P. Amd. App. 41.

i) A donor's recommendations "will be solely advisory and the Foundation is not bound by such recommendations . . . ." P. Amd. App. 41 – 42.

j) "Donor-advised funds will be the exclusive property of The PI Fund . . . .  They will be administered under and subject to the bylaws and procedures of The PI Fund including any amendments." P. Amd. App. 45.

k) "Fund Agreement: The fund agreement is a simple document, which establishes the fund and outlines the structure and operation of the fund. The document is signed by the donor and The PI Fund." P. Amd. App. 45.

l) PI "retains the legal right to direct grants." P. Amd. App. 45.

m) The PI Fund "…, as required by law, retains authority over the use and distributions of the fund." P. Amd. App. 45.

n) PI "retains control of investments, including control of the retention or sale of any assets contributed." P. Amd. App. 45, 47.

o) "All grants will be made at the Board's discretion in the fund's name." P. Amd. App. 47.

p) "[A]ll distributions must be independently approved by the Board of the Foundation . . . ." P. Amd. App. 49.

q) PI "may elect, in its sole discretion, whether and how to invest the proceeds of a donor's account. The Foundation retains the exclusive right to manage and invest the assets in any account as the Board determines from time to time."  P. Amd. App. 49.

r) "All donor-advised funds are subject to variance power which gives The Pt Fund the ability to redirect funds should the cause for which they were established become obsolete." P. Amd. App. 45.

s) "[A]ll distributions must be independently approved by" PI.  P. Amd. App. 49.

t) PI "reserves the right to approve or reject any advice given by donors with respect to distributions." P. Amd. App. 49.

u) PI "may elect, in its sole discretion, whether and how to invest the proceeds of a donor's account." P. Amd. App. 49.

v)  PI "retains the exclusive right to manage and invest the assets in any account as the Board determines from time to time." P. Amd. App. 49.

The twelve page June 8, 2015 document contains all the terms required by 26 USC § 170(f)(18)(B) to show "a contemporaneous written acknowledgment" from PI showing that PI, after the contribution, "has exclusive legal control over the assets contributed."  The Court should grant the Keefers' requested summary judgment saying so.

### D.  Even if the appraiser's identifying number was not in the appraisal, the Keefers had reasonable cause and no willful neglect.

The IRS failed to consider the express provisions of the Internal Revenue Code written by Congress.  Congress declared in IRC Section 170(f)(11)(A)(i) (entitled "Charitable, etc., contributions and gifts") that charitable deductions of the size here are not allowed without a "qualified appraisal," but Congress then expressly provided an exception to that rule and declared that the "qualified appraisal" requirement "shall not apply" if the facts show the

taxpayer's failure to meet that requirement is "due to reasonable cause and not to willful neglect." IRC Code §170(f)(11)(A)(ii)(II):

> **(II)  Reasonable cause**
> [Denial of deduction for failure to meet the documentation tests] shall not apply if it is shown that the failure to meet such requirements is due to reasonable cause and not to willful neglect.

A party seeking summary judgment bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *Southern Calif. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

*Crimi v. Comm.*, TC Memo 2013-51, is instructive here. In *Crimi*, the taxpayer's appraisal was of such lack of quality that the court simply dismissed the appraisal, even though the court noted it had previously held substantial compliance in other cases "when the appraisal was almost five months premature, did not have the contribution date, failed to include a statement that the appraisal was prepared for income tax purposes, and failed to provide the fair market value of the appraised property as of the contribution date." *Id.* at p. *97.  The *Crimi* court said while it believed the appraisal before it did not substantially comply, it made no difference even if the appraisal did not "because we agree with petitioners that their noncompliance would be in any event excused for reasonable cause because they reasonably and in good faith relied on [their experienced CPA] advice that the 2000 appraisal met all legal requirements to claim the deduction." *Id.* at *P97 - *P98.

The *Crimi* court went on to note that neither the statute nor the regulations tell us what the requirements are for reasonable cause here, "So it is instructive to look at our other cases interpreting "reasonable cause". *Id.* at *P98 - *P99.

> A taxpayer's reliance on the advice of a professional, such as a Certified Public Accountant, would constitute reasonable cause and good faith if the taxpayer could prove by preponderance of the evidence that: (1) the taxpayer reasonable believed that the professional was a competent tax advisor with sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the advising professional; (3) the taxpayer actually relied in good faith on the professional's advice.

*Id.* at *P99.

And so it is here – if in fact the Keefers failed to place the appraiser's personal tax ID number in the Form 8283 or the appraisal, then the summary judgment evidence shows no reasonable trier of fact could find other than the Keefers were in good faith, had reasonable cause for the failure and no willful neglect in that failure.

The Keefers, authorized their tax attorney to hire an experienced appraisal firm to perform the appraisal and he did so. P. Amd. App. 50 – 61; P. Amd. App. 106 at 5; P. Amd. App. 104 at 5; P. Amd. App. 50, 58 - 61. The Keefers' retained expert tax accountants and legal counsel to review the appraisal and file it with the Keefers' 2015 return. P. Amd. App. 102 ¶6; P. Amd. App. 104 ¶5; P. Amd. App. 106 ¶ 5. The U.S. admits the Keefers' legal counsel hired an appraiser to perform the appraisal of the donated property. *See* Doc. 63 at ¶ 23. The U.S.'s own evidence in its previously filed United States' Appendix in Support of Its Motion for Summary Judgment (Doc. 51) shows the Keefers disclosed all material facts to the appraiser as the agent of the tax attorney, the appraiser disclosed all material facts to the counsel (including the disclosure to the charity that certain limited partnership assets would not be part of the donation), and the counsel was experienced in charitable contribution matters. the attorney and his agent, the appraiser, were both aware of the disclosure. Doc. 51-3 at 351 (attorney: "I am

aware that there were reserves for – as we discussed in my last part of this deposition – where previously -- funds were previously allocated for distribution payable to partners, but were not distributed because of other obligations of Burbank to lenders and franchisors."); Doc. 51-4 at pp. 407 – 415 and at p. 407 (appraisal – "Dear Mr. Horwitz: Pursuant to your request, Katzen, Marshall & Associates, Inc. ("KM") has completed its appraisal . . . .") and the "oral agreement" disclosure described by the appraiser at Doc. 51-4 at 407, 411, 413).  Moreover, the changes and signature page to the Keefers' tax attorney's deposition shows the attorney was experienced in charitable contributions and did work for the IRS "in a charitable contributions group" and took a specific course toward his LL.M (taxation) degree in charitable organizations and gifts.    P. Amd. App. 146; *see* defendant's appendix Doc. 51-3 at page 314 (deposition pp. 22-24).

The U.S.'s own evidence shows what the Keefers' attorneys and accountant advised the Keefers to do what was done here.  *See, e.g.,* Doc. 51-1 at p. 5 (deposition pp. 17, 18); at p. 6 (deposition pp. 21, 24), at p. 20 (deposition p. 80); at p. 22 (deposition p. 85); and at p. 39 (deposition p. 154).

The plain summary judgment evidence shows the professionals' qualifications and expert testimony on this issue.  *See* P. Amd. App. at pp. 99 – 100; 101 – 102; 103 – 105; 106 – 107. The U.S. presents no expert testimony to show the Keefers experts' were not competent, or the quality or objectivity of the experts' advice was not sufficient, or that the Keefers did not provide adequate information to the experts that was reasonably necessary and accurate.  The summary judgment evidence shows the IRS (1) found no substantive issues with the quality of the appraisal or (2) raised issues regarding lack of or erroneous information supplied by the to their tax advisors.

When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most

> taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a 'second opinion,' or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. 'Ordinary business care and prudence' do not demand such actions.

*United States v. Boyle*, 469 U.S. 241, 251 (1985)(internal cites omitted).

While the Keefers are CPAs, they have not practiced accounting or tax accounting for many years and the particular intricacies of the tax law of contributions to donor advised charities led them to seek and rely upon the advice of experienced CPAs and a tax lawyer to advise them.    The U.S.'s own evidence in its previously filed United States' Appendix in Support of Its Motion for Summary Judgment (Doc. 51) shows this.  Doc. 51-1 at pp. 2-6; Doc. 51-3 at pp. 243-244.

The IRS promulgated Form 8283 only containing a space for only one "Identifying number."  But the IRS now complains the Keefers did not put both the individual and the employer "identifying" numbers in the form even though there is space only for one.  "Although we recognize that instructions to forms are not binding sources of law, they are ***useful in illustrating understandable taxpayer confusion***. Why else would the IRS have changed the instructions to be more clear?"  *Cave Buttes, L.L.C. v. Commissioner*, 147 T.C. 338, 353 (2016)(emphasis added); *see* P. Amd. App. 77 [Federal Register Volume 83, Number 146 (Monday, July 30, 2018)] [Rules and Regulations] [Pages 36417-36428] at II. B (emphasis added)(cited above at p.  11).

The same reasonable cause and not willful neglect standard also applies to eliminate penalties asserted by the IRS in the Notice of Deficiency under Section 6662 as to any disallowance under Section 170(f)(18)) even if the taxpayers were to lose the deduction itself. The summary judgment evidence shows no reasonable person could find otherwise than that the

Keefers had reasonable cause and no willful neglect in placing the appraiser's identifying number where they did and which number they used.

### E. **Alternatively, the omission of the individual appraiser's identification number was *de minimus*.**

The omission of the individual appraiser's tax ID does not degrade the quality of the appraisal, the paramount purpose of the appraisal.  Section 1.170A-13(c) of the regulations has over eighteen subsections of requirements for a "qualified appraisal," all of which deal with the quality of the appraisal and any conflict of interest of the appraiser, save this one – the inclusion of the individual appraiser's tax ID number as described in Section 1.170A-13(c)(3)(ii)(E). The IRS made no complaint here about either the quality of the appraiser, any conflicts of interest of the appraiser, or the quality of the appraisal.  There is no suggestion the failure to include the individual appraiser's tax ID number affected the quality of the appraisal.

### F. **Even if technically correct, the IRS failed to give the Keefers an opportunity to correct, and the regulation, without that opportunity, is arbitrary, capricious and manifestly contrary to the statute.**

An agency regulation can be unenforceable as arbitrary or capricious or manifestly contrary to the statute.  *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984). Congress can leave the agency with a power to choose regulations to enforce a statute.  "If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *United States v. Shimer*, 367 U.S. 374, 382, 383 (1961).

Congress would not have sanctioned the IRS's enforcement conduct here.  Congress told the IRS that charitable deductions are not to be disallowed for a "good faith failure" to comply with the "substantiation regulations."  *See* COMREP ¶ 66,591.005 Changes in valuation

overstatement penalty; appraisal requirements. ('84 TRA, PL 98-369, 7112184). Congress told the IRS, "If the IRS, in processing returns as filed, finds that the taxpayer claimed deductions on the separate line relating to donations of property for which a qualified appraisal is required but failed to attach the summary appraisal, ***then the IRS (to the extent administratively practicable) is to so notify the taxpayer and request the filing of the summary.***" *Id.* (emphasis added). Here, the IRS violated this Congressional command, never even attempted to notify the taxpayer and request the complained of missing or erroneously placed information, and instead just disallowed the charitable deduction in total.

**Alternative Claim 2 –**
**Refund of excess tax paid if assignment of income and then charitable contribution of cash**

Alternatively, if the Court (a) does not grant summary judgment on the Keefers' Claim 1 above that the contribution of the partnership interest asset should be allowed as a charitable contribution any grounds and award the relief requested, and (b) finds now or at trial the Keefers' contribution transaction was really an assignment of income by one or more plaintiffs and a charitable contribution of cash or that income, then, in that event, the Keefers request summary judgment that the charitable contribution results in a tax refund due to the Keefers of at least $327,520. In that event, the Keefers alternatively, and only in that alternative event, seek judgment against U.S. for that amount of refund, a cancellation or refund of the related penalties and payment of applicable interest amounts. *See* Plaintiffs' Second Amended Complaint (Doc. 60) at ¶¶ 3, 4, 38; Plaintiffs' Amended Motion for Summary Judgment p.5.

In February 2021, for the first time the U.S. said it needed time to discovery on whether the anticipatory assignment of income doctrine applied to the Keefers' suit. (Docs. 27, 28 at p. 2). Then in September 2021, the U.S. disclosed an I.R.S. witness who the U.S. said had done "calculations." *See* Doc. 47 at ¶ 9.

Thereafter on October 8, 2021, the U.S. produced that witness's calculations of alternative tax refunds dues to the Keefers, including one if the Court finds there was an anticipatory of assignment of income by the Keefers' contribution. (P. Amd. App. 126 - 145). Then, in February 2021, the U.S. in its Motion for Summary Judgment (Doc. 49, filed Oct. 12, 2021, p. 1) raised its unpled defense of "the anticipatory assignment of income doctrine." Then, without objection by defendant, the Keefers on November 2, 2021 filed their Second Amended Complaint adding an alternative claim (Claim 2) for a deduction for a cash contribution if the Court finds the initial contribution was an assignment of income to meet this lately disclosed

positon of the defendant. *See* Doc. 60 at ¶ 1 footnote 1, & ¶ 38. The U.S. filed its Answer to Second Amended Complaint (Doc. 63). In that answer the U.S. admits it produced its witness's calculations and the relevant appendix exhibits here and the effects of such calculation depending on the Court's rulings in this case. Doc. 63 at pp. 1 – 3.

The U.S.'s witness prepared what the witness calls "SCENARIO #3 – ASSIGNMENT OF INCOME – NO BARGAIN SALE – ALLOW CASH CHARITABLE CONTRIBUTION." P. Amd. App. 126. In her calculation, the U.S. witness calculates and concludes in the event the Court finds the Keefers' contribution was actually an assignment of income to the charity, the Keefers are entitled to a "(refund)" of "(327, 520.00")". P. Amd. App. at 108 (at highlights); 129 at line 19(d). Thus the undisputed summary judgment evidence and the U.S.'s own admission shows that, if the Court ultimately holds the Keefers' contribution was actually an assignment of income, the defendant U.S. owes the Keefers $327,520 and an adjustment or refund of any related interest and penalties paid.

**Alternative claim 3 –**
**Refund of excess tax paid if no deduction for charitable contribution**
**but after plaintiffs' basis recalculation**

In the further alternative, if the Court (a) does not grant summary judgment on the Keefers' Claim 1 above that the contribution of the partnership interest asset should be allowed as a charitable contribution and award the relief requested in Claim 1 and Claim 2 above, and (b) finds now or at trial the Keefers' contribution transaction is disallowed entirely, then, in that event, the Keefers request summary judgment ordering the U.S. to recalculate the Keefers' basis in the asset transferred to the charity, and reduce the Keefers' tax and charges accordingly, and refund all amounts overpaid of at least $136,875.00, plus related penalty and payment of applicable interest amounts. *See* Plaintiffs' Second Amended Complaint (Doc. 60) at ¶¶ 3, 4, 39;

Plaintiffs' Amended Motion for Summary Judgment p. 5.

Section 1011(b) of Section 26 U.S.C. provides that a charitable deduction by a "bargain sale" of the asset to the charity is allowable under Section 170 of the Code but the taxpayer must adjust the basis allocated if and only if the deduction is "all allowable" using a particular method set forth in Section 1011(b). That method adjusts the taxpayer's basis downward for the charitable "bargain sale" contribution to only a percentage of the normal basis.

But if the IRS later disallows the charitable deduction as the IRS did here, Section 1011(b) commands the taxpayer's basis be recalculated back upward for purpose of calculating any taxable gain, which will reduce the taxable gain in the transfer, which in turn reduces the tax (and any penalty) on the disallowed deduction. The IRS, after disallowing the deduction, failed to re-adjust the Keefers' basis back up to properly calculate gain and reduce the proposed taxes, penalty and interest.

After the IRS rejected the Keefers' charitable deduction, the Keefers properly calculated the property adjusted basis for the contributed partnership interest as required by Section 1011(b) of the Code for a charitable contribution deduction, and expressly showed the proper calculation. P. Amd. App. 29, 30, 37. The Keefers pointed this out to the IRS, and requested the recalculation. P. Amd. App. 25 – 31, 79. The IRS failed to do so. P. Amd. App. 102 ¶5. IRS thus caused plaintiffs' "gain" on the transfer to be greater, and increased the calculated tax and penalty owed after the disallowance actually to be more than if the deduction had never been taken by plaintiffs in the first place. IRS failed to follow Section 1011(b).

Again, as we discuss above in the argument concerning the Keefers' Claim 2, the U.S. filed its Answer to Second Amended Complaint (Doc. 63). In that answer the U.S. admits it produced both its witness's calculations and the relevant appendix exhibits here and admits the

effects of such calculation depending on the Court's rulings in this case. Doc. 63 at pp. 1 – 3. The IRS witness prepared what she calls "SCENARIO #1 – VERIFY AND REVERSE GAIN ON BARGAIN SALE (NO CHARITABE CONTRIBUTION)." P. Amd. App. 108 (at highlights); 110 – 125. In her calculation, the U.S. witness calculates and concludes in the event the Court finds the Keefers' should not be allowed at all, the Keefers were subject to "an overassessment" and are entitled to a "decrease in tax" because of an "Overpayment" of "(136,875.00)". P. Amd. App. at 108 (at highlights); 115 at lines 21 and 22 (at highlights). Thus the undisputed summary judgment evidence and the U.S.'s own admission shows that, if the Court ultimately holds the Keefers are not entitled to the relief under Claim 1 or Claim 2, the defendant U.S. owes the Keefers $136,875 and an adjustment or refund of any related interest and penalties paid.

### Summary judgment denying the U.S.'s plead defense of variance because the defendant itself took the unilateral action that creates the substantial variance after the Keefers' filing of the initial claim for refund.

The Keefers' Second Amended Complaint seeks recovery on two alternative grounds, their Claim 2 and Claim 3 as set out above. Second Amended Complaint (Doc. 60) ¶¶ 3, 4, 11 - 30, 37, 38. The U.S. has filed its Answer to Second Amended Complaint (Doc. 63), and alleges the defense of variance to the Keefers' alternative claims on the basis of the "variance" doctrine, claiming the doctrine "bars relief on any ground not asserted in Plaintiffs' administrative claim for refund including any charitable deduction for cash donation rather than a partnership interest donation." Doc. 63 at pp. 1, 2, 9. The Keefers seek summary judgment denying the U.S. variance defense as a matter of law because the U.S. itself took the unilateral action that creates the substantial variance after the Keefers' filing of the initial claim for refund.

Defendant argues that the Keefers cannot now alternatively assert the Keefers' two alternative claims [Claim 1 (if assignment of income) and Claim 2 (if no contribution allowed, then adjust basis in asset) then a refund still owed] as grounds for a refund claim if the Court finds the contribution was really an assignment of income or denies any contribution.

The U.S. bases its argument on the "variance" doctrine -- a taxpayer is barred from raising in a refund suit grounds for recovery which had not previously been set forth in its claim for a refund.  *See Rodgers v. United States*, 843 F.3d 181, 195 (5th Cir. 2016).

Defendant ignores the common sense and judicially declared exception to this rule –

Sensibly, courts have explicitly carved out an exception in cases where the Government's unilateral action itself creates the substantial variance. *See, e.g., Shore v. United States*, 26 Cl. Ct. 826, 828-29 (1992) (rejecting a variance doctrine argument where the Government created the substantial variance from the initial claim); *Brown v. United States*, 427 F.2d 57, 62 (9th Cir. 1970) (holding that taxpayers "cannot be foreclosed from responding" to new issues created by the Government after the filing of the initial refund claim).

*El Paso CGP Co., L.L.C. v. United States*, 748 F.3d 225, 229 (5th Cir. 2014).  And that is exactly what the U.S. has done here.

While the U.S. globally pled a general prophylactic affirmative defense of no variance in its original answer (Doc. 19, filed Oct. 13, 2020, p. 1), the U.S. did not then and had never before raised that issue or argument in any of its audit work papers or notices of U.S.'s new anticipatory assignment of income doctrine argument.  *See* Appendix to Plaintiffs' Motion for Summary judgment Brief (Doc. 26-2) at 4 – 20, 64 – 73, 80 – 83.

In February 2021, long after the Keefers' period for refund claim had expired, for the first time the U.S. said it needed time to discovery on whether the anticipatory assignment of income doctrine applied to the Keefers' suit.  (Docs. 27, 28 at p. 2).  Then on September 14, 2021, one

day before the Court ordered deadline for the completion of discovery, the U.S. disclosed an I.R.S. witness who the U.S. said had done "calculations." *See* Doc. 47 at ¶ 9.

Thereafter on October 8, 2021, the U.S. produced that witness's calculations of alternative tax refunds due to the Keefers, including one if the Court finds there was an anticipatory of assignment of income by the Keefers' contribution. (P. Amd. App. 108, 126 - 145). Four days later, the U.S. filed its brief in support of its original motion for summary judgment (Doc. 50, filed Oct. 12, 2021, p. 29) raised its unpled defense of variance.

Then, without objection by defendant, the Keefers on November 2, 2021 filed their Second Amended Complaint adding an alternative claim (Claim 2) for a deduction for a cash contribution if the Court finds the initial contribution was an assignment of income to meet this lately disclosed positon of the defendant. *See* Doc. 60 at ¶ 1 footnote 1, & ¶ 38. The U.S. filed its Answer to Second Amended Complaint (Doc. 63). In that answer the U.S. admits it produced its witness's calculations and the relevant appendix exhibits here and the effects of such calculation depending on the Court's rulings in this case on the U.S.'s belated anticipatory assignment of income argument. Doc. 63 at pp. 1 – 3.

As a matter of law, the summary judgment evidence shows the government's new defense of variance is caused by events created by the government after the filing of the initial refund claim. The Keefers cannot be foreclosed from responding to new issues created by the government, after the filing of Keefers' initial refund claim, by the government's new defense of variance, and defendant's defense of variance should be denied as a matter of law.

### III. CONCLUSION

The Keefers have overpaid their federal income tax for the year 2015 in the amount of $507,964.80, including penalties. The IRS has refused to refund the overpayment. The Keefers

are entitled to judgment on their Claim 1 against defendant U.S. for $507,964.80, or such other amount as is appropriate plus interest thereon as provided by law.  Alternatively, the Keefers are entitled to a refund of the taxes and penalty thereon on their Claim 2 in the amount of at $327,520 overpaid by reason the IRS's late asserted claim of assignment of income. Alternatively, the Keefers are entitled to a refund of the taxes and penalty thereon on their Claim 3 in the amount of at $136,875 overpaid by reason of the IRS's erroneous basis calculation in the sale of involving the contributed asset.  In any event, the government's lately created variance defense should be denied as a matter of law.

## IV. RELIEF REQUESTED

The Keefers request the Court enter judgment against the US on the issues as set out above and in the accompanying proposed order for:

1.     The relief requested under Claim 1, the holdings request in item A, B, C, D, E, and F under that claim, and the sum of at least $507,964.80 plus prejudgment and post judgment interest allowed by law.

2.     Alternatively, if the events under Claim 2 occur, the relief requested under Claims 2 and US for the sum of $327, 520 plus prejudgment and post judgment interest allowed by law.

3.     Alternatively, if the events under Claim 3 occur, the relief requested under Claim 3 and the sum of $136,875 plus prejudgment and post judgment interest allowed by law.

4.     In any event, deny the U.S. lately raise defense of variance as a matter of law.

5.     Relief under Rule 56(g) as applicable.

6.      Cost of court.

7.      Prejudgment and post judgment interest at the highest rates allowed by law.

8.      General relief.

Respectfully submitted,

**GLAST, PHILLIPS & MURRAY, P.C.**

by: _____
Richard E. Young
Texas State Bar No. 22204800

14801 Quorum Drive, Suite 500
Dallas, Texas 75254-1449
972.419.8376
972.419.8329 facsimile
ryoung@gpm-law.com

COUNSEL FOR PLAINTIFFS
KEVIN M. and PATRICIA S. KEEFER

CERTIFICATE OF SERVICE

I certify that on November 16, 2021, a copy of this document was served upon counsel for Defendant as follows: Moha Yepuri Moha.Yepuri@usdoj.gov; Christian A. Orozco Christian.A.Orozco@usdoj.gov.; Attorneys for Defendant United States of America.

_____
Richard E. Young