IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KEVIN M. and PATRICIA S. KEEFER**, | § | Case No. 3:20-cv-00836-B |
| *Plaintiffs* | § | |
| | § | |
| **-v-** | **§** | Non-Jury Trial |
| | § | |
| **UNITED STATES OF AMERICA**, | § | |
| *Defendant* | § | |

### PLAINTIFFS' APPENDIX TO PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT BRIEF

Plaintiffs Kevin M. Keefer and Patricia S. Keefer submit this Plaintiffs' Appendix to Plaintiffs' Amended Motion for Summary Judgment Brief.

Respectfully submitted,

**GLAST, PHILLIPS & MURRAY, P.C.**

by: _____
Richard E. Young
Texas State Bar No. 22204800

14801 Quorum Drive, Suite 500
Dallas, Texas 75254-1449
972.419.8376
972.419.8329 facsimile
ryoung@gpm-law.com

COUNSEL FOR PLAINTIFFS
KEVIN M. and PATRICIA S. KEEFER

---

**PLAINTIFFS' APPENDIX TO PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT BRIEF**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on November 16, 2021, a copy of this document was served upon counsel for Defendant as follows: Moha Yepuri <u>Moha.Yepuri@usdoj.gov</u>; Christian A. Orozco <u>Christian.A.Orozco@usdoj.gov.</u>; Attorneys for Defendant United States of America.

_____

Richard E. Young

**EXTENSION GRANTED TO 10/17**

| Form **1040** | U.S. Individual Income Tax Return | **2015** | OMB No. 1545-0074 | IRS Use Only - Do not write or staple in this space. |

For the year Jan. 1-Dec. 31, 2015, or other tax year beginning _____, 2015, ending _____, 20 _____      **See separate instructions.**

| Your first name and initial | Last name | Your social security number |
| KEVIN | KEEFER | ■■■■■■ |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| PATRICIA | KEEFER | ■■■■■■ |

Home address (number and street). If you have a P.O. box, see instructions.     Apt. no.     **Make sure the SSN(s) above and on line 6c are correct.**

4723 BYRON CIRCLE

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below.

IRVING, TX  75038

**Presidential Election Campaign**
Check here if you or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund. ☐ You ☐ Spouse

| Foreign country name | Foreign province/state/county | Foreign postal code |

## Filing Status

Check only one box.

1 ☐ Single
2 ☒ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child

## Exemptions

6a ☒ **Yourself.** If someone can claim you as a dependent, do not check box 6a ....................
b ☒ **Spouse** ...........................................................

Boxes checked on 6a and 6b  **2**

c Dependents:

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if child under age 17 qualifying for child tax credit |
| | | | |
| | | | |
| | | | |
| | | | |

If more than four dependents, see instructions and check here ▶ ☐

No. of children on 6c who:
- lived with you
- did not live with you due to divorce or separation (see instructions)

Dependents on 6c not entered above

Add numbers on lines above  **2**

d **Total number of exemptions claimed** .........................................

## Income

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) **W-2**    STMT 7 | 7 | ■■ |
| 8a | Taxable interest. Attach Schedule B if required | 8a | |
| b | Tax-exempt interest. Do not include on line 8a | 8b | ■■ |
| 9a | Ordinary dividends. Attach Schedule B if required | 9a | ■■ |
| b | Qualified dividends | 9b | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes    STMT 2    STMT 4 | 10 | |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | IRA distributions    15a | b Taxable amount | 15b | |
| 16a | Pensions and annuities    16a | b Taxable amount | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | |
| 18 | Farm income or (loss). Attach Schedule F | 18 | |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits    20a | b Taxable amount | 20b | |
| 21 | Other income. List type and amount | 21 | |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your total income ▶ | 22 | |

## Adjusted Gross Income

| | | | |
|---|---|---|---|
| 23 | Educator expenses | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | ■■ |
| 27 | Deductible part of self-employment tax. Attach Schedule SE | 27 | ■■ |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 | |
| 29 | Self-employed health insurance deduction | 29 | |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid  b Recipient's SSN ▶ | 31a | |
| 32 | IRA deduction | 32 | |
| 33 | Student loan interest deduction | 33 | |
| 34 | Tuition and fees. Attach Form 8917 | 34 | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | |
| 36 | Add lines 23 through 35 | 36 | ■■ |
| 37 | Subtract line 36 from line 22. This is your adjusted gross income ▶ | 37 | ■■ |

510001 12-30-15

LHA  For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.     Form 1040 (2015)

**AS AMENDED**

Keefer - 00162 28-1118

**1**

Form **1040** (2015)   KEVIN & PATRICIA KEEFER                                                                 Page **2**

| **Tax and Credits** | 38 | Amount from line 37 (adjusted gross income) | | | 38 | |
|---|---|---|---|---|---|---|
| Standard Deduction for – | 39a | Check if: ☐ You were born before January 2, 1951, ☐ Blind. ☐ Spouse was born before January 2, 1951, ☐ Blind. | **Total boxes checked** ▶ 39a | | | |
| ● People who check any box on line 39a or 39b OR who can be claimed as a dependent, see instructions. | b | If your spouse itemizes on a separate return or you were a dual-status alien, check here ▶ 39b | | | | |
| | 40 | Itemized deductions (from Schedule A) **or** your standard deduction (see left margin) | | | 40 | |
| | 41 | Subtract line 40 from line 38 | | | 41 | |
| | 42 | Exemptions. If line 38 is $154,950 or less, multiply $4,000 by the number on line 6d. Otherwise, see inst. | | | 42 | |
| ● All others: | 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | | | 43 | |
| Single or Married filing separately, $6,300 | 44 | Tax. Check if any from: a ☐ Form(s) 8814  b ☐ Form 4972  c ☐ | | | 44 | |
| | 45 | Alternative minimum tax. Attach Form 6251 | | | 45 | |
| Married filing jointly or Qualifying widow(er), $12,600 | 46 | Excess advance premium tax credit repayment. Attach Form 8962 | | | 46 | |
| | 47 | Add lines 44, 45, and 46 | | ▶ | 47 | |
| Head of household, $9,250 | 48 | Foreign tax credit. Attach Form 1116 if required | 48 | | | |
| | 49 | Credit for child and dependent care expenses. Attach Form 2441 | 49 | | | |
| | 50 | Education credits from Form 8863, line 19 | 50 | | | |
| | 51 | Retirement savings contributions credit. Attach Form 8880 | 51 | | | |
| | 52 | Child tax credit. Attach Schedule 8812, if required | 52 | | | |
| | 53 | Residential energy credits. Attach Form 5695 | 53 | | | |
| | 54 | Other credits from Form: a ☒ 3800  b ☐ 8801  c ☐ | 54 | | | |
| | 55 | Add lines 48 through 54. These are your total credits | | | 55 | |
| | 56 | Subtract line 55 from line 47. If line 55 is more than line 47, enter -0- | | ▶ | 56 | |
| **Other Taxes** | 57 | Self-employment tax. Attach Schedule SE | | | 57 | |
| | 58 | Unreported social security and Medicare tax from Form: a ☐ 4137  b ☐ 8919 | | | 58 | |
| | 59 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | | | 59 | |
| | 60a | Household employment taxes from Schedule H | | | 60a | |
| | b | First-time homebuyer credit repayment. Attach Form 5405 if required | | | 60b | |
| | 61 | Health care: Individual responsibility (see instructions) Full-year coverage ☒ | | | 61 | |
| | 62 | Taxes from: a ☒ Form 8959  b ☒ Form 8960  c ☐ Inst.; enter code(s) STATEMENT 11 | | | 62 | |
| | 63 | Add lines 56 through 62. This is your total tax | | ▶ | 63 | |
| **Payments** | 64 | Federal income tax withheld from Forms W-2 and 1099 | 64 | | | STATEMENT 10 |
| If you have a qualifying child, attach Schedule EIC. | 65 | 2015 estimated tax payments and amount applied from 2014 return | 65 | | | |
| | 66a | Earned income credit (EIC) | 66a | | | |
| | b | Nontaxable combat pay election | 66b | | | |
| | 67 | Additional child tax credit. Attach Schedule 8812 | 67 | | | |
| | 68 | American opportunity credit from Form 8863, line 8 | 68 | | | |
| | 69 | Net premium tax credit. Attach Form 8962 | 69 | | | |
| | 70 | Amount paid with request for extension to file | 70 | | | |
| | 71 | Excess social security and tier 1 RRTA tax withheld STMT 9 | 71 | | | |
| | 72 | Credit for federal tax on fuels. Attach Form 4136 | 72 | | | |
| | 73 | Credits from Form: a ☐ 2439  b ☐ Reserved  c ☐ 8885  d ☐ | 73 | | | |
| | 74 | Add lines 64, 65, 66a, and 67 through 73. These are your total payments | | ▶ | 74 | |
| **Refund** | 75 | If line 74 is more than line 63, subtract line 63 from line 74. This is the amount you overpaid | | | 75 | 28,156. |
| Direct deposit? See instructions. | 76a | Amount of line 75 you want refunded to you. If Form 8888 is attached, check here ▶ ☐ | | | 76a | |
| | b | Routing number ▶  ▶ c Type: ☐ Checking ☐ Savings  d Account number ▶ | | | | |
| | 77 | Amount of line 75 you want applied to your 2016 estimated tax ▶ | 77 | | 28,156. | |
| **Amount You Owe** | 78 | Amount you owe. Subtract line 74 from line 63. For details on how to pay, see instructions | | ▶ | 78 | |
| | 79 | Estimated tax penalty (see instructions) | 79 | | | |

**Third Party Designee**   Do you want to allow another person to discuss this return with the IRS (see instructions)? ☒ Yes. Complete below. ☐ No

Designee's name ▶ BRANT C. WEIGAND   Phone no. ▶ (818)786-5656   Personal identification number (PIN) ▶

**Sign Here**
Joint return? See instructions. Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Your signature | Date | Your occupation EXECUTIVE | Daytime phone number

Spouse's signature. If a joint return, **both** must sign. | Date | Spouse's occupation ACCOUNTANT | If the IRS sent you an Identity Protection PIN, enter it here

**Paid Preparer Use Only**

Print/Type preparer's name BRANT C. WEIGAND | Preparer's signature | Date | Check ☐ if self-employed | PTIN

Firm's name ▶ GORELICK & USLANER, CPAS, A PROF. CORP. | Firm's EIN ▶

Firm's address ▶ 15260 VENTURA BLVD., STE 1705   SHERMAN OAKS, CA 91403 | Phone no. (818)786-5656

510002 12-30-15

Keefer - 00160

Keefer AS AMENDED                                                                 **2**

| SCHEDULE A<br>(Form 1040)<br>Department of the Treasury<br>Internal Revenue Service (99)<br>Name(s) shown on Form 1040 | **Itemized Deductions**<br>▶ Information about Schedule A and its separate instructions is at www.irs.gov/schedulea.<br>▶ Attach to Form 1040. | OMB No. 1545-0074<br>**2015**<br>Attachment<br>Sequence No. 07 |
|---|---|---|

KEVIN & PATRICIA KEEFER                                                                 Your social security number ▮▮▮▮▮

| **Medical and Dental Expenses** | **Caution:** Do not include expenses reimbursed or paid by others. | | |
|---|---|---|---|
| | 1 Medical and dental expenses (see instructions) | 1 | |
| | 2 Enter amount from Form 1040, line 38 ......... | 2 | |
| | 3 Multiply line 2 by 10% (.10). But if either you or your spouse was born before January 2, 1951, multiply line 2 by 7.5% (.075) instead | 3 | |
| | 4 Subtract line 3 from line 1. If line 3 is more than line 1, enter -0- | | 4 |
| **Taxes You Paid** | 5 State and local (check only one box):<br>a [X] Income taxes, or<br>b [ ] General sales taxes    SEE STATEMENT 13 | 5 | ▮▮▮ |
| | 6 Real estate taxes (see instructions) | 6 | |
| | 7 Personal property taxes | 7 | |
| | 8 Other taxes. List type and amount ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 8 | |
| | 9 Add lines 5 through 8 | | ▮▮▮ |
| **Interest You Paid**<br><br>**Note:**<br>Your mortgage interest deduction may be limited (see instructions). | 10 Home mortgage interest and points reported to you on Form 1098 | 10 | |
| | 11 Home mortgage interest not reported to you on Form 1098. If paid to the person from whom you bought the home, see instructions and show that person's name, identifying no., and address ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 11 | |
| | 12 Points not reported to you on Form 1098. See instructions for special rules | 12 | |
| | 13 Mortgage insurance premiums (see instructions) | 13 | |
| | 14 Investment interest. Attach Form 4952 if required. (See instructions.) STMT 15 | 14 | |
| | 15 Add lines 10 through 14 | | ▮▮▮ |
| **Gifts to Charity**<br>If you made a gift and got a benefit for it, see instructions. | 16 Gifts by cash or check. If you made any gift of $250 or more, see instructions | 16 | ▮▮▮ |
| | 17 Other than by cash or check. If any gift of $250 or more, see instructions. You must attach Form 8283 if over $500 | 17 | 1,257,000. |
| | 18 Carryover from prior year | 18 | |
| | 19 Add lines 16 through 18 | | 19 ▮▮▮ |
| **Casualty and Theft Losses** | 20 Casualty or theft loss(es). Attach Form 4684. (See instructions.) | | 20 |
| **Job Expenses and Certain Miscellaneous Deductions** | 21 Unreimbursed employee expenses - job travel, union dues, job education, etc. Attach Form 2106 or 2106-EZ if required. (See instructions.) ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 21 | |
| | 22 Tax preparation fees | 22 | |
| | 23 Other expenses - investment, safe deposit box, etc. List type and amount ▶<br>SEE STATEMENT 12 _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 23 | ▮▮▮ |
| | 24 Add lines 21 through 23 | 24 | |
| | 25 Enter amount from Form 1040, line 38 .......... | 25 | 22,765,955. |
| | 26 Multiply line 25 by 2% (.02) | 26 | |
| | 27 Subtract line 26 from line 24. If line 26 is more than line 24, enter -0- | | ▮▮▮ |
| **Other Miscellaneous Deductions** | 28 Other - from list in instructions. List type and amount ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | 28 |
| **Total Itemized Deductions** | 29 Is Form 1040, line 38, over $154,950?<br>[ ] **No.** Your deduction is not limited. Add the amounts in the far right column for lines 4 through 28. Also, enter this amount on Form 1040, line 40.<br>[X] **Yes.** Your deduction may be limited. See the Itemized Deductions Worksheet in the instructions to figure the amount to enter. | STMT 16 | 29 ▮▮▮ |
| | 30 If you elect to itemize deductions even though they are less than your standard deduction, check here ▶ [ ] | | |

LHA  519501 01-19-16    **For Paperwork Reduction Act Notice, see Form 1040 instructions.**                                    Schedule A (Form 1040) 2015

Keefer - 00161

**AS AMENDED**
10
Keefer - 000164 20-11-10

**3**

 **Department of the Treasury**
**Internal Revenue Service**
Small Business and Self-Employed
4050 Alpha Road
5305 NDAL
Farmers Branch  TX  75244-4201

KEVIN & PATRICIA KEEFER
4723 BYRON CIRCLE
IRVING  TX  75038-6319

**Date:**
July 29, 2019
**Taxpayer ID number:**

**Form:**
1040
**Tax periods ended:**
December 31, 2015

**Person to contact:**
Danielle McLemore
**Contact telephone number:**
469-801-0963
**Contact fax number:**
877-477-8685
**Employee ID number:**
1000229484
**Response due date:**
August 8, 2019

Dear KEVIN & PATRICIA KEEFER:

I am enclosing two copies of an examination report showing proposed changes to your tax for the periods listed above. Review the report, and tell us whether you agree or disagree with the changes **by the response due date listed above**. If you have an interest in any partnerships, S corporations, trusts, etc., this report may not reflect examinations of those entities. Changes to those accounts could also affect your tax.

**If you agree with the proposed changes in the report**
1. Sign and date one copy of the examination report. If you filed a joint return, both spouses must sign the report.
2. Include payment for the full amount you owe (if the report shows you owe additional tax) to limit penalty and interest charges to your account. Make payment payable to the *United States Treasury*.
3. Return the signed and dated examination report with your payment **by the response due date** in the enclosed envelope.

**If you agree, but can't pay the full amount you owe**
Sign, date, and return one copy of the examination report, as explained above, and pay as much as you can. You can call me to discuss payment. We explain payment options in the enclosed Publication 3498, *The Examination Process*. You can also visit www.irs.gov and search "tax payment options" for more information about:

- Installment agreements
- Automatic payment deductions
- Payroll deductions
- Credit card payments

If you don't enclose full payment for the additional tax, interest, and penalties, we'll bill you for the unpaid amounts. Penalties and interest will continue to increase until you pay the full amount you owe. If you are a C corporation, the law requires us to charge an interest rate 2% higher than the standard rate on deficiencies of $100,000 or more (Section 6621(c) of the Internal Revenue Code).

**Letter 5153 (8-2014)**
Catalog Number 61742Z

Keefer - 00534

| **Taxpayer Name:** | KEEFER, KEVIN & PATRICIA | **Examiner:** | McLemore, Danielle |
|---|---|---|---|

**TIN:**

| **Tax Form:** | 1040 | **Date:** | 08/10/2018, 05/20/2019, 05/21/2019, 06/05/2019, 07/02/2019, 07/16/2019 |
|---|---|---|---|

**Tax Year (s):**     201512

## Contributions

| Tax Period | Per Return | Per Exam | Adjustment | Reference |
|---|---|---|---|---|
| 201512 | 1,257,000.00 | .00 | 1,257,000.00 | 401 |

**Conclusion:**  *(Reflects the final determination on the issue.)*

IRC Section 170(f)(8) requires the Taxpayer to substantiate a contribution of $250 or more with a contemporaneous written acknowledgment of the contribution by the done organization that meets the requirements of §170(f)(8)(B). The acknowledgment must: 1) state the amount of cash and a description (but not the value) of any property received by the charity 2) contain a statement of whether the charity provided any goods or services in consideration, in whole or in part, for the gift; 3) provide a description of and a good faith estimate of the goods or services, other than intangible religious benefits, provided to the Taxpayer; and if contribution is to a donor advised fund 4) the donor advised fund "has exclusive legal control over the assts contributed".

A written acknowledgment is contemporaneous if it is obtained by the Taxpayer on or before the earlier of: 1) the date the Taxpayer files the original return for the year of the contribution; or 2) the return due date (including extensions) for the year of the contribution.

If a contribution of property results in a deduction claimed for that property of more than $500, the Taxpayer must attach a description of the property to the return for the taxable year in which the contribution is made. IRC §170(f)(11)(A). In the event a contribution of property results in a deduction claimed for that property in excess of $5,000, §170(f)(11)(C) requires a Taxpayer to obtain a qualified appraisal and attach a copy of a fully completed appraisal summary to the return for the taxable year in which the contribution is made. Under §170(f)(11)(d), for contributions of property for which a deduction is claimed for that property of more than $500,000, the qualified appraisal must be attached to the tax return for the taxable year in which the contribution is made.

It has not been established that the Taxpayers are entitled to deduct a charitable contribution in the amount of $1,257,000, they did not have an acknowledgment from the donee organization showing that the donor advised fund "has exclusive legal control over the assets contributed" and their appraisal did not include the identifying number of the appraiser. Therefore, this deduction is not allowable.

**Facts:**  *(Document the relevant facts.)*

TPP is a Certified Public Accountant and graduated from the University of Kansas with a Bachelor's degree in accounting and a Master's in Business. He has over 30 years of hospitality development, management and financial expertise. His background includes specializing in the development, operation and management of Marriott and Hilton branded select service hotels.

**Taxpayer Name:**   KEEFER, KEVIN & PATRICIA        **Examiner:**   McLemore, Danielle

**TIN:**

**Tax Form:**          1040                                              **Date:**          08/10/2018,
                                                                                               05/20/2019,
                                                                                               05/21/2019,
                                                                                               06/05/2019,
                                                                                               07/02/2019,
                                                                                               07/16/2019

**Tax Year (s):**      201512

| Contributions | | | | |
|---|---|---|---|---|
| Tax Period | Per Return | Per Exam | Adjustment | Reference |
| 201512 | 1,257,000.00 | .00 | 1,257,000.00 | 401 |

**Conclusion:**   *(Reflects the final determination on the issue.)*

IRC Section 170(f)(8) requires the Taxpayer to substantiate a contribution of $250 or more with a contemporaneous written acknowledgment of the contribution by the done organization that meets the requirements of §170(f)(8)(B). The acknowledgment must: 1) state the amount of cash and a description (but not the value) of any property received by the charity 2) contain a statement of whether the charity provided any goods or services in consideration, in whole or in part, for the gift; 3) provide a description of and a good faith estimate of the goods or services, other than intangible religious benefits, provided to the Taxpayer; and if contribution is to a donor advised fund 4) the donor advised fund "has exclusive legal control over the assts contributed".

A written acknowledgment is contemporaneous if it is obtained by the Taxpayer on or before the earlier of: 1) the date the Taxpayer files the original return for the year of the contribution; or 2) the return due date (including extensions) for the year of the contribution.

If a contribution of property results in a deduction claimed for that property of more than $500, the Taxpayer must attach a description of the property to the return for the taxable year in which the contribution is made. IRC §170(f)(11)(A). In the event a contribution of property results in a deduction claimed for that property in excess of $5,000, §170(f)(11)(C) requires a Taxpayer to obtain a qualified appraisal and attach a copy of a fully completed appraisal summary to the return for the taxable year in which the contribution is made. Under §170(f)(11)(d), for contributions of property for which a deduction is claimed for that property of more than $500,000, the qualified appraisal must be attached to the tax return for the taxable year in which the contribution is made.

It has not been established that the Taxpayers are entitled to deduct a charitable contribution in the amount of $1,257,000, they did not have an acknowledgment from the donee organization showing that the donor advised fund "has exclusive legal control over the assets contributed" and their appraisal did not include the identifying number of the appraiser. Therefore, this deduction is not allowable.

**Facts:**   *(Document the relevant facts.)*

TPP is a Certified Public Accountant and graduated from the University of Kansas with a Bachelor's degree in accounting and a Master's in Business. He has over 30 years of hospitality development, management and financial expertise. His background includes specializing in the development, operation and management of Marriott and Hilton branded select service hotels.

Schedule_A-Contributions_Lead_Sheet          Workpaper #          -1.1
Rev. 04/2010

| Taxpayer Name: | KEEFER, KEVIN & PATRICIA | Examiner: | McLemore, Danielle |
|---|---|---|---|
| TIN: | ▮▮▮▮▮▮▮ | | |
| Tax Form: | 1040 | Date: | 08/10/2018, 05/20/2019, 05/21/2019, 06/05/2019, 07/02/2019, 07/16/2019 |
| Tax Year (s): | 201512 | | |

## Contributions

Taxpayers filed their 2015 tax return which included a noncash charitable contribution deduction in the amount of $1,257,000 for the donation of 4.000% limited partnership interest in Burbank HHG Hotel, LP to The PI Foundation, Inc a 50% organization. Per the Form 8283 the date of contribution was June 18, 2015.

Prior to the contribution the Burbank HHG Associates, LP had a 25% interest in Burbank HHG Hotel LP and Keefer Holdings LLC and Huntington Investors Group LLC makeup 99% and 1% respectively. The Kevin and Pat Keefer Trust had a 100% share of Keefer Holdings, LLC while Keefer Holdings, LLC and Kevin Keefer makeup 99.99% and .01% of Huntington Investors Group LLC Huntington Investors Group LLC respectively.

Review of the Burbank HHG Hotel, LP partnership agreements show that the first amendment to the second amended and restated agreement of Burbank HHG Hotel, LP dated May 27, 2015 limited partners may transfer their percentage of interest to a charitable organization. In May 2015 Burbank HHG Associates LP transferred it's 4% limited interest in Burbank HHG Hotel, LP to Keefer Holdings LLC. Keefer Holdings LLC transferred/assigned its 4% interest to the Kevin and Pat Keefer Trust on May 29, 2015. Then on the same day the Kevin and Pat Keefer Trust turned around and transferred/assigned that 4% limited partnership interest to Kevin Keefer. Mr. Keefer transferred/assigned the 4% limited partnership interest to The PI Foundation on June 18, 2015. Examiner was provided with a signed but not accurately dated consent from Brent Andrus, President and sole general partner of Burbank HHG Hotel, LP consenting and agreeing to the transfer of assigned interest to Keefer Holdings, LLC, the Kevin and Pat Keefer Trust, and Kevin M, Keefer.

A deduction of donated property valued at more than $500,000 must include a qualified appraisal made by a qualified appraiser and Form 8283 attached to the tax. The return as filed did include Form 8283 and it was signed by both the appraiser and receiving institution. Taxpayers filed return included an attached appraisal report as prepared by Katzen, Marshall & Associates, Inc and dated February 19, 2016.  Per the appraisal the date of contribution and appraisal date are June 18, 2015. However, Examiner made the determination that the appraisal was not qualified because it did not include the employer identification number (EIN) or Social Security number of the qualified appraiser or the person who employs or engages the qualified appraiser. An appraisal that does not contain each of the eleven provisions as described in Treas. Reg. § 1.170A-13(c)(3)(ii)(E) is not a qualified appraisal.

The Taxpayer provided contemporaneous written acknowledgment (CWA) from the donee organization showing the donee organization name, date of receipt, a description of the property the Taxpayer transferred to the donee, and a statement that the donee organization did not provide any goods or services in consideration for the donation. However, the donee The PI Foundation, Inc. is a Donor Advised Fund (DAF) located in Salt Lake City, UT and the CWA did

| Taxpayer Name: | KEEFER, KEVIN & PATRICIA | Examiner: | McLemore, Danielle |
|---|---|---|---|
| TIN: | | | |
| Tax Form: | 1040 | Date: | 08/10/2018, 05/20/2019, 05/21/2019, 06/05/2019, 07/02/2019, 07/16/2019 |
| Tax Year (s): | 201512 | | |

## Contributions

not state that the organization had "exclusive legal control over the assets contributed".

At the end of the examination Examiner was provided with the DAF agreement signed and dated by the donor on June 8, 2015 stating that gift was for the purpose of establishing the Keefer Donor Advised Fund. This fund was to be administered by the Foundation and the Board of Directors of the Foundation would have full authority and discretion as to investment and reinvestment of the assets. However, the provided statement isn't a CWA from the donee organization and still doesn't state that the DAF sponsor "has exclusive legal control over the assets contributed". IRC Sec 170(f)(18)(B) says no income tax deduction for gift to DAF unless CWA states "exclusive legal control".

Valuation per the appraisal gives the gift a Fair Market Value (FMV) of $1,257,000 at the time of contribution. Taxpayer's computed basis in the property is $548,033.  Although the contribution involves an outright gift with no cash received, the Taxpayer's $870,195 share of the partnership liabilities on the gifted partnership interest is treated as an amount realized on sale and triggers application of the bargain sale rules. The Taxpayer's basis was prorated between the portion deemed contributed and the portion deemed sold. The Taxpayer recognized, $646,005 as gain, the difference between the amount realized and the basis prorated to the deemed sale.

**Law:**  *(Tax law, regulations, court cases and other authorities. If unagreed, include argument.)*

§170. Charitable, etc., contributions and gifts
(f) Disallowance of deduction in certain cases and special rules
(1) In general
No deduction shall be allowed under this section for a contribution to or for the use of an organization or trust described in section 508(d) or 4948(c)(4) subject to the conditions specified in such sections.

(2) Contributions of property placed in trust
(A) Remainder interest
In the case of property transferred in trust, no deduction shall be allowed under this section for the value of a contribution of a remainder interest unless the trust is a charitable remainder annuity trust or a charitable remainder unitrust (described in section 664), or a pooled income fund (described in section 642(c)(5)).

(B) Income interests, etc.
No deduction shall be allowed under this section for the value of any interest in property (other than a remainder interest) transferred in trust unless the interest is in the form of a guaranteed annuity or the trust instrument specifies that the interest is a fixed percentage distributed yearly

| Form **4549** | Department of the Treasury-Internal Revenue Service | | |
|---|---|---|---|
| (January 2019) | **Report of Income Tax Examination Changes** | | |

| Name and address of taxpayer | Taxpayer identification number | | Return form number |
|---|---|---|---|
| KEVIN & PATRICIA KEEFER<br>4723 BYRON CIRCLE<br>IRVING  TX  75038-6319 | | | 1040 |

| | Person with whom examination changes were discussed | Name and title<br>Kenneth M. Horwitz |
|---|---|---|

| **1.  Adjustments to income** | Period Ended<br>12/31/2015 | Period Ended | Period Ended |
|---|---|---|---|
| a.  Itemized Deductions | 1,257,000.00 | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| **2.  Total adjustments** | 1,257,000.00 | | |
| 3.  Taxable income per return or as previously adjusted | | | |
| 4.  **Corrected taxable income**          Tax method | SCHEDULE D | | |
|                   Filing status | Joint | | |
| 5.  **Tax** | | | |
| 6.  **Additional taxes/Alternative minimum tax** | | | |
| 7.  Corrected tax liability | | | |
| 8.  **Less**     a.  Foreign Tax Credit | | | |
|    **credits**   b.  General Business Credit | | | |
|              c | | | |
|              d | | | |
| 9   **Balance** *(line 7 less lines 8a through 8d)* | | | |
| 10.  Plus    a.  Self Employment Tax | | | |
|    other    b.  Net Investment Income Tax | | | |
|    taxes    c.  Additional Medicare Tax | | | |
|              d. | | | |
| 11.  Total corrected tax liability *(line 9 plus lines 10a through 10d)* | | | |
| 12.  Total tax shown on return or as previously adjusted | | | |
| 13.  Adjustments to:  a. | | | |
|                         b. | | | |
|                         c. | | | |
| 14.  Deficiency-Increase in tax or *(overassessment-decrease in tax)* *(line 11 less line 12 adjusted by lines 13a through 13c)* | 423,304.00 | | |
| 15.  Adjustments to prepayment credits - increase *(decrease)* | | | |
| 16.  **Balance due or** *(overpayment)* - *(line 14 adjusted by line 15)* *(excluding interest and penalties)* | 423,304.00 | | |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you underreport your **interest**, dividend, or **patronage dividend** income you earned and do **not pay** the required tax. The IRS may order backup withholding (withholding of a percentage of your **dividend and/or interest payments**) if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

| Name of taxpayer | | Taxpayer identification number | Return form number |
|---|---|---|---|
| KEVIN & PATRICIA KEEFER | | ███████████ | 1040 |

| 17. Penalties, additions to tax, and additional amounts -- IRC sections | Period Ended 12/31/2015 | Period Ended | Period Ended |
|---|---|---|---|
| a. Accuracy-IRC 6662 | 84,660.80 | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| 18. Total penalties, additions to tax, and additional amounts | 84,660.80 | | |
| 19. Summary of taxes, penalties and interest | | | |
| a. Balance due or *(overpayment)* taxes - *(line 16, page 1)* | 423,304.00 | | |
| b. Penalties and additions *(line 18)* - computed to 07/29/2019 | 84,660.80 | | |
| c. Interest* *(IRC § 6601)* - estimated and computed to 08/28/2019 | 82,483.44 | | |
| d. Amount due or *(refund)* - *(sum of lines a, b, and c)* | 590,448.24 | | |

*Interest, as provided by law, will be charged on any unpaid amount until it is paid in full.

Other information

| Examiner's name | Employee ID | Office |
|---|---|---|
| Danielle McLemore | 1000229484 | SBSE/Exam/Gulf States Area/Dallas |

| Examiner's signature | Date |
|---|---|
| | 07/29/2019 |

Consent to Assessment and Collection- I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law. It is understood that this report is subject to acceptance by the Area Director, Area Manager, Specialty Tax Program Chief, or Director of Field Operations.

**Note: If a joint return was filed, BOTH taxpayers must sign**

| Signature of taxpayer | Date | Signature of taxpayer | Date |
|---|---|---|---|
| By | | Title | Date |

| Catalog Number 23105A | www.irs.gov | Form **4549** (Rev. 1-2019) |
|---|---|---|

**IRS** Internal Revenue Service
**Small Business and Self-Employed**
55 NORTH ROBINSON AVENUE
MAIL STOP 4020
OKLAHOMA CITY  OK  73102

CERTIFIED MAIL

KEVIN & PATRICIA KEEFER
4723 BYRON CIRCLE
IRVING  TX  75038-6319

Date:

Taxpayer ID number:
███████████

Form:
1040

Person to contact:
VICKI R. MAILLARD

Employee ID number:
███████████

Contact telephone number:
(405) 982-6678

Contact fax number:
(405) 898-6546

Last day to file petition with US tax court:

## Notice of Deficiency

| | |
|---|---|
| Tax Year Ended: | December 31, 2015 |
| Deficiency: | |
| Increase in tax | $423,304.00 |
| Penalties or Additions to Tax | |
| IRC 6662(a) | $84,660.80 |

Dear KEVIN & PATRICIA KEEFER:

**Why we are sending you this letter**

We determined that you owe additional tax or other amounts, or both, for the tax years above. This letter is your **Notice of Deficiency** as we're required by law to send you. The enclosed Form 4549-A, Income Tax Examination Changes (Unagreed and Excepted Agreed), or Form 5278, Statement - Income Tax Changes, shows how we figured the deficiency.

**If you agree with the Notice of Deficiency**

If you agree with our determination, sign the enclosed Form 4089-B, Notice of Deficiency  - Waiver, and return it to us at the address on the top of the first page of this letter. Sending this now can help limit the accumulation of interest.

**If you disagree with the Notice of Deficiency**

If you want to contest our final determination, you have 90 days from the date of this letter (150 days if addressed to you outside of the United States) to file a petition with the United States Tax Court.

Letter 531 (Rev. 1-2019)
Catalog Number 20223L



**Department of the Treasury
Internal Revenue Service
Small Business and Self-Employed**

iRS 55 NORTH ROBINSON AVENUE
MAIL STOP 4020
OKLAHOMA CITY  OK  73102

Date:
AUG 0 7 2019
Taxpayer ID number (last 4 digits):
7478
Taxpayer name:
KEVIN KEEFER
PATRICIA KEEFER
Form number:
1040
Years:
December 31, 2015

Kenneth M. Horwitz
14801 Quorum Drive
Suite 500
Dallas TX  75254-1449

Person to contact:
VICKI R. MAILLARD
Employee ID number:
06-68358
Contact telephone number:
(405) 982-6678
Contact fax number:
(405) 898-6546

Kenneth M. Horwitz:

We are sending the enclosed material under the provisions of your power of attorney or other authorization we have on file. For your convenience, we have listed the name of the taxpayer to whom this material relates in the heading above.

If you have any questions, please call the contact person at the telephone number shown in the heading of this letter.

Thank you for your cooperation.

Sincerely,

David H. Okuda
Territory Manager, West Technical Services

Enclosures:
☐ Letters
☐ Reports
☐ Copy of Determination Letter
☐ Other

**Letter 937 (Rev. 3-2017)**
Catalog Number 30760X
**12**

Page: 5

Continuation Sheet

| NAME:  KEVIN & PATRICIA KEEFER | TIN: ████ |
|---|---|

Interest on Deficiencies

Interest on Deficiencies will accrue from the due date of the return until paid.

Accuracy-related Penalty  IRC section 6662(a)

Since all or part of the underpayment of tax for the taxable year(s) is attributable to one or more of (1) negligence or disregard of rules or regulations, (2) any substantial understatement of income tax, or (3) any substantial valuation overstatement, an addition to the tax is charged as provided by section 6662(a) of the Internal Revenue Code.  The penalty is twenty (20) percent of the portion of the underpayment of tax attributable to each component of this penalty.  In addition, interest is computed on this penalty from the due date of the return (including any extensions).

Form **4549-A**
(January 2019)

Department of the Treasury-Internal Revenue Service

# Report of Income Tax Examination Changes
### (Unagreed and Excepted Agreed)

| Name and address of taxpayer | Taxpayer identification number | Return form number |
|---|---|---|
| KEVIN & PATRICIA KEEFER<br>4723 BYRON CIRCLE<br>IRVING TX 75038-6319 | | 1040 |
| | Person with whom examination changes were discussed. | Name and title<br>Kenneth M. Horwitz |

| | | Period Ended<br>12/31/2015 | Period Ended | Period Ended |
|---|---|---|---|---|
| **1.** | **Adjustments to income** | | | |
| | a. Itemized Deductions | 1,257,000.00 | | |
| | b. | | | |
| | c. | | | |
| | d. | | | |
| | e. | | | |
| | f. | | | |
| | g. | | | |
| | h. | | | |
| | i. | | | |
| | j. | | | |
| | k. | | | |
| | l. | | | |
| | m. | | | |
| | n. | | | |
| | o. | | | |
| | p. | | | |
| **2.** | **Total adjustments** | 1,257,000.00 | | |
| **3.** | Taxable income per return or as previously adjusted | | | |
| **4.** | **Corrected taxable income** | | | |
| | Tax method | | | |
| | Filing status | | | |
| **5.** | **Tax** | | | |
| **6.** | **Additional taxes/Alternative minimum tax** | | | |
| **7.** | Corrected tax liability | | | |
| **8.** Less credits | a. Foreign Tax Credit | | | |
| | b. General Business Credit | | | |
| | c. | | | |
| | d. | | | |
| **9.** | **Balance** (line 7 less lines 8a through 8d) | | | |
| **10.** Plus other taxes | a. Self Employment Tax | | | |
| | b. Net Investment Income Tax | | | |
| | c. Additional Medicare Tax | | | |
| | d. | | | |
| **11.** | Total corrected tax liability (line 9 plus lines 10a through 10d) | | | |
| **12.** | Total tax shown on return or as previously adjusted | | | |
| **13.** | Adjustments to: a. | | | |
| | b. | | | |
| | c. | | | |
| **14.** | Deficiency-Increase in tax or (overassessment-decrease in tax) (line 11 less line 12 adjusted by lines 13a through 13c) | 423,304.00 | | |
| **15.** | Adjustments to prepayment credits - increase (decrease) | | | |
| **16.** | Balance due or (overpayment) - (line 14 adjusted by line 15) (excluding interest and penalties) | 423,304.00 | | |

**14**

Form **4549-A**
(January 2019)

Department of the Treasury-Internal Revenue Service

# Report of Income Tax Examination Changes
## (Unagreed and Excepted Agreed)

| Name and address of taxpayer | Taxpayer identification number | Return form number |
|---|---|---|
| KEVIN & PATRICIA KEEFER<br>4723 BYRON CIRCLE<br>IRVING TX 75038-6319 | ▮▮▮▮▮ | 1040 |
| | Person with whom examination changes were discussed. | Name and title<br>Kenneth M. Horwitz |

| | | Period Ended<br>12/31/2015 | Period Ended | Period Ended |
|---|---|---|---|---|
| 1. | **Adjustments to income** | | | |
| a. | Itemized Deductions | 1,257,000.00 | | |
| b. | | | | |
| c. | | | | |
| d. | | | | |
| e. | | | | |
| f. | | | | |
| g. | | | | |
| h. | | | | |
| i. | | | | |
| j. | | | | |
| k. | | | | |
| l. | | | | |
| m. | | | | |
| n. | | | | |
| o. | | | | |
| p. | | | | |
| 2. | **Total adjustments** | 1,257,000.00 | | |
| 3. | Taxable income per return or as previously adjusted | ▮▮▮▮▮▮▮ | | |
| 4. | **Corrected taxable income**   Tax method   Filing status | ▮ | | |
| 5. | **Tax** | | | |
| 6. | **Additional taxes/Alternative minimum tax** | | | |
| 7. | Corrected tax liability | | | |
| 8. | **Less credits**   a. Foreign Tax Credit   b. General Business Credit   c.   d. | | | |
| 9. | **Balance** (line 7 less lines 8a through 8d) | | | |
| 10. | **Plus other taxes**   a. Self Employment Tax   b. Net Investment Income Tax   c. Additional Medicare Tax   d. | | | |
| 11. | Total corrected tax liability (line 9 plus lines 10a through 10d) | | | |
| 12. | Total tax shown on return or as previously adjusted | | | |
| 13. | Adjustments to:  a.   b.   c. | | | |
| 14. | Deficiency-Increase in tax or (overassessment-decrease in tax) (line 11 less line 12 adjusted by lines 13a through 13c) | 423,304.00 | | |
| 15. | Adjustments to prepayment credits - increase (decrease) | | | |
| 16. | **Balance due or (overpayment)** - (line 14 adjusted by line 15) (excluding interest and penalties) | 423,304.00 | | |

Keefer - 000492 20-11-10

**15**

| Name of taxpayer | Taxpayer identification number | Return form number |
|---|---|---|
| KEVIN & PATRICIA KEEFER | | 1040 |

| 17. Penalties, additions to tax, and additional amounts -- IRC sections | Period Ended 12/31/2015 | Period Ended | Period Ended |
|---|---|---|---|
| a. Accuracy-IRC 6662 | 84,660.80 | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| **18. Total penalties, additions to tax, and additional amounts** | 84,660.80 | | |

**19. Summary of taxes, penalties and interest**

| | | |
|---|---|---|
| a. Balance due or *(overpayment)* taxes - *(line 16, page 1)* | 423,304.00 | |
| b. Penalties and additions *(line 18)* - computed to | 84,660.80 | |
| c. Interest* *(IRC § 6601)* - estimated and computed to | 0.00 | |
| d. Amount due or *(refund)* - (sum of lines a, b, and c) | 507,964.80 | |

*Interest, as provided by law, will be charged on any unpaid amount until it is paid in full.

Other information

| Examiner's name | Employee ID | Office |
|---|---|---|
| | | |

| Examiner's signature | Date |
|---|---|
| | |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, **you should amend your state return** by filing the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the required tax. The IRS may order backup withholding (withholding of a percentage of your dividend and/or interest payments) if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

Keefer - 000493 20-11-10

**16**

Catalog Number 23110T                     www.irs.gov                     Form **4549-A** (Rev. 1-2019)

| Name of Taxpayer: | KEVIN & PATRICIA KEEFER | | |
|---|---|---|---|
| Identification Number: | | Total | Tax Period Ending: 12/31/2015 |

## Accuracy-Related Penalties under IRC 6662

**20 Percent Penalty -- Internal Revenue Code Section 6662(a)**

It has been determined that the underpayment of tax shown on line 5 below is attributable to one or more of the following:

    (1) Negligence or disregard of rules or regulations;
    (2) Substantial understatement of income tax;
    (3) Substantial valuation misstatement (overstatement);
    (4) Transaction lacking economic substance.

Therefore, an addition to tax is imposed as provided by Section 6662(a) of the Internal Revenue Code.

| | |
|---|---|
| 1. Total underpayment, excluding underpayment attributable to Section 6662A and/or Section 6676 penalty issues, if any | 423,304.00 |
| 2. Less: Underpayment attributable to non-penalty issues | 0.00 |
| 3. Less: Underpayment attributable to 40% Section 6662 penalty issues | 0.00 |
| 4. Less: Underpayment attributable to civil fraud penalty issues | 0.00 |
| 5. Underpayment to which Section 6662(a) applies (Line 1 less the sum of lines 2, 3, and 4) | 423,304.00 |
| 6. Applicable penalty rate | 20.00% |
| 7. Section 6662(a) accuracy-related penalty (Line 5 times line 6) | 84,660.80 |
| 8. Less: Previously assessed/previously agreed Section 6662(a) penalty | 0.00 |
| 9. Total section 6662(a) accuracy-related penalty (Line 7 less line 8) | 84,660.80 |

**40 Percent Penalty -- Internal Revenue Code Section 6662(h); 6662(i); 6662(j)**

It has been determined that the underpayment of tax shown on line 5 below is attributable to one or more of the following:

    (1) Gross valuation misstatement (overstatement);
    (2) Non-disclosed transaction lacking economic substance;
    (3) Undisclosed foreign financial assets.

Therefore, an addition to tax is imposed as provided by Section 6662(h); 6662(i); or 6662(j) of the Internal Revenue Code.

| | |
|---|---|
| 1. Total underpayment, excluding underpayment attributable to Section 6662A and/or Section 6676 penalty issues, if any | 423,304.00 |
| 2. Less: Underpayment attributable to non-penalty issues | 0.00 |
| 3. Less: Underpayment attributable to 20% Section 6662 penalty issues | 423,304.00 |
| 4. Less: Underpayment attributable to civil fraud penalty issues | 0.00 |
| 5. Underpayment to which 40% Section 6662 penalty applies (Line 1 less the sum of lines 2, 3, and 4) | 0.00 |
| 6. Applicable penalty rate | 40.00% |
| 7. 40% Section 6662 accuracy-related penalty (Line 5 times line 6) | 0.00 |
| 8. Less: Previously assessed/previously agreed 40% Section 6662 penalty | 0.00 |
| 9. Total 40% section 6662 accuracy-related penalty (Line 7 less line 8) | 0.00 |

Name of Taxpayer:   KEVIN & PATRICIA KEEFER                                08/06/2019
Identification Number                           Total                              20.20.00

<div align="center">2015  - SCHEDULE A - ITEMIZED DEDUCTIONS</div>

| | PER RETURN | PER EXAM | ADJUSTMENT |
|---|---|---|---|
| 1. Medical, dental and insurance premiums | | | |
| 2. 10.0% of adjusted gross income | | | |
| 3. Net medical and dental expenses | | | |
| 4. Taxes | | | |
| 5. Home interest expense | | | |
| 6. Qualified mortgage insurance premiums | | | |
| 7. Investment interest | | | |
| 8. Other interest expense | | | |
| 9. Total interest expense | | | |
| 10. Contributions | 1,408,762.00 | 151,762.00 | 1,257,000.00 |
| 11. Casualty and theft losses | | | |
| 12. Miscellaneous deductions | | | |
| 13. 2% of adjusted gross income | | | |
| 14. Excess miscellaneous deductions | | | |
| 15. Other miscellaneous deductions | | | |
| 16. Total itemized deductions (Sum of lines 3, 4, 9, 10, 11, 14, and 15 less any applicable limitation) | | | |



**ITEMIZED DEDUCTIONS WORKSHEET - PER EXAM**

A  Total of lines 3, 4, 9, 10, 11, 14, and 15 above

B  Total of lines 3, 7, and 11, (plus any gambling
   and casualty or theft losses on line 15 above)

C  Line A less line B

D  Multiply the amount on line C by 80%

E  Adjusted gross income

F  Itemized deduction limitation based on filing status

G  Line E less line F

H  Multiply the amount on line G by 3%

I  Enter the smaller of line D or line H

J  Total itemized deductions
   (Line A less line I, entered on
   line 16 per exam column above)



| Name of Taxpayer: | KEVIN & PATRICIA KEEFER | | 08/06/2019 |
|---|---|---|---|
| Identification Number | ███████ | Total | 20.20.00 |

2015 - **SCHEDULE A - ITEMIZED DEDUCTIONS**



|  | PER RETURN | PER EXAM | ADJUSTMENT |
|---|---|---|---|
| 1. Medical, dental and insurance premiums | | | |
| 2. 10.0% of adjusted gross income | | | |
| 3. Net medical and dental expenses | | | |
| 4. Taxes | | | |
| 5. Home interest expense | | | |
| 6. Qualified mortgage insurance premiums | | | |
| 7. Investment interest | | | |
| 8. Other interest expense | | | |
| 9. Total interest expense | | | |
| 10. Contributions | 1,408,762.00 | 151,762.00 | 1,257,000.00 |
| 11. Casualty and theft losses | 0.00 | 0.00 | |
| 12. Miscellaneous deductions | | | |
| 13. 2% of adjusted gross income | | | |
| 14. Excess miscellaneous deductions | | | |
| 15. Other miscellaneous deductions | | | |
| 16. Total itemized deductions (Sum of lines 3, 4, 9, 10, 11, 14, and 15 less any applicable limitation) | | | |

**ITEMIZED DEDUCTIONS WORKSHEET - PER EXAM**



A  Total of lines 3, 4, 9, 10, 11, 14, and 15 above

B  Total of lines 3, 7, and 11, (plus any gambling and casualty or theft losses on line 15 above)

C  Line A less line B

D  Multiply the amount on line C by 80%

E  Adjusted gross income

F  Itemized deduction limitation based on filing status

G  Line E less line F

H  Multiply the amount on line G by 3%

I  Enter the smaller of line D or line H

J  Total itemized deductions (Line A less line I, entered on line 16 per exam column above)

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># **Explanation of Items** | Schedule number or exhibit |
|---|---|---|

| Name of taxpayer<br>KEVIN & PATRICIA KEEFER | Tax Identification Number *(last 4 digits)*<br>7478 | Year/Period ended<br>2015 |
|---|---|---|

## Non-Cash Contributions

| | Tax Period | Per Return | Per Exam | Adjustment |
|---|---|---|---|---|
| | 2015 | $1,257,000.00 | $0.00 | $1,257,000.00 |

We have adjusted your Schedule A itemized deduction in the taxable year ending December 31, 2015 for "Gifts to Charity - Other than by cash or check" in the amount of $1,257,000 as it has not been established that you are entitled to deduct a charitable contribution in that amount, ==there was no acknowledgment from the donee organization showing the donor-advised fund "has exclusive legal control over the assets contributed", and the appraisal did not include the identifying number of the appraiser.== Accordingly, the deduction is not allowed and the Schedule A Itemized Deductions amount is reduced by the disallowed amount of $1,257,000. Please see the 2015 Schedule A Itemized Deductions scheduled enclosed in this report.

## Statutory-Alt Min Tax

K.

| | Tax Period | Per Return | Per Exam | Adjustment |
|---|---|---|---|---|
| | 2015 | ▓▓▓▓▓ | ▓▓▓▓▓ | ▓▓▓▓▓ |

You have an alternative minimum tax liability only if your tentative minimum tax exceeds your regular tax liability. Tentative minimum tax is computed by first calculating your alternative minimum taxable income, which equals your regular taxable income increased by any tax preference items for the taxable year, and increased or decreased by adjustment items for the taxable year. Alternative minimum taxable income is then reduced by an exemption amount:

($53,600 for Single/Head of Household
$83,400 for Married Filing Joint/Surviving Spouse; and
$41,700 for Married Filing Separately) which is subject to phase-out depending on the amount of your alternative minimum taxable income.

For taxable years after 1992, the remaining amount is subject to a 26 percent tax rate on the first $175,000 and 28 percent tax rate on any amount in excess of $175,000. A tentative minimum tax is then computed by reducing the amount determined in the preceding sentence by any allowable foreign tax credit. The alternative minimum tax liability is the amount by which tentative minimum tax exceeds regular tax liability.

K.

# GLAST, PHILLIPS & MURRAY

A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS

**Kenneth M. Horwitz**
KMH@GPM-LAW.COM
**(972) 419-8383**

14801 QUORUM DRIVE, SUITE 500
DALLAS, TEXAS 75254-1449
MAIN (972) 419-8300
FAX (972) 419-8329

WWW.GPM-LAW.COM

October 23, 2019

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
7019 1120 0002 3573 8942

Internal Revenue Service
Internal Revenue Service Center
Austin, TX  73301-0010

> Re:    Kevin and Patricia Keefer
>        SS█████████████
>        TYE: December 31, 2015

Dear Sirs:

Attached hereto is a Form 4089-B signed by the Taxpayers Mr. & Mrs. Kevin M. Keefer, together with a check in the amount of Five Hundred Seven Thousand Nine Hundred Sixty-Four Dollars and Eighty Cents ($907,964.80).  The check is being paid to comply with the amounts specified on a Notice of Deficiency-Waiver, also signed by each of the Taxpayers attached, in duplicate. With respect to the amount paid, the Taxpayers direct that the amount be allocated strictly to the Form 1040 for December 31, 2015, payment of Federal Income Tax and Penalties thereon only, and not to interest or to any amounts for any other tax year.

In addition to the actual check and the duplicate original copies of the Form 4089-B, originally signed by Kevin M. Keefer and Patricia S. Keefer, also attached is a copy of each of the check and the Form 4089-B.  Also enclosed is a stamped, self-addressed envelope to the undersigned, power of attorney.  Please stamp "Received" on the enclosed copies of the check and the Form 4089-B, and retu~~~~~~~~~~~~~~~~~~~~
authorizing the undersigned~~~~~~~~~~~~~~~~~~~~~~~~~~

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.c*

OFFICIAL US

Certified Mail Fee

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $_____
☐ Return Receipt (electronic)      $_____    Postmark
☐ Certified Mail Restricted Delivery $_____   Here
☐ Adult Signature Required          $_____
☐ Adult Signature Restricted Delivery $_____

Postage    $
$
Total Postage and Fees    $        566.08575

Sent To    Internal Revenue Service
Street and Internal Revenue Service Center
City, Austin, TX  73301-0010

PS Form 3800, April 2015  PSN 7530-02-000-5047    See Reverse for

7019 1120 0002 3573 8942

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Internal Revenue Service
   Internal Revenue Service Center
   Austin, TX  73301-0010

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 3972 8079 7462 46

2. Article Number *(Transfer from service label)*
7019 1120 0002 3573 8942    Keefer - 000533 20-11-10

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X_____    ☐ Agent
                            ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:   ☐ No

**1970 RECEIVED 1970**
OCT 2 8 2019
IRS AUSTIN, TEXAS

3. Service Type
☐ Adult Signature                    ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery ☐ Registered Mail™
☐ Certified Mail®                    ☐ Registered Mail Restricted
☐ Certified Mail Restricted Delivery   Delivery
☐ Collect on Delivery                ☐ Return Receipt for
☐ Collect on Delivery Restricted Delivery  Merchandise
☐ Insured Mail                       ☐ Signature Confirmation™
☐ Insured Mail Restricted Delivery   ☐ Signature Confirmation
   (over $500)                          Restricted Delivery

Domestic Return Receipt

566.08575.205   Keefer

### GLAST, PHILLIPS & MURRAY
A PROFESSIONAL CORPORATION
#### ATTORNEYS & COUNSELORS

Kenneth M. Horwitz
KMH@GPM-LAW.COM
(972) 419-8383

14801 QUORUM DRIVE, SUITE 500
DALLAS, TEXAS 75254-1449
MAIN (972) 419-8300
FAX (972) 419-8329

WWW.GPM-LAW.COM

October 23, 2019

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
7019 1120 0002 3573 8942

Internal Revenue Service
Internal Revenue Service Center
Austin, TX  73301-0010

Re:    Kevin and Patricia Keefer
SS: ███████
TYE: December 31, 2015

Dear Sirs:

Attached hereto is a Form 4089-B signed by the Taxpayers Mr. & Mrs. Kevin M. Keefer, together with a check in the amount of Five Hundred Seven Thousand Nine Hundred Sixty-Four Dollars and Eighty Cents ($907,964.80).  The check is being paid to comply with the amounts specified on a Notice of Deficiency-Waiver, also signed by each of the Taxpayers attached, in duplicate. With respect to the amount paid, the Taxpayers direct that the amount be allocated strictly to the Form 1040 for December 31, 2015, payment of Federal Income Tax and Penalties thereon only, and not to interest or to any amounts for any other tax year.

In addition to the actual check and the duplicate original copies of the Form 4089-B, originally signed by Kevin M. Keefer and Patricia S. Keefer, also attached is a copy of each of the check and the Form 4089-B.  Also enclosed is a stamped, self-addressed envelope to the undersigned, power of attorney.  Please stamp "Received" on the enclosed copies of the check and the Form 4089-B, and return them to the undersigned.  Attached hereto is a power of attorney, authorizing the undersigned to represent the Taxpayers in this matter.

Very truly yours,

GLAST, PHILLIPS & MURRAY, P.C.

Kenneth M. Horwitz

KMH/kh
Attachment
7371121

**KEVIN M. KEEFER**
**PATRICIA S. KEEFER**
4723 BYRON CIR.   PH. 972-719-9868
IRVING, TX  75038

2161

32-75/1110
720

10/18/19
DATE

Pay to the
Order of  *United States Treasury*                    $ 507964.88/100

*Five hundred seven thousand nine hundred sixtyfour* 88/100 DOLLARS

Comerica Bank
www.comerica.com

Platinum Circle

For *Form 1040 12/31/2015  Payment of Federal Income Tax and Penalties only Not interest*

⑆111000753⑆                    2161

| Form **4089-B** (Rev. October 1999) | Department of the Treasury — Internal Revenue Service  **Notice of Deficiency-Waiver** | Symbols  SE:S:E:FE:TS:W:G28 |
|---|---|---|

| Name and address of taxpayer(s)  KEVIN & PATRICIA KEEFER  4723 BYRON CIRCLE  IRVING  TX  75038-6319 | Social Security or Employer Identification Number  ██████████ |
|---|---|

| Kind of tax  Cat.  Income  For  Oct. | ☑ Copy to authorized representative  Kenneth M. Horwitz  14801 Quorum Drive  Suite 500  Dallas, TX  75254-1449 |
|---|---|

**DEFICIENCY — Increase in Tax and Penalties**

| Tax Year Ended: | December 31, 2015 |
|---|---|
| Deficiency: Increase in tax | 423,304.00 |
| Penalties | |
| IRC 6662 20% | 84,660.80 |

*Acknowledgement of Receipt Only*

960   RECEIVED   960

OCT 2 8 2019

IRS-AUSTIN, TEXAS

**See the attached explanation for the above deficiencies**

I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above, plus any interest provided by law.

| Your Signature | ➤ _(signature)_ | 10/18/19  *(Date signed)* |
|---|---|---|
| Spouse's Signature  (If A Joint Return  Was Filed) | ➤ _Patricia Keefer_ | 10/18/19  *(Date signed)* |
| Taxpayer's  Representative  Sign Here | ➤ | *(Date signed)* |
| Corporate Name | ➤ | |
| Corporate Officers  Sign Here | ➤ _(Signature)_     _(Title)_ | *(Date signed)* |
| | ➤ _(Signature)_     _(Title)_ | *(Date signed)* |

If you agree, please sign one copy and return it, keep the other copy for your records.     **24**

| Cat. No. 29000E | www.irs.gov | Form **4089-B** (10-1999) |
|---|---|---|





7019 1120 0002 3574 5551

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
- ☐ Return Receipt (hardcopy) $
- ☐ Return Receipt (electronic) $
- ☐ Certified Mail Restricted Delivery $
- ☐ Adult Signature Required $
- ☐ Adult Signature Restricted Delivery $

Postmark Here

Department of the Treasury
Internal Revenue Service
Austin, TX 73301-0052

City, State, ZIP+4®

566.08575.200

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Department of the Treasury
Internal Revenue Service
Austin, TX 73301-0052

9590 9402 3972 8079 7454 23

2. Article Number *(Transfer from service label)*

7019 1120 0002 3574 5551

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1970 RECEIVED 1970

NOV 12 2019

IRS-AUSTIN,TEXAS

3. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

Form **1040X**
(Rev. January 2016)

Department of the Treasury - Internal Revenue Service

# Amended U.S. Individual Income Tax Return

▶ Information about Form 1040X and its separate instructions is at *www.irs.gov/form1040x*

OMB No. 1545-0074

This return is for calendar year  [X] 2015  [ ] 2014  [ ] 2013  [ ] 2012

Other year. Enter one: calendar year _____ or fiscal year (month and year ended): _____

| Your first name and initial | Last name | Your social security number |
|---|---|---|
| KEVIN | KEEFER | |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| PATRICIA | KEEFER | |

Current home address (number and street). If you have a P.O. box, see instructions.  Apt. no.  Your phone number
4723 BYRON CIRCLE

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below (see instructions).
IRVING, TX  75038

| Foreign country name | Foreign province/state/county | Foreign postal code |
|---|---|---|

**Amended return filing status.** You must check one box even if you are not changing your filing status. **Caution:** In general, you cannot change your filing status from joint to separate returns after the due date.

[ ] Single
[X] Married filing jointly
[ ] Married filing separately

[ ] Head of household (If the qualifying person is a child but not your dependent, see instructions.)
[ ] Qualifying widow(er)

**Full-year coverage.**
If all members of your household have full-year minimal essential health care coverage, check "Yes." Otherwise, check "No." (See instr.)
[X] Yes    [ ] No

| Use Part III on page 2 to explain any changes | | **A. Original amount** or as previously adjusted (see instructions) | **B. Net change –** amount of increase or (decrease) · explain in Part III | **C. Correct amount** |
|---|---|---|---|---|
| **Income and Deductions** | | | | |
| 1 Adjusted gross income. If net operating loss (NOL) carryback is included, check here ▶ [ ] | 1 | | | |
| 2 Itemized deductions or standard deduction | 2 | | 1,257,000. | |
| 3 Subtract line 2 from line 1 | 3 | | | |
| 4 Exemptions. If changing, complete Part I on page 2 and enter the amount from line 29 | 4 | | | |
| 5 Taxable income. Subtract line 4 from line 3 | 5 | | | |
| **Tax Liability** | | | | |
| 6 Tax. Enter method(s) used to figure tax:  SCH D; F6251 | 6 | | | |
| 7 Credits. If general business credit carryback is included, check here ▶ [ ] | 7 | | | |
| 8 Subtract line 7 from line 6. If the result is zero or less, enter -0- | 8 | | | |
| 9 Health care: individual responsibility (see instructions) | 9 | | | |
| 10 Other taxes | 10 | | | |
| 11 Total tax. Add lines 8, 9, and 10 | 11 | | | |
| **Payments** | | | | |
| 12 Federal income tax withheld and excess social security and tier 1 RRTA tax withheld (If changing, see instructions.) | 12 | | | |
| 13 Estimated tax payments, including amount applied from prior year's return | 13 | | | |
| 14 Earned income credit (EIC) | 14 | | | |
| 15 Refundable credits from: [ ] Schedule 8812 Form(s) [ ] 2439 [ ] 4136 [ ] 8801 [ ] 8863 [ ] 8885 [ ] 8962 or [ ] other (specify): | 15 | | | |
| 16 Total amount paid with request for extension of time to file, tax paid with original return, and additional tax paid after return was filed | 16 | | | |
| 17 Total payments. Add lines 12 through 16 | 17 | | | |
| **Refund or Amount You Owe** | | | | |
| 18 Overpayment, if any, as shown on original return or as previously adjusted by the IRS | 18 | | | |
| 19 Subtract line 18 from line 17 (If less than zero, see instructions.) | 19 | | | |
| 20 Amount you owe. If line 11, column C, is more than line 19, enter the difference | 20 | | | |
| 21 If line 11, column C, is less than line 19, enter the difference. This is the amount **overpaid** on this return | 21 | | | 423,304. |
| 22 Amount of line 21 you want **refunded** to you | 22 | | | 423,304. |
| 23 Amount of line 21 you want applied to your (enter year): _____ estimated tax | 23 | | | |

Complete and sign this form on Page 2.

Form 1040X (Rev. 1-2016)  KEVIN & PATRICIA KEEFER                                                    Page 2

**Part I** | Exemptions

Complete this part **only** if you are increasing or decreasing the number of exemptions (personal and dependents) claimed on line 6d of the return you are amending.

| See *Form 1040 or Form 1040A instructions and Form 1040X instructions.* | | **A. Original number of exemptions or amount reported or as previously adjusted** | **B. Net change** | **C. Correct number or amount** |
|---|---|---|---|---|
| 24 Yourself and spouse. **Caution:** If someone can claim you as a dependent, you cannot claim an exemption for yourself | 24 | | | |
| 25 Your dependent children who lived with you | 25 | | | |
| 26 Your dependent children who did not live with you due to divorce or separation | 26 | | | |
| 27 Other dependents | 27 | | | |
| 28 Total number of exemptions. Add lines 24 through 27 | 28 | | | |
| 29 Multiply the number of exemptions claimed on line 28 by the exemption amount shown in the instructions for line 29 for the year you are amending. Enter the result here and on line 4 on page 1 of this form | 29 | | | |

30 List **ALL** dependents (children and others) claimed on this amended return. If more than 4 dependents, see instructions.

| (a) First name                Last name | (b) Dependent's social security number | (c) Dependent's relationship to you | (d) Check box if qualifying child for child tax credit |
|---|---|---|---|
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |

**Part II** | Presidential Election Campaign Fund

Checking below will not increase your tax or reduce your refund.

☐ Check here if you did not previously want $3 to go to the fund, but now do.

☐ Check here if this is a joint return and your spouse did not previously want $3 to go to the fund, but now does.

**Part III** | **Explanation of changes.** In the space provided below, tell us why you are filing Form 1040X.

▶ Attach any supporting documents and new or changed forms and schedules.

SEE ATTACHED STATEMENT

**Sign Here**

**Remember to keep a copy of this form for your records.**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information about which the preparer has any knowledge.

| ▶ *signature*                    Your signature | ✗ 11/6/2019 Date | ▶ *signature* Spouse's signature. If a joint return, **both** must sign. | ✗ 11/6/2019 Date |
|---|---|---|---|

**Paid Preparer Use Only**

| ▶ *signature*                Preparer's signature | 11/1/19 Date | GORELICK & USLANER, CPAS, A PRO Firm's name (or yours if self-employed) |
|---|---|---|

BRANT C. WEIGAND
Print/type preparer's name

☐ Check if self-employed

15260 VENTURA BLVD., STE 1705
SHERMAN OAKS, CA 91403
Firm's address and ZIP code

(818)786-5656
Phone number          EIN

PTIN

510702
01-27-16  For forms and publications, visit IRS.gov.                                    Form 1040X (Rev. 1-2016)

Insert to Form 1040X

Kevin Keefer and Patricia Keefer

This Claim for Refund is being filed because of a disallowance by the IRS of a deduction on their 2015 Form 1040 as correctly and timely filed by the Taxpayers. The disallowed deduction was for a contribution in the year 2015 to the Pi Foundation, Inc. or Pi Fund. An Internal Revenue Agent conducted the exam and a Notice of Deficiency was issued that set forth the bases upon which the Taxpayers paid the asserted deficiency (tax and penalty asserted). The Taxpayers dispute the bases for the Notice of Deficiency and are filing this Claim for Refund for reasons as follows:

1.      The IRS incorrectly asserted Taxpayers failed to obtain a statement from the donee charity, the Pi Foundation, Inc. a Utah non-profit corporation, an entity described in Section 501(c)(3) with appropriate qualification from the Internal Revenue Service, because it was a gift to a donor advised fund and that the Taxpayers failed to obtain the appropriate documentation as required in Section 170(f)(18) of the Internal Revenue Code of 1986, as amended (the "Code"); and

2.      That the appraisal submitted by the Taxpayers failed to meet the requirements of substantiation of a non-cash charitable contribution of more than $500,000.00 as set forth in Section 1.170 A-16(e) because the appraisal allegedly failed to meet the qualified appraisal "rules" as set forth in Section 1.170A-13(c)(3)(ii)(E) of the Regulations, or that Section 170(f)(11) of the Code did not provide an exception to those rules.

In fact, the Pi Foundation did send a qualifying confirmation contemporaneous with the donation on June 8, 2015, as supplied by the Taxpayer to the Internal Revenue Agent, that meets the requirements as set forth in Section 170(f)(18) of the Code. In addition, the Taxpayers either met the requirements for a qualified appraisal, or fell within the exception of Section 170(f)(11) of the Code dealing with the alleged omission of an employer identification number, including reasonable cause regarding the immateriality of that omission in the application of whether the appraisal was a "qualified appraisal". See *Crimi v. Comm.*, TC Memo 2013-51.

Finally, even if the Internal Revenue Agent was correct regarding her technical position that, for whatever reason, the deduction should be disallowed, the tax paid by the Taxpayers plus penalties, in the total amount of $507,964.80 is excessive because the Internal Revenue Service completely ignored the provisions of Section 1011(b) of the Code that provides that only in the event a deduction is allowable under Section 170 of the Code should adjusted basis be allocated as set forth therein. In such instance the additional tax should have been just $318,106.00, which, with the consequent reduced penalty would be more than $125,000.00 less than that asserted by the IRS agent. The total excessive amount was carried to the Notice of Deficiency and paid by the Taxpayers. See proforma calculations attached (Exhibit A). The failure of the Internal Revenue Service to correct its calculation results in improperly applying the basis rules and thereby reducing the recognized gain in connection with the asserted failure of the charitable gift is totally and egregiously improper; it produces a result  (that the Taxpayer actually paid) in excess of the maximum proper amount that should have been asserted  or payable even if the Taxpayers were incorrect (which they were not) as to the deductibility of the gift to the charity.

7364260

profx engagement 86150                    Exhibit A

KEVIN KEEFER
INCOME TAXES
2015

| | RETURN AS FILED | RETURN EXCLUDING PI FOUNDATION CONTRIBUTION | CHANGE |
|---|---|---|---|
| TOTAL INCOME FROM ORIGINAL RETURN | ███████████ | | |
| LESS BARGAIN SALE ELEMENT ON CONTRIBUTION | | (646,005) | |
| ADD NEGATIVE CAPITAL TRANSFERRED ON GIFT | ███████████ | | |
| TOTAL INCOME | ███████████ | | (420,995) |
| | | | |
| S/E TAX | ████████ | | |
| AGI | ████████ | | (420,995) |
| | | | |
| ITEMIZED DEDUCTIONS | ████████ | | |
| LESS CONTRIBUTION | | (1,270,000) | |
| REDUCTION IN PHASE OUT DUE TO REDUCED AGI | ████████ | | |
| TOTAL ITEMIZED DEDUCTIONS | ████████ | | (1,244,370) |
| | | | |
| TAXABLE INCOME | ██████████ | | |
| | | | |
| TAX | ████████ | | |
| CREDITS | | | |
| S/E TAX | | | |
| OBAMACARE TAX | | | |
| TOTAL TAX | ████████ | | 318,106 |



Redaction to protect confidential, non-material financial

2015 FORM 1040X
KEVIN AND PATRICIA KEEFER

THE INCREASE OF $1,257,000 TO LINE 2 OF FORM 1040X IN THE
IS THE DEDUCTION CLAIMED FOR THE CONTRIBUTION
DISALLOWED BY THE IRS.

THE FOLLOWING ATTACHMENTS ARE SUBMITTED IN SUPPORT
OF THE DEDUCTION:

1.      COPY OF 2015 FORM 1040 AS AMENDED WHICH AMENDMENT IS ESSENTIALLY THE SAME AS
ORIGINALLY FILED TAX RETURN FILED BY THE TAXPAYERS (ALBEIT NOT INCLUDING MATERIALS AND DISCLOSURES
UNRELATED TO  AND NOT AFFECTED BY THE IRS AUDIT ADJUSTMENTS), WHICH FORM 1040 (AND ATTACHMENTS
THERETO INCLUDE DISCLOSURES THAT SET FORTH THE CORRECT AMOUNT AS SHOWN ON COLUMN C (CORRECT
AMOUNT) ON PAGE 1 OF THIS FORM 1040X SO THAT A SECOND IDENTICAL FORM 1040 WITH CORRECT AMOUNTS
WOULD BE DUPLICATION AND UNNECESARY.

2.      SIGNED FORM 8283

3.      CALCULATION OF CAPITAL GAIN TO RECOGNIZE UNDER IRS 1011(B)

4.      CONTEMPORANEOUS WRITTEN ACKNOWLEDGEMENT FROM PI FOUNDATION, COMPLIANT WITH
SECTION 170(f)(18) OF THE INTERNAL REVENUE CODE ("CODE")

5.      QUALIFIED APPRAISAL, COMPLIANT WITH THE PROVISION OF SECTION 170(f)(11)(A) OF THE CODE

6.      PAGES FROM THE ORIGINAL FORM 1040 MODIFIED TO SHOW AMOUNTS AS AFFECTED BY THE IRS
AUDIT (LABELED "AS CHANGED BY IRS AUDIT – DO NOT PROCESS")

7.      IRS  FORM 4549-A – REPORT OF INCOME TAX EXAMINATION CHANGES FOR 2015

Form **1040** EXTENSION GRANTED TO 10/17 **2015** U.S. Individual Income Tax Return · OMB No. 1545-0074 · IRS Use Only - Do not write or staple in this space.

For the year Jan. 1-Dec. 31, 2015, or other tax year beginning _____ , 2015, ending _____ , 20 ___ · See separate instructions.

| Your first name and initial | Last name | Your social security number |
|---|---|---|
| KEVIN | KEEFER | |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| PATRICIA | KEEFER | |

Home address (number and street). If you have a P.O. box, see instructions. — **4723 BYRON CIRCLE** — Apt. no.

▲ Make sure the SSN(s) above and on line 6c are correct.

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below. — **IRVING, TX 75038**

Foreign country name _____ Foreign province/state/county _____ Foreign postal code _____

Presidential Election Campaign
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund. ☐ You ☐ Spouse

**Filing Status**

Check only one box.

1 ☐ Single
2 ☒ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, **do not** check box 6a
b ☒ Spouse

| Boxes checked on 6a and 6b | 2 |
|---|---|

c Dependents:

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if child under age 17 qualifying for child tax credit |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

No. of children on 6c who:
● lived with you
● did not live with you due to divorce or separation (see instructions)

Dependents on 6c not entered above

If more than four dependents, see instructions and check here ▶ ☐

Add numbers on lines above ▶ | 2

d Total number of exemptions claimed ............

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | STMT 7 | 7 |
| 8a | Taxable interest. Attach Schedule B if required | | 8a |
| b | Tax-exempt interest. Do not include on line 8a | 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required | | 9a |
| b | Qualified dividends | 9b | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes | STMT 2   STMT 4 | 10 |
| 11 | Alimony received | | 11 |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | | 12 |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | | 13 |
| 14 | Other gains or (losses). Attach Form 4797 | | 14 |
| 15a | IRA distributions | 15a | b Taxable amount | 15b |
| 16a | Pensions and annuities | 16a | b Taxable amount | 16b |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | | 17 |
| 18 | Farm income or (loss). Attach Schedule F | | 18 |
| 19 | Unemployment compensation | | 19 |
| 20a | Social security benefits | 20a | b Taxable amount | 20b |
| 21 | Other income. List type and amount | | 21 |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | | 22 |

STMT 6

**Adjusted Gross Income**

| | | | |
|---|---|---|---|
| 23 | Educator expenses | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | |
| 27 | Deductible part of self-employment tax. Attach Schedule SE | 27 | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 | |
| 29 | Self-employed health insurance deduction | 29 | |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid   b Recipient's SSN ▶ | 31a | |
| 32 | IRA deduction | 32 | |
| 33 | Student loan interest deduction | 33 | |
| 34 | Tuition and fees. Attach Form 8917 | 34 | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | |
| 36 | Add lines 23 through 35 | | 36 |
| 37 | Subtract line 36 from line 22. This is your **adjusted gross income** ▶ | | 37 |

510001 12-30-15

LHA  For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.

Form **1040** (2015)

**AS AMENDED**

Keefer-000708 20-11-10

**32**

Form 1040 (2015)    KEVIN & PATRICIA KEEFER    Page 2

| **Tax and Credits** | 38 | Amount from line 37 (adjusted gross income) | | 38 | |
|---|---|---|---|---|---|
| Standard Deduction for - | 39a | Check if: ☐ You were born before January 2, 1951, ☐ Blind. ☐ Spouse was born before January 2, 1951, ☐ Blind. } Total boxes checked ▶ 39a | | | |
| ● People who check any box on line 39a or 39b or who can be claimed as a dependent, see instructions. | b | If your spouse itemizes on a separate return or you were a dual-status alien, check here ▶ 39b ☐ | | | |
| | 40 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | | 40 | |
| | 41 | Subtract line 40 from line 38 | | 41 | |
| | 42 | Exemptions. If line 38 is $154,950 or less, multiply $4,000 by the number on line 6d. Otherwise, see inst. | | 42 | |
| | 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | | 43 | |
| | 44 | Tax. Check if any from: a ☐ Form(s) 8814 b ☐ Form 4972 c ☐ _____ | | 44 | |
| ● All others: Single or Married filing separately, $6,300 | 45 | Alternative minimum tax. Attach Form 6251 | | 45 | |
| | 46 | Excess advance premium tax credit repayment. Attach Form 8962 | | 46 | |
| | 47 | Add lines 44, 45, and 46 ▶ | | 47 | |
| Married filing jointly or Qualifying widow(er), $12,600 | 48 | Foreign tax credit. Attach Form 1116 if required | 48 | 1,576. | |
| | 49 | Credit for child and dependent care expenses. Attach Form 2441 | 49 | | |
| Head of household, $9,250 | 50 | Education credits from Form 8863, line 19 | 50 | | |
| | 51 | Retirement savings contributions credit. Attach Form 8880 | 51 | | |
| | 52 | Child tax credit. Attach Schedule 8812, if required | 52 | | |
| | 53 | Residential energy credits. Attach Form 5695 | 53 | | |
| | 54 | Other credits from Form: a ☒ 3800 b ☐ 8801 c ☐ | 54 | 7,257. | |
| | 55 | Add lines 48 through 54. These are your total credits | | 55 | |
| | 56 | Subtract line 55 from line 47. If line 55 is more than line 47, enter -0- ▶ | | 56 | |
| **Other Taxes** | 57 | Self-employment tax. Attach Schedule SE | | 57 | |
| | 58 | Unreported social security and Medicare tax from Form: a ☐ 4137 b ☐ 8919 | | 58 | |
| | 59 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | | 59 | |
| | 60a | Household employment taxes from Schedule H | | 60a | |
| | b | First-time homebuyer credit repayment. Attach Form 5405 if required | | 60b | |
| | 61 | Health care: Individual responsibility (see instructions) Full-year coverage ☒ | | 61 | |
| | 62 | Taxes from: a ☒ Form 8959 b ☒ Form 8960 c ☐ Inst.; enter code(s) STATEMENT 11 | | 62 | |
| | 63 | Add lines 56 through 62. This is your total tax ▶ | | 63 | STATEMENT 10 |
| **Payments** | 64 | Federal income tax withheld from Forms W-2 and 1099 | 64 | | |
| | 65 | 2015 estimated tax payments and amount applied from 2014 return | 65 | | |
| If you have a qualifying child, attach Schedule EIC. | 66a | Earned income credit (EIC) | 66a | | |
| | b | Nontaxable combat pay election | 66b | | |
| | 67 | Additional child tax credit. Attach Schedule 8812 | 67 | | |
| | 68 | American opportunity credit from Form 8863, line 8 | 68 | | |
| | 69 | Net premium tax credit. Attach Form 8962 | 69 | | |
| | 70 | Amount paid with request for extension to file | 70 | | |
| | 71 | Excess social security and tier 1 RRTA tax withheld    STMT 9 | 71 | | |
| | 72 | Credit for federal tax on fuels. Attach Form 4136 | 72 | | |
| | 73 | Credits from Form: a ☐ 2439 b ☐ ReservedC ☐ 8885 d ☐ | 73 | | |
| | 74 | Add lines 64, 65, 66a, and 67 through 73. These are your total payments ▶ | | 74 | |
| **Refund** | 75 | If line 74 is more than line 63, subtract line 63 from line 74. This is the amount you overpaid | | 75 | 28,156. |
| Direct deposit? See Instructions. | 76a | Amount of line 75 you want refunded to you. If Form 8888 is attached, check here ▶ 76a ☐ | | 76a | |
| | ▶ b | Routing number _____ ▶ c Type: ☐ Checking ☐ Savings ▶ d Account number _____ | | | |
| | 77 | Amount of line 75 you want applied to your 2016 estimated tax ▶ | 77 | 28,156. | |
| **Amount You Owe** | 78 | Amount you owe. Subtract line 74 from line 63. For details on how to pay, see instructions ▶ | | 78 | |
| | 79 | Estimated tax penalty (see instructions) | 79 | | |

| **Third Party Designee** | Do you want to allow another person to discuss this return with the IRS (see instructions)? ☒ Yes. Complete below. ☐ No | | |
|---|---|---|---|
| | Designee's name ▶ BRANT C. WEIGAND | Phone no. ▶ (818)786-5656 | Personal identification number (PIN) ▶ |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return? See instructions. Keep a copy for your records.

| Your signature | Date | Your occupation EXECUTIVE | Daytime phone number |
|---|---|---|---|
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation ACCOUNTANT | If the IRS sent you an Identity Protection PIN, enter it here |

| **Paid Preparer Use Only** | Print/Type preparer's name BRANT C. WEIGAND | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name ▶ GORELICK & USLANER, CPAS, A PROF. CORP. | | | Firm's EIN ▶ | |
| | Firm's address ▶ 15260 VENTURA BLVD., STE 1705 SHERMAN OAKS, CA 91403 | | | | Phone no. (818)786-5656 |

510002
12-30-15

AS AMENDED

| SCHEDULE A<br>(Form 1040)<br>Department of the Treasury<br>Internal Revenue Service (99) | **Itemized Deductions**<br>▶ Information about Schedule A and its separate instructions is at *www.irs.gov/schedulea* .<br>▶ Attach to Form 1040. | OMB No. 1545-0074<br>**2015**<br>Attachment<br>Sequence No. **07** |
|---|---|---|

Name(s) shown on Form 1040

**KEVIN & PATRICIA KEEFER**

Your social security number ▉▉▉▉▉▉

| Medical and Dental Expenses | | Caution: Do not include expenses reimbursed or paid by others. | | |
|---|---|---|---|---|
| | 1 | Medical and dental expenses (see instructions) | 1 | |
| | 2 | Enter amount from Form 1040, line 38 ... **2** | | |
| | 3 | Multiply line 2 by 10% (.10). But if either you or your spouse was born before January 2, 1951, multiply line 2 by 7.5% (.075) instead | 3 | |
| | 4 | Subtract line 3 from line 1. If line 3 is more than line 1, enter -0- | 4 | |
| **Taxes You Paid** | 5 | State and local (check only one box): <br> a [X] Income taxes, or     **SEE STATEMENT 13**<br> b [ ] General sales taxes | 5 | ▉▉▉▉ |
| | 6 | Real estate taxes (see instructions) | 6 | |
| | 7 | Personal property taxes | 7 | |
| | 8 | Other taxes. List type and amount ▶ _____ | 8 | |
| | 9 | Add lines 5 through 8 | 9 | |
| **Interest You Paid** | 10 | Home mortgage interest and points reported to you on Form 1098 | 10 | |
| | 11 | Home mortgage interest not reported to you on Form 1098. If paid to the person from whom you bought the home, see instructions and show that person's name, identifying no., and address ▶ _____ | 11 | |
| **Note:**<br>Your mortgage interest deduction may be limited (see instructions). | 12 | Points not reported to you on Form 1098. See instructions for special rules | 12 | |
| | 13 | Mortgage insurance premiums (see instructions) | 13 | |
| | 14 | Investment interest. Attach Form 4952 if required. (See instructions.) **STMT 15** | 14 | ▉▉ ▉▉▉ |
| | 15 | Add lines 10 through 14 | 15 | ▉T 14 |
| **Gifts to Charity**<br>If you made a gift and got a benefit for it, see instructions. | 16 | Gifts by cash or check. If you made any gift of $250 or more, see instructions | 16 | ▉▉▉▉ |
| | 17 | Other than by cash or check. If any gift of $250 or more, see instructions. You **must** attach Form 8283 if over $500 | 17 | 1,257,000. |
| | 18 | Carryover from prior year | 18 | |
| | 19 | Add lines 16 through 18 | 19 | ▉▉▉▉ |
| **Casualty and Theft Losses** | 20 | Casualty or theft loss(es). Attach Form 4684. (See instructions.) | 20 | |
| **Job Expenses and Certain Miscellaneous Deductions** | 21 | Unreimbursed employee expenses - job travel, union dues, job education, etc. Attach Form 2106 or 2106-EZ if required. (See instructions.) ▶ _____ | 21 | |
| | 22 | Tax preparation fees | 22 | |
| | 23 | Other expenses - investment, safe deposit box, etc. List type and amount ▶ **SEE STATEMENT 12** _____ | 23 | ▉▉▉ |
| | 24 | Add lines 21 through 23 | 24 | ▉▉▉ |
| | 25 | Enter amount from Form 1040, line 38 ... **25** ▉▉ | | |
| | 26 | Multiply line 25 by 2% (.02) | 26 | |
| | 27 | Subtract line 26 from line 24. If line 26 is more than line 24, enter -0- | 27 | 0. |
| **Other Miscellaneous Deductions** | 28 | Other - from list in instructions. List type and amount ▶ _____ | 28 | |
| **Total Itemized Deductions** | 29 | Is Form 1040, line 38, over $154,950?<br>[ ] **No.** Your deduction is not limited. Add the amounts in the far right column for lines 4 through 28. Also, enter this amount on Form 1040, line 40.<br>[X] **Yes.** Your deduction may be limited. See the Itemized Deductions Worksheet in the instructions to figure the amount to enter.     **STMT 16** | 29 | 2,593,365. |
| | 30 | If you elect to itemize deductions even though they are less than your standard deduction, check here ▶ [ ] | | |

LHA  519501 01-19-16    For Paperwork Reduction Act Notice, see Form 1040 instructions.    Schedule A (Form 1040) 2015

**AS AMENDED**

10

Form 8283 (Rev. 12-2014)    Page **2**

Name(s) shown on your income tax return | Identifying number
--- | ---
KEVIN & PATRICIA KEEFER | ██████████

**Section B.   Donated Property Over $5,000 (Except Publicly Traded Securities)** - Complete this section for one item (or one group of similar items) for which you claimed a deduction of more than $5,000 per item or group (except contributions of publicly traded securities reported in Section A). Provide a separate form for each property donated unless it is part of a group of similar items. An appraisal is generally required for property listed in Section B. See instructions.

**Part I**   Information on Donated Property - To be completed by the taxpayer and/or the appraiser.

4   Check the box that describes the type of property donated:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **a** ☐ Art* (contribution of $20,000 or more) | **d** ☐ Art* (contribution of less than $20,000) | **g** ☐ Collectibles** | **j** ☒ Other |
| **b** ☐ Qualified Conservation Contribution | **e** ☐ Other Real Estate | **h** ☐ Intellectual Property | |
| **c** ☐ Equipment | **f** ☐ Securities | **i** ☐ Vehicles | |

*Art includes paintings, sculptures, watercolors, prints, drawings, ceramics, antiques, decorative arts, textiles, carpets, silver, rare manuscripts, historical memorabilia, and other similar objects.
**Collectibles include coins, stamps, books, gems, jewelry, sports memorabilia, dolls, etc., but not art as defined above.

==**Note.  In certain cases, you must attach a qualified appraisal of the property. See instructions.**==

| 5 | (a) Description of donated property (if you need more space, attach a separate statement) | (b) If tangible property was donated, give a brief summary of the overall physical condition of the property at the time of the gift | (c) Appraised fair market value |
|---|---|---|---|
| A | SEE ATTACHMENT | | 1,257,000. |
| B | | | |
| C | | | |
| D | | | |

| | (d) Date acquired by donor (mo., yr.) | (e) How acquired by donor | (f) Donor's cost or adjusted basis | (g) For bargain sales, enter amount received | See instructions | |
|---|---|---|---|---|---|---|
| | | | | | (h) Amount claimed as a deduction | (i) Date of contribution |
| A | 10/02 | PURCHASE | 323,843. | 870,195. | 1,257,000. | 06/18/15 |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |

**Part II**   Taxpayer (Donor) Statement - List each item included in Part I above that the appraisal identifies as having a value of $500 or less. See instructions.

I declare that the following item(s) included in Part I above has to the best of my knowledge and belief an appraised value of not more than $500 (per item). Enter identifying letter from Part I and describe the specific item. See instructions. ▶ _____

Signature of taxpayer (donor) ▶ _____    Date ▶ _____

**Part III**   Declaration of Appraiser

I declare that I am not the donor, the donee, a party to the transaction in which the donor acquired the property, employed by, or related to any of the foregoing persons, or married to any person who is related to any of the foregoing persons. And, if regularly used by the donor, donee, or party to the transaction, I performed the majority of my appraisals during my tax year for other persons.

Also, I declare that I perform appraisals on a regular basis; and that because of my qualifications as described in the appraisal, I am qualified to make appraisals of the type of property being valued. I certify that the appraisal fees were not based on a percentage of the appraised property value. Furthermore, I understand that a false or fraudulent overstatement of the property value as described in the qualified appraisal or this Form 8283 may subject me to the penalty under section 6701(a) (aiding and abetting the understatement of tax liability). In addition, I understand that I may be subject to a penalty under section 6695A if I know, or reasonably should know, that my appraisal is to be used in connection with a return or claim for refund and a substantial or gross valuation misstatement results from my appraisal. I affirm that I have not been barred from presenting evidence or testimony to the Office of Professional Responsibility.

**Sign Here**   Signature ▶ _____    Title ▶ _____    Date ▶ _____

Business address (including room or suite no.) | Identifying number
--- | ---
14800 QUORUM DRIVE |
City or town, state, and ZIP code |
DALLAS, TX 75254 |

**Part IV**   Donee Acknowledgment - To be completed by the charitable organization.

This charitable organization acknowledges that it is a qualified organization under section 170(c) and that it received the donated property as described in Section B, Part I, on the following date ▶ 06/18/15

Furthermore, this organization affirms that in the event it sells, exchanges, or otherwise disposes of the property described in Section B, Part I (or any portion thereof) within 3 years after the date of receipt, it will file Form 8282, Donee Information Return, with the IRS and give the donor a copy of that form. This acknowledgment does not represent agreement with the claimed fair market value.

Does the organization intend to use the property for an unrelated use? ▶ ☐ Yes  ☒ No

Name of charitable organization (donee) | Employer identification number
--- | ---
PI FOUNDATION | ██████████
Address (number, street, and room or suite no.) | City or town, state, and ZIP code
PO BOX 522244 | SALT LAKE CITY, UT 84152
Authorized signature | Title | Date
| |

519932 04-01-15

**AS AMENDED**

Form 8283 (Rev. 12-2014)

Form 8283 (Rev. 12-2014)                                                                                      Page 2

Name(s) shown on your income tax return                                                    Identifying number

**KEVIN & PATRICIA KEEFER**

**Section B. Donated Property Over $5,000 (Except Publicly Traded Securities)** - Complete this section for one item (or one group of similar items) for which you claimed a deduction of more than $5,000 per item or group (except contributions of publicly traded securities reported in Section A). Provide a separate form for each property donated unless it is part of a group of similar items. An appraisal is generally required for property listed in Section B. See instructions.

**Part I** | Information on Donated Property - To be completed by the taxpayer and/or the appraiser.

4   Check the box that describes the type of property donated:

| a | ☐ Art* (contribution of $20,000 or more) | d | ☐ Art* (contribution of less than $20,000) | g | ☐ Collectibles** | j | ☒ Other |
| b | ☐ Qualified Conservation Contribution | e | ☐ Other Real Estate | h | ☐ Intellectual Property | | |
| c | ☐ Equipment | f | ☐ Securities | i | ☐ Vehicles | | |

*Art includes paintings, sculptures, watercolors, prints, drawings, ceramics, antiques, decorative arts, textiles, carpets, silver, rare manuscripts, historical memorabilia, and other similar objects.
**Collectibles include coins, stamps, books, gems, jewelry, sports memorabilia, dolls, etc., but not art as defined above.

Note. In certain cases, you must attach a qualified appraisal of the property. See instructions.

| 5 | **(a)** Description of donated property (if you need more space, attach a separate statement) | **(b)** If tangible property was donated, give a brief summary of the overall physical condition of the property at the time of the gift | **(c)** Appraised fair market value |
|---|---|---|---|
| A | SEE PDF ATTACHMENT | | 1,257,000. |
| B | | | |
| C | | | |
| D | | | |

| | **(d)** Date acquired by donor (Mo., Yr.) | **(e)** How acquired by donor | **(f)** Donor's cost or adjusted basis | **(g)** For bargain sales, enter amount received | See Instructions **(h)** Amount claimed as a deduction | **(i)** Date of contribution |
|---|---|---|---|---|---|---|
| A | 10/02 | PURCHASE | 323,843. | 870,195. | 1,257,000. | 06/18/15 |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |

**Part II** | **Taxpayer (Donor) Statement** - List each item included in Part I above that the appraisal identifies as having a value of $500 or less. See instructions.

I declare that the following item(s) included in Part I above has to the best of my knowledge and belief an appraised value of not more than $500 (per item). Enter identifying letter from Part I and describe the specific item. See instructions. ▶

Signature of taxpayer (donor) ▶                                                                        Date ▶

**Part III** | **Declaration of Appraiser**

I declare that I am not the donor, the donee, a party to the transaction in which the donor acquired the property, employed by, or related to any of the foregoing persons, or married to any person who is related to any of the foregoing persons. And, if regularly used by the donor, donee, or party to the transaction, I performed the majority of my appraisals during my tax year for other persons.

Also, I declare that I perform appraisals on a regular basis; and that because of my qualifications as described in the appraisal, I am qualified to make appraisals of the type of property being valued. I certify that the appraisal fees were not based on a percentage of the appraised property value. Furthermore, I understand that a false or fraudulent overstatement of the property value as described in the qualified appraisal or this Form 8283 may subject me to the penalty under section 6701(a) (aiding and abetting the understatement of tax liability). In addition, I understand that I may be subject to a penalty under section 6695A if I know, or reasonably should know, that my appraisal is to be used in connection with a return or claim for refund and a substantial or gross valuation misstatement results from the appraisal. I affirm that I have not been barred from presenting evidence or testimony by the Office of Professional Responsibility.

Sign Here   Signature ▶ *David T. Marshall*    Title ▶ Vice President    Date ▶ 8-3-2016
                                                                        Identifying number

Business Address (including room or suite no.)
14800 QUORUM DRIVE

City or town, state, and ZIP code
DALLAS, TX 75254

**Part IV** | **Donee Acknowledgment** - To be completed by the charitable organization.

This charitable organization acknowledges that it is a qualified organization under section 170(c) and that it received the donated property as described in Section B, Part I, above on the following date ▶ 06/18/15

Furthermore, this organization affirms that in the event it sells, exchanges, or otherwise disposes of the property described in Section B, Part I (or any portion thereof) within 3 years after the date of receipt, it will file Form 8282, Donee Information Return, with the IRS and give the donor a copy of that form. This acknowledgment does not represent agreement with the claimed fair market value.

Does the organization intend to use the property for an unrelated use?  ▶  ☐ Yes  ☒ No

Name of charitable organization (donee)                                          Employer identification number
PI FOUNDATION

Address (number, street, and room or suite no.)                                  City or town, state, and ZIP code
PO BOX 522244                                                                    SALT LAKE CITY, UT 84152

Authorized signature *Scott M. McCullough*     Title Executive Director     Date 8/3/2016

829533 04-01-14                                      236                                      Form 8283 (Rev. 12-2014)

KEVIN KEEFER
ATTACHMENT TO FORM 8283
2015

FORM 8283 PART I 5 (A) (a) - DESCRIPTION OF DONATED PROPERTY:
THE TAXPAYER DONATED A 4% LIMITED PARTNERSHIP
INTEREST IN A REAL ESTATE PARTNERSHIP- BURBANK HHG HOTEL LP.

| | | |
|---|---:|---:|
| VALUATION PER APPRAISAL FOR 4.00% INTEREST | | 1,257,000 |
| | | |
| FULL VALUE BASED ON VALUE  FOR 4.00% INTEREST | | 31,425,000 |
| PARTNERSHIP DEBT 6/18/15 (date of gift) | | 21,754,872 |
| TOTAL VALUE BEFORE DEBT | | 53,179,872 |
| | | |
| BASIS OF ASSETS AT 6/18/15 | | 13,700,830 |
| GAIN | | 39,479,042 |
| | | |
| UNRECAPTURED 1250 GAIN SUBJECT TO 25% RATE | | 4,005,703 |
| SECTION 1231 GAIN SUBJECT TO 20% RATE | | 35,473,339 |
| | | |
| AMOUNT REALIZED  - TOTAL PARTNERSHIP DEBT | 21,754,872 | |
| PORTION GIFTED | 4.0000% | 870,195 |
| | | |
| TOTAL ADJUSTED BASIS | 13,700,830 | |
| PORTION GIFTED | 4.000% | |
| | 548,033 | |
| PERCENTAGE FROM BELOW | 40.91% | 224,190 |
| | | |
| GAIN TO RECOGNIZE | | 646,005 |
| | | |
| PORTION OF ABOVE GAIN THAT IS 1250 UNRECAPTURED GAIN: | | |
| TOTAL GAIN FROM ABOVE | 4,005,703 | |
| PORTION GIFTED | 4.000% | |
| TOTAL | 160,228 | |
| PERCENTAGE FROM BELOW | 40.91% | 65,546 |
| | | |
| TOTAL DEBT | 21,754,872 | |
| TOTAL VALUE OF PROPERTY BEFORE DEBT | 53,179,872 | |
| % TO TOTAL | 40.91% | |



**THE PI FUND**

a Utah Non-profit Corporation

Keefer Donor Advised Fund

Kevin Keefer ("Donor") hereby transfers as an irrevocable gift to The PI Foundation, Inc., a Utah non-profit corporation, doing business as The PI Fund ("Foundation") the property described in Schedule A attached here to and incorporated as part of this Document, for the purpose of establishing a Donor Advised Fund ("Fund"). Net income and principal shall be available for charitable purposes, subject to The PI Fund Procedures for Operation of Donor Advised Funds (the "Procedures") and the Fee Schedule adopted by the Foundation for investing and administering the Fund.

The name of this Fund shall be the Keefer Donor Advised Fund. The Donor(s) shall be the Advisor(s) to this Fund during their lifetimes. Successor Advisors will be listed in Schedule C of the attachments.

It is understood this Fund will be administered for charitable purposes in accordance with The PI Fund Procedures for Operation of Donor Advised Funds and the Foundation's How to Operate Your Donor Advised Fund, copies of which have been provided to the Donor(s) and are incorporated by reference into this agreement. Donor(s) or others may add gifts to the Fund at any time, subject to the Procedures. The Board of Directors of the Foundation shall have full authority and discretion as to investment and reinvestment of the assets of the Fund. It is understood and agreed that the Fund and all funds therein shall be administered by the Foundation subject to its Articles and Bylaws, including the power contained therein for the Board of Directors of the Foundation to modify any restrictions or conditions if in their sole judgment such restriction becomes, in effect, unnecessary, incapable of fulfillment, or inconsistent with the charitable purposes of the Foundation.

Date: 6/8/15

Kevin Keefer

## Attached Schedules

**Schedule A:**  Description of Property

**Schedule B:**  The PI Fund Procedures for Operation of Donor Advised Funds

**Schedule C:**  How to Operate Your Donor Advised Fund

**Schedule D:**  Assignment of Advisors

**Schedule E:**  Fee Schedule

Schedule A

## DESCRIPTION OF PROPERTY

**4.00% of Interest in Burbank HHG Hotel, L. P.**

Signature: _____    Date: 6/8/15 _____

Keefer - 000725 20-11-10

## Schedule B

**THE PI FUND PROCEDURES FOR OPERATION OF DONOR ADVISED FUNDS**

Section 1. ESTABLISHMENT AND PURPOSE

    1.1    Authorization. The PI Foundation, Inc., a Utah non-profit corporation, doing business as The PI Fund (hereinafter "Foundation") has authorized the establishment of Donor Advised Funds (hereinafter "DAF"). The Board of Directors of the Foundation has authorized the adoption of these procedures for the establishment and administration of DAF. These procedures may be amended from time to time, when deemed necessary or desirable by the Board of Directors.

    1.2    Establishment of Funds. DAF may be established by the donation or transfer by any person (hereinafter "Donor") to, and acceptance by, the Foundation of money or property, whether by contribution, gift, bequest, or devise or by transfer from a charitable or other organization (hereinafter "contribution"), to further or carry out the purposes of the Foundation (which purposes are hereinafter referred to as "charitable" and shall encompass only charitable purposes as defined in section 170(c)(1) or (2)(B) of the Internal Revenue Code). DAF are and shall be administered as part of the endowment funds of the Foundation. However, the procedures set forth herein are provided in recognition of a particular purpose of DAF, which is to develop support of, and participation and involvement in, the philanthropic interests and activities of the Foundation by a wide range of living donors.

    1.3    Nature and Terms of Funds. Each DAF shall be held by the Foundation. The Distribution Committee of the Foundation or the Board of Directors of the Foundation, as the case may be, (both of which hereinafter shall be included within the term "Distribution Committee"), shall have the ultimate authority and control of all assets in the DAF, and the income derived therefrom, for the charitable purposes of the Foundation. Each account under the DAF may be recorded on the books and records of the Foundation as an identifiable or separate fund and may be given a name or other appropriate designation as requested by the Donor and approved by the Executive Director of the Foundation or the Executive Director's designee.

Section 2. ACCEPTANCE OF FUNDS

    2.1    Authorization. The Board of Directors of the Foundation (or such officers or employees of the Foundation as the Board of Directors may from time to time authorize) shall have the authority to accept, on behalf of the Foundation, contributions to establish or add to a DAF account. A Donor may not impose any material restriction or condition that prevents the Foundation from freely and effectively employing the contributed assets, or the income derived therefrom, in furtherance of a charitable purpose of the Foundation.

    2.2 Value. The minimum amount required for a DAF account to be established shall be $5,000.

Section 3. DISTRIBUTIONS FROM THE FUND

    3.1    In General. The Distribution Committee has the right to direct all distributions of income or principal of DAFs. The donor of a DAF account (or his designee, as permitted in

The PI Fund, P. O. Box 522244, Salt Lake City, Utah 84152 | Phone: 801-530-7400 | info@thepifund.org

*Page 4 of 12*

Section 3.2 below) may, after the contribution of money or property to a Fund, recommend to the Foundation the making of distributions from the Fund which are consistent with the charitable objectives of the Foundation. The Foundation shall consider and evaluate all such recommendations, but such recommendations will be solely advisory and the Foundation is not bound by such recommendations.

3.2 <u>Donors and Their Designees Accorded the Privilege of Making Recommendations.</u> The privilege of making recommendations (as described in Section 3.1 above) shall be extended to Donors and their designees, subject to the following limitations:

(a)     Ordinarily, if an individual Donor establishes a DAF, the privilege of making recommendations is limited to the Donor and his or her spouse, and, unless otherwise specified in the instrument establishing the Fund, recommendations may be made by them separately or jointly. Such privilege of a Donor or the spouse will be continuous with the existence of the Fund unless either terminated by (i) death (ii) written notice to the Foundation of resignation or release or (iii) a finding by the Foundation that the person involved is not available or is incompetent to exercise the privilege.

(b)     An individual Donor may designate in the instrument establishing a Fund a person or persons other than or in addition to himself and his or her spouse to exercise the privilege to make recommendations, but in such case the privilege will exist only during the lifetime of such Donor or the spouse, unless earlier terminated as described in (a) above. However the instrument establishing a Fund may designate successor advisors following the death of either the Donor or the Donor and the spouse in one of the following categories:

(i)     Adult children or grandchildren of a Donor may be appointed by the Donor to have the privilege to make recommendations concerning distributions from such Fund after the termination of the privilege of the Donor and the spouse. The privilege of making such recommendations is limited to those children or grandchildren appointed by the Donor. Such designation of a successor or successors to the original Donor or the spouse will be recognized in the discretion of the Foundation if it furthers continued family participation, support and involvement by such successors. The privilege of making recommendations will be final and binding on all parties concerned.

(ii)    Alternatively, relatives of the Donor who are not direct descendants, persons who are friends of the Donor, or an Advisory Committee (and successors to members of the Advisory Committee) may be appointed by the Donor to have the privilege to make recommendations concerning distributions from such Fund after the termination of the privilege of the Donor and the spouse. Such Advisors shall continue to have the privilege of making recommendations for a period of up to 15 years after the death of the Donor, unless Advisors choose to surrender such privilege or for any other reason cease to function. The decision of

the Distribution Committee that an Advisor has ceased to function shall be final and binding on all parties concerned.

(c)      A Donor entity that is not a person that establishes an DAF will have the privilege of making recommendations for a period not to exceed 15 years from the date of the establishment of the Fund. The privilege to make recommendations may be extended beyond the 15-year limitation if substantial additional contributions (see paragraph 3.2(e)) are made and the Donor maintains a continuing charitable involvement with the Foundation. Such Donor, or those acting on its behalf, shall designate one person (and may designate his or her successors) to submit the recommendations of the Donor to the Foundation.

(d)      The term "Donor" includes a single Donor or to plural Donors to a given Fund. Hereinafter, the term "Donor" will also include and shall apply to successor Donors having the privilege of making recommendations as provided above.

(e)      The phrase "substantial additional contributions" as used in these Procedures means the greater of (1) $10,000 or (2) ten percent (10%) of the fair market value of the principal of the Fund, at the time additional contributions are made.

3.3  Charitable Needs for Which Distributions may be made. Distributions from DAFs may potentially be made to any 501(c)(3) public charity in good standing with the Internal Revenue Service as approved from time to time by the Board of Directors.

3.4  Limitations. The following limitations apply to all distributions from DAFs:

(a)      The minimum amount of any one distribution from a DAF shall be $100, although the Distribution Committee may, from time to time, set a higher limitation.

(b)      The Foundation, as a public charity, will not make any distribution from a DAF except as a distribution from the Foundation for its charitable purposes, and no such distribution may be used to discharge or satisfy a legally enforceable pledge or obligation of any person, including the Donor of a DAF.

(c)      The Foundation will not make any distributions from a DAF for the following:

(i)      Grants to individuals, including grants made directly to an organization for the benefit of a specific individual (example: grant to a school)

(ii)     Grants, loans, compensation, or similar payments to donors, advisors, or related parties

(iii)    Grants for non-charitable purposes

(d)      A Donor of a DAF shall have the privilege of making recommendations as to distributions out of the corpus of a DAF.

(e)      Thirty-days written notice may be required to process a grant of $25,000 or more.

3.5    Procedure.

3.5.1    Recommendations by Donors. Recommendations by a Donor with respect to distributions from a DAF shall be made in writing, and addressed to the Foundation.

3.5.2    Staff Investigation. With respect to each recommendation by a Donor, the Foundation will make an investigation to determine whether the recommendation is consistent with the charitable mission of the Foundation. The degree of formality employed by the Foundation in making an evaluation will depend upon the nature and category of the grantee organization and information obtained by or already available to the Foundation with respect to the grantee and the purposes of the grant. If the Foundation determines that the recommendation is not consistent with the charitable mission of the Foundation, the Donor shall be advised that the recommendation does not meet the standards for distributions.

3.5.3    Distribution Committee Action. The Distribution Committee shall act upon all recommendations by Donors and shall allocate funds from DAFs in accordance with regular Distribution Committee grantmaking procedures.

3.6    Notification to Grantee as to Source of Distribution. Any distribution from a DAF, unless otherwise requested by the Donor of the Fund, shall identify to the grantee organization the name of the Fund from which the distribution is made.

Section 4. REPORTS

4.1 Annual Reports. A report of all distributions from DAFs shall be included in the annual report of the Foundation. Additional reports of DAFs may be made as prescribed by the Distribution Committee.

Section 5. CONTINUITY OF FUNDS

5.1    Upon Death, etc., of Donor. Upon the termination, by death or otherwise, of the privilege of a Donor or successor designees of an DAF to make recommendations, as provided in Section 3.2 above, the Fund shall continue as part of the General Purpose Fund of the Foundation.

5.2    Memorial Funds. If the principal of such Fund exceeds the sum of $25,000 when the aforesaid privilege to make recommendations terminates, the Fund will continue indefinitely as an identified memorial fund named for the Donor (or for such other period or name designation as the Donor may have requested).

### Schedule C

### HOW TO OPERATE YOUR DONOR ADVISED FUND

The PI Fund welcomes the opportunity to partner with people who wish to be actively involved in grantmaking. The donor-advised funds are designed to provide individuals and families with a flexible vehicle for achieving their personal charitable objectives.

The IRS allows public charities to offer donors the opportunity to make tax deductible gifts at the most advantageous time for them and then to recommend grants over a period of time. The IRS expects that The PI Fund will administer its donor-advised funds in a manner that will maximize the benefits to the community and ensure charitable giving.

The following policies are designed to protect the interests of both donors and The PI Fund. Exceptions to these policies may be made with approval of The PI Fund's Board of Directors.

OWNERSHIP AND CONTROL

Donor-advised funds will be the exclusive property of The PI Fund and not be deemed separate trusts held by it in a trustee capacity. They will be administered under and subject to the bylaws and procedures of The PI Fund including any amendments.

All donor-advised funds are subject to variance power which gives The PI Fund the ability to redirect funds should the cause for which they were established become obsolete.

ESTABLISHING THE FUND

Fund agreement: The fund agreement is a simple document, which establishes the fund and outlines the structure and operation of the fund. The document is signed by the donor and The PI Fund. A copy of the fully executed fund agreement is given to donors for their records.

Contributions: Donor-advised funds operate with a minimum contributed balance of $5,000. Additional gifts of any amount may be made to the fund at any time. All non-cash gifts are subject to the approval of the Board of Directors.

Minimum balance: The fund must maintain a $1,000 minimum balance.

GRANTMAKING

Recommendation process: Donors have the privilege of making non-binding recommendations as to the timing, amount and charitable recipient of distributions. The PI Fund retains the legal right to direct grants. All grants are to be used for purely charitable purposes. Goods or services that benefit the donor-advisors or related parties, including meals or tickets to special events, golf outings, etc. are prohibited. The PI Fund, as required by law, retains authority over the use and distributions of the fund.

Grant distributions must be made to Section 501(c)(3) organizations that are not classified as private foundations under 509(a), to recognized houses of worship, or to incorporated governmental entities.

https://www.marriott.com/re...ation/findReservationDetail.mi?modify...ion=false&last...    3/28/2015

Certain types of grants are prohibited under the Pension Protection Act of 2006. They include:

    1. Grants to individuals, including grants made directly to an organization for the benefit of a specific individual (example: grant to a school)

    2. Grants to donors, advisors, or related parties

    3. Grants for non-charitable purposes

The PI Fund will generally not approve grants requiring expenditure responsibility. Grants to organizations not described in §170(b)(1)(A) of the Internal Revenue Code such as non-charities, private non-operating foundations, or certain supporting organizations, all require expenditure responsibility. Any type of supporting organization that supports a public charity which is controlled directly or indirectly by the donor, donor-advisor, or related party requires expenditure responsibility by the Foundation. Any non-functionally integrated Type III supporting organization requires expenditure responsibility.

Thirty-day notice may be required to process a grant of $25,000 or more.

Approval process: Donors notify The PI Fund in writing to make a grant recommendation. Each recommendation will be evaluated by The PI Fund's staff and presented to the Board. Grants to organizations previously supported by The PI Fund are quickly considered. Assuming the request is in accordance with The PI Fund's mission and does not conflict with The PI Fund's Bylaws and grantmaking procedures, a check is written to the organization upon approval by The PI Fund's Board.

Should the staff find information about an organization that causes concern and may lead to an unfavorable vote by the Board, that information will first be given to the donors. Should the Board not approve the grant, the donor will be notified immediately.

Minimum distribution: Grant recommendations should be sufficiently large to warrant the administrative expense involved in making the grant; a $100 minimum is required.

Dues/pledges: Grants from donor-advised funds used to pay membership dues or to satisfy a legally enforceable personal obligation or personal pledge of a donor are prohibited. However, where a donor advisor is neither discharging a legal obligation nor satisfying a personal pledge, the donor may indicate to a charitable institution that he will recommend a grant. Multi-year grant recommendations may be submitted by a donor-advisor to The PI Fund.

Active grantmaking funds: All funds are intended to be active grantmaking funds. Should advisors cease to provide annual recommendations over a five year period despite attempts by The PI Fund to gain the advisors' participation, the Board will assume grantmaking responsibility for the fund's accumulated income, using the fund to support The PI Fund's unrestricted grantmaking, (unless otherwise specified in the original fund agreement). This policy assures the original donors that effective grantmaking will always continue.

INVESTMENT

Keefer - 000731 20-11-10

**Management**: It is important for both donors and The PI Fund that advised funds not be considered private foundations; therefore, The PI Fund retains control of investments, including control of the retention or sale of any assets contributed. The PI Fund invests assets with due regard for prudent risks, long-term market conditions, conservation of principal, grantmaking objectives, planned gift objectives and other factors.

**Financial statement**: Donors will receive a financial statement at least yearly reflecting any additional contributions to the fund, grants made during the fiscal year, income and appreciation/depreciation, fees, and grantable proceeds available for grantmaking.

**Fees**: See The PI Fund Fee Schedule.

## ADVISORS/SUCCESSOR ADVISORS

Individual Donors may designate their spouse, children or others to serve as advisor with, or in place of, the donor in their fund agreement. A child or children (and spouses) and/or a grandchild or grandchildren (and spouses) of a Donor may have the privilege to make recommendations concerning distributions from such Fund after the termination of the privilege of the Donor and the spouse.

## DESIGNATION OF FUND'S ASSETS AFTER LIFETIME(S) OF ADVISOR(S)

Endowments generate grants in perpetuity. To provide the greatest flexibility to meet future charitable needs, when the advising ceases, funds become part of the general purpose endowment. Donors may also request in their fund agreement that their fund support grantmaking in a broad field of interest. All grants will be made at the Board's discretion in the fund's name.

## FUND RECOGNITION

When a grant is made, The PI Fund lets the recipient organization know the name of the fund providing the grant and the donor-advisor recommending the grant, unless the donor requests to remain anonymous. It is The PI Fund's practice to list all funds in its publications, unless donors request otherwise.

Keefer - 000732 20-11-10

## Schedule D

### Assignment of Advisors

On the death of the Donor(s), the Fund shall (check one):

_____ become part of the Foundation's unrestricted endowment;

__X__ continue with the following individuals having advisory status on charitable distributions:

1. *Patricia S. Keefer*
2. *Patricia S. Santini*
3. *Pete Kruse*
4. *Father Michael Hermes*

Signature _____ Date _6/8/15_

The Pi Fund, P. O. Box 522244, Salt Lake City, Utah 84152 | Phone: 801-530-7400 | info@thepifund.org

*Page 11 of 12*

**Schedule E**

**FEE SCHEDULE**

**As of January 1, 2014**

| Type of Contribution | Annual Fee | Investment Return |
|---|---|---|
| Cash or Marketable Securities sold or otherwise converted to cash | $1,000 per account per year (fee waived for accounts with an average cash balance of more than $150,000) | None |
| Real Estate, closely held stock, LLC or other business interest | $2,000 per account per year (additional fees apply with respect to the sale of any non-marketable securities) | Account credited with increases or decreases in value of assets not converted to cash |
| For accounts invested in brokerage accounts (see Notes) | 25 basis points per year (minimum $3,000 per year) | Account credited with increases or decreases in value of assets |

As a Donor Advised Fund, while The Pi Fund (the "Foundation") listens to the advice of donors with respect to potential distributions, all distributions must be independently approved by the Board of the Foundation and may only be made to qualifying 501(c)(3) charitable organizations. The Foundation reserves the right to approve or reject any advice given by donors with respect to distributions. To make a suggestion for a charitable distribution, please contact us.

The Foundation may elect, in its sole discretion, whether and how to invest the proceeds of a donor's account. The Foundation retains the exclusive right to manage and invest the assets in any account as the Board determines from time to time.

Any Unrelated Business Taxable Income or other costs incurred by the Foundation as a result of a contribution or carrying any property (including any interest in any entity) received by contribution or into which the Foundation invests on the advice of a donor, will be deducted from the donor's account. Costs include, without limitation, legal fees incurred in connection with the acceptance, sale or other disposition of contributed property.



**KATZEN MARSHALL**
BUSINESS VALUATIONS

February 19, 2016

Mr. Kenneth M. Horwitz
Glast, Phillips & Murray, P.C.
14801 Quorum Dr., Suite 500
Dallas, Texas 75254

Dear Mr. Horwitz:

Pursuant to your request, Katzen, Marshall & Associates, Inc. ("KM") has completed its appraisal services for the purpose of estimating the fair market value of a 4.000% limited partnership interest, subject to an oral agreement, (the "Subject Interest") in Burbank HHG Hotel, LP (the "Partnership"), owned by Kevin Keefer (the "Donor"). The appraisal date is June 18, 2015 (the "Valuation Date"), the date of contribution of the Interest by the Donor to the Pi Foundation (the "Foundation"). We understand that our valuation analysis will be used for substantiating the fair market value of a charitable deduction for federal income tax reporting purposes. Our analysis should not be used for any other purpose nor distributed to third parties, with the exception of the Internal Revenue Service, without the express written consent of KM. David T. Marshall is a qualified appraiser as defined by the Internal Revenue Service. Our valuation does not constitute a fairness opinion in that our work did not include those factors needed to issue such an opinion.

Fair market value is defined by Treasury Regulation 20.2031-1(b) as: The price at which the Property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of relevant facts. In arriving at our value conclusions, we will apply generally accepted valuation procedures based upon economic and market factors.

As part of our assignment, KM personnel reviewed the Second Amended and Restated Agreement (the "Agreement") of Limited Partnership of Burbank HHG Hotel, LP; Assignment of Limited Partnership Interest dated June 18, 2015; Purchase Contract between Burbank HHG Hotel, LP, a Texas Limited Partnership ("Seller") and Apple Nine Hospitality Ownership, Inc., a Virginia corporation ("Buyer") dated July 2, 2015; Seller's Closing Statement dated August 11, 2015; the Partnership's tax returns Form 1065 U.S. Return of Partnership Income for 2013 and 2014; internal balance sheet, dated July 3, 2015; and income statement for the period ending July 3, 2015 with comparison with prior year period. We also spoke with Mr. Kevin Keefer, Principal, and Ms. Patricia Santini, Vice President, of Huntington Hotel Group.

### The Partnership

The Partnership, a Texas limited partnership was formed in 2000. The Partnership owned a Marriott Courtyard property known as Courtyard Los Angeles Burbank Airport ("Burbank Courtyard" or the "Property"), a Marriott franchise, located at 2100 Empire Avenue, Burbank, California. The Burbank Courtyard has 184 rooms and suites. The Property is managed by Huntington Hotel Group ("HHG"). HHG develops, owns and manages premium brand (Hilton and Marriott) select service hotels. It operates a portfolio of about 24 hotels.

Mr. Kenneth M. Horwitz
February 19, 2016
Page 2

The Property generated revenue of about $10 million; EBITDA exceeded $4 million annually during the last 2 ½ years. Distributions were $1.36 million in 2013 and $1.89 million in 2014. While 2015 appears to be substantially higher, on a trailing 12 month basis, EBITDA is about the same as 2014. The 2013 distribution was impacted by an increase in reserves of approximately $650,000.

### Table 1
### Burbank HHG Hotel LP
### Summary Financial Data
### in $000

|  | 2013 | 2014 | Six Months *<br>2015 |
|---|---|---|---|
| Revenue | 9,448 | 10,000 | 5,201 |
| Operating Expenses | 5,429 | 5,819 | 2,862 |
| Depreciation | 430 | 1,048 | 276 |
| Interest | 1,275 | 1,265 | 607 |
| Book Income | 2,314 | 1,869 | 1,457 |
| EBITDA | 4,019 | 4,181 | 2,339 |
| Distributions | 1,365 | 1,893 | 1,288 |
| Cash | 2,229 | 858 | 813 |
| Other Current Assets | 309 | 827 | 395 |
| Asset Reserve Accounts | 2,809 | 2,965 | 1,943 |
| Fixed Assets, net | 12,208 | 12,404 | 13,786 |
| Total Assets | 17,614 | 16,959 | 16,592 |
| Current Liabilities | 367 | 369 | 528 |
| Debt | 22,665 | 22,032 | 21,698 |
| Partners' Capital | ( 5,418 ) | ( 5,442 ) | ( 5,274 ) |
| Total Liabilities & Capital | 17,614 | 16,959 | 16,952 |

\* period end July 3

The book equity is a deficit of ($5,274,000), but if the value of $54,000,000 (see page 5 "Background") for the Property is substituted into the balance sheet, the value of the Partners' Capital would be about $34.8 million. The Property includes inventory, all fixed assets and the franchise agreement and any other intangible assets.

Between June 18, 2015 and July 3, 2015, the Partnership made an early payment on its mortgage. The outstanding principal balance at June 18, 2015 was $21,754,872. Accrued interest from June 10, last payment date, to June 18, was about $26,488.

The month end balance sheet closest to the Valuation Date is the July 3, 2015 balance sheet. The balance sheet is summarized in Table 2.

Mr. Kenneth M. Horwitz
February 19, 2016
Page 3

Table 2
Burbank HHG Hotel, LP
Balance Sheet
July 3, 2015
in $000

| | |
|---|---:|
| **Current Assets** | |
| Cash | $813 |
| Credit Cards | 111 |
| Accounts Receivable | 117 |
| Inventories | 19 |
| Prepaid Expenses | 148 |
| **Total Current Assets** | 1,208 |
| **Fixed Assets, Net** | 13,786 |
| Intangible Assets, Net | 15 |
| Reserve Accounts | 1,943 |
| **Other Assets, Net** | 1,958 |
| **Total Assets** | $16,952 |
| **Current Liabilities** | |
| Accounts Payable | 82 |
| Other Payables | 66 |
| Accrued Payroll | 161 |
| Accrued Interest | (23) |
| Property Taxes | 15 |
| Accrued Management Fee | 50 |
| Other Liabilities | 176 |
| **Total Current Liabilities** | 528 |
| Long Term Debt | 21,698 |
| **Total Liabilities** | 22,226 |
| **Partners' Capital** | (5,274) |
| **Total Liabilities & Equity** | $16,952 |

## Partnership Agreement

Certain provisions of the Agreement are noted below:

Available Cash Flow shall mean: (i) all cash receipts as shown on the books of the Partnership, excluding Capital Proceeds (as defined herein), reduced by cash disbursements for Partnership purposes, including all costs and expenses of acquiring, owning, managing and selling the Property of the Partnership, all disbursements, costs and expenses of or with respect to partnership financing and all reasonable cash reserves set aside by the General Partner which shall be deemed necessary by the General Partner in its discretion to accomplish the Partnership's purposes, and (ii) any other funds, including, but not limited to, amounts previously set aside as reserves by the General Partner, deemed advisable in the discretion of the General Partner, for distributions as cash flow.



Mr. Kenneth M. Horwitz
February 19, 2016
Page 4

Limited Purpose.  Pursuant to Section 2.2, notwithstanding any provision hereof to the contrary, the following shall govern:  The nature of the business and of the purposes to be conducted and promoted by the Partnership, is to engage solely in the following activities:

(i)  To own, hold, sell, assign, transfer, operate, lease, mortgage, pledge and otherwise deal with the Property (Burbank Courtyard).

Term.  The term of the Partnership shall commence upon the filing of the Certificate with the Secretary of State, and shall continue until December 31, 2024, unless extended by the consent of the General Partner(s) and the Limited Partner(s) or unless sooner terminated in accordance with the terms hereof.  (Section 2.5)

Distribution of Available Cash Flow.  The Available Cash Flow, if any, in each calendar quarter of a partnership year shall be allocated to and distributed among the Partners pro rata in accordance with their respective percentages of interests.  The distribution of Available Cash Flow for each calendar quarter of a partnership year shall be made at such time as the General Partner determines, but in no event later than thirty (30) days after the close of such calendar quarter of the Partnership year (or as soon thereafter as is practicable).  (Section 4.1)

Access.  Each Partner shall have access to the Partnership records set forth in Section 6.2 hereof at all reasonable times upon reasonable notice to the General Partner.  Each Partner shall have a right to an audit of the books and records of the Partnership, provided that such audit is made at the expense of the Partner desiring it and is made at reasonable times after due notice to the General Partner.  (Section 6.3)

Tax Elections.  In the event of an assignment of all or any part of a Partner's Percentage of Interest by sale or exchange or on the death of a Partner in accordance with the terms of this Agreement, upon request of the transferee Partner, the Partnership shall elect pursuant to Section 754 of the Code to adjust the basis of the Partnership's property with respect to such Partner.  Any items of Federal tax significance attributable to the aforesaid adjustments to basis shall be allocated solely to the transferee Partner.  No Partner shall take any action or refuse to take any action which would cause the Partnership to forfeit the benefits of any tax election previously made or agreed to be made by the Partnership.  (Section 7.2)

Assignment by Limited Partners (Section 8.3)

(i)  The Limited Partners shall not sell or otherwise dispose of his or its interest in the Partnership without having first obtained the written consent of the General Partner, such consent to be within the sole, absolute and subject discretion of the General Partner.

(ii)  The admission of any transferee of an interest in the Partnership as a Substitute Limited Partner with respect to any interest of the Limited Partner being transferred hereunder, any assignee, transferee or successor of any Limited Partner shall:  (1) be approved by and be acceptable to the General Partner, such consents to be within the sole, absolute and subject discretion of the General Partner, and (2) execute and acknowledge an agreement to accept, adopt, and abide by the provisions of this Agreement.  Such assignee, transferee or successor shall pay all reasonable expenses in connection with such admission.

Mr. Kenneth M. Horwitz
February 19, 2016
Page 5

<u>Basis for Dissolution</u>.  The Partnership shall be dissolved and its affairs shall be wound up upon the occurrence of any event causing the dissolution of a limited partnership under the Act or upon the unanimous consent of the General Partner(s) and the Limited Partner(s).  [The stated termination date is December 31, 2024.] (Section 9.1)

<u>Termination</u> (Section 9.4)

   (i)   The Partnership shall terminate when all of its property shall have been disposed of and the net proceeds and liquid assets, after satisfaction of liabilities to Partnership creditors, shall have been distributed among the Partners.

The Agreement provides that available cash flow shall be distributed to the Partners.  Based on the historical financials, the Burbank Courtyard has been generating substantial cash flow that has been distributed to the Partners.  A sale of the Burbank Courtyard would terminate the Partnership resulting in a distribution of all the assets.

### *Background of Pending Sales Transaction*

In early 2015, the Partnership proposed selling the Burbank Courtyard to potential buyers, including Apple Hospitality REIT, parent of Apple Nine Hospitality, Inc. ("Apple").  On April 23, 2015, Mr. Kevin Keefer of HHG received an email, with attached non-binding letter of intent ("LOI") from Apple, a publicly owned real estate investment trust.  The LOI was not signed and included a bid on an additional hotel (Courtyard San Diego Central) for a total purchase price for the two hotels of $110 million.  The parties never signed an LOI, but shortly began negotiating sales contracts.

On April 27, 2015, Mr. Keefer received an email from RLJ Lodging Trust raising RLJ's bids for Burbank Courtyard to $54,350,000 (from $54,000,000) and Courtyard San Diego.  The RLJ email states that RLJ would not meet the other bidder's terms of the [hotel] management agreements.

On June 18, 2015, the Donor transferred a 4.000% limited partnership interest in the Partnership to the Pi Foundation.  By oral agreement, the Foundation and Donor agreed that the Foundation would only share in the proceeds from the Seller's Closing Statement; the Foundation would not receive its pro rata share in the other net assets of the Partnership.

On July 2, 2015, the Partnership and Apple entered into a Purchase Contract to sell the Burbank Courtyard for $54 million.  The Purchase Contract provided for a 30 day review period for the Buyer and a requirement to close 15 days after the review period.  On August 11, 2015, the Partnership and Apple closed the sale.

Exhibit 1 presents the Purchase Contract, Letter of Intent and RLJ email.

### *Valuation of Partnership Interest*

At the Valuation Date, the Partnership had tentatively agreed on the sale of the Burbank Courtyard for $54 million, but the contract for sale had not been signed and Apple had not conducted its review of the property and records.

If the sale had gone through in two months, allowing time for contract negotiation and due diligence review, the net to the seller would have been approximately $32.2 million as shown in Table 3.  All assets not included in the $54 million have been excluded.  The closing costs are based on the actual Seller's Closing Statement, but allowing for 45 days of property taxes and 15 days of interest.  The mortgage debt would decline due to two payments after June 18, the adjusted debt balance is $21,642,000, rounded.  There is an escrow amount from the Partnership of $200,000 which has not been deducted.  The escrow was refundable, less any claims by buyer that have been satisfied, by December 15, 2015.

The Subject Interest would net $1,289,000, rounded ($32,224,000 x 4.000%).



**54**

Mr. Kenneth M. Horwitz
February 19, 2016
Page 6

**Table 3**
**Burbank HHG Hotel L.P.**
**Expected Seller's Closing Statement**
**(in $000)**

| | | |
|---|---|---|
| Sale Price of Burbank Courtyard (real, personal and intangible property) | | $54,000 |
| Less: | | |
| Mortgage | $21,642 | |
| Closing Costs | 49 | |
| Accrued Interest | 50 | |
| Accrued Property Taxes | 35 | |
| Total Costs | | 21,776 |
| Net Proceeds | | 32,224 |
| Net Asset Value of Interest Appraised | 4.000% | $1,289 |

If the sale to Apple had not occurred, the holder would have owned a minority closely-held interest in the Partnership. The owner of the Subject Interest could have seen the fair market value of his/her interest drop from the net asset value of the Subject Interest. Exhibit 3 presents an annual study of secondary market price to NAV discounts for registered, but privately traded limited partnerships and REITs. The average discount for distributing low or no debt REIPs was 18%, with an average yield of 6.2%. Within this category are two REIPs that invested only in hotel properties. These two REIPs were selling at discounts of 11.2% and 11.7% to NAV with distribution yields of 6.6% and 6.0%, respectively. Using the Partnership's distributions for 2014 of $1,893,000 and yields of 6% to 6.6%, the implied minority, closely-held value of the Partnership would be $31,550,000 ($1,893,000 / 6%) and $28,682,000 ($1,893,000 / 6.6%). The lower value represents a discount of 11% for the NAV of $32,224,000. The implied value of $31,550,000 based on a 6% yield, is only 2% less than NAV. We used the implied value of $28,682,000 as our downside case.

The probability of the downside case appears to be very low. Mr. Keefer stated that at the Valuation Date, he was not aware of any material fact or condition that would change or derail the sale. If for some reason Apple did not proceed with the purchase, the Partnership had a second bidder at essentially the same price.

Allowing for a 5% probability of no sale, the probability weighted value of the Partnership is $32,047,000.

| Value | Probability | Weighted Value |
|---|---|---|
| $32,224 | 95% | $30,613 |
| 28,682 | 5% | 1,434 |
| Probability Weighted Value | | $32,047 |

Keefer - 000740 20-11-10

**55**

Mr. Kenneth M. Horwitz
February 19, 2016
Page 7

The net proceeds should be discounted for time and uncertainty. The rate for the pure time value of money is very low. A 13 week Treasury-Bill yielded about 0.01% at the Valuation Date, while a 6 month CD yielded only 0.16%. The prime rate (bank base rate for lending) was 3.25% (annual rate, monthly rate is 0.0027). The expected equity return on hotel investments was only 10.5% to 16.3% based on PwC's Real Estate Investor Survey and RealtyRates.com.

The sale is not expected to occur for two months. We discounted the probability weighted value at an annual rate of 12% (an equity return for the low debt Partnership) for two months or 2%. The present value of the expected value of the Partnership is $31,419,000.

| | | |
|---|---|---|
| Probability Weighted Value | | $32,047 |
| PV Factor | | ÷ 1.02 |
| Fair Market Value | | $31,419 |
| Subject Interest | 4.000% | $1,257 |

## Conclusion

It is our opinion that **ONE MILLION TWO HUNDRED FIFTY-SEVEN THOUSAND DOLLARS ($1,257,000)** reasonably represents the fair market value, excluding Other Assets of the Partnership, of a 4.000% Limited Partnership Interest in Burbank HHG Hotel, L.P., as of June 18, 2015.

All estimates of value are subject to the attached **Statement of Limiting Conditions** and **Appraisers' Certification**.

The field notes from which this valuation was prepared are retained in our files and are available for inspection upon request. If you have any questions concerning this analysis, we would be pleased to discuss them with you at your convenience.

Respectfully submitted,

**KATZEN, MARSHALL & ASSOCIATES, INC.**

By : *David T. Marshall*
　　　David T. Marshall, CFA, ASA

Mr. Kenneth M. Horwitz
February 19, 2016
Page 8

## STATEMENT OF LIMITING CONDITIONS

❑ We have been informed that the Donor and Donee have an agreement that the Donee will only share in the next proceeds from the Seller's Closing Statement. The Donee will not share in Other Assets of the Partnership not covered in the sale.

❑ The scope of our analysis is limited in that we have not performed an independent valuation of the underlying assets of the Partnership, but have relied upon independent appraisals of the properties for representations by the Partnership and legal counsel that substantially all of such values have been independently determined and are reasonable.

❑ The value or values reported herein are based on the premises outlined in this report and are valid only for the purposes and date stated.

❑ No investigation of legal title to the assets has been made, and the owner's claim to the assets has been assumed valid. No consideration has been given to liens or encumbrances that may be against the assets except as specifically stated in the appraisal report.

❑ Nothing contained in this report should be construed as either investment, legal or accounting advice. The user shall hold Katzen, Marshall & Associates, Inc. harmless for any unauthorized use of this report, and in no case shall Katzen, Marshall & Associates, Inc.'s liability, if any, exceed the price of this opinion.

❑ In the event that this valuation is used as a basis to set a market price, no responsibility is assumed for the seller's inability to obtain a purchaser at the value reported herein.

❑ Neither all nor any part of the contents of this report shall be conveyed to the public through advertising, public relations, news, sales, or other media without the written consent and approval of Katzen, Marshall & Associates, Inc.

❑ Testimony or attendance in court, by reason of this valuation, with reference to the property in question shall not be required unless arrangements have previously been made.

❑ All opinions as to fair market value are presented as our considered opinion based on the facts and data set forth in the attached report. During the course of the valuation, we have relied upon information provided by management and other third parties. We believe these sources to be reliable, but no guarantee is made or liability assumed for the accuracy of any data, opinions or estimates supplied by others.

❑ Katzen, Marshall & Associates, Inc. has relied upon the assertion of management that the financial data described in our attached report provide a reasonable representation of the historical operations.

❑ Any projections of future events described in our attached report represent the general expectancy concerning such events as of the valuation date. These future events may not occur as anticipated, and actual results may vary from those described in our report.

Mr. Kenneth M. Horwitz
February 19, 2016
Page 9

## APPRAISERS' CERTIFICATION

The undersigned hereby certify that, to the best of our knowledge and belief:

* Neither Katzen, Marshall & Associates, Inc., nor any individuals signing or associated with this report, have any present or prospective interest in the property appraised, and we have no personal interest or bias with respect to the parties involved.

* Our compensation is not contingent on an action or event resulting from the analyses, opinions, or conclusions in, or the use of, this report.

* Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

* No one provided significant professional assistance to the person(s) signing this report.

* The statements of fact contained in this report are true and correct.

* We have performed previous appraisals of this Partnership within the last three years.

* The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, unbiased professional analyses, opinions and conclusions.

* The American Society of Appraisers conducts a mandatory recertification program for its designated members. David T. Marshall is currently certified under this program.


David T. Marshall, ASA, CFA

# EXHIBIT 4

# QUALIFICATIONS OF APPRAISER

## DAVID T. MARSHALL, CFA, ASA

Mr. Marshall is a Principal of Katzen Marshall. Since entering the appraisal profession in 1978, he has been responsible for more than 1,000 valuations of securities, business enterprises, and intangible assets. Prior to forming Katzen Marshall, Mr. Marshall was the President of American Business Valuations, an affiliate of Breedlove, Wesneski & Co. Responsibilities have included field investigations, analyses, report preparation, and review of valuation studies. Before joining American Business Valuations, Mr. Marshall was a regional manager for Valtec Associates and a manager for American Appraisal Company.

### Experience

Mr. Marshall has valued firms ranging in size from $200 thousand to $500 million. The valuations were performed for:

- Estate and Gift Tax Planning and Reporting
- Employee Stock Ownership Plans
- Merger and Acquisition Planning
- Dissident Shareholder Actions
- Arbitration
- Financing
- Allocation of Purchase Price for Tax and Financing Reporting
- Regulatory Reporting
- Management Planning

His industry experience includes Agribusiness, Energy, Automotive, Financial Institutions, Telecommunications, Manufacturing, Construction, Publishing, Service Companies, Retail, Distribution, Apparel, High Tech and Computer Software, Health Care, and various special niche industries.

Mr. Marshall has performed appraisals for the Internal Revenue Service, the Federal Home Loan Bank, and the FSLIC.

### Court Testimony

Mr. Marshall provides consulting and expert testimony for litigation purposes including dissenting shareholder suits, divorce, lost profit suits, bankruptcy, etc. He has participated in cases litigated in Texas, Oklahoma, New York, New Mexico, and Connecticut.

## DAVID T. MARSHALL, CFA, ASA (CONTINUED)

### Education

Mr. Marshall holds a Masters in Finance degree from the Wharton Graduate School, University of Pennsylvania, 1978.  He graduated in 1974 from the University of Texas at Austin with a Bachelor of Business Administration degree.  He became a Chartered Financial Analyst (CFA) in 1982 and a senior member of the American Society of Appraisers (ASA) in 1983.  Mr. Marshall also served on the Board of Examiners for the American Society of Appraisers.

### Professional Associations

Senior Member, American Society of Appraisers, Business Valuation Discipline
Past President, D/FW Chapter, American Society of Appraisers
Member, Dallas Association of Investment Analysts
Member, Association for Investment, Management and Research
Member, Dallas Estate Planning Council
Member, The ESOP Association

**Form 1040** EXTENSION GRANTED TO 10/17 **2015** U.S. Individual Income Tax Return   OMB No. 1545-0074   IRS Use Only - Do not write or staple in this space.

For the year Jan. 1-Dec. 31, 2015, or other tax year beginning _____, 2015, ending _____, 20____   See separate instructions.

| Your first name and initial | Last name | Your social security number |
|---|---|---|
| KEVIN | KEEFER | ▆▆▆▆▆▆ |

| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
|---|---|---|
| PATRICIA | KEEFER | ▆▆▆▆▆▆ |

Home address (number and street). If you have a P.O. box, see instructions.   Apt. no.
4723 BYRON CIRCLE

▲ Make sure the SSN(s) above and on line 6c are correct.

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below.
IRVING, TX  75038

Presidential Election Campaign
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.   ☐ You  ☐ Spouse

| Foreign country name | Foreign province/state/county | Foreign postal code |
|---|---|---|

**Filing Status**
Check only one box.

1 ☐ Single
2 ☒ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, do not check box 6a
b ☒ Spouse

Boxes checked on 6a and 6b ... **2**

c Dependents:

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if child under age 17 qualifying for child tax credit |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

If more than four dependents, see instructions and check here ▶ ☐

No. of children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see instructions)
Dependents on 6c not entered above
Add numbers on lines above ▶ **2**

d Total number of exemptions claimed

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | STMT 7 | 7 | ▆▆▆ |
| 8a | Taxable interest. Attach Schedule B if required | | 8a | |
| b | Tax-exempt interest. Do not include on line 8a | 8b | | |
| 9a | Ordinary dividends. Attach Schedule B if required | | 9a | |
| b | Qualified dividends | 9b | | ▆▆▆ |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes | STMT 2   STMT 4 | 10 | |
| 11 | Alimony received | | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | | 14 | |
| 15a | IRA distributions | 15a | b Taxable amount | 15b | |
| 16a | Pensions and annuities | 16a | b Taxable amount | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | | 17 | |
| 18 | Farm income or (loss). Attach Schedule F | | 18 | |
| 19 | Unemployment compensation | | 19 | |
| 20a | Social security benefits | 20a | b Taxable amount | 20b | |
| 21 | Other income. List type and amount | | 21 | |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your total income ▶ | | 22 | |

**Adjusted Gross Income**

| | | | |
|---|---|---|
| 23 | Educator expenses | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | |
| 27 | Deductible part of self-employment tax. Attach Schedule SE | 27 | ▆▆▆ |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 | |
| 29 | Self-employed health insurance deduction | 29 | |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid  b Recipient's SSN ▶ | 31a | |
| 32 | IRA deduction | 32 | |
| 33 | Student loan interest deduction | 33 | |
| 34 | Tuition and fees. Attach Form 8917 | 34 | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | |
| 36 | Add lines 23 through 35 | | 36 | ▆▆▆ |
| 37 | Subtract line 36 from line 22. This is your adjusted gross income ▶ | | 37 | |

510001 12-30-15

LHA  For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.   Form **1040** (2015)

AS CHANGED BY IRS AUDIT - DO NOT PROCESS

Form 1040 (2015)    KEVIN & PATRICIA KEEFER    Page **2**

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 38 | Amount from line 37 (adjusted gross income) | 38 | |
| Standard Deduction for – | 39a | Check if: ☐ You were born before January 2, 1951, ☐ Blind. ☐ Spouse was born before January 2, 1951, ☐ Blind. | Total boxes checked ▶ 39a | |
| ● People who check any box on line 39a or 39b **or** who can be claimed as a dependent, see instructions. | b | If your spouse itemizes on a separate return or you were a dual-status alien, check here ▶ 39b ☐ | | |
| | 40 | Itemized deductions (from Schedule A) or your **standard deduction** (see left margin) | 40 | 1,336,365. |
| | 41 | Subtract line 40 from line 38 | 41 | |
| | 42 | **Exemptions.** If line 38 is $154,950 or less, multiply $4,000 by the number on line 6d. Otherwise, see inst. | 42 | |
| ● All others: Single or Married filing separately, $6,300 | 43 | **Taxable income.** Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | 43 | |
| | 44 | **Tax.** Check if any from: **a** ☐ Form(s) 8814 **b** ☐ Form 4972 **c** ☐ | 44 | |
| | 45 | **Alternative minimum tax.** Attach Form 6251 | 45 | |
| Married filing jointly or Qualifying widow(er), $12,600 | 46 | Excess advance premium tax credit repayment. Attach Form 8962 | 46 | |
| | 47 | Add lines 44, 45, and 46 ▶ | 47 | |
| Head of household, $9,250 | 48 | Foreign tax credit. Attach Form 1116 if required | 48 | |
| | 49 | Credit for child and dependent care expenses. Attach Form 2441 | 49 | |
| | 50 | Education credits from Form 8863, line 19 | 50 | |
| | 51 | Retirement savings contributions credit. Attach Form 8880 | 51 | |
| | 52 | Child tax credit. Attach Schedule 8812, if required | 52 | |
| | 53 | Residential energy credits. Attach Form 5695 | 53 | |
| | 54 | Other credits from Form: **a** ☒ 3800 **b** ☐ 8801 **c** ☐ | 54 | |
| | 55 | Add lines 48 through 54. These are your **total credits** | 55 | |
| | 56 | Subtract line 55 from line 47. If line 55 is more than line 47, enter -0- ▶ | 56 | |
| **Other Taxes** | 57 | Self-employment tax. Attach Schedule SE | 57 | |
| | 58 | Unreported social security and Medicare tax from Form: **a** ☐ 4137 **b** ☐ 8919 | 58 | |
| | 59 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | 59 | |
| | 60a | Household employment taxes from Schedule H | 60a | |
| | b | First-time homebuyer credit repayment. Attach Form 5405 if required | 60b | |
| | 61 | Health care: Individual responsibility (see instructions) Full-year coverage ☒ | 61 | |
| | 62 | Taxes from: **a** ☒ Form 8959 **b** ☒ Form 8960 **c** ☐ Inst.; enter code(s) STATEMENT 11 | 62 | |
| | 63 | Add lines 56 through 62. This is your **total tax** ▶ | 63 | STATEMENT 10 |
| **Payments** | 64 | Federal income tax withheld from Forms W-2 and 1099 | 64 | |
| | 65 | 2015 estimated tax payments and amount applied from 2014 return | 65 | |
| If you have a qualifying child, attach Schedule EIC. | 66a | **Earned income credit (EIC)** | 66a | |
| | b | Nontaxable combat pay election | 66b | |
| | 67 | Additional child tax credit. Attach Schedule 8812 | 67 | |
| | 68 | American opportunity credit from Form 8863, line 8 | 68 | |
| | 69 | Net premium tax credit. Attach Form 8962 | 69 | |
| | 70 | Amount paid with request for extension to file | 70 | |
| | 71 | Excess social security and tier 1 RRTA tax withheld STMT 9 | 71 | |
| | 72 | Credit for federal tax on fuels. Attach Form 4136 | 72 | |
| | 73 | Credits from Form: **a** ☐ 2439 **b** ☐ Reserved **c** ☐ 8885 **d** ☐ | 73 | |
| | 74 | Add lines 64, 65, 66a, and 67 through 73. These are your **total payments** ▶ | 74 | |
| **Refund** | 75 | If line 74 is more than line 63, subtract line 63 from line 74. This is the amount you **overpaid** | 75 | |
| | 76a | Amount of line 75 you want **refunded to you.** If Form 8888 is attached, check here ▶ ☐ | 76a | |
| Direct deposit? See instructions. | ▶ b | Routing number ▶ c Type: ☐ Checking ☐ Savings ▶ d Account number | | |
| | 77 | Amount of line 75 you want **applied to your 2016 estimated tax** ▶ 77 | | |
| **Amount You Owe** | 78 | **Amount you owe.** Subtract line 74 from line 63. For details on how to pay, see instructions ▶ | 78 | 395,148. |
| | 79 | Estimated tax penalty (see instructions) 79 | | |
| **Third Party Designee** | Do you want to allow another person to discuss this return with the IRS (see instructions)? ☒ **Yes. Complete below.** ☐ No | | | |
| | Designee's name ▶ BRANT C. WEIGAND    Phone no. ▶ (818)786-5656    Personal identification number (PIN) | | | |

**Sign Here**
Joint return? See instructions. Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature | Date | Your occupation EXECUTIVE | Daytime phone number |
|---|---|---|---|
| ▶ Spouse's signature. If a joint return, **both** must sign. | Date | Spouse's occupation ACCOUNTANT | If the IRS sent you an Identity Protection PIN, enter it here |

**Paid Preparer Use Only**

| Print/Type preparer's name BRANT C. WEIGAND | Preparer's signature | Date | Check ☐ self-employed | PTIN |
|---|---|---|---|---|
| Firm's name ▶ GORELICK & USLANER, CPAS, A PROF. CORP. | | | Firm's EIN ▶ | |
| Firm's address ▶ 15260 VENTURA BLVD., STE 1705 SHERMAN OAKS, CA 91403 | | | Phone no. (818)786-5656 | |

510002 12-30-15

AS CHANGED BY IRS AUDIT - DO NOT PROCESS

Keefer, Kevin & Patricia-10

**63**

Page ___1___ of ___2___

Form **4549-A**
(January 2019)

Department of the Treasury-Internal Revenue Service

## Report of Income Tax Examination Changes
(Unagreed and Excepted Agreed)

| Name and address of taxpayer | Taxpayer Identification number | Return form number |
|---|---|---|
| KEVIN & PATRICIA KEEFER<br>4723 BYRON CIRCLE<br>IRVING  TX  75038-6319 | | 1040 |
| | Person with whom examination changes were discussed. | Name and title<br>Kenneth M. Horwitz |

| | Period Ended<br>12/31/2015 | Period Ended | Period Ended |
|---|---|---|---|
| 1. Adjustments to Income | | | |
| a. Itemized Deductions | 1,257,000.00 | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. From. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| 2. Total adjustments | 1,257,000.00 | | |
| 3. Taxable income per return or as previously adjusted | | | |
| 4. Corrected taxable income | | | |
|     Tax method | | | |
|     Filing status | | | |
| 5. Tax | | | |
| 6. Additional taxes/Alternative minimum tax | | | |
| 7. Corrected tax liability | | | |
| 8. Less    a. Foreign Tax Credit | | | |
|    credits   b. General Business Credit | | | |
|         c. | | | |
|         d. | | | |
| 9. Balance (line 7 less lines 8a through 8d) | | | |
| 10. Plus     a. Self Employment Tax | | | |
|    other    b. Net Investment Income Tax | | | |
|    taxes    c. Additional Medicare Tax | | | |
|         d. | | | |
| 11. Total corrected tax liability (line 9 plus lines 10a through 10d) | | | |
| 12. Total tax shown on return or as previously adjusted | | | |
| 13. Adjustments to:  a. | | | |
|               b. | | | |
|               c. | | | |
| 14. Deficiency-Increase in tax or (overassessment-decrease in tax) (line 11 less line 12 adjusted by lines 13a through 13c) | 423,304.00 | | |
| 15. Adjustments to prepayment credits - increase (decrease) | | | |
| 16. Balance due or (overpayment) - (line 14 adjusted by line 15) (excluding interest and penalties) | 423,304.00 | | |

**64**

Taxpayer Name: KEEPER, KEVIN & PATRICIA    Examiner: McLemore, Danielle
TIN: ▮▮▮▮▮▮
Tax Form:        1040                              Date:    08/10/2018,
                                                            05/20/2019,
                                                            05/21/2019
Tax Year (s):    201512

| Contributions | | | | |
|---|---|---|---|---|
| Tax Period | Per Return | Per Exam | Adjustment | Reference |
| 201512 | 1,257,000.00 | .00 | 1,257,000.00 | |

**Conclusion:** *(Reflects the final determination on the issue.)*

Charitable contribution of a debt-encumbered asset is treated in part as a contribution and in part as a sale. The charitable deduction is the excess of the fair market value of the property over the debts to which it is subject. The sale portion is driven by the amount of debt on the property. The seller/contributor is deemed to have realized an amount equal to any debt assumed by the donee or subject to which the donee takes the property. In this case, the seller/contributor would have proceeds of $870,195 his share of partnership liabilities.

In addition, the seller's basis must be allocated as between the sale and the contribution as per the amount of debt relieved versus the total value of the contribution. Given this scenario the seller/contributor would offset his $870,195 sale proceeds against basis of $548,033 producing a gain of $646,005 of which $65,546 would be treated as recapture and taxed at 25%.

*The following techniques are not intended to be all-inclusive nor are they mandatory steps to be followed. Judgment should be used in selecting the techniques that apply to each taxpayer.*

| Audit Steps: *(Document audit steps taken or to be taken.)* | Workpaper Reference |
|---|---|
| 1. Reconcile the amount(s) per return to taxpayer's records. | |
| 2. Verify amounts claimed and determine that the deduction was taken in the proper year. | |
| 3. Determine whether the payments were made to qualified organizations. | |
| 4. Determine that percent limitation is correctly computed, has not been exceeded, and that the contribution carryover is correct. | |
| 5. Determine if contributions claimed are nondeductible personal expenses and ascertain if donor received benefits or consideration in return for contributions. | |
| 6. In the case where property is contributed ascertain: type of property, cost and fair market value at the time of gift, whether donor retains some control over property and whether donee uses property to carry out its intended purpose. | |
| 7. Ensure the correct percentage (20%, 30%, 50%) on the limitation on deductions is applied. | |
| 8. Identify minimum cash threshold of $250 or more for any contribution during the year. | |
| 9. Some non-cash contributions have the potential of being a tax shelter scheme (e.g., gemstones, books, art work, etc.). | |

Schedule_A-Contributions_Lead_Sheet          Workpaper #              -1.1
Rev. 04/2010

DOJprod-0001680

| Taxpayer Name: | KEEFER, KEVIN & PATRICIA | Examiner: | McLemore, Danielle |
| TIN: | | | |
| Tax Form: | 1040 | Date: | 08/10/2018, 05/20/2019, 05/21/2019 |
| Tax Year (s): | 201512 | | |

## Contributions

| 10. If the non-cash contribution exceeds $500 then Form 8283 must be completed and attached to the file. | |
| 11. If non-cash contributions exceed $5,000 for one item or similar items, then validate written acknowledgement (Form 8283 section B) and appraisal. | |
| 12. If a tax shelter scheme is uncovered, the examiner should see group manager. | |
| 13. | |

**Facts:** *(Document the relevant facts.)*

TPP is a Certified Public Accountant and graduated from the University of Kansas with a Bachelor's degree in accounting and a Master's in Business. He has over 30 years of hospitality development, management and financial expertise. His background includes specializing in the development, operation and management of Marriott and Hilton branded select service hotels.

Taxpayers filed their 2015 tax return which included a noncash charitable contribution deduction in the amount of $1,257,000 for the donation of 4.000% limited partnership interest in Burbank HHG Hotel, LP to The PI Foundation, Inc a 50% organization. Per the Form 8283 the date of contribution was June 18, 2015.

Prior to the contribution the Burbank HHG Associates, LP had a 25% interest in Burbank HHG Hotel LP and Keefer Holdings LLC and Huntington Investors Group LLC makeup 99% and 1% respectively. The Kevin and Pat Keefer Trust had a 100% share of Keefer Holdings, LLC while Keefer Holdings, LLC and Kevin Keefer makeup 99.99% and .01% of Huntington Investors Group LLC Huntington Investors Group LLC respectively.

Review of the Burbank HHG Hotel, LP partnership agreements show that the first amendment to the second amended and restated agreement of Burbank HHG Hotel, LP dated May 27, 2015 limited partners may transfer their percentage of interest to a charitable organization. Keefer Holdings LLC transferred/assigned its 4% limited partnership interest in Burbank HHG Hotel, LP to the Kevin and Pat Keefer Trust on May 29, 2015. Then on the same day the Kevin and Pat Keefer Trust turned around and transferred/assigned that 4% limited partnership interest to Kevin Keefer. Mr. Keefer transferred/assigned the 4% limited partnership interest to The PI Foundation on June 18, 2015. Examiner was provided with a signed but not accurately dated consent from Brent Andrus, President and sole general partner of Burbank HHG Hotel, LP consenting and agreeing to the transfer of assigned interest to Keefer Holdings, LLC, the Kevin and Pat Keefer Trust, and Kevin M, Keefer.

A deduction of donated property valued at more than $500,000 must include a qualified appraisal made by a qualified appraiser and Form 8283 attached to the tax. The return as filed did include Form 8283 and it was signed by both the appraiser and receiving institution. Taxpayers filed return included an attached appraisal report as prepared by Katzen, Marshall & Associates, Inc and dated February 19, 2016. Per the appraisal the date of contribution and

| | | | | |
|---|---|---|---|---|
| **Taxpayer Name:** | KEEPER, KEVIN & PATRICIA | **Examiner:** | McLemore, Danielle | |
| **TIN:** | ▓▓▓▓▓▓▓ | | | |
| **Tax Form:** | 1040 | **Date:** | 08/10/2018, 05/20/2019, 05/21/2019 | |
| **Tax Year (s):** | 201512 | | | |

## Contributions

appraisal date are June 18, 2015. However, Examiner made the determination that the appraisal was not qualified because it did not include the employer identification number (EIN) or Social Security number of the qualified appraiser or the person who employs or engages the qualified appraiser. An appraisal that does not contain each of the eleven provisions as described in Treas. Reg. § 1.170A-13(c)(3)(ii)(E) is not a qualified appraisal.

The Taxpayer provided contemporaneous written acknowledgment (CWA) from the donee organization showing the donee organization name, date of receipt, a description of the property the Taxpayer transferred to the donee, and a statement that the donee organization did not provide any goods or services in consideration for the donation. However, the donee The PI Foundation, Inc. is a Donor Advised Fund (DAF) located in Salt Lake City, UT and the CWA did not state that the organization had "exclusive legal control over the assets contributed". Sec 170(f)(18)(B) says no income tax deduction for gift to DAF unless CWA states "exclusive legal control".

Valuation per the appraisal gives the gift a Fair Market Value (FMV) of $1,257,000 at the time of contribution. Taxpayer's computed basis in the property is $548,033. Although the contribution involves an outright gift with no cash received, the Taxpayer's $870,195 share of the partnership liabilities on the gifted partnership interest is treated as an amount realized on sale and triggers application of the bargain sale rules. The Taxpayer's basis was prorated between the portion deemed contributed and the portion deemed sold. The Taxpayer recognized, $646,005 as gain, the difference between the amount realized and the basis prorated to the deemed sale.

**Law:** *(Tax law, regulations, court cases and other authorities. If unagreed, include argument.)*
IRC 170
Section 170(a)(1) allows as a deduction for any charitable contribution made within the taxable year. If the taxpayer makes a charitable contribution of property other than money, the amount of the contribution is generally equal to the FMV of the property when contributed. See Treas. Reg.
§ 1.170A-1(c)(1). "A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary." I.R.C. § 170(a)(1).

The Secretary has prescribed extensive regulations governing verification of charitable contributions. See Treas. Reg. § 1.170A-13. A taxpayer who claims a deduction for a contribution of property valued in excess of $5,000 must obtain a "qualified appraisal" of the property. I.R.C. § 170(f)(11)(C). He must also attach to his return "such information regarding such property and such appraisal as the Secretary may require," which includes a fully completed appraisal summary on Form 8283. Id.; see Jorgenson v. Commissioner, T.C. Memo. 2000-38, 79 T.C.M. 1444, 1450; Treas. Reg. § 1.170A- 13(c)(2).

The taxpayer must attach a copy of that qualified appraisal to his return, when a contribution of property in excess of $500,000 is claimed as a charitable deduction. I.R.C. §170(f)(11)(D).

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | KEEFER, KEVIN & PATRICIA | **Examiner:** | McLemore, Danielle |
| **TIN:** | ▇▇▇▇▇▇▇ | | |
| **Tax Form:** | 1040 | **Date:** | 08/10/2018, 05/20/2019, 05/21/2019 |
| **Tax Year (s):** | 201512 | | |

## Contributions

Section 170(f)(11)(E)(i) defines "qualified appraisal" to mean an appraisal performed by a qualified appraiser that "is treated for purposes of this paragraph as a qualified appraisal under regulations or other guidance prescribed by the Secretary."

The regulations prescribed by the Secretary require that a "qualified appraisal" include (among other things) the following: (1) a description of the property in sufficient detail for a person who is not generally familiar with the type of property to ascertain that the property that was appraised is the property that was (or will be) contributed, (2) a statement that the appraisal was prepared for income tax purposes, (3) the date (or expected date) of contribution to the donee (4) the date (or dates) on which the property was appraised, and (5) the appraised fair market value of the property. Treas. Reg. § 1.170A-13(c)(3)(ii).

In Bond v. Commissioner, 100 T.C. 32, 41 (1993), the Court held that the regulatory reporting requirements listed above, while "helpful to respondent in the processing and auditing of returns on which charitable deductions are claimed," are "directory and not mandatory." Thus, in appropriate circumstances, these requirements can be satisfied by substantial, rather than literal, compliance. Id. at 42; see Hewitt v. Commissioner, 109 T.C. 258, 265 (1997), aff'd without published opinion, 166 F.3d 332 (4th Cir. 1998). While substantial compliance may excuse minor, technical, or merely procedural defects, it offers no relief to taxpayers who have failed to

disclose information that goes to "the essential requirements of the governing statute." Estate of Evenchik v. Commissioner, T.C. Memo. 2013-34, 105 T.C.M. (CCH) 1231, 1234 (quoting Estate of Clause v. Commissioner, 122 T.C. 115, 122 (2004)).

Specific citations:

**Taxpayer Position:** *(If applicable)*

KEEF

| Contemporaneous Written Acknowledgement (CWA) | Cite | Met | Not Met |
|---|---|---|---|
| The donee organization provided taxpayer with a CWA. | 170(f)(8)(A) 1.170A-13(f)(1) | ✓ | |
| *The written acknowledgement includes:* | 170(f)(8)(B) | / | |
| The name of the donee organization. | 1.170A-13(b)(1)(i) | ✓ | |
| The amount of cash and a description (but not value) of any property other than cash contributed. | 170(f)(8)(B)(i) 1.170A-13(f)(2)(i) | ✓ | |
| Whether the donee organization provided any goods or services in consideration, in whole or in part, for any property described. | 170(f)(8)(B)(ii) 1.170A-13(f)(2)(ii) | ✓ | |
| A description and good faith estimate of the value of any goods or services referred to or, if such goods or services consist solely of intangible religious benefits, a statement to that effect. | 170(f)(8)(B)(iii) 1.170A-13(f)(2)(iii)&(iv) | ✓ | |
| The date of the acknowledgement. | 1.170A-13(b)(1)(ii) | ✓ | |
| *Contemporaneous:* The CWA was obtained by the taxpayer on or before the earlier of-- (i) the date on which the taxpayer files a return for the taxable year in which the contribution was made, **or** (ii) the due date (including extensions) for filing such return. *Note: an acknowledgement obtained from the donee organization DURING an audit/examination does not meet the contemporaneous requirement.* | 170(f)(8)(C) 1.170A-13(f)(3) | ✓ | |
| | | | |
| *If Contributions to donor advised funds:* | 170(f)(18) | ✓ | |
| The donor advised fund is not otherwise excluded under IRC 4966(d)(1)) or 4943(f)(5). | 170(f)(18)(A) | ✓ | |
| The CWA states that the donor advised fund "has exclusive legal control over the assets contributed." | 170(f)(18)(B) | | ✓ |
| | | | |
| *If Contributions to certain trusts*, a CWA may not be required or the requirements of the CWA may be different. | 1.170A-13(f)(13) | N/A | |
| | | | |
| *Purchase of an annuity.* If a taxpayer purchases an annuity from a charitable organization and claims a charitable contribution deduction of $250 or more for the excess of the amount paid over the value of the annuity, the contemporaneous written acknowledgment must state whether any goods or services in addition to the annuity were provided to the taxpayer. The contemporaneous written acknowledgment is not required to include a good faith estimate of the value of the annuity. | 1.170A-13(f)(16) | N/A | |

**69**

| Appraisal Summary - Form 8283 | Cite | Met | Not Met |
|---|---|---|---|
| Information is provided on Form 8283 | 1.170A-13(c)(4)(i)(A) | ✓ | |
| Is signed and dated by the donee | 1.170A-13(c)(4)(i)(B) | ✓ | |
| Is signed and dated by a qualified appraiser with required acknowledgement | 1.170A-13(c)(4)(i)(C) | ✓ | |
| The name and taxpayer identification number of the donor | 1.170A-13(c)(4)(ii)(A) | ✓ | |
| A description of the property in sufficient detail for a person who is not generally familiar with the type of property to ascertain that the property that was appraised is the property that was contributed; | 1.170A-13(c)(4)(ii)(B) | ✓ | |
| In the case of tangible property, a brief summary of the physical condition of the property at the time of contribution | 1.170A-13(c)(4)(ii)(c) | N/A | |
| The manner of acquisition (purchase, exchange, gift or bequest), and the date of the property acquisition by the donor, or if the property was created by the donor, the date the property was completed; | 1.170A-13(c)(4)(ii)(D) | ✓ | |
| The cost or other basis of the property, adjusted as provided in IRC § 1016; | 1.170A-13(c)(4)(ii)(E) | ✓ | |
| The name, address, and taxpayer identification number of the donee; | 1.170A-13(c)(4)(ii)(F) | ✓ | |
| The date the donee received the property; | 1.170A-13(c)(4)(ii)(G) | ✓ | |
| A statement explaining whether the charitable contribution was made by means of a bargain sale and the amount of any consideration received from the donee for the contribution; | 1.170A-13(c)(4)(ii)(H) | ✓ | |
| The name, address, and taxpayer identification number of the qualified appraiser who signs the appraisal summary (and if the appraiser is acting in the capacity as a partner, employee or independent contractor engaged other than by the donor, the name, address, and identifying no. of the partnership or the person who employs or engages the appraiser); | 1.170A-13(c)(4)(ii)(I) | ✓ | |
| The appraised fair market value of the property on the date of contribution; | 1.170A-13(c)(4)(ii)(J) | ✓ | |
| The appraised fair market value of the property on the date of contribution; | 1.170A-13(c)(4)(ii)(K) | ✓ | |
| The appraisers information as to qualifications as required by Treas. Reg 1.170A-13(c)(5)(i) | 1.170A-13(c)(4)(ii)(L) | ✓ | |
| Other information as may be specified included donee signature | 1.170A-13(c)(4)(ii)(M) | ✓ | |

**70**

| Qualified Appraisal | Citation | Met | Not Met |
|---|---|---|---|
| **Internal Revenue Code** | | | |
| Qualified appraisal.--The term "qualified appraisal" means, with respect to any property, an appraisal of such property which-- | 170(f)(11)(E) | | |
| is treated for purposes of this paragraph as a qualified appraisal under regulations or other guidance prescribed by the Secretary and | 170(f)(11)(E)(i) | | |
| is conducted by a qualified appraiser in accordance with generally accepted appraisal standards and any regulations or other guidance prescribed under subclause | 170(f)(11)(E)(ii) | ✓ | |
| **Notice 2006-96** | | | |
| Qualified appraisal. An appraisal will be treated as a qualified appraisal within the meaning of § 170(f)(11)(E) if the appraisal complies with all of the requirements of § 1.170A-13(c) of the existing regulations (except to the extent the regulations are inconsistent with § 170(f)(11)), and is conducted by a qualified appraiser in accordance with generally accepted appraisal | Notice 2006-96 Section .02(1) | | |
| Generally accepted appraisal standards. An appraisal will be treated as having been conducted in accordance with generally accepted appraisal standards within the meaning of § 170(f)(11)(E)(i)(II) if, for example, the appraisal is consistent with the substance and principles of the Uniform Standards of Professional Appraisal Practice ("USPAP"), as developed by the Appraisal Standards Board of the Appraisal Foundation. | Notice 2006-96 Section .02(2) | | |
| **Regulations** | | • | |
| Appraisal made not earlier than 60 days prior to the date of contributions nor later than the due date of the return including extensions. | 1.170A-13(c)(3)(i)(A) | ✓ | |
| Is signed dated and prepared by a qualified appraiser | 1.170A-13(c)(3)(i)(B) | | |
| Includes the information required by 1.170A-1(c)(3)(ii) | 1.170A-13(c)(5) | ✓ | |
| Does not involve a prohibited appraisal fee | 1.170A-13(c)(6) | ✓ | |
| Qualified Appraisal - Required Information | 1.170A-13(c)(3)(ii) | ✓ | |
| A description of the property in sufficient detail for a person who is not generally familiar with the type of property to ascertain that the property that was appraised is the property that was contributed; | 1.170A-13(c)(3)(ii)(A) | ✓ | |
| In the case of tangible property, the physical condition of the property | 1.170A-13(c)(3)(ii)(B) | N/A | |
| The date or expected date of the contribution; | 1.170A-13(c)(3)(ii)(C) | | |
| entered into) by or on behalf of the donor or donee relating to the use, sale, or other disposition of the contributed property (such as conditions concerning the use, sale or of disposition of the property, the right to income from the property or possession of the property, or any earmarking of the donated property for a | 1.170A-13(c)(3)(ii)(D) | ✓ | |
| The name, address, and identifying number of the appraiser (and if the appraiser is acting in his or her capacity as a partner, employee or independent contractor engaged by a person other than by the donor, the name, address, and identifying number of | 1.170A-13(c)(3)(ii)(E) | | ✓ |
| The qualifications of the appraiser, including the appraiser's background, experience, education, and membership in professional organization | 1.170A-13(c)(3)(ii)(F) | ✓ | |
| A statement that the appraisal was prepared for tax purposes; | 1.170A-13(c)(3)(ii)(G) | ✓ | |
| The date the property was appraised; | 1.170A-13(c)(3)(ii)(H) | ✓ | |
| The appraised fair market value of the contribution | 1.170A-13(c)(3)(ii)(I) | ✓ | |
| The method of valuation | 1.170A-13(c)(3)(ii)(J) | ✓ | |
| The specific basis for the valuation | 1.170A-13(c)(3)(ii)(K) | ✓ | |

**71**

| Qualified Appraiser | Cite | Met | Not Met |
|---|---|---|---|
| **Internal Revenue Code** | | | |
| qualified appraiser' means an individual | 170(f)(11)(E)(ii) | | |
| who has earned an appraisal designation from a recognized professional appraiser organization | | General | |
| or | | | |
| met minimum education and experience requirements set forth in regulations prescribed by the Secretary, | 170(f)(11)(E)(ii)(I) | General | N/A |
| regularly performs appraisals for which the individual receives compensation | 170(f)(11)(E)(ii)(II) | General | X |
| meets such other requirements as may be prescribed by the Secretary in regulations or other guidance. | 170(f)(11)(E)(ii)(III) | General | See Notice 2006-96 |
| **Notice 2006-96** | | | |
| Qualified Appraiser - Transitional Terms | | | |
| *Appraisal designation*. An appraiser will be treated as having earned an appraisal designation from a recognized professional appraiser organization within the meaning of § **170(f)(11)(E)(ii)(I)** if the appraisal designation is awarded on the basis of demonstrated competency in valuing the type of property for which the appraisal is performed. | Notice 2006-96 Section.03(1) | General | |
| Minimum education and experience. An appraiser will be treated as having met minimum education and experience requirements within the meaning of § 170(f)(11)(E)(ii)(I) | Notice 2006-96 Section.03(3) | General | |
| (a) *For real property* | | | |
| For returns filed after October 19, 2006, the appraiser is licensed or certified for the type of property being appraised in the state in which the appraised real property is located. | Notice 2006-96 Section.03(a)(ii) | General | N/A |
| (b) *For property other than real property* -- | | | |
| For returns filed after February 16, 2007, the appraiser has | Notice 2006-96 Section.03(b)(ii) | General | |
| (A) successfully completed college or professional-level coursework that is relevant to the property being valued, | | General | ✓ |
| (B) obtained at least two years of experience in the trade or business of buying, selling, or valuing the type of property being valued | | General | ✓ |
| and | | | |
| (C) fully described in the appraisal the appraiser's education and experience that qualify the appraiser to value the type of property being valued | | General | |
| An individual shall not be treated as a qualified appraiser with respect to any specific appraisal unless | 170(f)(11)(E)(iii) | Specific | |
| the individual demonstrates verifiable education and experience in valuing the type of property subject to the appraisal | 170(f)(11)(E)(iii)(I) | Specific | |
| and | | | |

DOJprod-0001687

| | | | | |
|---|---|---|---|---|
| The individual has not been prohibited from practicing before the Internal Revenue Service by the Secretary under section 330(c) of title 31, United States Code, at any time during the 3-year period ending on the date of the appraisal. | 170(f)(11)(E)(iii)(II) | Specific | X | |
| **Notice 2006-96** | | | | |
| *Education and experience in valuing the type of property*. An appraiser will be treated as having demonstrated verifiable education and experience in valuing the type of property subject to the appraisal within the meaning of § **170(f)(11)(E)(iii)(I)** if the appraiser makes a declaration in the appraisal that, because of the appraiser's background, experience, education, and membership in professional associations, the appraiser is qualified to make appraisals of the type of property being valued. See also § 1.170A-13(c)(5). | Notice 2006-96 Section.03(1) | Specific | | |
| **Regulations** | | | | |
| The term qualified appraiser means an individual (other than a person described in paragraph (c)(5)(iv) of this section) who includes on the appraisal summary (described in paragraph (c)(4) of this section), a declaration that-- | 1.170A-13(c)(5) | | | |
| (A) The individual either holds himself or herself out to the public as an appraiser or performs appraisals on a regular basis; | 1.170A-13(c)(5)(A) | | | |
| (B) Because of the appraiser's qualifications as described in the appraisal (pursuant to paragraph (c)(3)(ii)(F) of this section), the appraiser is qualified to make appraisals of the type of property being valued; | 1.170A-13(c)(5)(B) | | | |
| (C) The appraiser is not one of the persons described in paragraph (c)(5)(iv) of this section; and | 1.170A-13(c)(5)(C) | | | |
| (D) The appraiser understands that an intentionally false or fraudulent overstatement of the value of the property described in the qualified appraisal or appraisal summary may subject the appraiser to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover, the appraiser may have appraisals disregarded pursuant to 31 U.S.C. 330(c) (see paragraph (c)(3)(iii) of this section). | 1.170A-13(c)(5)(D) | | | |

**73**

[Federal Register Volume 83, Number 146 (Monday, July 30, 2018)]
[Rules and Regulations]
[Pages 36417-36428]
From the Federal Register Online via the Government Publishing Office [www.gpo.gov]
[FR Doc No: 2018-15734]

=======================================================================
-----------------------------------------------------------------------

DEPARTMENT OF THE TREASURY

Internal Revenue Service

26 CFR Parts 1 and 602

[TD 9836]
RIN 1545-BH62


Substantiation and Reporting Requirements for Cash and Noncash
Charitable Contribution Deductions

AGENCY: Internal Revenue Service (IRS), Treasury.

ACTION: Final regulations.

-----------------------------------------------------------------------

SUMMARY: These final regulations provide guidance concerning
substantiation and reporting requirements for cash and noncash
charitable contributions. The final regulations reflect the enactment
of provisions of the American Jobs Creation Act of 2004 and the Pension
Protection Act of 2006. These regulations provide guidance to
individuals, partnerships, and corporations that make charitable
contributions.

DATES: Effective date: These regulations are effective on July 30,
2018.
    Applicability dates: For dates of applicability, see Sec. Sec.
1.170A-1(k), 1.170A-14(j), 1.170A-15(h), 1.170A-16(g), 1.170A-17(c),
1.170A-18(d), 1.664-1(f), and 1.6050L-1(h).

FOR FURTHER INFORMATION CONTACT: Charles Gorham at (202) 317-7003 (not
a toll-free number).

SUPPLEMENTARY INFORMATION:

Paperwork Reduction Act

    The collections of information contained in these final regulations
have been reviewed and approved by the Office of Management and Budget
in accordance with the Paperwork Reduction Act of 1995 (44 U.S.C.
3507(d)) under control number 1545-1953.
    The collections of information in these final regulations are in
Sec. Sec.  1.170A-15(a) and (d)(1); 1.170A-16(a), (b), (c), (d), (e),
and (f); and 1.170A-18(a)(2) and (b). These collections of information
are required to obtain a benefit and will enable the IRS to determine
if a taxpayer is entitled to a claimed deduction for a charitable
contribution.
    An agency may not conduct or sponsor, and a person is not required
to respond to, a collection of information unless it displays a valid
control number.
    Books or records relating to a collection of information must be

**74**

retained as long as their contents may become material in the
administration of any internal revenue law. Generally, tax returns and
return information are confidential, as required by section 6103.

Background

    This document contains amendments to the Income Tax Regulations, 26
CFR parts 1 and 602, relating to substantiating and reporting
deductions for charitable contributions under section 170 of the
Internal Revenue Code. These final regulations reflect amendments to
section 170 made by section 883 of the American Jobs Creation Act of
2004, Public Law 108-357 (118 Stat. 1418, 1631) (Jobs Act), and
sections 1216, 1217, and 1219 of the Pension Protection Act of 2006,
Public Law 109-280 (120 Stat. 780, 1079-83) (PPA), which added new
rules for substantiating charitable contributions. The final
regulations also update cross-references to the section 170 regulations
in other regulations.
    Section 170(f)(8), which has been in the Code since 1993, provides
that no deduction shall be allowed for any contribution of $250 or
more, cash or noncash, unless the taxpayer substantiates the
contribution with a contemporaneous written acknowledgment of the
contribution by the donee organization. The contemporaneous written
acknowledgment must include: (1) The amount of cash and a description
(but not value) of any property other than cash contributed; (2) a
statement of whether the donee organization provided any goods or
services in consideration, in whole or in part, for any such cash or
property; and (3) a description and good faith estimate of the value of
any such goods or services or, if such goods or services consist solely
of intangible religious benefits, a statement to that effect.
    Section 170(f)(11), as added by section 883 of the Jobs Act,
restates, in part, section 155(a) of the Deficit Reduction Act of 1984
and contains reporting and substantiation requirements relating to the
allowance of deductions for noncash charitable contributions. Under
section 170(f)(11)(C), taxpayers are required to obtain a qualified
appraisal for donated property for which a deduction of more than
$5,000 is claimed.
    Under section 170(f)(11)(D), a qualified appraisal must be attached
to any tax return claiming a deduction of more than $500,000. Section
170(h)(4)(B), as added by section 1213 of the PPA, adds the requirement
that a qualified appraisal must be included with the taxpayer's return
for the taxable year of the contribution for any contribution of a
qualified real property interest that is a restriction as to the
exterior of a building described in section 170(h)(4)(C)(ii).
    Section 170(f)(11)(E), as amended by section 1219 of the PPA,
provides statutory definitions of qualified appraisal and qualified
appraiser for appraisals prepared with respect to returns filed after
August 17, 2006.
    Section 170(f)(11)(E)(i) provides that the term qualified appraisal
means an appraisal that is (1) treated as a qualified appraisal under
regulations or other guidance prescribed by the Secretary, and (2)
conducted by a qualified appraiser in accordance with generally
accepted appraisal standards and any regulations or other guidance
prescribed by the Secretary.
    Section 170(f)(11)(E)(ii) provides that the term qualified
appraiser means an individual who (1) has earned an appraisal
designation from a recognized professional appraiser organization or
has otherwise met minimum education and experience requirements set
forth in regulations prescribed by the Secretary, (2) regularly
performs appraisals for which the individual receives compensation, and
(3) meets such other requirements as may be prescribed by the Secretary
in regulations or other

[[Page 36418]]

guidance. Section 170(f)(11)(E)(iii) provides that an individual will

any goods or services were provided in exchange for the contribution.
Although there are different requirements under sections 170(f)(8) and
170(f)(17), Sec.  1.170A-15(a)(3) of the final regulations provides
that a single written acknowledgment that satisfies all substantiation
requirements under both sections 170(f)(8) and 170(f)(17) is adequate
substantiation for contributions of a cash, check, or other monetary
gift.

II. Noncash Substantiation Requirements

    Section 1.170A-16 implements the requirements of section 170(f)(11)
for noncash contributions, as added by the Jobs Act, and clarifies that
these rules are in addition to the requirements in section 170(f)(8).
    Proposed and final Sec.  1.170A-16 provide that a donor who claims
a deduction for a noncash contribution of less than $250 is required
only to obtain a receipt from the donee or keep reliable records. A
donor who claims a noncash contribution of at least $250 but not more
than $500 is required only to obtain a contemporaneous written
acknowledgment, as provided under section 170(f)(8) and Sec.  1.170A-
13(f). For claimed noncash contributions of more than $500 but not more
than $5,000, the donor must obtain a contemporaneous written
acknowledgment and must also file a completed Form 8283 (Section A),
``Noncash Charitable Contributions,'' with the return on which the
deduction is claimed. For claimed noncash contributions of more than
$5,000, in addition to a contemporaneous written acknowledgment, the
donor generally must obtain a qualified appraisal and must also
complete and file either Section A or Section B of Form 8283 (depending
on the type of property contributed) with the return on which the
deduction is claimed. For claimed noncash contributions of more than
$500,000, the donor must also attach a copy of the qualified appraisal
to the return for the taxable year in which the contribution is made.
    Section 170(f)(11)(F) provides that for purposes of the $500,
$5,000, and $500,000 thresholds in section 170(f)(11), similar items
contributed during the taxable year are treated as one property. In
determining whether a contribution meets the $250 threshold, Sec.
1.170A-13(f)(1) provides that separate contributions made during the
tax year, regardless of whether the sum of those contributions equal or
exceed $250, are not combined. The proposed and final regulations also
provide that the requirements for substantiation that must be submitted
with a return also apply to the return for any carryover year under
section 170(d).

A. Reasonable Cause Exception

    In light of recent case law (see Crimi v. Commissioner, T.C. Memo.
2013-51), the paragraph relating to the reasonable cause exception set
forth in proposed regulation Sec.  1.170A-16(f)(6) has been deleted
from the final regulations because it is inconsistent with the Tax
Court's position. In Crimi, the IRS argued that there was no qualified
appraisal. The Tax Court discussed the doctrine of substantial
compliance with respect to the qualified appraisal regulation, but
stated that it was unnecessary to decide whether it was applicable to
the petitioners' case because they established that the failure was due
to reasonable cause. Specifically, the court stated that a reasonable
cause inquiry is ``inherently a fact-intensive one, and facts and
circumstances must be judged on a case-by-case basis.'' Id. at *99. The
court found that petitioners reasonably and in good faith relied on
their long-time certified public accountant's advice that their
appraisal met all the legal requirements to claim the deduction. Thus,
the final regulations do not contain a standard for the reasonable
cause exception.

B. Appraiser Privacy Concerns

    A number of commenters expressed concern over appraisers' privacy

if the appraiser's social security number is required on qualified appraisals and Forms 8283 (Section B). This concern was addressed by the proposed regulations. Both the proposed and final regulations require an appraiser to use a taxpayer identification number on an appraisal, but that number does not need to be the appraiser's social security number. An appraiser may use an employer identification number, which may be obtained by: (1) Applying on the IRS website (www.regulationsgov); or (2) filing a completed Form SS-4, Application for Employer Identification Number, by mail or by fax. The IRS has modified the instructions to Form 8283 to make clear that an appraiser may use either a social security number or an employer identification number.

C. Form 8283 Is Not a Contemporaneous Written Acknowledgment

One commenter asked whether a Form 8283 can satisfy the requirement for a contemporaneous written acknowledgment under section 170(f)(8). Although no format is prescribed for a contemporaneous written acknowledgment (for example, an email may qualify), a contemporaneous written acknowledgment of a contribution by the donee organization must contain all of the information required by section 170(f)(8)(B). Moreover, section 170(f)(8)(A) states that the acknowledgment is made ``by the donee organization.'' Only Section B, part IV of Form 8283, completed for property valued at over $5,000, is a donee acknowledgment, and this acknowledgment only contains some of the information required by section 170(f)(8)(B). Accordingly, even a fully-completed Form 8283 does not satisfy the requirements of section 170(f)(8).

D. Form 8283 (Section B) Provided to Donee

Another commenter suggested that the Form 8283 (Section B) should be required to be fully completed, including the appraiser information and the appraised or claimed value of the property, before the donor obtains the donee's signature. Section 1.170A-16(d)(5)(iii) of the proposed regulations provides that specific portions of the Form 8283 (Section B) must be completed before it is signed by the donee, but that the Form 8283 (Section B) does not need to contain certain other information, such as the appraiser information and the appraised or claimed value of the property, before the donee signs the form. Regardless of any benefits that may result from additional information sharing, the public should have the opportunity to comment on any proposed requirement to share additional information with the donee. Accordingly, the final regulations adopt the proposed regulation language without adoption of this suggestion.

E. Attaching Appraisal to Carryover Year Returns

One commenter suggested deleting the requirement in the regulations to attach an appraisal to the tax returns for carryover years. Because the need for the IRS to have the appraisal attached to each return reflecting a contribution in excess of $500,000 outweighs the burden on taxpayers to supply it, the final regulations retain this requirement. Accordingly, if the appraisal is required to be attached to the return for the

[[Page 36420]]

contribution year, it must also be attached to the returns for the carryover years.

III. New Requirements for Qualified Appraisals and Qualified Appraisers

As prescribed in section 170(f)(11)(E), as amended by the PPA, Sec. 1.170A-17 of the proposed and final regulations provides

# GLAST, PHILLIPS & MURRAY

A PROFESSIONAL CORPORATION

ATTORNEYS & COUNSELORS

14801 QUORUM DRIVE, SUITE 500
DALLAS, TEXAS 75254-1449
MAIN (972) 419-8300
FAX (972) 419-8329

WWW.GPM-LAW.COM

## FACSIMILE COVER LETTER

### PLEASE DELIVER THE FOLLOWING PAGES TO:

**NAME**:  Danielle McLemore

Internal Revenue Agent

IRS

**FIRM/COMPANY:**  4050 Alpha Rd.

5305 NDAL

Farmers Branch, TX  75244-4201

**CLIENT NO.:**

**OFFICE TELEPHONE NO.:**

**FAX TELEPHONE NO.:**  877 477-8685

**FROM:**  KENNETH M. HORWITZ          **DATE:  JULY 18, 2019**

**SENDER'S DIRECT DIAL TELEPHONE NO.:**  972 419-8383

**NUMBER OF PAGES (INCLUDING COVER):**  2

**RE:**  **Kevin and Patricia Keefer**

**TYE: December 31, 2015**

### SPECIAL INSTRUCTIONS

CONFIDENTIALITY NOTICE:  This e-mail and any attachments are for the exclusive and confidential use of the intended recipient.  If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message.  If you have received this in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system.  We do not waive client-attorney or work product privilege by the transmission of this message.

This communication is not a "written opinion" within the meaning of Treasury Circular 230

If you do not receive all pages, please call (972) 419-8300.          **78**

# GLAST, PHILLIPS & MURRAY

A PROFESSIONAL CORPORATION

ATTORNEYS & COUNSELORS

**Kenneth M. Horwitz**
KMH@GPM-LAW.COM
(972) 419-8383

14801 QUORUM DRIVE, SUITE 500
DALLAS, TEXAS 75254-1449
MAIN (972) 419-8300
FAX (972) 419-8329

WWW.GPM-LAW.COM

July 18, 2019

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**7018 2290 0001 1656 2303**

Via fax: 877 477-8685

Danielle McLemore
Internal Revenue Service
4050 Alpha Rd.
Mail Code: 5305 NDAL
Farmers Branch, TX 75244-4201

Re: Kevin and Patricia Keefer
TYE: December 31, 2015
SSN: ███████

Dear Ms. McLemore:

I am in receipt of your Revenue Agents Report dated July 15, 2019. I note that in your adjustments you completely ignore the provisions of Section 1011(b) of the Internal Revenue Code that provides that only in the event a deduction is allowable under Section 170 of the Code should adjusted basis is allocated as set forth therein. Your failure to correct your calculation results to reduce the recognized gain in connection with the asserted failure of the charitable gift is totally improper. The consequence, among other things, produces several hundred thousand dollars of excessive gain being allocated to the taxpayers in the event the government were to successfully argue the failure of the charitable contribution. Please correct your report.

Very truly yours,

GLAST, PHILLIPS & MURRAY, P.C.

Kenneth M. Horwitz

KMH/kh
7285737

**79**


KANSAS CITY MO 64999-0025

In reply refer to: 0744892484
Mar. 19, 2020    LTR 105C    3
201512 30             2
00001686
BODC: SB

KEVIN & PATRICIA KEEFER
% BRANT WEIGAND
15260 VENTURA BLVD STE 1705
SHERMAN OAKS  CA  91403-5381

029077

Taxpayer identification number:
        Kind of tax:  Individual
    Amount of claim : $423,304.00

Date of claims received:  Nov. 07, 2019
        Tax period :  Dec. 31, 2015

Dear Taxpayer:

### WE CAN'T ALLOW YOUR CLAIM

We disallowed your claim for credit for the tax period listed at
the top of this letter.

### WHY WE CAN'T ALLOW YOUR CLAIM

We can't allow your claim for refund.

You filed your claim more than 3 years after you filed your tax
return.

The postmark date on your tax return's envelope is Nov. 07, 2019.
The last day to file a claim for tax year 2015 was Sep. 14, 2019. We
can't allow your claim because the postmark is after the deadline.

### WHAT TO DO IF YOU DISAGREE

You can appeal our decision with the Office of Appeals (which is
an independent organization within the IRS) if we disallowed your
claim because our records show that you filed your claim late.
Generally, a claim is late if you filed it after the later of:

- 3 years from the due date of a timely-filed return without an
  extension
- 3 years from the date we received a late return or a timely
  filed return with an approved extension
- 2 years after you paid the tax

**80**

```
                                                    0744892484
                                Mar. 19, 2020    LTR 105C   3
                                            201512 30        2
                                                    00001687
```

KEVIN & PATRICIA KEEFER
% BRANT WEIGAND
15260 VENTURA BLVD STE 1705
SHERMAN OAKS  CA  91403-5381


In addition, for a claim filed within three years of the date you
filed your tax return, we can only refund or credit the amount you
paid during the three-year period before the date you file the claim
(plus any approved extension of time to file). If you file your
claim more than three years after the date you filed your return, we can
only credit or refund the amount you paid during the two-year period
before the date you file the claim. The Appeals Office can't change
the amount of time the law allows you to file a claim for refund or
credit.

If you decide to appeal our decision, send us an explanation of why
you believe you filed your claim on time; for example, you had an
extension of time to file your original tax return. We will consider
your explanation before forwarding your request to the Office of
Appeals.

Please note, reasonable cause or similar explanations that may provide
relief from a penalty for filing a tax return late don't apply to the
time limitations for filing a claim set by law. Exceptions that can
extend the time to file a claim for refund include:

     - Service in a combat zone
     - A claim involving an item with a filing period longer than the
       general three-year period (for example, bad debts and worthless
       securities)
     - Financial disability

Financial disability is the inability to manage financial affairs due
to a medically-determined physical or mental impairment that could
result in death or that lasts (or can be expected to last)
continuously for at least twelve months. A physician's written
statement is required as proof of financial disability. Please review
Publication 556, Examination of Returns, Appeal Rights, and Claims for
Refund, for more information about these exceptions.

If you don't agree with our decision, you can file suit to recover
tax, penalties, or other amounts, with the United States District
Court that has jurisdiction or with the United States Court of Federal
Claims. These courts are part of the judicial branch of the federal
government and have no connection with the IRS.

The law gives you 2 years from the date of this notice of claim
disallowance to file suit. If you signed an agreement that waived your
right to this notice of disallowance Form 2297, Waiver of Statutory
Notification of Claim Disallowance, the period for filing suit begins
on the date you filed the waiver. If you decide to appeal our decision

**81**

0744892484
Mar. 19, 2020    LTR 105C    3
201512 30    2
00001688

KEVIN & PATRICIA KEEFER
% BRANT WEIGAND
15260 VENTURA BLVD STE 1705
SHERMAN OAKS  CA  91403-5381



029077

first, the 2-year period still begins from the date of this notice or,
if applicable, the date you filed the waiver even if Appeals has not
yet rendered a final decision on your case. Consideration of your
claim by Appeals does not extend the 2-year period to file suit.
However, the 2-year-period can be extended if you and the IRS sign a
Form 907, Agreement to Extend the Time to Bring Suit.

A refund or credit cannot be made after the end of the 2-year period
(including any extension) unless you file suit during that time. If
the end of the 2-year period is approaching and a decision has not
been made on your appeal (or if a favorable decision has been made but
the refund has not yet been paid), you can file suit, or you can
discuss extending this 2-year period with the IRS to protect your
ability to receive a refund. If you do not file suit within the 2-year
period or sign an agreement with the IRS extending the 2-year period
to file suit, you may lose your ability to receive a refund, even if a
favorable decision on your appeal has already been made.

You can get the forms or publications mentioned in this letter by
visiting our website at www.irs.gov/forms-pubs or by calling
800-TAX-FORM (800-829-3676).

### HOW TO CONTACT US

If you have questions, you can call 800-829-0922.

If you prefer, you can write to the address at the top of the first
page of this letter.

When you write, include a copy of this letter, and provide your
telephone number and the hours we can reach you in the spaces below.

Telephone number (   )_____ Hours _____

Keep a copy of this letter for your records.

Thank you for your cooperation.

**82**

0744892484
Mar. 19, 2020    LTR 105C    3
201512 30    2
00001689

KEVIN & PATRICIA KEEFER
% BRANT WEIGAND
15260 VENTURA BLVD STE 1705
SHERMAN OAKS   CA   91403-5381

Sincerely yours,

Kimberly Rogers
Field Director, Accounts Mgmt.

Enclosures:
Copy of this letter
Publication 1

**83**

| Form **8283** | **Noncash Charitable Contributions** | OMB No. 1545-0908 |
|---|---|---|
| (Rev. November 2019)<br>Department of the Treasury<br>Internal Revenue Service | ► Attach one or more Forms 8283 to your tax return if you claimed a total deduction<br>of over $500 for all contributed property.<br>► Go to *www.irs.gov/Form8283* for instructions and the latest information. | Attachment<br>Sequence No. **155** |

| Name(s) shown on your income tax return | Identifying number |
|---|---|

**Note:** Figure the amount of your contribution deduction before completing this form. See your tax return instructions.

**Section A. Donated Property of $5,000 or Less and Publicly Traded Securities**—List in this section **only** an item (or groups of similar items) for which you claimed a deduction of $5,000 or less. Also list publicly traded securities and certain other property even if the deduction is more than $5,000 (see instructions).

**Part I    Information on Donated Property**—If you need more space, attach a statement.

| 1 | (a) Name and address of the donee organization | (b) If donated property is a vehicle (see instructions), check the box. Also enter the vehicle identification number (unless Form 1098-C is attached). | (c) Description and condition of donated property (For a vehicle, enter the year, make, model, and mileage. For securities and other property, see instructions.) |
|---|---|---|---|
| A | | ☐ | |
| B | | | |
| C | | | |
| D | | ☐ | |
| E | | ☐ | |

**Note:** If the amount you claimed as a deduction for an item is $500 or less, you do not have to complete columns (e), (f), and (g).

| | (d) Date of the contribution | (e) Date acquired by donor (mo., yr.) | (f) How acquired by donor | (g) Donor's cost or adjusted basis | (h) Fair market value (see instructions) | (i) Method used to determine the fair market value |
|---|---|---|---|---|---|---|
| A | | | | | | |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |
| E | | | | | | |

**Part II    Partial Interests and Restricted Use Property**—Complete lines 2a through 2e if you gave less than an entire interest in a property listed in Part I. Complete lines 3a through 3c if conditions were placed on a contribution listed in Part I; also attach the required statement (see instructions).

**2a** Enter the letter from Part I that identifies the property for which you gave less than an entire interest ► _____
If Part II applies to more than one property, attach a separate statement.

**b** Total amount claimed as a deduction for the property listed in Part I:  **(1)**   For this tax year   ► _____
   **(2)**   For any prior tax years   ► _____

**c** Name and address of each organization to which any such contribution was made in a prior year (complete only if different from the donee organization above):
Name of charitable organization (donee)

Address (number, street, and room or suite no.)

City or town, state, and ZIP code

**d** For tangible property, enter the place where the property is located or kept ► _____

**e** Name of any person, other than the donee organization, having actual possession of the property ► _____

| | | Yes | No |
|---|---|---|---|
| **3a** | Is there a restriction, either temporary or permanent, on the donee's right to use or dispose of the donated property? . . . . . . . . . . | | |
| **b** | Did you give to anyone (other than the donee organization or another organization participating with the donee organization in cooperative fundraising) the right to the income from the donated property or to the possession of the property, including the right to vote donated securities, to acquire the property by purchase or otherwise, or to designate the person having such income, possession, or right to acquire? . . . . . . . . | | |
| **c** | Is there a restriction limiting the donated property for a particular use? . . . . . . . . . . | | |

**For Paperwork Reduction Act Notice, see separate instructions.**     Cat. No. 62299J     Form **8283** (Rev. 11-2019)

Form 8283 (Rev. 11-2019)                                                                                                    Page **2**

| Name(s) shown on your income tax return | Identifying number |
|---|---|
| | |

**Section B. Donated Property Over $5,000 (Except Publicly Traded Securities, Vehicles, Intellectual Property or Inventory Reportable in Section A)**—Complete this section for one item (or a group of similar items) for which you claimed a deduction of more than $5,000 per item or group (except contributions reportable in Section A). Provide a separate form for each item donated unless it is part of a group of similar items. A qualified appraisal is generally required for items reportable in Section B. See instructions.

### Part I — Information on Donated Property

4   Check the box that describes the type of property donated.

a ☐ Art* (contribution of $20,000 or more)    d ☐ Art* (contribution of less than $20,000)    g ☐ Collectibles**    j ☐ Other

b ☐ Qualified Conservation Contribution    e ☐ Other Real Estate    h ☐ Intellectual Property

c ☐ Equipment    f ☐ Securities    i ☐ Vehicles

*Art includes paintings, sculptures, watercolors, prints, drawings, ceramics, antiques, decorative arts, textiles, carpets, silver, rare manuscripts, historical memorabilia, and other similar objects.

**Collectibles include coins, stamps, books, gems, jewelry, sports memorabilia, dolls, etc., but not art as defined above.

**Note: In certain cases, you must attach a qualified appraisal of the property. See instructions.**

| 5 | (a) Description of donated property (if you need more space, attach a separate statement) | (b) If any tangible personal property or real property was donated, give a brief summary of the overall physical condition of the property at the time of the gift | (c) Appraised fair market value |
|---|---|---|---|
| A | | | |
| B | | | |
| C | | | |
| D | | | |

| | (d) Date acquired by donor (mo., yr.) | (e) How acquired by donor | (f) Donor's cost or adjusted basis | (g) For bargain sales, enter amount received | See instructions (h) Amount claimed as a deduction | (i) Date of contribution |
|---|---|---|---|---|---|---|
| A | | | | | | |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |

### Part II — Taxpayer (Donor) Statement—List each item included in Part I above that the appraisal identifies as having a value of $500 or less. See instructions.

I declare that the following item(s) included in Part I above has to the best of my knowledge and belief an appraised value of not more than $500 (per item). Enter identifying letter from Part I and describe the specific item. See instructions. ▶ _____

Signature of taxpayer (donor) ▶                                                                                        Date ▶

### Part III — Declaration of Appraiser

I declare that I am not the donor, the donee, a party to the transaction in which the donor acquired the property, employed by, or related to any of the foregoing persons, or married to any person who is related to any of the foregoing persons. And, if regularly used by the donor, donee, or party to the transaction, I performed the majority of my appraisals during my tax year for other persons.

Also, I declare that I perform appraisals on a regular basis; and that because of my qualifications as described in the appraisal, I am qualified to make appraisals of the type of property being valued. I certify that the appraisal fees were not based on a percentage of the appraised property value. Furthermore, I understand that a false or fraudulent overstatement of the property value as described in the qualified appraisal or this Form 8283 may subject me to the penalty under section 6701(a) (aiding and abetting the understatement of tax liability). I understand that my appraisal will be used in connection with a return or claim for refund. I also understand that, if there is a substantial or gross valuation misstatement of the value of the property claimed on the return or claim for refund that is based on my appraisal, I may be subject to a penalty under section 6695A of the Internal Revenue Code, as well as other applicable penalties. I affirm that I have not been at any time in the three-year period ending on the date of the appraisal barred from presenting evidence or testimony before the Department of the Treasury or the Internal Revenue Service pursuant to 31 U.S.C. 330(c).

**Sign Here**

Signature ▶                              Title ▶                              Date ▶

| Business address (including room or suite no.) | Identifying number |
|---|---|
| | |
| City or town, state, and ZIP code | |

### Part IV — Donee Acknowledgment—To be completed by the charitable organization.

This charitable organization acknowledges that it is a qualified organization under section 170(c) and that it received the donated property as described in Section B, Part I, above on the following date ▶ _____

Furthermore, this organization affirms that in the event it sells, exchanges, or otherwise disposes of the property described in Section B, Part I (or any portion thereof) within 3 years after the date of receipt, it will file **Form 8282**, Donee Information Return, with the IRS and give the donor a copy of that form. This acknowledgment does not represent agreement with the claimed fair market value.

Does the organization intend to use the property for an unrelated use? . . . . . . . . . . . . . . ▶ ☐ Yes    ☐ No

| Name of charitable organization (donee) | Employer identification number |
|---|---|
| | |
| Address (number, street, and room or suite no.) | City or town, state, and ZIP code |
| | |
| Authorized signature | Title | Date |
| | | |

# Instructions for Form 8283



Department of the Treasury
**Internal Revenue Service**

(Rev. November 2019)

**Noncash Charitable Contributions**

Section references are to the Internal Revenue Code unless otherwise noted.

# General Instructions

## Future Developments

Information about any future developments affecting Form 8283 (such as legislation enacted after we release it) will be posted at *IRS.gov/Form8283*.

## Purpose of Form

Use Form 8283 to report information about noncash charitable contributions.

Do not use Form 8283 to report out-of-pocket expenses for volunteer work or amounts you gave by check or credit card. Treat these items as cash contributions. Also, do not use Form 8283 to figure your charitable contribution deduction. For details on how to figure the amount of the deduction, see your tax return instructions and Pub. 526, Charitable Contributions.

## Who Must File

You must file one or more Forms 8283 if the amount of your deduction for each noncash contribution is more than $500. You must also file Form 8283 if you have a group of similar items for which a total deduction of over $500 is claimed. See *Similar Items of Property*, later. For this purpose, "amount of your deduction" means your deduction before applying any income limits that could result in a carryover. The carryover rules are explained in Pub. 526. Make any required reductions to fair market value (FMV) before you determine if you must file Form 8283. See *Fair Market Value (FMV)*, later.

Form 8283 is filed by individuals, partnerships, and corporations.

## Business Entities

**C corporations.** C corporations, other than personal service corporations and closely held corporations, must file Form 8283 only if the amount claimed as a deduction is more than $5,000 per item or group of similar items.

**Partnerships and S corporations.** A partnership or S corporation that claims a deduction for noncash gifts of more than $500 must file Form 8283 with Form 1065, 1065-B, or 1120S.

If the total deduction for any item or group of similar items is more than $5,000, the partnership or S corporation must complete Section B of Form 8283 even if the amount allocated to each partner or shareholder is $5,000 or less.

The partnership or S corporation must give a completed copy of Form 8283 to each partner or shareholder receiving an allocation of the contribution deduction shown in Section B of the Form 8283 of the partnership or S corporation.

**Partners and shareholders.** The partnership or S corporation will provide information about your share of the contribution on your Schedule K-1 (Form 1065 or 1120S). If you received a copy of Form 8283 from the partnership or S corporation, attach a copy to your tax return. Use the amount shown on your Schedule K-1, not the amount shown on the Form 8283, to figure your deduction.

If the partnership or S corporation is not required to give you a copy of its Form 8283, combine the amount of noncash contributions shown on your Schedule K-1 with your other noncash contributions to see if you must file Form 8283. If you need to file Form 8283, you do not have to complete all the information requested in Section A for your share of the partnership's or S corporation's contributions. Complete only column (h) of line 1 with your share of the contribution and enter "From Schedule K-1 (Form 1065 or 1120S)" across columns (d)–(g).

## When To File

File Form 8283 with your tax return for the year you contribute the property and first claim a deduction.

## Which Sections To Complete

Form 8283 has two sections. If you must file Form 8283, you must complete either Section A or Section B depending on the type of property donated and the amount claimed as a deduction.

Use Section A to report donations of property for which you claimed a deduction of $5,000 or less per item or group of similar items (defined later). Also use Section A to report donations of publicly traded securities; certain intellectual property described in section 170(e)(1)(B)(iii); a qualified vehicle described in section 170(f)(12)(A)(ii) for which an acknowledgement under section 170(f)(12)(B)(iii) is provided; and inventory and other similar property described in section 1221(a)(1). Use Section B to report donations of property for which you claimed a deduction of more than $5,000 per item or group of similar items.

In figuring whether your deduction for a group of similar items was more than $5,000, consider all items in the group, even if items in the group were donated to more than one donee organization. However, you must file a separate Form 8283, Section B, for each donee organization.

*Example.* You claimed a deduction of $2,000 for books you gave to College A, $2,500 for books you gave to College B, and $900 for books you gave to College C. You must report these donations in Section B because the total deduction was more than $5,000. You must file a separate Form 8283, Section B, for the donation to each of the three colleges.

**Section A.** Include in Section A only the following items.

1. Items (or groups of <u>similar items</u> as defined later) for which you claimed a deduction of more than $500 but not more than $5,000 per item (or group of similar items).

2. The following items even if the claimed value was more than $5,000 per item (or group of similar items):

a. Securities listed on an exchange in which quotations are published daily,

b. Securities regularly traded in national or regional over-the-counter markets for which published quotations are available,

c. Securities that are shares of a mutual fund for which quotations are published on a daily basis in a newspaper of general circulation throughout the United States,

d. Certain other securities even though the securities do not meet any of the criteria described in paragraphs 2.a through 2.c above (for more information, see Treasury Regulation 1.170A-13(c)(7)(xi)(B)),

e. A vehicle (including a car, boat, or airplane) if your deduction for the vehicle is limited to the gross proceeds from its sale and you obtained a contemporaneous written acknowledgment,

f. Intellectual property (as defined *later*), or

g. Inventory or property held primarily for sale to customers in the ordinary course of your trade or business.

**Section B.** Include in Section B only items (or groups of similar items) for which you claimed a deduction of more than $5,000. Do not include items reportable in Section A. Items reportable in Section B require a written appraisal by a qualified appraiser. You must file a separate Form 8283, Section B, for each donee organization and each item of property (or group of similar items).

You must also file Form 8283, Section B if you are contributing a single article of clothing or household item over $500 that is not in good used condition.

## Similar Items of Property

Similar items of property are items of the same generic category or type, such as coin collections, paintings, books, clothing, jewelry, nonpublicly traded stock, land, or buildings.

*Example.* You claimed a deduction of $400 for clothing, $7,000 for publicly traded securities (quotations published daily), and $6,000 for a collection of 15 books ($400 each). Report the clothing and securities in Section A and the books (a group of similar items) in Section B.

## Special Rule for Certain C Corporations

A special rule applies for deductions taken by certain C corporations under section 170(e)(3) or (4) for certain contributions of inventory or scientific equipment.

To determine if you must file Form 8283, use the difference between the amount you claimed as a deduction and the amount you would have claimed as cost of goods sold (COGS) had you sold the property instead. This rule is only for purposes of Form 8283; it does not change the amount or method of figuring your contribution deduction.

If you do not have to file Form 8283 because of this rule, you must attach a statement to your tax return (similar to the one in the example below).

*Example.* You donated clothing from your inventory for the care of the needy. The clothing cost you $500 and your claimed charitable deduction is $800. Complete Section A instead of Section B because the difference between the amount you claimed as a charitable deduction and the amount that would have been your COGS deduction is $300 ($800 − $500). Because the difference between the charitable deduction and the cost of goods sold is less than $500, Form 8283 does not have to be filed:

| Deduction for Donation of Inventory | |
|---|---:|
| Contribution deduction | $800 |
| COGS (if sold, not donated) | − 500 |
| | = $300 |

## Fair Market Value (FMV)

Although the amount of your deduction determines if you have to file Form 8283, you also need to have information about the FMV of your contribution to complete the form.

FMV is the price a willing, knowledgeable buyer would pay a willing, knowledgeable seller when neither has to buy or sell.

You may not always be able to deduct the FMV of your contribution. Depending on the type of property donated, you may have to reduce the FMV to figure the deductible amount, as explained next.

**Reductions to FMV.** The amount of the reduction (if any) depends on whether the property is ordinary income property or capital gain property. Attach a statement to your tax return showing how you figured the reduction.

*Ordinary income property.* Ordinary income property is property that would result in ordinary income or short-term capital gain if it were sold at its FMV on the date it was contributed. Examples of ordinary income property are inventory, works of art created by the donor, and capital assets held for 1 year or less. The deduction for a gift of ordinary income property is limited to the FMV minus the amount that would be ordinary income or short-term capital gain if the property were sold.

*Capital gain property.* Capital gain property is property that would result in long-term capital gain if it were sold at its FMV on the date it was contributed. For purposes of figuring your charitable contribution, capital gain property also includes certain real property and depreciable property used in your trade or business and, generally, held more than 1 year. However, to the extent of any gain from the property that must be recaptured as ordinary income under section 1245, section 1250, or any other Code provision, the property is treated as ordinary income property.

You usually may deduct gifts of capital gain property at their FMV. However, you must reduce the FMV by the amount of any appreciation if any of the following apply.
• The capital gain property is contributed to certain private nonoperating foundations. This rule does not apply to qualified appreciated stock.
• You choose the 50% limit instead of the special 30% limit for capital gain property given to 50% limit organizations.
• The contributed property is intellectual property (as defined later).
• The contributed property is certain taxidermy property.
• The contributed property is tangible personal property that is put to an unrelated use (as defined in Pub. 526) by the charity.
• The contributed property is certain tangible personal property with a claimed value of more than $5,000 and is sold, exchanged, or otherwise disposed of by the charity during the year in which you made the contribution, and the charity has not made the required certification of exempt use (such as on Form 8282, Part IV).

**Qualified conservation contribution.** A qualified conservation contribution is a donation of a qualified real property interest, such as an easement, exclusively for certain conservation purposes. The donee must be a qualified organization as defined in section 170(h)(3) and must have the resources to be able to monitor and enforce the conservation easement or other conservation restrictions. To enable the organization to do this, you must give it documents, such as maps and photographs, that establish the condition of the property at the time of the gift.

If the donation has no material effect on the real property's FMV, or enhances rather than reduces its FMV, no deduction is allowable. For example, little or no deduction may be allowed if the property's use is already restricted, such as by zoning or other law or contract, and the donation does not further restrict how the property can be used.

The FMV of a conservation easement cannot be determined by applying a standard percentage to the FMV of the underlying property. The best evidence of the FMV of an easement is the sales price of a comparable easement. If there are no comparable sales, the before and after method may be used.

Attach a statement that:
• Identifies the conservation purposes furthered by your donation,
• Shows, if before and after valuation is used, the FMV of the underlying property before and after the gift,
• States whether you made the donation in order to get a permit or other approval from a local or other governing authority and whether the donation was required by a contract, and
• If you or a related person has any interest in other property nearby, describes that interest.

If an appraisal is required, it must be made by a qualified appraiser. See Appraisal Requirements, later.

**Easements on buildings in historic districts.** You cannot claim a deduction for this type of contribution unless the contributed interest includes restrictions preserving the entire exterior of the building (including front, sides, rear, and height) and prohibiting any change to the exterior of the building inconsistent with its historical character. If you claim a deduction for this type of contribution, you must include with your return:
• A signed copy of a qualified appraisal,
• Photographs of the entire exterior of the building, and
• A description of all restrictions on the development of the building. The description of the restrictions can be made by attaching a copy of the easement deed.

If you donate this type of property and claim a deduction of more than $10,000, your deduction will not be allowed unless you pay a $500 filing fee. See Form 8283-V and its instructions.

For more information about qualified conservation contributions, see Pub. 526 and Pub. 561, Determining the Value of Donated Property. Also see section 170(h), Regulations section 1.170A-14, and Notice 2004-41. Notice 2004-41, 2004-28 I.R.B. 31, is available at IRS.gov/irb/2004-28_IRB/ar09.html.

**Intellectual property.** The FMV of intellectual property must be reduced to figure the amount of your deduction, as explained earlier. Intellectual property means a patent, copyright (other than a copyright described in section 1221(a)(3) or 1231(b)(1)(C)), trademark, trade name, trade secret, know-how, software (other than software described in section 197(e)(3)(A)(i)), or similar property, or applications or registrations of such property.

However, you may be able to claim additional charitable contribution deductions in the year of the contribution and later years based on a percentage of the donee's net income, if any, from the property. The amount of the donee's net income from the property will be reported to you on Form 8899, Notice of Income From Donated Intellectual Property. See Pub. 526 for details.

**Clothing and household items.** The FMV of used household items and clothing is usually much lower than when new. A good measure of value might be the price that buyers of these used items actually pay in consignment or thrift shops. You can also review classified ads in the newspaper or on the Internet to see what similar products sell for.

Generally, you cannot claim a deduction for clothing or household items you donate unless the clothing or household items are in good used condition or better. However, you can claim a deduction for a contribution of an item of clothing or household item that is not in good used condition or better if you deduct more than $500 for it and include a qualified appraisal and Form 8283, Section B with your return.

## Qualified Vehicle Donations

A qualified vehicle is any motor vehicle manufactured primarily for use on public streets, roads, and highways; a boat; or an airplane. However, property held by the donor primarily for sale to customers, such as inventory of a car dealer, is not a qualified vehicle.

If you donate a qualified vehicle with a claimed value of more than $500, you cannot claim a deduction unless you attach to Form 8283 a copy of the contemporaneous written acknowledgment you received from the donee

organization. The donee organization may use Copy B of Form 1098-C as the acknowledgment. An acknowledgment is considered contemporaneous if the donee organization furnishes it to you no later than 30 days after the:

• Date of the sale, if the donee organization sold the vehicle in an arm's length transaction to an unrelated party; or

• Date of the contribution, if the donee organization will not sell the vehicle before completion of a material improvement or significant intervening use, or the donee organization will give or sell the vehicle to a needy individual for a price significantly below FMV to directly further the organization's charitable purpose of relieving the poor and distressed or underprivileged who need a means of transportation.

For a donated vehicle with a claimed value of more than $500, you can deduct the smaller of the vehicle's FMV on the date of the contribution or the gross proceeds received from the sale of the vehicle, unless an exception applies as explained below. Form 1098-C (or other acknowledgment) will show the gross proceeds from the sale if no exception applies. If the FMV of the vehicle was more than your cost or other basis, you may have to reduce the FMV to figure the deductible amount, as described under *Reductions to FMV*, earlier.

If any of the following exceptions apply, your deduction is not limited to the gross proceeds received from the sale. Instead, you generally can deduct the vehicle's FMV on the date of the contribution if the donee organization:

• Makes a significant intervening use of the vehicle before transferring it,

• Makes a material improvement to the vehicle before transferring it, or

• Gives or sells the vehicle to a needy individual for a price significantly below FMV to directly further the organization's charitable purpose of relieving the poor and distressed or underprivileged who need a means of transportation.

Form 1098-C (or other acknowledgment) will show if any of these exceptions apply. If the FMV of the vehicle was more than your cost or other basis, you may have to reduce the FMV to figure the deductible amount, as described under *Reductions to FMV*, earlier.

**Determining FMV.** A used car guide may be a good starting point for finding the FMV of your vehicle. These guides, published by commercial firms and trade organizations, contain vehicle sale prices for recent model years. The guides are sometimes available from public libraries or from a loan officer at a bank, credit union, or finance company. You can also find used car pricing information on the Internet.

An acceptable measure of the FMV of a donated vehicle is an amount not in excess of the price listed in a used vehicle pricing guide for a private party sale of a similar vehicle. However, the FMV may be less than that amount if the vehicle has engine trouble, body damage, high mileage, or any type of excessive wear. The FMV of a donated vehicle is the same as the price listed in a used vehicle pricing guide for a private party sale only if the guide lists a sales price for a vehicle that is the same make, model, and year, sold in the same area, in the same condition, with the same or similar options or accessories, and with the same or similar warranties as the donated vehicle.

**Example.** Neal donates his car, which he bought new in 2008 for $20,000. A used vehicle pricing guide shows the FMV for his car is $9,000. Neal receives a Form 1098-C showing the car was sold for $7,000. Neal can deduct $7,000 and must attach Form 1098-C to his return.

**More information.** For details, see Pub. 526 or Notice 2005-44. Notice 2005-44, 2005-25 I.R.B. 1287, is available at *IRS.gov/irb/2005-25_IRB/ar09.html*.

### Additional Information

You may want to see Pub. 526 and Pub. 561. If you contributed depreciable property, see Pub. 544, Sales and Other Disposition of Assets.

# Specific Instructions

**Identifying number.** Individuals must enter their social security number. All other filers should enter their employer identification number.

## Section A

### Part I, Information on Donated Property

### Line 1

**Column (b).** Check the box if the donated property is a qualified vehicle (defined earlier). If you are not attaching Form 1098-C (or other acknowledgment) to your return, enter the vehicle identification number (VIN) in the spaces provided below the checkbox.

You can find the VIN on the vehicle registration, the title, the proof of insurance, or the vehicle itself. Generally, the VIN is 17 characters made up of numbers and letters.

If the VIN has fewer than 17 characters, enter a zero in each of the remaining entry spaces to the left of the VIN. For example, if the VIN is "555555X555555," enter "0000555555X555555."

**Column (c).** Give a description of the property as well as its condition in sufficient detail. The greater the value of the property, the more detail you must provide. For example, a personal computer should be described in more detail than pots and pans.

If the donated property is a vehicle, give the year, make, model, condition, and mileage at the time of the donation (for example, "1963 Studebaker Lark, fair condition, 135,000 miles") regardless of whether you attach a Form 1098-C or other acknowledgment. If you do not know the actual mileage, use a good faith estimate based on car repair records or similar evidence.

For securities, include the following:
• Company name,
• Number of shares,
• Kind of security,
• Whether a share of a mutual fund, and
• Whether regularly traded on a stock exchange or in an over-the-counter market.

**89**

For tangible personal property, include the condition of the property and whether the donee has certified the tangible personal property for its own use as an exempt organization.

**Column (d).** Enter the date you contributed the property. If you made contributions on various dates, enter each contribution and its date on a separate row.

**Note.** If the amount you claimed as a deduction for the item is $500 or less, you do not have to complete columns (e), (f), and (g).

**Column (e).** Enter the approximate date you acquired the property. If it was created, produced, or manufactured by or for you, enter the date it was substantially completed.

If you are donating a group of similar items and you acquired the items on various dates (but have held all the items for at least 12 months), you can enter "Various."

For publicly traded securities, enter only if you held the securities for more than 12 months.

If the property was created, produced, or manufactured by or for the donor, enter the date the property was substantially completed.

**Column (f).** State how you acquired the property. This could be by purchase, gift, inheritance, or exchange.

**Column (g).** Do not complete this column for publicly traded securities held more than 12 months, unless you elect to limit your deduction cost basis. See section 170(b)(1)(C)(iii). Keep records on cost or other basis.

**Note.** If you must complete columns (e), (f), and (g) but have reasonable cause for not providing the information required, attach an explanation.

**Column (h).** Enter the FMV of the property on the date you donated it. You must attach a statement if:
• You were required to reduce the FMV to figure the amount of your deduction, or
• You gave a qualified conservation contribution for which you claimed a deduction of $5,000 or less.
See _Fair Market Value (FMV)_, earlier, for the type of statement to attach.

**Column (i).** Enter the method(s) you used to determine the FMV.

Examples of entries to make include "Appraisal," "Thrift shop value" (for clothing or household items), "Catalog" (for stamp or coin collections), or "Comparable sales" (for real estate and other kinds of assets). See Pub. 561.

## Part II, Partial Interests and Restricted Use Property

If Part II applies to more than one property, attach a separate statement. Give the required information for each property separately. Identify which property listed in Part I the information relates to.

### Lines 2a Through 2e

Complete lines 2a–2e only if you contributed less than the entire interest in the donated property during the tax year and claimed a deduction of $5,000 or less. On line 2b, enter the amount claimed as a deduction for this tax year and in any prior tax years for gifts of a partial interest in the same property.

### Lines 3a Through 3c

Complete lines 3a–3c only if you attached restrictions to the right to the income, use, or disposition of the donated property. An example of a "restricted use" is furniture that you gave only to be used in the reading room of an organization's library. Attach a statement explaining (1) the terms of any agreement or understanding regarding the restriction, and (2) whether the property is designated for a particular use.

# Section B

Include in Section B only items (or groups of similar items) for which you claimed a deduction of more than $5,000. You must also file Form 8283, Section B if you are contributing a single article of clothing or household item over $500 that is not in good used condition. Do not include property reported in Section A. File a separate Form 8283, Section B, for:
• Each donee, and
• Each item of property, except for an item that is part of a group of similar items.

## Part I, Information on Donated Property

You must get a written appraisal from a qualified appraiser before completing Part I. However, see _Exceptions_, below.

Generally, you do not need to attach the appraisals to your return but you should keep them for your records. But see _Art valued at $20,000 or more_, _Clothing and household items not in good used condition_, _Easements on buildings in historic districts_, and _Deduction of more than $500,000_, later.

**Exceptions.** You do not need a written appraisal if the property is:

1. A qualified vehicle (including a car, boat, or airplane) if your deduction for the vehicle is limited to the gross proceeds from its sale and you obtained a contemporaneous written acknowledgment;

2. _Intellectual property_ (as defined earlier);

3. Publicly traded securities and certain securities considered to be publicly traded (as defined in _Which Sections To Complete_, earlier); or

4. Inventory or property held primarily for sale to customers in the ordinary course of your trade or business.

**Art valued at $20,000 or more.** If your total deduction for art is $20,000 or more, you must attach a complete copy of the signed appraisal to your return. For individual objects valued at $20,000 or more, a photograph must be provided upon request. The photograph must be of sufficient quality and size (preferably an 8 x 10 inch color photograph) or a high-resolution digital image to fully show the object.

**Clothing and household items not in good used condition.** You must include with your return a qualified

appraisal of any single item of clothing or any household item that is not in good used condition or better for which you deduct more than $500. Attach the appraisal and Section B to your return. See *Clothing and household items*, earlier.

**Easements on buildings in historic districts.** If you claim a deduction for a qualified conservation contribution of an easement on the exterior of a building in a registered historic district, you must include a signed copy of a qualified appraisal, photographs, and certain other information with your return. See *Easements on buildings in historic districts*, under *Fair Market Value (FMV)*, earlier.

**Deduction of more than $500,000.** If you claim a deduction of more than $500,000 for an item (or group of similar items) donated to one or more donees, you must attach a signed copy of a qualified appraisal of the property to your return unless an exception applies. See *Exceptions*, earlier.

## Appraisal Requirements

The appraisal must be signed and dated by a qualified appraiser (defined later) in accordance with generally accepted appraisal standards. It also must meet the relevant requirements of Regulations section 1.170A-17(a).

The appraisal must be signed and dated by a qualified appraiser not earlier than 60 days before the date you contribute the property. You must receive the appraisal before the due date (including extensions) of the return on which you first claim a deduction for the property. For a deduction first claimed on an amended return, the appraisal must be received before the date the amended return was filed. See Regulations section 1.170A-17(a)(4), (a)(8).

A separate qualified appraisal and a separate Form 8283 are required for each item of property except for an item that is part of a group of similar items. Only one appraisal is required for a group of similar items contributed in the same tax year, if it includes all the required information for each item. The appraiser may group similar items with a collective value appraised at $100 or less.

If you gave similar items to more than one donee for which you claimed a total deduction of more than $5,000, you must attach a separate form for each donee.

**Example.** You claimed a deduction of $2,000 for books given to College A, $2,500 for books given to College B, and $900 for books given to a public library. You must attach a separate Form 8283 for each donee.

## Line 4

Check only one box on line 4 of each Form 8283. Complete as many separate Forms 8283 as necessary so that only one box has to be checked on line 4 of each Form 8283.

**Vehicles.** If you check box "i" to indicate the donated property is a vehicle and the claimed value for your donated vehicle is more than $500, you must attach to your return a copy of Form 1098-C (or other contemporaneous written acknowledgment) you received from the donee organization. Do not include donated vehicles reportable in Section A.

## Line 5

You must complete at least column (a) of line 5 (and column (b) if applicable) before submitting Form 8283 to the donee. You may then complete the remaining columns.

**Column (a).** Provide a detailed description so a person unfamiliar with the property could be sure the property that was appraised is the property that was contributed. The greater the value of the property, the more detail you must provide.

For a qualified conservation contribution, describe the easement terms in detail, or attach a copy of the easement deed.

A description of donated securities should include the company name and number of shares donated. Do not include donated securities reportable in Section A.

**Column (b).** If any tangible personal property or real property was donated, give a brief summary of the overall physical condition of the property at the time of the gift.

**Column (c).** Include the FMV from the appraisal.

**Column (d).** If you are donating a group of similar items and you acquired the items on various dates (but have held all the items for at least 12 months), you can enter "Various."

**Columns (d)–(f).** If you have reasonable cause for not providing the information in column (d), (e), or (f), attach an explanation so your deduction will not automatically be disallowed.

For a qualified conservation contribution, indicate whether you are providing information about the underlying property or about the easement.

**Column (g).** A bargain sale is a transfer of property that is in part a sale or exchange and in part a contribution. Enter the amount received for bargain sales.

**Column (h).** Complete column (h) only if you were not required to get an appraisal, as explained earlier.

**Column (i).** Complete column (i) only if you were not required to get an appraisal, as explained earlier.

## Part II, Taxpayer (Donor) Statement

Complete Section B, Part II, for each item included in Section B, Part I, that has an appraised value of $500 or less. Because you do not have to show the value of these items in Section B, Part I, of the donee's copy of Form 8283, clearly identify them for the donee in Section B, Part II. Then, the donee does not have to file Form 8282, Donee Information Return, for the items valued at $500 or less. See the *Note* under *Part IV, Donee Acknowledgment*, for more details about filing Form 8282.

The amount of information you give in Section B, Part II, depends on the description of the donated property you enter in Section B, Part I. If you show a single item as "Property A" in Part I and that item is appraised at $500 or

less, then the entry "Property A" in Part I is enough. However, if "Property A" consists of several items and the total appraised value is over $500, list in Part II any item(s) you gave that is valued at $500 or less.

All shares of nonpublicly traded stock or items in a set are considered one item. For example, a book collection by the same author, components of a stereo system, or six place settings of a pattern of silverware are one item for the $500 test.

**Example.** You donated books valued at $6,000. The appraisal states that one of the items, a collection of books by author "X," is worth $400. On the Form 8283 that you are required to give the donee, you decide not to show the appraised value of all of the books. But you also do not want the donee to have to file Form 8282 if the collection of books is sold within 3 years after the donation. If your description of Property A on line 5 includes all the books, then specify in Part II the "collection of books by X included in Property A." But if your Property A description is "collection of books by X," the only required entry in Part II is "Property A."

In the above example, you may have chosen instead to give a completed copy of Form 8283 to the donee. The donee would then be aware of the value. If you include all the books as Property A on line 5, and enter $6,000 in column (c), you may still want to describe the specific collection in Part II so the donee can sell it without filing Form 8282.

## Part III, Declaration of Appraiser

If you had to get an appraisal, you must get it from a qualified appraiser. A qualified appraiser is an individual who meets all the following requirements as of the date the individual completes and signs the appraisal.

1. The individual either:

a. Has earned a recognized appraiser designation from a generally recognized professional appraiser organization for demonstrated competency in valuing the type of property being appraised, or

b. Has met certain minimum education requirements and has two or more years of experience in valuing the type of property being appraised. To meet the minimum education requirements the individual must have successfully completed professional or college-level coursework in valuing the type of property obtained from:

i. a professional or college-level educational organization,

ii. a generally recognized professional trade or appraiser organization that regularly offers educational programs, or

iii. an employer as part of an employee apprenticeship or education program similar to professional or college-level courses.

2. The individual regularly prepares appraisals for which he or she is paid.

3. The appraiser makes a declaration in the appraisal that, because of his or her experience and education, he or she is qualified to make appraisals of the type of property being valued.

In addition, the appraiser must complete Part III of Form 8283. See section 170(f)(11)(E) and Regulations section 1.170A-16(d)(4) for details.

If you use appraisals by more than one appraiser, or if two or more appraisers contribute to a single appraisal, all the appraisers must sign the appraisal and Part III of Form 8283.

Persons who cannot be qualified appraisers are listed in Part III of Section B- the Declaration of Appraiser. Generally, a party to the transaction in which you acquired the property being appraised will not qualify to sign the declaration. But a person who sold, exchanged, or gave the property to you may sign the declaration if the property was donated within 2 months of the date you acquired it and the property's appraised value did not exceed its acquisition price.

An appraiser may not be considered qualified if you had knowledge of facts that would cause a reasonable person to expect the appraiser to falsely overstate the value of the property. An example of this is an agreement between you and the appraiser about the property value when you know that the appraised amount exceeds the actual FMV.

Appraisal fees cannot be based on a percentage of the appraised value. See Regulations section 1.170A-17(a) (9).

**Identifying number.** The appraiser's taxpayer identification number (social security number or employer identification number) must be entered in Part III.

## Part IV, Donee Acknowledgment

The donee organization that received the property described in Part I of Section B must complete Part IV. Before submitting page 2 of Form 8283 to the donee for acknowledgment, complete at least your name, identifying number, and description of the donated property (line 5, column (a)). If real property or tangible personal property is donated, also describe its physical condition (line 5, column (b)) at the time of the gift. Complete Part II, if applicable, before submitting the form to the donee. See the instructions for Part II.

The person acknowledging the gift must be an official authorized to sign the tax returns of the organization, or a person specifically designated to sign Form 8283. When you ask the donee to fill out Part IV, you should also ask the donee to provide you with a contemporaneous written acknowledgment required by section 170(f)(8).

After completing Part IV, the organization must return Form 8283 to you, the donor. You must give a copy of Section B of this form to the donee organization. You may then complete any remaining information required in Part I. Also, the qualified appraiser can complete Part III at this time.

In some cases, it may be impossible to get the donee's signature on Form 8283. The deduction will not be disallowed for that reason if you attach a detailed explanation of why it was impossible.

**Note.** If it is reasonable to expect that donated tangible personal property will be used for a purpose unrelated to

the purpose or function of the donee. The donee should check the "Yes" box in Part IV. In this situation, your deduction will be limited. In addition, if the donee (or a successor donee) organization disposes of the property within 3 years after the date the original donee received it, the organization must file Form 8282 with the IRS and send a copy to the donor. (As a result of the sale by the donee, the donor's contribution deduction may be limited or part of the prior year contribution deduction may have to be recaptured. See Pub. 526.) An exception applies to items having a value of $500 or less if the donor identified the items and signed the statement in Section B, Part II, of Form 8283. See the instructions for Part II.

## Failure To File Form 8283

Your deduction generally will be disallowed if you fail to:
- Attach a required Form 8283 to your return,
- Get a required appraisal and complete Section B of Form 8283, or
- Attach to your return a required appraisal of clothing or household items not in good used condition, an easement on a building in a registered historic district, or property for which you claimed a deduction of more than $500,000. Your deduction will not be disallowed if your failure was due to reasonable cause and not willful neglect or was due to a good-faith omission. However your deduction will not be allowed if you did not get a required appraisal within the required period.

## Noncash Contributions Carried Over to Later Year

If your noncash contribution was subject to one or more limits based on your adjusted gross income, and your unused deduction is eligible to be carried over and claimed as a charitable contribution in the current year, you must attach a completed Form 8283 and qualified appraisal, if required, to your return.

**Paperwork Reduction Act Notice.** We ask for the information on this form to carry out the Internal Revenue laws of the United States. You are required to give us the information. We need it to ensure that you are complying with these laws and to allow us to figure and collect the right amount of tax.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file this form will vary depending on individual circumstances. The estimated burden for individual taxpayers filing this form is approved under OMB control number 1545-0074 and is included in the estimates shown in the instructions for their individual income tax return. The estimated burden for all other taxpayers who file this form is shown below.

| | |
|---|---|
| **Recordkeeping** . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 min. |
| **Learning about the law or the form** . . . . . . . . . . . . | 29 min. |
| **Preparing the form** . . . . . . . . . . . . . . . . . . . . . . . | 1 hr 4 min. |
| **Copying, assembling, and sending the form to the IRS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 34 min. |

If you have comments concerning the accuracy of these time estimates or suggestions for making this form simpler, we would be happy to hear from you. See the instructions for the tax return with which this form is filed.

Checkpoint Contents
  Federal Library
    Federal Source Materials
      Code, Regulations, Committee Reports & Tax Treaties
        Code Arranged Committee Reports
          Income
            Committee Reports 66,521 -- 66,991
              Committee Report (66,591)
                COMREP ¶66,591.005 Changes in valuation overstatement penalty; appraisal requirements. ('84 TRA, PL 98-369, 7/12/84). [For Code Sec. 6659 repealed by PL 101-239]

**Committee Reports**

**COMREP ¶ 66,591.005 Changes in valuation overstatement penalty; appraisal requirements. ('84 TRA, , PL 98-369, 7/12/84) [For Code Sec. 6659 repealed by PL 101-239]**

*Conference Report*

******

**Modifications to incorrect valuation penalty.**

The section 6659 penalty is modified by deleting the exception for property held for more than five years, and by extending the penalty to incorrect valuation for estate and gift tax purposes, effective for returns filed after 1984.

******

**Appraisal.**

For donations of property as to which the donor appraisal requirements apply, the donor must obtain and retain a qualified written appraisal by a qualified appraiser for the property contributed and must attach a signed appraisal summary to the return on which the deduction is first claimed (with such other information as prescribed by regulations).

The appraisal must be made by a person who is qualified to make appraisals of the type of property donated. (The conferees expect that in developing the substantiation regulations, the Treasury will consult, to the extent practicable, with **charitable** organizations, appraisers and **appraisal** associations, and others.) The **appraisal** cannot be made by the taxpayer, a party to the transaction in which the taxpayer acquired the property, the donee, or any person related to or regularly employed by any of the foregoing. Thus, for example, a taxpayer who acquired a painting from an art dealer could not use an appraisal from that dealer,

persons regularly employed by the dealer, or related persons (within the meaning of sec. 267(b)). In appropriate circumstances, an appraiser who is regularly retained by a party could be considered, pursuant to Treasury regulations, as an employee of that party for purposes of this appraisal requirement where a longstanding relationship with the appraiser would cause a reasonable person to question the independence of the appraiser.

Appraisals for which the fee is based on a percentage of the appraised value cannot qualify. However, appraisals are not disqualified where all or a portion of the fee is based on a sliding scale if the portion of the fee based on a sliding scale is paid to a generally recognized association which regulates appraisers. This exception applies only if no persons have a beneficial interest in the association.

The appraisal must include a description of the donated property, the fair market value of the property on the date of contribution, the specific basis for the valuation (e.g., comparable sales), and the qualifications of the appraiser. Also, the appraisal must state that it is being prepared for tax purposes, and must be signed by the appraiser, whose tax identification number must be listed. Accordingly, the appraiser is a person to whom the civil tax penalty for aiding and abetting an understatement of tax liability (sec. 6701) could apply.

The appraisal must be received by the donor before the due date (including exten sions) of the return on which the deduction is claimed. The donor must attach to the return on which the deduction is claimed a summary of the written appraisal, with such information and in a form prescribed by the Treasury Department. The appraisal summary must be signed by the appraiser and list the appraiser's tax identification number, and must be acknowledged by the donee (see discussion below under "Information report by donee on disposition"). The donor must retain the appraisal itself.

In addition, the donor must include in the return statements of the cost basis and the acquisition date of the donated property, and any other information to the extent required by Treasury regulation. If there is reasonable cause why the donor does not have information on the cost basis or acquisition date, the donor may substitute an explanatory statement, pursuant to Treasury regulations, with the return.

Under the conference agreement, the IRS is authorized and directed by the Congress to revise the individual income tax return for 1985 to add a separate line for claiming deductions for donations of property as to which a qualified appraisal is required. The instructions for the return are to include instructions as to the appraisal requirement. If the IRS, in processing returns as filed, finds that the taxpayer claimed deductions on the separate line relating to donations of property for which a qualified appraisal is required but failed to attach the summary appraisal, then the IRS (to the extent administratively practicable) is to so notify the taxpayer and request the filing of the summary. The deduction is not disallowed for a good faith failure to comply with the substantiation requirements if the taxpayer in fact had timely obtained a qualified appraisal and furnishes the IRS with an appraisal summary.

******

Under the first additional modification, the section 6659 penalty is increased to a flat 30 percent of the tax liability understatement where the claimed valuation is 150 percent or more of the correct value.

Keefer - 000002 20-11-10

95

Under the second additional modification, the IRS may not waive any portion of the penalty unless (1) the taxpayer shows (as required under the present-law waiver provision) that there was a reasonable basis for the claimed valuation and that the claim was made in good faith, and (2) the IRS determines both that the claimed value of the property was based on a qualified appraisal made by a qualified appraiser and that, in addition to obtaining such appraisal, the taxpayer made a good faith investigation of the value of the contributed property.

© 2020 Thomson Reuters/Tax & Accounting. All Rights Reserved.

Keefer - 000003 20-11-10

Scott M. McCullough, Executive Director



June 6, 2015

Kevin Keefer
c/o Huntington Group
107 Decker Court, Suite 500
Irving, TX 75062

**Re: Donation to The PI Foundation, Inc.**

Dear Kevin:

Thank you for your donation to The PI Foundation, Inc. of a 4.0% interest in Burbank HHG Hotel, L.P. The PI Foundation, Inc. is a 501(c)(3) nonprofit organization. Your contribution is tax-deductible to the extent allowed by the law. No goods or services were provided in exchange for your generous financial donation. Please keep this page for your records.

Sincerely,

THE PI FOUNDATION, INC.

Scott M. McCullough, Executive Director

December 28, 2020

## BRANT WEIGAND

13080 Pacific Promenade No 303
Playa Vista, Ca. 90094
bweigand@gucpas.com

EDUCATION AND CREDENTIALS:

Masters in Accounting  - California State University Northridge - 1979

CALIFORNIA CERTIFIED PUBLIC ACCOUNTANT - LICENSED IN 1979

PROFESSIONAL EXPERIENCE

Gorelick and Uslaner CPA's  from 1976 to present

Shareholder since 1986

Experience includes tax planning and advice and preparation of individual, corporate, partnership, and trust tax returns, including returns with multistate operations, 1031 exchanges and section 754 elections. I am involved in the preparation of approximately 250 tax returns a year. Most of which are individual and partnership returns.

To a lesser extent I have also been involved with the preparation of other types of returns such as payroll tax returns, property tax returns, estate tax returns, and city income tax returns.

**98**

# GPM Glast, Phillips & Murray
## A Professional Corporation

Excellence with Cost Effective Results

Appellate Law
Bankruptcy
Business Law
ERISA / Employee Benefits
Executive Compensation
Estate Planning
Family Law
Intellectual Property Law
International & Cross-Border
Labor and Employment Law
Litigation
Real Estate Law
Securities
Tax Law
Wealth Management



## KENNETH M. HORWITZ



Mr. Horwitz has 50+ years experience in a broad general tax and transaction practice that has included a sophisticated practice in business acquisitions, corporate and partnership taxation and estate planning, frequently involving transactions with significant international aspects. That practice extends to negotiations as well as tax controversy before the IRS. In addition, because of his qualification as a certified public accountant and experience as a tax partner in a 'Big Eight' accounting firm, his practice also includes significant experience in accounting (both tax and audit) malpractice litigation and representation before the State Board of Public Accountancy, IRS Office of Professional Responsibility, and other administrative agencies. His practice has encompassed a variety of industries such as manufacturing, real estate, high technology, oil and gas, and retail sales, among others. He was also group chief/tax law specialist for the Internal Revenue Service in Washington, D.C. His tenure with the IRS included practice in taxation and structuring of various methods of investment: domestic as well as under the laws of a variety of foreign nations.

E: kmh@gpm-law.com
T: 972-419-8383
F: 972-419-8329
vCard

### - PRACTICES

Business Law

Estate Planning and Individual Wealth Management

Tax Law

### - REPRESENTATIVE ENGAGEMENTS

Reorganization of privately held corporate and proprietorship businesses into holding company/partnership structure to achieve owner's estate planning, federal and state income tax and asset protection goals.

Representation of European/Middle-Eastern client group in international tax examination, and related corporate reorganization, international estate planning and immigration planning.

U.S. and international tax planning for major Mexican corporate group in connection with its U.S. manufacturing and sales operations, international tax planning and related negotiation and documentation of loans and acquisitions.

Obtaining a Texas franchise tax ruling for a major software developer.

Representation in connection with IRS examination (including appeals) and collection activities, financial and legal planning, state sales tax controversy and creditor collection efforts in business workouts, including negotiations with tax authorities (federal and state), vendors, Small Business Administration, customers and suppliers.

Tax Team Leader in U.S. client's acquisition of U.S. publicly-held U.S. corporation. Both parties owned worldwide subsidiaries with international tax issues a major factor in acquisition planning.

Representation in connection with corporate and partnership reorganizations including domestic as well as foreign entities.

Assist clients in negotiations and documentation of sales and purchases of closely held businesses.

Estate planning for client in context of divorce planning and negotiations with spouse's counsel to achieve family goals of (1) splitting the estate in the divorce context; and (2) shifting major portions of large estate to children and future generations without gift or estate tax.

Charitable contribution planning involving substantial real estate valuation issues and including restructuring of partnerships, preparing and filing probate court action for modification of irrevocable trusts, and obtaining a private letter ruling from the IRS National Office on generation skipping tax issues.

Representation of Certified Public Accountants before the Texas State Board of Public Accountancy, the Securities and Exchange Commission, the IRS Office of Professional Responsibility, various administrative agencies and the courts.

### - SPEECHES and PUBLICATIONS

Author,"Recent Developments Favor Use of Foreign Trade Zones", 63 Journal of Taxation 172;

"Partnerships Can Survive the Bankruptcy of a General Partner", 46 Taxation for Accountants 330;

"Worker Status Test Unchanged by the Supreme Court", 48 Taxation for Accountants 354;

"Independent Contractor vs. Employee Classification Has a Major Tax Impact", Tax Ideas, 358;

"New Law Liberalizes Worker Classification Rules", 57 Taxation for Accountants 324;

"New Law Liberalizes Worker Classification Rules", 25 Taxation for Lawyers 196;

"The CPA-Client Privilege: Boon or Bane?", 25 No. 4 Today's CPA 18;

"The New CPA-Client Confidentiality Privilege: Opportunity or Risk?", RIA Tax Planning & Practice Guide (6/18/99);

"A New Development in Tax-Free Exchange of Real Estate", 27 No. 8 Today's CPA 8;

"Comments on Circular 230 Changes", 2005 TNT 106-21;

"Revised Circular 230: New Dangers for CPAs", 33 No. 2 Today's CPA 20;

"New Tax Preparer Penalty Standards: An IRS Overlay to What Congress Has Done", Visit TSCPA and TSCPA Public Practice E-News January/February 2008 (January 3, 2008);

"Conflicts of Interest: IRS Rules Differ from AICPA Professional Standards", 42 No. 11 The Tax Advisor 776;

"How Do IRS Conflicts of Interest Rules Impact You?", 39 No. 5 Today's CPA 21;

Co-Author, "Tax Planning for Real Estate Leases for Both Lessor and Lessee", Tax Ideas, 235.

Co-Author, "Supreme Relief: The Texas High Court Announces New Statute of Limitations Rules for Accountants", 25 No.1 Today's CPA 32.

- EDUCATION

Georgia Institute of Technology (B.S. 1965)
Emory University School of Law (J.D. 1968)
George Washington University National Law Center (LL.M. 1972)

- AFFILIATIONS

State Bar of Texas
United States Tax Court Bar
State Bar of Georgia (retired)
America Bar Association (Taxation and Real Property, Trust and Estate Law Sections)
American Institute of Certified Public Accountants (Tax Section and Tax Practice Responsibility Committee)
Texas Society of Certified Public Accountants (Board of Directors, Chair, Federal Tax Policy Comments Committee, member, Professional Ethics and IRS Liaison Committees)
Dallas Bar Association (International Law Section, past chair, Tax and Probate, Trusts and Estates)
Dallas CPA Society (member, Board of Directors, CPE Committee Chair, Past Vice President, Past Chair, Tax Committee)
American Association of Attorney-CPAs

Glast, Phillips and Murray, PC
Copyright © 2020
All Rights Reserved
www.gpm-law.com

Unless otherwise specified, the attorneys listed on this website are not certified by the Texas Board of Legal Specialization.
DISCLAIMER

LOCATIONS
-------------------------------
DALLAS PRINCIPAL OFFICE
14801 Quorum Drive Suite 500
Dallas TX 75254-1449
Phone: (972) 419-8300
GET DIRECTIONS

HOUSTON SATELLITE OFFICE
By Appointment Only
Phone: (972) 419-8300

AUSTIN SATELLITE OFFICE
By Appointment Only
Phone: (972) 419-8300

SITE MAP
-----------------
HOME
OUR FIRM
ATTORNEYS
PRACTICES
RECRUITING
NEWS
CONTACT

**100**

UNITED STATES DISTRICT COURT
For The Northern District Of Texas
Dallas Division

| | | |
|---|---|---|
| KEVIN M. AND PATRICIA S. KEEFER,<br>Plaintiffs<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Defendant | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.  3:20-CV-0836-B<br><br>JURY TRIAL: X YES _ NO |

DECLARATION
OF BRANT C. WEIGAND

1.      My name is **Brant. C. Weigand**.   I am of over the age of 18 years, of sound mind, am competent to make this declaration, and have personal knowledge of the facts stated herein.   The facts I state in this declaration are true and correct.

2.      I am one of the CPAs for **Kevin M. Keefer and Patricia S. Keefer** in dealing with the Internal Revenue Service on the subject matters of the above styled case.

3.      I am one of the custodians of the records of **Gorelick & Uslaner, CPAs, a Prof Corp.** (the "Business").   The Business is a firm of certified public accountants.   The Business is a regularly conducted activity.   This declaration is attached to Plaintiffs' Appendix in Support of Plaintiff's Motion for Partial Summary Judgment in the above styled case.   These numbered pages in the appendix are records from the business: **Appendix pages numbered 1 to 3, 27 to 64, 80 – 83, 97 – 98.**   Each of those records is of an act, event, condition, opinion, or diagnosis and:

a.      the record was made at or near the time by or from information transmitted by someone with personal knowledge of the act, event, condition, opinion or diagnosis;

b.      the record was kept in the course of the regularly conducted activity of the Business; and

c.      the making of the record was a regular practice of that Business.

4.      The records attached hereto are the originals or exact duplicates of the originals of the relevant portions of the whole document, except for the highlights and the appendix page numbers on the bottom right hand corner of each record page.

DECLARATION OF BRANT C. WEIGAND -- PAGE 1 OF 2

**101**

5.      **Appendix 37** is a correct calculation that I performed showing proper basis of the Keefers in the PI contributed asset, assuming the IRS correctly disallowed the charitable deduction for whatever reason, as the IRS did here to the Keefers. Making that assumption, Section 1011(b) of the Internal Revenue Code commands the taxpayer's basis be recalculated back upward for purpose of calculating any taxable gain, which will arithmetically reduce the taxable gain in the transfer as a non-deductible transfer, which in turn reduces the tax (and any proposed penalty and interest) on the disallowed deduction.   The IRS here failed to re-adjust the Keefers' basis back up to properly calculate gain and reduce the proposed penalty when IRS disallowed the contribution.   In the Keefers' amended Form 1040 for 2015, after the IRS rejected the charitable deduction, the Keefers, through my calculation, properly allocated the property adjusted basis for the contributed partnership interest as required by Section 1011(b) of the Code for a charitable contribution deduction, and expressly showed the IRS the proper calculation.   **Appendix 29, 30, 37**.   The Keefers pointed this out to the IRS, showed the proper calculation, and requested the recalculation.   **Appendix 79.**   I have seen no response or change in the assessed taxes or penalties or interest upon the Keefers from the IRS to reflect this corrected basis calculation.

6.      I am a certified public accountant with the experience shown in my resume on **Appendix 98.**   I have prepared and filed the federal income tax returns for Kevin and Patricia Keefer for several years.   For the tax year 2015, the Keefers retained me and my CPA firm to review the appraisal of the PI contribution involved in this case, among other things, and prepare and file it with plaintiffs' return along with the Form 8283 and other attachments to the return, and, along with the attorney Ken Horwitz, to respond to the IRS notice of deficiency and other communications from the IRS.   In my opinion based on my experience in the industry and my dealings with the Keefers, the Keefers relied upon me, my firm and Ken Horwitz to counsel with them, prepare their 2015 tax return, and respond to the IRS communications, and they each   had reasonable cause and no willful neglect in relying upon us to do so.

7.      I state under oath that I sign this declaration in a manner that I understand, if my declaration is falsely made, would subject me to a criminal penalty.

## DECLARATION

I have read the foregoing Declaration.

My name is **BRANT C. WEIGAND**, my date of birth is February 25, 1951, and my address is 15260 Ventura Boulevard, Suite 1705, Sherman Oaks, California 91403.   I declare under penalty of perjury that the foregoing is true and correct.

Executed in Los Angeles County, State of California, on the ͟2͟9͟T͟H͟ day of ͟D͟E͟C͟E͟M͟B͟E͟R͟ , 2020.

x ͟B͟r͟a͟n͟t͟ ͟C͟.͟ ͟W͟e͟i͟g͟a͟n͟d͟
**BRANT C. WEIGAND**, Declarant

**DECLARATION OF BRANT C. WEIGAND – PAGE 2 OF 2**

**102**

UNITED STATES DISTRICT COURT
For The Northern District Of Texas
Dallas Division

| | | |
|---|---|---|
| KEVIN M. AND PATRICIA S. KEEFER,<br>Plaintiffs | § <br> § <br> § | CIVIL ACTION NO.   3:20-CV-0836-B |
| v. | § <br> § | JURY TRIAL: X YES _ NO |
| UNITED STATES OF AMERICA,<br>Defendant | § <br> § | |

---

## DECLARATION
## OF KENNETH M. HORWITZ

---

1.      My name is **Kenneth M. Horwitz**.   I am over the age of 18 years, of sound mind, am competent to make this declaration, and have personal knowledge of the facts stated herein. The facts I state in this declaration are true and correct.

2.      I am one of the attorneys for **Kevin M. Keefer and Patricia S. Keefer** in dealing with the Internal Revenue Service on the subject matters of the above styled case.

3.      I am one of the custodians of the records of **Glast, Phillips & Murray, a professional corporation** (the "Business").   The Business is a law firm.   The Business is a regularly conducted activity.   This declaration is attached to Plaintiffs' Appendix in Support of Plaintiff's Motion for Partial Summary Judgment in the above styled case.   These numbered pages in the Appendix are records from the business: **Appendix 21-27, 65-73, 78-79, 84-93, 99-100**. Each of those records is of an act, event, condition, opinion, or diagnosis and:

   a.      the record was made at or near the time by or from information transmitted by someone with personal knowledge of the act, event, condition, opinion or diagnosis;

   b.      the record was kept in the course of the regularly conducted activity of the Business; and

   c.      the making of the record was a regular practice of that Business.

   d.      **Appendix 65 – 73** were produced by the defendant U.S. in this case as part of defendant's initial disclosures, and **Appendix 84 – 93** were obtained from the IRS's website.

---

4.      The records attached hereto are the originals or exact duplicates of the originals of the relevant portions of the whole document, except for the highlights and the appendix page numbers on the bottom right hand corner of each record page.

5.      I am an attorney at law with the experience shown in my resume in the **Appendix pages 99 - 100**.   I have represented and counseled with Kevin and Patricia Keefer for several years on their federal income tax matters, among other things.   For the tax year 2015, the Keefers retained me to assist in certain legal and tax aspects of the contribution of a partnership interest in Burbank HHG Hotel, LP to a charitable organization, the PI Fund (the "PI Contribution") and to obtain and review the appraisal of the PI Contribution involved in this case, among other things. The appraisal was used in preparing    the plaintiffs' 2015 Form 1040 Federal income tax return and was included in said return along with the Form 8283 and other attachments to the return. I was also retained along with the Keefer's CPA, Brant Weigand, to represent them in a IRS income tax examination of that Form 1040 and, ultimately, to respond to the Revenue Agent's Report and the IRS Notice of Deficiency and other communications from the IRS. Although both Mr. and Mrs. Keefer were CPAs, neither was qualified by education or experience to deal with these tax issues. Mr. Keefer was not in the practice of accounting and took CPE required to maintain his license as a CPA to be able to understand advice he received in the context of his very substantial hotel ownership and management business while Mrs. Keefer had not practiced tax for many years since she was much younger. It is clear to me based upon the many discussions I had with Mr. Keefer that he relied upon my advice as to how to proceed with this complex transaction and on Mr. Weigand regarding the reporting. In my opinion based on my experience both as a tax lawyer and in the industry and my dealings with the Keefers, the Keefers reasonably relied upon me, my firm and their CPA, Brant Weigand, as the principal return preparer, to counsel with them regarding the transaction, deal with the appraiser, and review the appraisal, prepare their 2015 tax return, and respond to the IRS communications. It is also clear to me that Mr. Keefer and his staff under his direction supplied the appraisers with all necessary and requested information. Mr. and Mrs. Keefer each had reasonable cause and no willful neglect in relying upon us (myself and the law firm as well as Mr. Weigand) to do so.

6.      The IRS asserted a disallowance of deductions relating to the contribution by the Keefers to the PI Fund resulting in asserted tax plus 20% penalty (under Section 6662(a)) of $507,964.80 total ($423,304.00 tax plus $84,660.80 penalty). Even if the deductions were appropriately disallowed then the basis of the contributed property should have been reallocated under Section 1011(b) to the sale property and the total additional tax would not exceed $318,106.00. Thus the excess tax in such scenario asserted by IRS and paid by the Keefers was at least $105,198.00 ($423,304.00 less $318,106.00)(see App. 30 for calculation); the excess Section 6662(a) on that amount was 20% of that amount or $21,039.60. Under any proper reading of the statute, the IRS charged and the Keefers paid an excess of $105,198.00 tax plus $21,039.60 penalty for a total of $126,237.60.

7.      I state under oath that I sign this declaration in a manner that I understand, if my declaration is falsely made, would subject me to a criminal penalty.

---

## DECLARATION

I have read the foregoing Declaration.

My name is **Kenneth M. Horwitz**, my date of birth is October 11, 1943, and my address is 14801 Quorum Drive, Suite 500, Dallas, Texas 75254.  I declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas County, State of Texas, on the _____ day of January, 2021.

x _____

**Kenneth M. Horwitz**, Declarant

**105**

UNITED STATES DISTRICT COURT
For The Northern District Of Texas
Dallas Division

| | | |
|---|---|---|
| KEVIN M. AND PATRICIA S. KEEFER, | § | |
| Plaintiffs | § | |
| | § | CIVIL ACTION NO.  3:20-CV-0836-B |
| v. | § | |
| | § | JURY TRIAL: X YES _ No |
| UNITED STATES OF AMERICA, | § | |
| Defendant | § | |

---

DECLARATION
OF KEVIN KEEFER

---

1.      My name is **Kevin Keefer**.   I am of over the age of 18 years, of sound mind, am competent to make this declaration, and have personal knowledge of the facts stated herein.   The facts I state in this declaration are true and correct.

2.      I am one of the plaintiffs in the above styled case.

3.      This declaration is attached to Plaintiffs' Appendix in Support of Plaintiff's Motion for Partial Summary Judgment in the above styled case.   These numbered pages in the appendix are documents I received from the IRS: **Appendix pages numbered 4 to 20**.   I received the documents at **Appendix pages 97 and 38 – 49** from PI Foundation, and I signed **Appendix pages 38, 40, and 48** and returned those to PI at the time of our charitable contribution to PI of the asset involved here.

4.      The records attached hereto are the originals or exact duplicates of the originals of the relevant portions of the whole document, except for the highlights and the appendix page numbers on the bottom right hand corner of each record page.

5.      I and my spouse, Patricia Keefer, have used Brant Weigand, CPA, to prepare and file our federal income tax returns for many years. Both my wife and I are CPA's. However, I do not practice accounting or tax and focus my business efforts on the ownership and management of a large hotel business with hotels in a number of states. My wife for many years has worked on non-tax matters. Neither of us is competent to deal with the complex issues involved in the large charitable contribution like we made to the PI Fund in 2015. While we are well educated we rely on legal and tax counsel and tax CPA's who have expertise to advise us with respect to such matters. We have retained our attorney, Kenneth M. Horwitz, for tax advice, counsel and legal

---

representation on tax issues for several years.   For the tax year 2015, Kenneth Horwitz, our attorney, selected and retained the appraisal firm to prepare the appraisal of the contribution to the PI Fund involved in this case.   Brant Weigand filed it with our return along with the Form 8283 and other attachments to the return.   Along with the attorney Kenneth M. Horwitz, Mr. Weigand was engaged to respond to the IRS examination, Revenue Agent's Report, and Notice of Deficiency and other communications from the IRS.   We reasonably relied upon Weigand and his CPA firm and Kenneth M. Horwitz to counsel with us, engage an appraiser as required, and review the appraisal, prepare our 2015 tax return, and respond to the IRS communications.   We each had reasonable cause and no willful neglect in relying upon those persons and firms to deal with complex tax issues outside of our expertise or abilities to do so.

6.      I state under oath that I sign this declaration in a manner that I understand, if my declaration is falsely made, would subject me to a criminal penalty.

### DECLARATION

I have read the foregoing Declaration.

My name is **KEVIN KEEFER**, my date of birth is ___08/06/1952___, and my address is ___4723 Byron Circle, Irving, TX 75038___.   I declare under penalty of perjury that the foregoing is true and correct.

Executed in ___DALLAS___ County, State of ___Texas___, on the ___15th___ day of ___January___, 2021.

x _____
**KEVIN KEEFER, Declarant**

| | |
|---|---|
| **From:** | Yepuri, Moha P. (TAX) <Moha.P.Yepuri@usdoj.gov> |
| **Sent:** | Thursday, October 7, 2021 7:30 PM |
| **To:** | Ric Young; Ken Horwitz |
| **Cc:** | Orozco, Christian A. (TAX) |
| **Subject:** | [Not Virus Scanned] [Not Virus Scanned] Keefers v. United States:  Ms. Dunford's calculations |
| **Attachments:** | SCENARIO 1-3 COMPS AND RAR.zip |

This message has not been virus scanned because it contains encrypted or otherwise protected data. Please ensure you know who the message is coming from and that it is virus scanned by your desktop antivirus software.
This message has not been virus scanned because it contains encrypted or otherwise protected data. Please ensure you know who the message is coming from and that it is virus scanned by your desktop antivirus software.
Dear Counsel,

Attached are the printouts of Ms. Dunford's calculations.  Ms. Dunford will serve as an IRS fact witness to authenticate and explain 3 calculations. These calculations were prepared at my request based on three potential trial outcomes (scenarios) that the court or jury might reach short of deciding all issues in the plaintiffs' favor.  The parameters for each of these three alternative outcomes are set forth in first page of each calculation.  I did not ask Ms. Dunford to prepare a computation for a scenario where the plaintiffs win all issues. You already have that math and will likely be presenting it to the jury.  I intend to use these calculations to inform the court and jury of the different tax results for the different outcomes they may reach.  Ms. Dunford will not be asked to testify as to which outcome the jury should reach.

Attached to each calculation are Forms 4549-A and 886-A generated by Ms. Dunford to calculate the amount of tax due or to be refunded, depending on the parameters of the particular scenario.  Scenarios #1 and #3 show a refund due to the Keefers – albeit smaller than the amount requested.  Scenario #2 shows additional tax due to the United States.  While we understand that the statute of limitations to assess additional tax may be closed for the Keefers' 2015 tax year, under *Lewis v. Reynolds* the Keefers would not be entitled to any refund under Scenario #2 because other adjustments to income eliminate any refund.

I will call you to provide to you the password to the attached zip file that includes the 3 calculations.

Ms. Dunford is available to testify on Oct 13 or Oct 15 in a remote fashion, and Ms. Monk has indicated that she can arrange a court reporter for that purpose.  Please let me know which date is preferable, and we will reserve that time.  If you need Ms. Monk's contact information, I can provide that as well.

Sincerely,

Moha P. Yepuri
Department of Justice, Tax Division
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9767 direct
(214) 880-9741 facsimile
(214) 880-9721 main

1

000108

Moha.P.Yepuri@usdoj.gov

000109

**SCENARIO #1 - VERIFY AND REVERSE GAIN ON BARGAIN SALE (NO CHARITABLE CONTRIBUTION DEDUCTION)**

| COMPUTATION - PORTION SOLD |
|---|

**PARAMETERS**

*SOURCE: Appraisal & PDF Attached to F8283*

| | | |
|---|---|---|
| 4% Interest NET ASSET VALUE (per Appraisal)/not incl oral agreement | $ | 1,257,000.00 |
| FMV ENTIRE PROPERTY (per Appraisal) | $ | 2,127,195.00 |
| Mortgage ($870,195) + FMV ($1,257,000) | | |
| Mortgage Deemed Assumed by Donee (Amount Realized) | $ | 870,195.00 |
| Total Mtg Outstanding @ 6/18/2015 $ 21,754,872 | | |
| TP Donor Basis in 4% Interest | $ | 548,033.00 |
| Total Adjusted Basis @ 6/18/2015 $13,700,830 | | |

**FORMULA**

**The Adjusted Basis of the Part Sold is figured as follows:**

Adjusted Basis Entire Property x Amount Realized (FMV of Part Sold)/ FMV Entire Property

| PART I - COMPUTATION - ADJUSTED BASIS OF THE PART SOLD *(Pub 544)* |
|---|

| | | | | | | | Table 3 Appraisal shows NET ASSET VALUE | |
|---|---|---|---|---|---|---|---|---|
| $ | 548,033.00 | x | $ 870,195.00 | = | 40.91% | | Sales Price | $ 54,000,000.00 |
| | | | $2,127,195.00 | | | | Less: Mtg | $21,642,000.00 |
| | | | | | | | Less: Other Costs | $ 134,000.00 |
| $ | 548,033.00 | x | 40.91% | = | $ 224,189.87 | | Total Costs | $21,776,000.00 |
| | | | | | **Adjusted Basis of Part Sold** | | Net Proceeds | $ (32,224,000.00) |
| | | | | | | | Net Asset Value | $ 1,289,000.00 |
| | COMPUTATION - GAIN ON THE SALE | | | | | | | after discount $ 1,257,000.00 |
| Amount Realized (Mortgage Assumed) | | | $ 870,195.00 | | | | | |
| Less: Adjusted Basis of Part Sold | | | $ 224,189.87 | | | | Appraisal is for NET ASSET VALUE | |
| **Gain on the Sale** | | | $ 646,005.13 | | | | Value AFTER mortgage | |
| | | | P/R $646,005 | | | | to get FMV Entire Property must do NET FMV + Mtg Assumed | |

KEEFER
SCENARIO #1
"BARGAIN SALE COMPUTATION"

---

**PART II - COMPUTATION - CHARITABLE CONTRIBUTION (DEEMED BARGAIN SALE)** *Pub 526*

**PARAMETERS:**

*SOURCE: Appraisal & PDF Attached to F8283*

| | |
|---|---|
| 4% Interest Net Asset Value (per Appraisal)/not incl oral agreement | $1,257,000.00 |
| FMV ENTIRE PROPERTY (per Appraisal) | $2,127,195.00 |
| Mortgage ($870,195) + FMV ($1,257,000) | |
| Mortgage Deemed Assumed by Donee (Amount Realized) | $  870,195.00 |
| Total Mtg Outstanding @ 6/18/2015 $ 21,754,872 | |
| TP Donor Basis in 4% Interest | $  548,033.00 |
| Total Adjusted Basis @ 6/18/2015 $13,700,830 | |

---

**STEP 1**

Subtract the amount you received for the property from the property's FMV at the time of sale. This gives you the FMV of the CONTRIBUTED PART.

| | |
|---|---|
| FMV 4% Interest | $2,127,195.00 |
| Less:  Amount Realized (Mortgage Assumed) | $ (870,195.00) |
| **FMV of the CONTRIBUTED PART** | **$1,257,000.00** |

---

**STEP 2**

Find the adjusted basis of the contributed part.  It equals:                    **Adjusted Basis of Entire Property x FMV of**
**contributed part/FMV of entire property**

| | | | | |
|---|---|---|---|---|
| $ | 548,033.00 | x | $1,257,000.00  = | 59.09% |
| | | | $2,127,195.00 | |
| | | | | |
| $ | 548,033.00 | x | 59.09% | $  323,843.13 |
| | | | | |
| ADJUSTED BASIS OF THE CONTRIBUTED PART | | | | $  323,843.13 |

---

**STEP 3**

Determine whether the amount of your charitable contribution is the **FMV of the contributed part (found in Step 1)** or the Adjusted basis of the contributed part (found in Step 2).  **If the property sold was capital gain property your charitable contribution is the FMV of the contributed part.** If it was ordinary income property, your charitable contribution is the adjusted basis of the contributed part

**Property is Capital Gain Property -**
**Charitable Contribution = FMV of Contributed Part**

| | |
|---|---|
| | **$1,257,000.00** |
| | P/R $1,257,000 |

---

**PART III - COMPUTATION - REMOVE GAIN FROM BARGAIN SALE**

| | | |
|---|---|---|
| Per Return - Bargain Sale | $ | 646,005.00 |
| Per Audit - Bargain Sale | $ | 646,005.00 |
| Per Audit or Previously Adjusted | $ | 646,005.00 |
| | | |
| Scenario #1 - Reverse Bargain Sale | $ | (646,005.00) |
| **Adjustment per Scenario #1** | **$** | **(646,005.00)** |

0001

**Form 4549-A**
(December 2020)

Department of the Treasury-Internal Revenue Service

# Report of Income Tax Examination Changes

| Name and address of taxpayer | Taxpayer identification number | | Return form number |
|---|---|---|---|
| Kevin & Patricia Keefer | 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 | | 1040 |
| | Person with whom examination changes were discussed. | Name and title Kevin & Patricia Keefer | |

| | | Period Ended 12/31/2015 | Period Ended | Period Ended |
|---|---|---|---|---|
| 1. | **Adjustments to income** | | | |
| a. | Capital Gain or Loss | (646,005.00) | | |
| b. | Itemized Deductions | (19,380.00) | | |
| c. | | | | |
| d. | | | | |
| e. | | | | |
| f. | | | | |
| g. | | Scenario #1 - Reverse Bargain Sale - DO NOT PROCESS | | |
| h. | | | | |
| i. | | | | |
| j. | | | | |
| k. | | | | |
| l. | | | | |
| m. | | | | |
| n. | | | | |
| o. | | | | |
| p. | | | | |
| 2. | **Total adjustments** | (665,385.00) | | |
| 3. | Taxable income per return or as previously adjusted | 21,429,590.00 | | |
| 4. | **Corrected taxable income** | 20,764,205.00 | | |
| | Tax method | SCHEDULE D | | |
| | Filing status | Joint | | |
| 5. **Tax** | (See attached schedule) | 4,915,879.00 | | |
| 6. | **Additional taxes/Alternative minimum tax** | | | |
| 7. | Corrected tax liability | 4,915,879.00 | | |
| 8. **Less** credits | a. Foreign Tax Credit | 1,576.00 | | |
| | b. General Business Credit | 7,257.00 | | |
| | c. | | | |
| | d. | | | |
| 9. | **Balance** *(line 7 less lines 8a through 8d)* | 4,907,046.00 | | |
| 10. **Plus** other taxes | a. Self Employment Tax | 39,400.00 | | |
| | b. Net Investment Income Tax | 21,830.00 | | |
| | c. Additional Medicare Tax | 16,704.00 | | |
| | d. | | | |
| 11. | Total corrected tax liability *(line 9 plus lines 10a through 10d)* | 4,984,980.00 | | |
| 12. | Total tax shown on return or as previously adjusted | 5,121,855.00 | | |
| 13. | Adjustments to: a. | | | |
| | b. | | | |
| | c. | | | |
| 14. | Deficiency-Increase in tax or *(overassessment-decrease in tax)* *(line 11 less line 12 adjusted by lines 13a through 13c)* | (136,875.00) | | |
| 15. | Adjustments to prepayment credits - increase *(decrease)* | | | |
| 16. | **Balance due or *(overpayment)*** - *(line 14 adjusted by line 15)* *(excluding interest and penalties)* | (136,875.00) | | |

| Name of taxpayer | Taxpayer identification number | Return form number |
|---|---|---|
| Kevin & Patricia Keefer | 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 | 1040 |

| 17.  Penalties, additions to tax, and additional amounts -- IRC sections | Period Ended 12/31/2015 | Period Ended | Period Ended |
|---|---|---|---|
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m.  Scenario #1 - Reverse Bargain Sale - DO NOT PROCESS | | | |
| n. | | | |
| 18.  Total penalties, additions to tax, and additional amounts | | | |
| 19.  Summary of taxes, penalties and interest | | | |
| a.  Balance due or *(overpayment)* taxes - *(line 16, page 1)* | (136,875.00) | | |
| b.  Penalties and additions *(line 18)* - computed to 10/07/2021 | | | |
| c.  Interest** *(IRC § 6601)* - estimated and computed to 11/06/2021 | 0.00 | | |
| d.  Amount due or *(refund) - (sum of lines a, b, and c)* | (136,875.00) | | |

**Interest, as provided by law, will be charged on any unpaid amount until it is paid in full.

Other information

DRAFT TAX COMPUTATION - DO NOT PROCESS - SCENARIO #1
REVERSE "BARGAIN SALE"

| Examiner's signature | Employee ID | Office | Date |
|---|---|---|---|
| Amy Dunford | 1000668280 | Oklahoma City, OK | 10/07/2021 |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, **you should amend your state return** by filing the necessary forms.

**You** may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the **required** tax. The IRS may order backup withholding (withholding of a percentage of your dividend and/or interest payments) if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># Explanation of Items | Schedule number or exhibit |
|---|---|---|

| Name of taxpayer | Tax Identification Number *(last 4 digits)* | Year/Period ended |
|---|---|---|
| Kevin & Patricia Keefer | 7478 | |

Taxes (Form 4549 series Line 5 or Form 5278 Line 11):

|  | 2015 |
|---|---|
| Tax (regular tax before credits) | 4,909,191.00 |
| Other write-ins to tax | 6,688.00 |

<p style="text-align:center; color:red;">Scenario #1 - Reverse Bargain Sale - DO NOT PROCESS</p>

| Total Taxes: | 4,915,879.00 |
|---|---|

Other Taxes (Form 4549 series Line 10 or Form 5278 Line 17):

| Form **5278** (Rev. June 2011) | **Statement - Income Tax Changes** | Schedule |
|---|---|---|

| **1. Name(s) of taxpayer(s)** Kevin & Patricia Keefer | **2.** ☐ Notice of Deficiency  ☐ Settlement Computation  ☐ Other |
|---|---|

| **3. Taxpayer Identification Number** 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 | **4. Form number** 1040 | **5. Docket number** | **6. Office symbols** SBSE:OKC |
|---|---|---|---|

| | | Tax Year(s) Ended | | |
|---|---|---|---|---|
| **7. Adjustments to income** | **Year:** 12/31/2015 | | | |
| a. Capital Gain or Loss | (646,005.00) | | | |
| b. Itemized Deductions | (19,380.00) | | | |
| c. | | | | |
| d. | | | | |
| e. | | | | |
| f. | | | | |
| g. | Scenario #1 - Reverse Bargain Sale - DO NOT PROCESS | | | |
| h. | | | | |
| **8. Total adjustments** | (665,385.00) | | | |
| 9. Taxable income as shown in | | | | |
| ☐ Preliminary letter dated _____ | | | | |
| ☐ Notice of deficiency dated _____ | | | | |
| ☐ Return as filed | 21,429,590.00 | | | |
| **10. Taxable income as revised** | 20,764,205.00 | | | |
| **11. Tax** (See attached schedule) Tax Method _____ Filing Status _____ | 4,915,879.00 SCHEDULE D Joint | | | |
| 12. Alternative tax, if applicable | | | | |
| 13. Alternative minimum tax *(Starting in tax year 2000)* | | | | |
| **14. Corrected tax liability** - *(lesser of line 11 or 12 plus line 13)* | 4,915,879.00 | | | |
| 15. Less credits | a. Foreign Tax Credit | 1,576.00 | | |
| | b. General Business Credit | 7,257.00 | | |
| | c. | | | |
| **16. Balance** - *(line 14 less total of lines 15a - 15c)* | 4,907,046.00 | | | |
| 17. Plus other taxes | a. Self Employment Tax | 39,400.00 | | |
| | b. Net Investment Income Tax | 21,830.00 | | |
| | c. Additional Medicare Tax | 16,704.00 | | |
| **18. Total corrected tax liability** - *(line 16 plus lines 17a - 17c)* | 4,984,980.00 | | | |
| 19. Total tax shown on return or as previously adjusted | 5,121,855.00 | | | |
| 20. Adjustments: increase or (decrease) to: | a. | | | |
| | b. | | | |
| | c. | | | |
| **21. Deficiency - Increase in tax** *(overassessment - decrease in tax)* *(line 18 less line 19 adjusted by lines 20a - 20c)* | (136,875.00) | | | |
| 22. Adjustments to prepayment credits - Increase *(decrease)* | | | | |
| **23. Balance due or *(Overpayment)* excluding interest and penalties** *(line 21 adjusted by line 22)* | (136,875.00) | | | |
| **24. Penalties and/or Additions to Tax** *(listed below)* | | | | |

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service<br>**Explanation of Items** | Schedule number or exhibit |
|---|---|---|

| Name of taxpayer<br>Kevin & Patricia Keefer | Tax Identification Number *(last 4 digits)*<br>7478 | Year/Period ended |
|---|---|---|

Taxes (Form 4549 series Line 5 or Form 5278 Line 11):

2015

Tax (regular tax before credits)          4,909,191.00

Other write-ins to tax          6,688.00

<p style="text-align:center;color:red;">Scenario #1 - Reverse Bargain Sale - DO NOT PROCESS</p>

Total Taxes:          4,915,879.00

Other Taxes (Form 4549 series Line 10 or Form 5278 Line 17):

000116

# Agreement to Assessment and Collection
# of Additional Tax and Acceptance of Overassessment
### (Employment Tax Adjustments Not Subject to IRC 7436)

Date received by Internal Revenue Service

| Taxpayer(s) name | D/B/A | SSN/EIN |
|---|---|---|
| Kevin Keefer | | 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 |

| Address of taxpayer(s) *(number, street)* | City/Town | State | ZIP code |
|---|---|---|---|
| | | | |

## Adjustment to Tax, Credits and Penalties

| Tax Period Ended | Return Form Number | Kind of Tax and Internal Revenue Code Section | Amount of Tax | Credit Increase *(Decrease)* | Penalty |
|---|---|---|---|---|---|
| 12/31/2015 | 1040 | Add. Med. W/H Tax Sec 3101(b)(2) | | 3,921.00 | |
| | | Scenario #1 - Reverse Bargain Sale - DO NOT PROCESS | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **Total** | | | 0.00 | 3,921.00 | |

I consent to the immediate assessment (increase in tax and penalties and/or decrease in credits) and the collection of any such amounts. In addition, I accept any overassessment (decrease in tax and penalties and/or increase in credits) shown above. I also agree to any interest as provided by law.

| Sign Here ▶ | | Date |
|---|---|---|
| Sign Here ▶ | | Date |
| Sign Here ▶ | By | Title | Date |

**Note:**

If you consent to the assessment of the amounts shown in this agreement, your signature will expedite our adjustment to your account. Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are entitled to a refund. It will not prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for either action.

The amounts shown in this agreement do not include any adjustments involving worker classification or Section 530 determinations. Any adjustments involving worker classification or Section 530 determinations will be shown in a separate agreement Form 2504-T, *Agreement to Assessment and Collection of Additional Tax and Acceptance of Overassessment (Employment Tax Adjustments Subject to IRC 7436).*

**Who Must Sign**

If you are making this agreement for a partnership, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed with us.

## Memo: Abatement amount under IRC 3402(d) and/or IRC 3102(f)(3) - See explanation on Form 4666

| Tax Period Ended | Return Form Number | IRC Code | Credit for Abatement | Tax Period Ended | Return Form Number | IRC Code | Credit for Abatement |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

| Name of Taxpayer: | Kevin & Patricia Keefer | | 10/07/2021 |
|---|---|---|---|
| Identification Number: | 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 | Total | 22.20.00 |

## 2015 – Form 3800 - General Business Credit

Part I - Current Year Credit for Credits Not Allowed Against Tentative Minimum Tax (TMT)

| | |
|---|---|
| 1. General business credit from a non-passive activity | 0.00 |
| 2. General business credit allowed from a passive activity | 0.00 |
| 3. General business credit carryforwards | 0.00 |
| 4. General business credit carrybacks | 0.00 |
| 5. Tentative general business credit (sum of lines 1 through 4) | 0.00 |

Part II - Allowable Credit

| | |
|---|---|
| 6. Regular tax before credits (plus excess advance premium tax credit repayment) | 4,915,879.00 |
| 7. Alternative minimum tax | 0.00 |
| 8. Total of lines 6 and 7 | 4,915,879.00 |
| 9. Foreign tax credit | 1,576.00 |
| 10. Allowable separately stated credits | 0.00 |
| 11. Total of lines 9 through 10 | 1,576.00 |
| 12. Net income tax (line 8 less line11) | 4,914,303.00 |
| 13. Net regular tax (line 6 less line 11) | 4,914,303.00 |
| 14. If line 13 is more than $25,000, enter 25% of the excess | 1,222,325.75 |
| 15. Tentative minimum tax | 4,849,497.00 |
| 16. Greater of line 14 or line 15 | 4,849,497.00 |
| 17. Line 12 less line 16 (if zero or less, enter -0-) | 64,806.00 |
| 18. Smaller of Part I, line 5 above or Part II, line 17 | 0.00 |
| 19. Multiply line 15 by 75% | 0.00 |
| 20. Greater of line 14 or line 19 | 0.00 |
| 21. Subtract line 20 from line 12 (if zero or less, enter -0-) | 0.00 |
| 22. Subtract line 18 from line 21 (if zero or less, enter -0-) | 0.00 |
| 23. Tentative empowerment zone and renewal community employment credit | 0.00 |
| 24. Empowerment zone and renewal community employment credit allowed (smaller of line 22 or line 23) | 0.00 |
| 25. Subtract line 14 from line 12 (if zero or less, enter -0-) | 3,691,977.25 |
| 26. Add lines 18 and 24 | 0.00 |
| 27. Subtract line 26 from line 25 (if zero or less, enter -0-) | 3,691,977.25 |
| 28. Business credit from a non-passive activity | 7,257.00 |
| 29. Reserved | |
| 30. Business & eligible small business credit allowed from a passive activity | 0.00 |
| 31. Business & eligible small business credit carryforwards | 0.00 |
| 32. Business & eligible small business credit carrybacks | 0.00 |
| 33. Tentative business and eligible small business credit (sum of lines 28 through 32) | 7,257.00 |
| 34. Smaller of line 27 or line 33 | 7,257.00 |
| 35. Current year General business credit allowed (add lines 26 and 34) | 7,257.00 |

000118

| Name of Taxpayer: | Kevin & Patricia Keefer | | 10/07/2021 |
|---|---|---|---|
| Identification Number: | 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 | Total | 22.20.00 |

**2015 - Form 6251 - Alternative Minimum Tax Computation**

| | | |
|---|---|---|
| 1. | If filing Schedule A, enter taxable income before exemptions; | |
| | otherwise, enter adjusted gross income | 20,764,205.00 |
| 2. | Total adjustment and preferences (excluding any NOL deduction) | 985,399.00 |
| 3. | Net operating loss deduction | 0.00 |
| 4. | Alternative tax net operating loss deduction | 0.00 |
| 5. | Alternative minimum taxable income (combine lines 1 thru 4) | 21,749,604.00 |
| 6. | Exemption amount | 0.00 |
| 7. | Subtract line 6 from line 5 (if zero or less, enter zero) | 21,749,604.00 |
| 8. | If capital gains are reported, use the amount from line 29 of the continuation page | |
| | (If FEIT worksheet for AMT is used, enter amount from line 6 of that worksheet instead) | |
| | All others, multiply line 7 by 28% and subtract $ 3,708 from the result | 4,851,073.00 |
| 9. | Alternative minimum tax foreign tax credit | 1,576.00 |
| 10. | Tentative minimum tax (line 8 less line 9) | 4,849,497.00 |
| 11. | Regular tax less foreign tax credit plus excess advance premium tax credit repayment | |
| | (if Schedule J was used to figure tax, use the refigured | |
| | amount for line 44 of Form 1040 without using Schedule J) | 4,914,303.00 |
| 12. | Alternative minimum tax | 0.00 |

Exemption Worksheet (line 6 above)

| | | |
|---|---|---|
| A. | Exemption amount based on filing status | 83,400.00 |
| B. | Alternative minimum taxable income | 21,749,604.00 |
| C. | Enter amount based on filing status | 158,900.00 |
| D. | Subtract line C from line B | 21,590,704.00 |
| E. | Multiply line D by 25% | 5,397,676.00 |
| F. | Subtract line E from line A (if zero or less, enter zero) | 0.00 |

Scenario #1 - Reverse Bargain Sale - DO NOT PROCESS

| Name of Taxpayer: | Kevin & Patricia Keefer | | 10/07/2021 |
|---|---|---|---|
| Identification Number: 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 | | Total | 22.20.00 |

### 2015 - Form 6251 - Continuation, Tax Computation Using Maximum Capital Gain Rates

1. Amount from Form 6251 report, line 7 — 21,749,604.00
   (If FEIT worksheet for AMT was used, enter amount from line 3 of that worksheet instead)
2. Amount from line 6 Qualified Dividends and Capital Gain Tax Worksheet
   or line 13 Schedule D Tax Worksheet (refigured for AMT) — 14,260,661.00
3. Amount from Schedule D line 19 (refigured for AMT) — 3,141,843.00
4. Amount from line 2 if no Schedule D worksheet; otherwise, the smaller of
   the sum of line 2 and line 3 or Schedule D worksheet line 10 (refigured for AMT) — 17,402,504.00
5. Smaller of line 1 or line 4 — 17,402,504.00
6. Subtract line 5 from line 1 <span style="color:red">Scenario #1 - Reverse Bargain Sale - DO NOT PROCESS</span> — 4,347,100.00
7. Multiply line 6 by 28% and subtract $ 3,708 from the result — 1,213,480.00
8. Enter amount based on filing status — 74,900.00
9. Amount from line 7 Qualified Dividends and Capital Gain Tax Worksheet or amount from
   line 14 Schedule D Tax Worksheet, whatever applies (as figured for regular tax).
   If neither worksheet applies, use taxable income (but not less than zero).
   If Form 2555 was filed, see instructions — 6,475,217.00
10. Subtract line 9 from line 8 (if zero or less, enter zero) — 0.00
11. Smaller of line 1 or line 2 — 14,260,661.00
12. Smaller of line 10 or line 11; This amount is taxed at 0%. — 0.00
13. Subtract line 12 from line 11 — 14,260,661.00
14. Enter amount based on filing status — 464,850.00
15. Amount from line 10 — 0.00
16. Amount from line 7 Qualified Dividends and Capital Gain Tax Worksheet or amount from
    line 19 Schedule D Tax Worksheet, whatever applies (as figured for regular tax).
    If neither worksheet applies, use taxable income (but not less than zero).
    If Form 2555 was filed, see instructions — 3,333,374.00
17. Add lines 15 and 16 — 3,333,374.00
18. Subtract line 17 from line 14 (if zero or less, enter zero) — 0.00
19. Smaller of line 13 or line 18 — 0.00
20. Multiply line 19 by 15% — 0.00
21. Add lines 12 and 19 — 0.00
22. Subtract line 21 from line 11 — 14,260,661.00
23. Multiply line 22 by 20% — 2,852,132.00
24. Add lines 6, 21, and 22 — 18,607,761.00
25. Subtract line 24 from line 1 — 3,141,843.00
26. Multiply line 25 by 25% — 785,461.00
27. Total of lines 7, 20, 23, and 26 — 4,851,073.00
28. Multiply line 1 by 28% and subtract $ 3,708 from the result — 6,086,181.00
29. Smaller of line 27 or line 28. Enter here and on line 8 of Form 6251 report — 4,851,073.00

| Name of Taxpayer: | Kevin & Patricia Keefer | | 10/07/2021 |
|---|---|---|---|
| Identification Number: | 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 | Total | 22.20.00 |

## 2015 - Form 8959 - Additional Medicare Tax

| | |
|---|---|
| 1. Medicare wages and tips from Form W-2, box 5 | 747,326.00 |
| 2. Unreported tips from Form 4137, line 6 | 0.00 |
| 3. Wages from Form 8919, line 6 | 0.00 |
| 4. Add lines 1 through 3 | 747,326.00 |
| 5. Amount based on filing status | 250,000.00 |
| 6. Subtract line 5 from line 4 (if zero or less, enter 0.00) | 497,326.00 |
| 7. Additional Medicare tax on Medicare wages (multiply line 6 by .009) | 4,476.00 |
| 8. Self-employment income from Schedule SE (if zero or less, enter 0.00) | 1,358,625.50 |
| 9. Amount based on filing status | 250,000.00 |
| 10. Amount from line 4 | 747,326.00 |
| 11. Subtract line 10 from line 9 (if zero or less, enter 0.00) | 0.00 |
| 12. Subtract line 11 from line 8 (if zero or less, enter 0.00) | 1,358,625.50 |
| 13. Additional Medicare tax on self-employment income (multiply line 12 by .009) | 12,228.00 |
| 14. Railroad retirement compensation from Form W-2, box 14 | 0.00 |
| 15. Amount based on filing status | 250,000.00 |
| 16. Subtract line 15 from line 14 (if zero or less, enter 0.00) | 0.00 |
| 17. Tier I employee Additional Medicare Tax on railroad retirement compensation (multiply line 16 by .009) | 0.00 |
| 18. Total Additional Medicare Tax (add lines 7, 13, and 17) | 16,704.00 |
| 19. Medicare tax withheld from Form W-2, box 6 | 14,757.00 |
| 20. Amount from line 1 | 747,326.00 |
| 21. Multiply line 20 by .0145 | 10,836.00 |
| 22. Subtract line 21 from line 19 (if zero or less, enter 0.00) | 3,921.00 |
| 23. Additional Medicare Tax from Form W-2, box 14 | 0.00 |
| 24. Total Additional Medicare Tax withholding (add lines 22 and 23) | 3,921.00 |

Scenario # 1 - Reverse Bargain Sale - DO NOT PROCESS

000121

| Name of Taxpayer: | Kevin & Patricia Keefer | | 10/07/2021 |
|---|---|---|---|
| Identification Number: | 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 | Total | 22.20.00 |

## 2015 - PERSONAL EXEMPTION WORKSHEET

| | |
|---|---|
| 1. Multiply $4,000 by the total number of exemptions claimed | 8,000.00 |
| 2. Adjusted gross income | 22,119,950.00 |
| 3. Limitation based on filing status | 309,900.00 |
| NOTE: If line 2 is not greater than line 3, STOP; | |
| enter amount from line 1 on line 8 below | |
| 4. Subtract line 3 from line 2 | 21,810,050.00 |
| If line 4 is less than zero or more than $122,500 ($61,250 if married filing separately), | |
| then STOP; enter 0.00 on line 8 | |
| 5. Divide line 4 by $2,500 ($1,250 if married filing separately) | 0.00 |
| (If result is not a whole number, increase to next whole number) | |
| 6. Multiply line 5 by 2% and enter the result as a decimal | 0.00 |
| 7. Multiply line 1 by line 6 | 0.00 |
| 8. Deduction for exemptions | 0.00 |
| (subtract line 7 from line 1; or amount from line 1 or 0.00, if applicable) | |

Scenario #1 - Reverse Bargain Sale - DO NOT PROCESS

000122

| Name of Taxpayer: | Kevin & Patricia Keefer | | 10/07/2021 |
| Identification Number: | 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 | Total | 22.20.00 |

### 2015 - SCHEDULE A - ITEMIZED DEDUCTIONS

| | PER RETURN | PER EXAM | ADJUSTMENT |
|---|---|---|---|
| 1. Medical, dental and insurance premiums | 0.00 | 0.00 | 0.00 |
| 2. 10.0% of adjusted gross income | 2,276,596.00 | 2,211,995.00 | |
| 3. Net medical and dental expenses | 0.00 | 0.00 | 0.00 |
| 4. Taxes | 1,810,078.00 | 1,810,078.00 | 0.00 |
| 5. Home interest expense | 0.00 | 0.00 | 0.00 |
| 6. Qualified mortgage insurance premiums | 0.00 | 0.00 | 0.00 |
| 7. Investment interest | 48,207.00 | 48,207.00 | 0.00 |
| 8. Other interest expense | 0.00 | 0.00 | 0.00 |
| 9. Total interest expense | 48,207.00 | 48,207.00 | 0.00 |
| 10. Contributions | 151,762.00 | 151,762.00 | 0.00 |
| 11. Casualty and theft losses | 0.00 | 0.00 | 0.00 |
| 12. Miscellaneous deductions | 89,810.00 | 89,810.00 | 0.00 |
| 13. 2% of adjusted gross income | 455,319.00 | 442,399.00 | |
| 14. Excess miscellaneous deductions | 0.00 | 0.00 | 0.00 |
| 15. Other miscellaneous deductions | 0.00 | 0.00 | 0.00 |
| 16. Total itemized deductions (Sum of lines 3, 4, 9, 10, 11, 14, and 15 less any applicable limitation) | 1,336,365.00 | 1,355,745.00 | (19,380.00) |

*6eeprenidtHs Reverse Bargain Sale DO NOT PROCESS* (overlaid on line 6)

### ITEMIZED DEDUCTIONS WORKSHEET - PER EXAM

| | |
|---|---|
| A Total of lines 3, 4, 9, 10, 11, 14, and 15 above | 2,010,047.00 |
| B Total of lines 3, 7, and 11, (plus any gambling and casualty or theft losses on line 15 above) | 48,207.00 |
| C Line A less line B | 1,961,840.00 |
| D Multiply the amount on line C by 80% | 1,569,472.00 |
| E Adjusted gross income | 22,119,950.00 |
| F Itemized deduction limitation based on filing status | 309,900.00 |
| G Line E less line F | 21,810,050.00 |
| H Multiply the amount on line G by 3% | 654,302.00 |
| I Enter the smaller of line D or line H | 654,302.00 |
| J Total itemized deductions (Line A less line I, entered on line 16 per exam column above) | 1,355,745.00 |

| Name of Taxpayer: | Kevin & Patricia Keefer | | 10/07/2021 |
|---|---|---|---|
| Identification Number: | 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 | Total | 22.20.00 |

## 2015 - SCHEDULE D - CAPITAL GAINS AND LOSSES

**Part I**   Short-Term Capital Gains and Losses—Assets Held One Year or Less

| | | |
|---|---|---|
| 1 | Short-term capital gain or loss | (22,717.00) |
| 2 | Short-term capital loss carryover | 0.00 |
| 3 | Net Short-term Gain or Loss (Add line 1 and 2) | (22,717.00) |

**Part II**   Long-Term Capital Gains and Losses—Assets Held More Than One Year

| | | |
|---|---|---|
| 4 | Long-term capital gain or loss | 17,315,358.00 |
| 5 | Long-term capital gain or loss carryover | 0.00 |
| 6 | Net long-term Gain or Loss (Add line 4 and 5) | 17,315,358.00 |

<span style="color:red">Scenario #1 - Reverse Bargain Sale - DO NOT PROCESS</span>

**Part III**   Summary

| | | |
|---|---|---|
| 7 | Sum of lines 3 and 6 - Net Capital Gain or Loss | 17,292,641.00 |
| 8 | Capital loss limitation | 0.00 |
| 9 | Capital Gain or Loss - As Corrected | 17,292,641.00 |
| 10 | Capital Gain or Loss - Per Return | 17,938,646.00 |
| 11 | Line 9 less line 10 - Adjustment to Income | (646,005.00) |

### CORRECTED CARRYOVER

| | | |
|---|---|---|
| 12 | Short-term Carryover to Subsequent Year | 0.00 |
| 13 | Long-term Carryover to Subsequent Year | 0.00 |

### 28% RATE GAIN COMPUTATION

| | | |
|---|---|---|
| 1 | Tentative 28% rate gain (total of lines 1 thru 4 from worksheet) | 0.00 |
| 2 | Long-term capital loss carryover | 0.00 |
| 3 | Net short-term capital loss | (22,717.00) |
| 4 | Allowable 28% rate gain (sum of lines 1 thru 3) (if -0- or less, enter -0-) | 0.00 |

### SECTION 1250 GAIN COMPUTATION

| | | | |
|---|---|---|---|
| 1 | Tentative Section 1250 gain (line 13 from worksheet) | | 3,164,560.00 |
| 2 | Tentative 28% rate gain | 0.00 | |
| 3 | Net short-term capital loss | (22,717.00) | |
| 4 | Long-term capital loss carryover | 0.00 | |
| 5 | Sum of lines 2 thru 4 (if less than -0-, enter as positive amount) (if -0- or greater, enter -0-) | | 22,717.00 |
| 6 | Allowable Section 1250 gain (line 1 less line 5) (if -0- or less, enter -0-) | | 3,141,843.00 |

000124

Name of Taxpayer:  Kevin & Patricia Keefer                                    10/07/2021
Identification Number: 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          Total                               22.20.00

## 2015 - Schedule D Tax Worksheet

| | |
|---|---:|
| 1. Enter the taxable income from Form 1040, line 43, or the amount from | |
| Foreign Earned Income Tax Worksheet, line 3, if filing Form 2555 or 2555-EZ | 20,764,205.00 |
| 2. Enter the qualified dividends from Form 1040, line 9b | 138,190.00 |
| 3. Enter the amount from Form 4952, line 4g | 0.00 |
| 4. Enter the amount from Form 4952, line 4e | 0.00 |
| If applicable, enter the smaller of line 4e or the amount on the dotted line next to line 4e of Form 4952 | |
| 5. Subtract line 4 from line 3. If zero or less, enter -0- | 0.00 |
| 6. Subtract line 5 from line 2. If zero or less, enter -0- | 138,190.00 |
| 7. Enter the smaller of line 15 or line 16 of Schedule D | 17,292,641.00 |
| 8. Enter the smaller of line 3 or line 4 | 0.00 |
| 9. Subtract line 8 from line 7. If zero or less, enter -0- | 17,292,641.00 |
| 10. Add lines 6 and 9 | 17,430,831.00 |
| 11. Add lines 18 and 19 of Schedule D | 3,141,843.00 |
| 12. Enter the smaller of line 9 or line 11 | 3,141,843.00 |
| 13. Subtract line 12 from line 10 | 14,288,988.00 |
| 14. Subtract line 13 from line 1. If zero or less, enter -0- | 6,475,217.00 |
| 15. Enter: | |
|     $ 37,450 if single or married filing separately; | |
|     $ 74,900 if married filing jointly or qualifying widow(er); or | |
|     $ 50,200 if head of household | 74,900.00 |
| 16. Enter the smaller of line 1 or line 15 | 74,900.00 |
| 17. Enter the smaller of line 14 or line 16 | 74,900.00 |
| 18. Subtract line 10 from line 1. If zero or less, enter -0- | 3,333,374.00 |
| 19. Enter the larger of line 17 or line 18 | 3,333,374.00 |
| 20. Subtract line 17 from line 16. This amount is taxed at 0% | 0.00 |
| If lines 1 and 16 are the same, skip lines 21 through 41 and go to line 42. Otherwise, go to line 21. | |
| 21. Enter the smaller of line 1 or line 13 | 14,288,988.00 |
| 22. Enter the amount from line 20 (if line 20 is blank, enter -0-) | 0.00 |
| 23. Subtract line 22 from line 21. If zero or less, enter -0- | 14,288,988.00 |
| 24. Enter: | |
|     $ 413,200 if single; | |
|     $ 232,425 if married filing separately; | |
|     $ 464,850 if married filing jointly or qualifying widow(er); or | |
|     $ 439,000 if head of household | 464,850.00 |
| 25. Enter the smaller of line 1 or line 24 | 464,850.00 |
| 26. Add lines 19 and 20 | 3,333,374.00 |
| 27. Subtract line 26 from line 25. If zero or less, enter -0- | 0.00 |
| 28. Enter the smaller of line 23 or line 27 | 0.00 |
| 29. Multiply line 28 by 15% (.15) | 0.00 |
| 30. Add lines 22 and 28 | 0.00 |
| If lines 1 and 30 are the same, skip lines 31 through 41 and go to line 42. Otherwise, go to line 31. | |
| 31. Subtract line 30 from line 21 | 14,288,988.00 |
| 32. Multiply line 31 by 20% (.20) | 2,857,798.00 |
| If Schedule D, line 19, is zero or blank, skip lines 33 through 38 and go to line 39. Otherwise, go to line 33. | |
| 33. Enter the smaller of line 9 above or Schedule D, line 19 | 3,141,843.00 |
| 34. Add lines 10 and 19 | 20,764,205.00 |
| 35. Enter the amount from line 1 above | 20,764,205.00 |
| 36. Subtract line 35 from line 34. If zero or less, enter -0- | 0.00 |
| 37. Subtract line 36 from line 33. If zero or less, enter -0- | 3,141,843.00 |
| 38. Multiply line 37 by 25% (.25) | 785,461.00 |
| If Schedule D, line 18, is zero or blank, skip lines 39 through 41 and go to line 42. Otherwise, go to line 39. | |
| 39. Add lines 19, 20, 28, 31, and 37 | |
| 40. Subtract line 39 from line 1 | |
| 41. Multiply line 40 by 28% (.28) | |
| 42. Figure the tax on the amount on line 19. If the amount on line 19 is less than $100,000, use the Tax Table | |
| to figure the tax.  If the amount on line 19 is $100,000 or more, use the Tax Computation Worksheet | 1,265,932.00 |
| 43. Add lines 29, 32, 38, 41, and 42 | 4,909,191.00 |
| 44. Figure the tax on the amount on line 1. If the amount on line 1 is less than $100,000, use the Tax Table | |
| to figure the tax.  If the amount on line 1 is $100,000 or more, use the Tax Computation Worksheet | 8,168,541.00 |
| 45. Tax on all taxable income (including capital gains and qualified dividends). | |
| Enter the smaller of line 43 or line 44. Also include this amount on Form 1040, line 44, or | |
| Foreign Earned Income Tax Worksheet, line 4, if applicable | 4,909,191.00 |

Scenario #1 - Reverse Bargain Sale - DO NOT PROCESS

000125

**SCENARIO 3 - ASSIGNMENT OF INCOME - NO BARGAIN SALE - ALLOW CASH CHARITABLE DEDUCTION**

**PART 1 - ASSIGNMENT OF INCOME**

| PARAMETERS | PARAMETERS |
|---|---|
| Assignment of Income | Keefer reported 21% flow through from sale on original 2015 Form 1040 |
| Keefer reported sale of Burbank HHG Hotel, LP at 21% ownership on 2015 Form 1040 | Reverse Bargain Sale reported on 2015 Form 1040 |
| Keefer reported Bargain Sale on 2015 Form 1040 | Report Sale at 25% flow through |
| | What Flow Through "would have looked like" at 25% ownership |





### PER RETURN

**BURBANK HHG HOTEL, LP (SOLD) - FORM 1065, SCHEDULE K**

| | | | | "What If" Ownership | |
|---|---|---|---|---|---|
| | | | | 21% | 25% |
| Ln 9a | LTCG | $ | 8,887,713.00 | $ 1,866,419.73 | $ 2,221,928.25 |
| Ln 9c | Unrecap 1250 Gain | $ | 4,065,265.00 | $ 853,705.65 | $ 1,016,316.25 |
| Ln 10 | Net 1231 Gain | $ | 28,958,676.00 | $ 6,081,321.96 | $ 7,239,669.00 |

**Burbank HHG Hotel LP (SOLD) K-1 to Burbank HHG Assoc LP**

| Ln 9a | LTCG | $ | 1,866,420.00 | 21% |
|---|---|---|---|---|
| Ln 9c | Unrecap 1250 Gain | $ | 853,706.00 | 21% |
| Ln 10 | Net 1231 Gain | $ | 6,622,075.00 | 23% |

**Burbank HHG Assoc LP to Partners**

| | | Keefer Holdings (99%) PER RETURN | | Huntington (1%) | |
|---|---|---|---|---|---|
| Ln 9a | LTCG | $ 1,847,756.00 | 99.0% | 18,664.00 | 1.0% |
| Ln 9c | Unrecap 1250 Gain | $ 849,965.00 | 99.6% | 8,586.00 | 1.0% |
| Ln 10 | Net 1231 Gain | $ 6,555,854.00 | 99.0% | 33,250.00 | 0.5% |

**Keefer Holdings (99%) K-1 to Kevin & Pat Keefer Trust**

| | | PER RETURN | |
|---|---|---|---|
| Ln 9a | LTCG | $ 1,847,756.00 | |
| Ln 9c | Unrecap 1250 Gain | $ 3,094,046.00 | Incl $849,965, above |
| Ln 10 | Net 1231 Gain | $ 10,615,589.00 | Incl $6,555,854, above |

**Kevin Keefer - Reported on 2015, Form 1040**

| SCHEDULE D LINE # | DESCRIPTION | AMOUNT PER RETURN | COMMENTS |
|---|---|---|---|
| Schedule D, Line 7 | Net Short Term Gain/Loss | $ (22,717.00) | |
| Schedule D, Line 8b | LTCG-Form 8949, Box D | 166,947.00 | |
| Schedule D, Line 9 | LTCG-Form 8949, Box E | 47,454.00 | |
| Schedule D, Line 10 | LTCG-Form 8949, Box F | 646,005.00 | |
| Schedule D, Line 11 | Form 4797-LTCG | 10,711,242.00 | Incl $10,613,588, above |
| Schedule D, Line 12 | LTCG from Schedule K-1 | 6,382,151.00 | No Data Table Attached (Incl $6,378,541, above) |
| Schedule D, Line 13 | Capital Gain Distributions | 7,564.00 | |
| Schedule D - Reported on Form 1040 Line 13 | | $ 17,938,646.00 | |
| Schedule D, Line 19 | Unrecaptured 1250 Gain | $ 3,164,560.00 | |

### PER AUDIT

**BURBANK HHG HOTEL, LP (SOLD) - FORM 1065, SCHEDULE K**

| | | | | "What If" Ownership | |
|---|---|---|---|---|---|
| | | | | 21% | 25% |
| Ln 9a | LTCG | $ | 8,887,713.00 | $ 1,866,419.73 | $ 2,221,928.25 |
| Ln 9c | Unrecap 1250 Gain | $ | 4,065,265.00 | $ 853,705.65 | $ 1,016,316.25 |
| Ln 10 | Net 1231 Gain | $ | 28,958,676.00 | $ 6,081,321.96 | $ 7,239,669.00 |

**Burbank HHG Hotel LP (SOLD) K-1 to Burbank HHG Assoc LP**

| Ln 9a | LTCG | $ | 2,221,928.25 | 25% |
|---|---|---|---|---|
| Ln 9c | Unrecap 1250 Gain | $ | 1,016,316.25 | 25% |
| Ln 10 | Net 1231 Gain | $ | 7,239,669.00 | 25% |

**Burbank HHG Assoc LP to Partners**

| | | Keefer Holdings (99%) PER AUDIT | | PER RETURN | ADJUSTMENT |
|---|---|---|---|---|---|
| Ln 9a | LTCG | $ 2,199,708.97 | 99% | $ 1,847,756.00 | $ 351,952.97 |
| Ln 9c | Unrecap 1250 Gain | $ 1,006,153.09 | 99% | $ 849,965.00 | $ 156,188.09 |
| Ln 10 | Net 1231 Gain | $ 7,167,272.31 | 99% | $ 6,555,854.00 | $ 611,418.31 |

**Keefer Holdings (99%) K-1 to Kevin & Pat Keefer Trust**

| | | PER RETURN | ADJUSTMENT | PER AUDIT |
|---|---|---|---|---|
| Ln 9a | LTCG | $ 6,378,541.00 | $ 351,952.97 | $ 6,730,493.97 |
| Ln 9c | Unrecap 1250 Gain | $ 3,094,046.00 | $ 156,188.09 | $ 3,250,234.09 |
| Ln 10 | Net 1231 Gain | $ 10,615,589.00 | $ 611,418.31 | $ 11,227,007.31 |

**Kevin Keefer - Reported on 2015, Form 1040**

| | | PER RETURN | PER AUDIT | ADJUSTMENT | EXPLANATION |
|---|---|---|---|---|---|
| Schedule D, Line 7 | Net Short Term Gain | $ (22,717.00) | $ (22,717.00) | $ - | |
| Schedule D, Line 8b | LTCG-Form 8949, Box D | $ 166,947.00 | $ 166,947.00 | $ - | |
| Schedule D, Line 9 | LTCG-Form 8949, Box E | $ 47,454.00 | $ 47,454.00 | $ - | |
| Schedule D, Line 10 | LTCG-Form 8949, Box F | $ 646,005.00 | $ - | $ (646,005.00) | Reverse Bargain Sale |
| Schedule D, Line 11 | Form 4797-LTCG | $ 10,711,242.00 | $ 11,322,660.00 | $ 611,418.00 | Report @ 25% |
| Schedule D, Line 12 | LTCG from Schedule K-1 | $ 6,382,151.00 | $ 6,734,104.00 | $ 351,953.00 | Report @ 25% |
| Schedule D, Line 13 | Capital Gain Distrib | $ 7,564.00 | $ 7,564.00 | $ - | |
| Schedule D - Reported on Form 1040 Ln 13 | | $ 17,938,646.00 | $ 18,256,012.00 | $ 317,366.00 | |
| Schedule D, Line 19 | Unrecaptured 1250 | $ 3,164,560.00 | $ 3,320,748.00 | $ 156,188.00 | |
| | TOTAL ADJUSTMENT TO SCHEDULE D, CAPITAL GAIN/LOSS | | | 473,554.00 | |

**PART 2 - ALLOW CHARITABLE DEDUCTION**

PARAMETER:  Allow Charitable Deduction of $1,277,000

| | | | |
|---|---|---|---|
| Per Return | $ | 1,257,000.00 | |
| Per Audit | $ | - | *IRS Form 4549 issued 7/15/2019 disallowed |
| Adjustment | $ | (1,257,000.00) | |
| After Audit | $ | - | |
| Scenario #3 | $ | 1,277,000.00 | |
| Adjustment | $ | (1,277,000.00) | |

Charitable Contribution claimed on return was already disallowed on 7/15/2019 Form 4549
Allow $1,277,000 Charitable Contribution

Case 3.20-cv-00836-B Document 66 Filed 11/16/21 Page 130 of 150 PageID 1448

Department of the Treasury-Internal Revenue Service

Form **4549-A**
(December 2020)

# Report of Income Tax Examination Changes

| Name and address of taxpayer | Taxpayer identification number | | Return form number |
|---|---|---|---|
| Kevin & Patricia Keefer | 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 | | 1040 |
| | Person with whom examination changes were discussed. | Name and title Kevin & Patricia Keefer | |

| | | Period Ended 12/31/2015 | Period Ended | Period Ended |
|---|---|---|---|---|
| **1.** | **Adjustments to income** | | | |
| a. | Capital Gain or Loss | 473,553.00 | | |
| b. | Itemized Deductions | (1,262,794.00) | | |
| c. | | | | |
| d. | | | | |
| e. | | | | |
| f. | | | | |
| g. | | | | |
| h. | | | | |
| i. | | | | |
| j. | | | | |
| k. | | | | |
| l. | | | | |
| m. | | | | |
| n. | | | | |
| o. | | | | |
| p. | | | | |
| **2.** | **Total adjustments** | (789,241.00) | | |
| 3. | Taxable income per return or as previously adjusted | 21,429,590.00 | | |
| **4.** | **Corrected taxable income** | 20,640,349.00 | | |
| | Tax method | SCHEDULE D | | |
| | Filing status | Joint | | |
| **5.** | **Tax** (See attached schedule) | 4,655,208.00 | | |
| **6.** | **Additional taxes/Alternative minimum tax** | 70,026.00 | | |
| 7. | Corrected tax liability | 4,725,234.00 | | |
| **8.** **Less** **credits** | a. Foreign Tax Credit | 1,576.00 | | |
| | b. General Business Credit | 7,257.00 | | |
| | c. | | | |
| | d. | | | |
| 9. | **Balance** (line 7 less lines 8a through 8d) | 4,716,401.00 | | |
| 10. **Plus** **other** **taxes** | a. Self Employment Tax | 39,400.00 | | |
| | b. Net Investment Income Tax | 21,830.00 | | |
| | c. Additional Medicare Tax | 16,704.00 | | |
| | d. | | | |
| 11. | Total corrected tax liability (line 9 plus lines 10a through 10d) | 4,794,335.00 | | |
| 12. | Total tax shown on return or as previously adjusted | 5,121,855.00 | | |
| 13. | Adjustments to: a. | | | |
| | b. | | | |
| | c. | | | |
| 14. | Deficiency-Increase in tax or (overassessment-decrease in tax) (line 11 less line 12 adjusted by lines 13a through 13c) | (327,520.00) | | |
| 15. | Adjustments to prepayment credits - increase (decrease) | | | |
| 16. | Balance due or (overpayment) - (line 14 adjusted by line 15) (excluding interest and penalties) | (327,520.00) | | |

SCENARIO #3 - DO NOT PROCESS

| Name of taxpayer | Taxpayer identification number | Return form number |
|---|---|---|
| Kevin & Patricia Keefer | 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 | 1040 |

| 17.  Penalties, additions to tax, and additional amounts -- IRC sections | **Period Ended**<br>12/31/2015 | **Period Ended** | **Period Ended** |
|---|---|---|---|
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| 18.  Total penalties, additions to tax, and additional amounts | | | |

SCENARIO #3 - DO NOT PROCESS

| 19.  Summary of taxes, penalties and interest | | | |
|---|---|---|---|
| a.  Balance due or *(overpayment)* taxes - *(line 16, page 1)* | (327,520.00) | | |
| b.  Penalties and additions *(line 18)* - computed to 10/07/2021 | | | |
| c.  Interest** *(IRC § 6601)* - estimated and computed to 11/06/2021 | 0.00 | | |
| d.  Amount due or *(refund)* - *(sum of lines a, b, and c)* | (327,520.00) | | |

**Interest, as provided by law, will be charged on any unpaid amount until it is paid in full.

Other information

DRAFT TAX COMPUTATION - DO NOT PROCESS - SCENARIO #3
ASSIGNMENT OF INCOME - NO BARGAIN SALE - ALLOW CASH CHARITABLE DEDUCTION

| Examiner's signature | Employee ID | Office | Date |
|---|---|---|---|
| Amy Dunford | 1000668280 | Oklahoma City, OK | 10/07/2021 |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, **you should amend your state return** by filing the necessary forms.

**Y**ou may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the **re**quired tax. The IRS may order backup withholding (withholding of a percentage of your dividend and/or interest payments) if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service **Explanation of Items** | Schedule number or exhibit |
|---|---|---|

| Name of taxpayer | Tax Identification Number *(last 4 digits)* | Year/Period ended |
|---|---|---|
| Kevin & Patricia Keefer | 7478 | |

Taxes (Form 4549 series Line 5 or Form 5278 Line 11):

|  | 2015 |
|---|---|
| Tax (regular tax before credits) | 4,648,520.00 |
| Other write-ins to tax | 6,688.00 |

Total Taxes:        4,655,208.00

<span style="color:red">SCENARIO #3 - DO NOT PROCESS</span>

Other Taxes (Form 4549 series Line 10 or Form 5278 Line 17):

| Form **5278** (Rev. June 2011) | **Statement - Income Tax Changes** | Schedule |
|---|---|---|

| 1. Name(s) of taxpayer(s) | 2. ☐ Notice of Deficiency      ☐ Other |
|---|---|
| Kevin & Patricia Keefer | ☐ Settlement Computation |

| 3. Taxpayer Identification Number | 4. Form number | 5. Docket number | 6. Office symbols |
|---|---|---|---|
| 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 | 1040 | | SBSE:OKC |

| | Tax Year(s) Ended |
|---|---|

| **7. Adjustments to income** | **Year:** 12/31/2015 | | |
|---|---|---|---|
| a. Capital Gain or Loss | 473,553.00 | | |
| b. Itemized Deductions | (1,262,794.00) | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| **8. Total adjustments** | (789,241.00) | | |

SCENARIO #3 - DO NOT PROCESS

| 9. Taxable income as shown in | | | | |
|---|---|---|---|---|
| ☐ Preliminary letter dated | _____ | | | |
| ☐ Notice of deficiency dated | _____ | | | |
| ☐ Return as filed | | 21,429,590.00 | | |
| **10. Taxable income as revised** | | 20,640,349.00 | | |
| **11. Tax** (See attached schedule) | | 4,655,208.00 | | |
| Tax Method | _____ | SCHEDULE D | | |
| Filing Status | _____ | Joint | | |
| 12. Alternative tax, if applicable | | | | |
| 13. Alternative minimum tax *(Starting in tax year 2000)* | | 70,026.00 | | |
| **14. Corrected tax liability** - *(lesser of line 11 or 12 plus line 13)* | | 4,725,234.00 | | |
| 15. Less credits | a. Foreign Tax Credit | 1,576.00 | | |
| | b. General Business Credit | 7,257.00 | | |
| | c. | | | |
| **16. Balance** - *(line 14 less total of lines 15a - 15c)* | | 4,716,401.00 | | |
| 17. Plus other taxes | a. Self Employment Tax | 39,400.00 | | |
| | b. Net Investment Income Tax | 21,830.00 | | |
| | c. Additional Medicare Tax | 16,704.00 | | |
| **18. Total corrected tax liability** - *(line 16 plus lines 17a - 17c)* | | 4,794,335.00 | | |
| 19. Total tax shown on return or as previously adjusted | | 5,121,855.00 | | |
| 20. Adjustments: increase or (decrease) to: | a. | | | |
| | b. | | | |
| | c. | | | |
| **21. Deficiency - Increase in tax** *(overassessment - decrease in tax)* *(line 18 less line 19 adjusted by lines 20a - 20c)* | | (327,520.00) | | |
| 22. Adjustments to prepayment credits - Increase *(decrease)* | | | | |
| **23. Balance due or *(Overpayment)*** excluding interest and penalties *(line 21 adjusted by line 22)* | | (327,520.00) | | |
| 24. Penalties and/or Additions to Tax *(listed below)* | | | | |

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br>## Explanation of Items | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer<br>  Kevin & Patricia Keefer | Tax Identification Number *(last 4 digits)*<br>  7478 | Year/Period ended |

Taxes (Form 4549 series Line 5 or Form 5278 Line 11):

2015

Tax (regular tax before credits)                4,648,520.00

Other write-ins to tax                          6,688.00

Total Taxes:                    4,655,208.00

<span style="color:red">SCENARIO #3 - DO NOT PROCESS</span>

Other Taxes (Form 4549 series Line 10 or Form 5278 Line 17):

# Agreement to Assessment and Collection
# of Additional Tax and Acceptance of Overassessment
### (Employment Tax Adjustments Not Subject to IRC 7436)

Date received by Internal Revenue Service

| Taxpayer(s) name | D/B/A | SSN/EIN |
|---|---|---|
| Kevin Keefer | | 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 |

| Address of taxpayer(s) (number, street) | City/Town | State | ZIP code |
|---|---|---|---|
| | | | |

### Adjustment to Tax, Credits and Penalties

| Tax Period Ended | Return Form Number | Kind of Tax and Internal Revenue Code Section | Amount of Tax | Credit Increase (Decrease) | Penalty |
|---|---|---|---|---|---|
| 12/31/2015 | 1040 | Add. Med. W/H Tax Sec 3101(b)(2) | | 3,921.00 | |
| | | | | | |
| | | | | | |
| | | SCENARIO #3 - DO NOT PROCESS | | | |
| | | | | | |
| | | | | | |
| **Total** | | | 0.00 | 3,921.00 | |

I consent to the immediate assessment (increase in tax and penalties and/or decrease in credits) and the collection of any such amounts. In addition, I accept any overassessment (decrease in tax and penalties and/or increase in credits) shown above. I also agree to any interest as provided by law.

| Sign Here ▶ | | Date |
|---|---|---|
| Sign Here ▶ | | Date |
| Sign Here ▶ | By | Title | Date |

**Note:**

If you consent to the assessment of the amounts shown in this agreement, your signature will expedite our adjustment to your account. Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are entitled to a refund. It will not prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for either action.

The amounts shown in this agreement do not include any adjustments involving worker classification or Section 530 determinations. Any adjustments involving worker classification or Section 530 determinations will be shown in a separate agreement Form 2504-T, *Agreement to Assessment and Collection of Additional Tax and Acceptance of Overassessment (Employment Tax Adjustments Subject to IRC 7436).*

**Who Must Sign**

If you are making this agreement for a partnership, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed with us.

### Memo: Abatement amount under IRC 3402(d) and/or IRC 3102(f)(3) - See explanation on Form 4666

| Tax Period Ended | Return Form Number | IRC Code | Credit for Abatement | Tax Period Ended | Return Form Number | IRC Code | Credit for Abatement |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

Form **2504** (Rev. 10-2017)          Catalog Number 21775K          publish.no.irs.gov          Department of the Treasury - Internal Revenue Service          000133

| Name of Taxpayer: | Kevin & Patricia Keefer | | 10/07/2021 |
|---|---|---|---|
| Identification Number: | 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 | Total | 22.20.00 |

## 2015 – **Form 3800 - General Business Credit**

### Part I - Current Year Credit for Credits Not Allowed Against Tentative Minimum Tax (TMT)

| | |
|---|---:|
| 1. General business credit from a non-passive activity | 0.00 |
| 2. General business credit allowed from a passive activity | 0.00 |
| 3. General business credit carryforwards | 0.00 |
| 4. General business credit carrybacks | 0.00 |
| 5. Tentative general business credit (sum of lines 1 through 4) | 0.00 |

### Part II - Allowable Credit

| | |
|---|---:|
| 6. Regular tax before credits (plus excess advance premium tax credit repayment) | 4,655,208.00 |
| 7. Alternative minimum tax | 70,026.00 |
| 8. Total of lines 6 and 7 | 4,725,234.00 |
| 9. Foreign tax credit | 1,576.00 |
| 10. Allowable separately stated credits | 0.00 |
| 11. Total of lines 9 through 10 | 1,576.00 |
| 12. Net income tax (line 8 less line11) | 4,723,658.00 |
| 13. Net regular tax (line 6 less line 11) | 4,653,632.00 |
| 14. If line 13 is more than $25,000, enter 25% of the excess | 1,157,158.00 |
| 15. Tentative minimum tax | 4,723,658.00 |
| 16. Greater of line 14 or line 15 | 4,723,658.00 |
| 17. Line 12 less line 16 (if zero or less, enter -0-) | 0.00 |
| 18. Smaller of Part I, line 5 above or Part II, line 17 | 0.00 |
| 19. Multiply line 15 by 75% | 0.00 |
| 20. Greater of line 14 or line 19 | 0.00 |
| 21. Subtract line 20 from line 12 (if zero or less, enter -0-) | 0.00 |
| 22. Subtract line 18 from line 21 (if zero or less, enter -0-) | 0.00 |
| 23. Tentative empowerment zone and renewal community employment credit | 0.00 |
| 24. Empowerment zone and renewal community employment credit allowed (smaller of line 22 or line 23) | 0.00 |
| 25. Subtract line 14 from line 12 (if zero or less, enter -0-) | 3,566,500.00 |
| 26. Add lines 18 and 24 | 0.00 |
| 27. Subtract line 26 from line 25 (if zero or less, enter -0-) | 3,566,500.00 |
| 28. Business credit from a non-passive activity | 7,257.00 |
| 29. Reserved | |
| 30. Business & eligible small business credit allowed from a passive activity | 0.00 |
| 31. Business & eligible small business credit carryforwards | 0.00 |
| 32. Business & eligible small business credit carrybacks | 0.00 |
| 33. Tentative business and eligible small business credit (sum of lines 28 through 32) | 7,257.00 |
| 34. Smaller of line 27 or line 33 | 7,257.00 |
| 35. Current year General business credit allowed (add lines 26 and 34) | 7,257.00 |

SCENARIO #3 - DO NOT PROCESS

| Name of Taxpayer: | Kevin & Patricia Keefer | | 10/07/2021 |
|---|---|---|---|
| Identification Number: | 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 | Total | 22.20.00 |

### 2015 - Form 6251 - Alternative Minimum Tax Computation

1. If filing Schedule A, enter taxable income before exemptions;
   otherwise, enter adjusted gross income — 20,640,349.00
2. Total adjustment and preferences (excluding any NOL deduction) — 951,813.00
3. Net operating loss deduction — 0.00
4. Alternative tax net operating loss deduction — 0.00
5. Alternative minimum taxable income (combine lines 1 thru 4) — 21,592,162.00
6. Exemption amount — 0.00
7. Subtract line 6 from line 5 (if zero or less, enter zero) — 21,592,162.00
8. If capital gains are reported, use the amount from line 29 of the continuation page
   (If FEIT worksheet for AMT is used, enter amount from line 6 of that worksheet instead)
   All others, multiply line 7 by 28% and subtract $ 3,708 from the result — 4,725,234.00
9. Alternative minimum tax foreign tax credit — 1,576.00
10. Tentative minimum tax (line 8 less line 9) — 4,723,658.00
11. Regular tax less foreign tax credit plus excess advance premium tax credit repayment
    (if Schedule J was used to figure tax, use the refigured
    amount for line 44 of Form 1040 without using Schedule J) — 4,653,632.00
12. Alternative minimum tax — 70,026.00

Exemption Worksheet (line 6 above)

A. Exemption amount based on filing status — 83,400.00
B. Alternative minimum taxable income — 21,592,162.00
C. Enter amount based on filing status — 158,900.00
D. Subtract line C from line B — 21,433,262.00
E. Multiply line D by 25% — 5,358,316.00
F. Subtract line E from line A (if zero or less, enter zero) — 0.00

SCENARIO #3 - DO NOT PROCESS

| Name of Taxpayer: | Kevin & Patricia Keefer | | 10/07/2021 |
| Identification Number: | 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 | Total | 22.20.00 |

### 2015 - Form 6251 - Continuation, Tax Computation Using Maximum Capital Gain Rates

| | | |
|---|---|---:|
| 1. | Amount from Form 6251 report, line 7 | 21,592,162.00 |
| | (If FEIT worksheet for AMT was used, enter amount from line 3 of that worksheet instead) | |
| 2. | Amount from line 6 Qualified Dividends and Capital Gain Tax Worksheet | |
| | or line 13 Schedule D Tax Worksheet (refigured for AMT) | 15,224,031.00 |
| 3. | Amount from Schedule D line 19 (refigured for AMT) | 3,298,031.00 |
| 4. | Amount from line 2 if no Schedule D worksheet; otherwise, the smaller of | |
| | the sum of line 2 and line 3 or Schedule D worksheet line 10 (refigured for AMT) | 18,522,062.00 |
| 5. | Smaller of line 1 or line 4 | 18,522,062.00 |
| 6. | Subtract line 5 from line 1 | 3,070,100.00 |
| 7. | Multiply line 6 by 28% and subtract $ 3,708 from the result | 855,920.00 |
| 8. | Enter amount based on filing status | 74,900.00 |
| 9. | Amount from line 7 Qualified Dividends and Capital Gain Tax Worksheet or amount from | |
| | line 14 Schedule D Tax Worksheet, whatever applies (as figured for regular tax). | |
| | If neither worksheet applies, use taxable income (but not less than zero). | |
| | If Form 2555 was filed, see instructions | 5,387,991.00 |
| 10. | Subtract line 9 from line 8 (if zero or less, enter zero) | 0.00 |
| 11. | Smaller of line 1 or line 2 | 15,224,031.00 |
| 12. | Smaller of line 10 or line 11; This amount is taxed at 0%. | 0.00 |
| 13. | Subtract line 12 from line 11 | 15,224,031.00 |
| 14. | Enter amount based on filing status | 464,850.00 |
| 15. | Amount from line 10 | 0.00 |
| 16. | Amount from line 7 Qualified Dividends and Capital Gain Tax Worksheet or amount from | |
| | line 19 Schedule D Tax Worksheet, whatever applies (as figured for regular tax). | |
| | If neither worksheet applies, use taxable income (but not less than zero). | |
| | If Form 2555 was filed, see instructions | 2,089,960.00 |
| 17. | Add lines 15 and 16 | 2,089,960.00 |
| 18. | Subtract line 17 from line 14 (if zero or less, enter zero) | 0.00 |
| 19. | Smaller of line 13 or line 18 | 0.00 |
| 20. | Multiply line 19 by 15% | 0.00 |
| 21. | Add lines 12 and 19 | 0.00 |
| 22. | Subtract line 21 from line 11 | 15,224,031.00 |
| 23. | Multiply line 22 by 20% | 3,044,806.00 |
| 24. | Add lines 6, 21, and 22 | 18,294,131.00 |
| 25. | Subtract line 24 from line 1 | 3,298,031.00 |
| 26. | Multiply line 25 by 25% | 824,508.00 |
| 27. | Total of lines 7, 20, 23, and 26 | 4,725,234.00 |
| 28. | Multiply line 1 by 28% and subtract $ 3,708 from the result | 6,042,097.00 |
| 29. | Smaller of line 27 or line 28. Enter here and on line 8 of Form 6251 report | 4,725,234.00 |

SCANNED - #3 - DO NOT PROCESS

000136

| Name of Taxpayer: | Kevin & Patricia Keefer | | 10/07/2021 |
| Identification Number: | 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 | Total | 22.20.00 |

## 2015 - Form 8801 - Credit for Prior Year Minimum Tax

### Part I - Net Minimum Tax on Exclusion Items

| | |
|---|---|
| 1. Taxable income (loss) from prior year Form 6251 | 0.00 |
| 2. Adjustments and preferences treated as exclusion items | 0.00 |
| 3. Minimum tax credit net operating loss deduction | 0.00 |
| 4. Combine lines 1 through 3 (if more than $242,450 and | |
| married filing separate for prior year - see instructions) | 0.00 |
| 5. Exemption amount from prior year Form 6251 | 82,100.00 |
| 6. Phase-out exemption from prior year Form 6251 | 156,500.00 |
| 7. Subtract line 6 from line 4 (if zero or less, enter -0-) | 0.00 |
| 8. Multiply line 7 by 25% | 0.00 |
| 9. Subtract line 8 from line 5 (if zero or less, enter -0-) | 0.00 |
| 10. Subtract line 9 from line 4 (if zero or less, enter -0-) | 0.00 |
| 11. Line 11 computation | |
| (if filing Form 2555/2555-EZ for prior year, enter amount from page 3) or, | |
| (if capital gains for prior year, enter amount from Part III, line 55); | |
| otherwise, multiply line 10 by 0% and subtract $ 0 from the result | 0.00 |
| 12. Minimum tax foreign tax credit on exclusion items | 0.00 |
| 13. Tentative minimum tax on exclusion items | |
| (line 11 less line 12) | 0.00 |
| 14. Regular tax before credits minus foreign tax credit | |
| (line 34 of prior year Form 6251) | 0.00 |
| 15. Net minimum tax on exclusion items (line 13 less line 14) | 0.00 |

### Part II - Minimum Tax Credit and Carryforward to Subsequent Year

| | |
|---|---|
| 16. Line 35 of prior year Form 6251 | 0.00 |
| 17. Amount from line 15 above | 0.00 |
| 18. Adjusted net minimum tax (line 16 less line 17) | 0.00 |
| 19. Carryforward of minimum tax credit from prior year | 0.00 |
| 20. Prior year unallowed qualified electric vehicle credit | 0.00 |
| 21. Combine lines 18 through 20 | 0.00 |
| 22. Current year regular income tax plus excess advance premium tax | |
| credits repayment less allowable credits | 0.00 |
| 23. Current year tentative minimum tax (line 33 of Form 6251) | 0.00 |
| 24. Subtract line 23 from line 22 (if zero or less, enter -0-) | 0.00 |
| 25. Minimum tax credit (smaller of line 21 or line 24) | 0.00 |
| 26. Credit carryforward (subtract line 25 from line 21) | 0.00 |

SCENARIO #3 - DO NOT PROCESS

000137

| Name of Taxpayer: Kevin & Patricia Keefer | | 10/07/2021 |
| Identification Number: 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 | Total | 22.20.00 |

**Part III - Tax Computation Using Maximum Capital Gains Rates**

27. Amount from line 10
    (If FEIT worksheet for F8801 was used,
    enter amount from line 3 of that worksheet instead) ... 0.00
28. Amount from prior year line 6 of Qualified Dividends Worksheet or
    prior year line 13 of Schedule D Tax Worksheet, whichever applies ... 0.00
29. Amount from prior year Schedule D, line 19 ... 0.00
30. Add lines 28 and 29, and enter smaller of that result
    or the amount from line 10 of Schedule D Tax Worksheet ... 0.00
31. Smaller of line 27 or line 30 ... 0.00
32. Subtract line 31 from line 27 ... 0.00
33. Multiply line 32 by 0  % and subtract $  0  from the result ... 0.00
34. Enter amount based on prior year filing status ... 73,800.00
35. Amount from prior year line 7 of Qualified Dividends Worksheet or
    line 14 of Schedule D Tax Worksheet, whichever applies.  If neither
    was used enter the prior year's taxable income ... 0.00
36. Subtract line 35 from line 34. If zero or less, enter -0- ... 0.00
37. Smaller of line 27 or line 28 ... 0.00
38. Smaller of line 36 or line 37 ... 0.00
39. Subtract line 38 from line 37 ... 0.00
40. Enter amount based on prior year filing status ... 457,600.00
41. Amount from line 36 ... 0.00
42. Amount from prior year line 7 of Qualified Dividends Worksheet or
    prior year line 19 of Schedule D Tax Worksheet, whichever applies.
    If neither was used, enter the prior year's taxable income
    (If FEIT worksheet was used, enter amount from line 3 instead) ... 0.00
43. Add lines 41 and 42 ... 0.00
44. Subtract line 43 from line 40.  If zero or less, enter -0- ... 0.00
45. Smaller of line 39 or line 44 ... 0.00
46. Multiply line 45 by 15% ... 0.00
47. Add lines 38 and 45 ... 0.00
48. Subtract line 47 from line 37 ... 0.00
49. Multiply line 48 by 20% ... 0.00
50. Add lines 32, 47, and 48 ... 0.00
51. Subtract line 50 from line 27 ... 0.00
52. Multiply line 51 by 25% ... 0.00
53. Add lines 33, 46, 49, and 52 ... 0.00
54. Multiply line 27 by 0  % and subtract $  0  from the result ... 0.00
55. Smaller of line 53 or line 54 (enter here and on line 11 above)
    (If FEIT worksheet for F8801 was used,
    enter amount from line 4 of that worksheet instead) ... 0.00

SCENARIO #3 - DO NOT PROCESS

000138

| Name of Taxpayer: | Kevin & Patricia Keefer | | 10/07/2021 |
|---|---|---|---|
| Identification Number: | 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 | Total | 22.20.00 |

### 2015 - FOREIGN EARNED INCOME TAX WORKSHEET for PRIOR YEAR MINIMUM TAX

| | |
|---|---|
| 1. Enter amount from Form 8801, line 10 | 0.00 |
| 2a. Enter amount from prior year Form 2555, lines 45 & 50, or Form 2555-EZ, line 18 | 0.00 |
| 2b. Enter the total amount of unclaimed itemized deductions or exclusions related to excluded income | 0.00 |
| 2c. Subtract line 2b from line 2a. If zero or less, enter -0- | 0.00 |
| 3. Add lines 1 and 2c | 0.00 |
| 4. Tax on amount on line 3. | |
| If capital gains or qualified dividends are reported for prior year, enter amount from line 3 on Form 8801, line 27. | |
| Complete Form 8801, Part III and enter amount from line 55 here. | |
| All others: multiply line 3 by 26% and subtract $  0  from the result | 0.00 |
| 5. Tax on amount on line 2c. | |
| Multiply line 2c by 26% and subtract $  0  from the result | 0.00 |
| 6. Subtract line 5 from line 4. If zero or less, enter -0- | |
| (enter amount here and on line 11 of page 1) | 0.00 |

NOTE: Computations include capital gain excess determination
and any necessary modifications to Form 8801, Part III

SCENARIO #3 - DO NOT PROCESS

000139

| Name of Taxpayer: Kevin & Patricia Keefer | | 10/07/2021 |
| Identification Number: 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 | Total | 22.20.00 |

## 2015 - Form 8959 - Additional Medicare Tax

| | |
|---|---|
| 1. Medicare wages and tips from Form W-2, box 5 | 747,326.00 |
| 2. Unreported tips from Form 4137, line 6 | 0.00 |
| 3. Wages from Form 8919, line 6 | 0.00 |
| 4. Add lines 1 through 3 | 747,326.00 |
| 5. Amount based on filing status | 250,000.00 |
| 6. Subtract line 5 from line 4 (if zero or less, enter 0.00) | 497,326.00 |
| 7. Additional Medicare tax on Medicare wages (multiply line 6 by .009) | 4,476.00 |
| | |
| 8. Self-employment income from Schedule SE (if zero or less, enter 0.00) | 1,358,625.50 |
| 9. Amount based on filing status | 250,000.00 |
| 10. Amount from line 4 | 747,326.00 |
| 11. Subtract line 10 from line 9 (if zero or less, enter 0.00) | 0.00 |
| 12. Subtract line 11 from line 8 (if zero or less, enter 0.00) | 1,358,625.50 |
| 13. Additional Medicare tax on self-employment income (multiply line 12 by .009) | 12,228.00 |
| | |
| 14. Railroad retirement compensation from Form W-2, box 14 | 0.00 |
| 15. Amount based on filing status | 250,000.00 |
| 16. Subtract line 15 from line 14 (if zero or less, enter 0.00) | 0.00 |
| 17. Tier I employee Additional Medicare Tax on railroad retirement compensation (multiply line 16 by .009) | 0.00 |
| | |
| 18. Total Additional Medicare Tax (add lines 7, 13, and 17) | 16,704.00 |
| | |
| 19. Medicare tax withheld from Form W-2, box 6 | 14,757.00 |
| 20. Amount from line 1 | 747,326.00 |
| 21. Multiply line 20 by .0145 | 10,836.00 |
| 22. Subtract line 21 from line 19 (if zero or less, enter 0.00) | 3,921.00 |
| 23. Additional Medicare Tax from Form W-2, box 14 | 0.00 |
| 24. Total Additional Medicare Tax withholding (add lines 22 and 23) | 3,921.00 |

SCENARIO #3 - DO NOT PROCESS

000140

| Name of Taxpayer: | Kevin & Patricia Keefer | | 10/07/2021 |
|---|---|---|---|
| Identification Number: | 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 | Total | 22.20.00 |

### 2015  - PERSONAL EXEMPTION WORKSHEET

| | |
|---|---|
| 1. Multiply $4,000 by the total number of exemptions claimed | 8,000.00 |
| 2. Adjusted gross income | 23,239,508.00 |
| 3. Limitation based on filing status | 309,900.00 |
| NOTE: If line 2 is not greater than line 3, STOP; | |
| enter amount from line 1 on line 8 below | |
| 4. Subtract line 3 from line 2 | 22,929,608.00 |
| If line 4 is less than zero or more than $122,500 ($61,250 if married filing separately), | |
| then STOP; enter 0.00 on line 8 | |
| 5. Divide line 4 by $2,500 ($1,250 if married filing separately) | 0.00 |
| (If result is not a whole number, increase to next whole number) | |
| 6. Multiply line 5 by 2% and enter the result as a decimal | 0.00 |
| 7. Multiply line 1 by line 6 | 0.00 |
| 8. Deduction for exemptions | 0.00 |
| (subtract line 7 from line 1; or amount from line 1 or 0.00, if applicable) | |

SCENARIO #3 - DO NOT PROCESS

000141

| Name of Taxpayer: | Kevin & Patricia Keefer | | 10/07/2021 |
|---|---|---|---|
| Identification Number: | 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 | Total | 22.20.00 |

## 2015 - SCHEDULE A - ITEMIZED DEDUCTIONS

| | PER RETURN | PER EXAM | ADJUSTMENT |
|---|---|---|---|
| 1. Medical, dental and insurance premiums | 0.00 | 0.00 | 0.00 |
| 2. 10.0% of adjusted gross income | 2,276,596.00 | 2,323,950.80 | |
| 3. Net medical and dental expenses | 0.00 | 0.00 | 0.00 |
| 4. Taxes | 1,810,078.00 | 1,810,078.00 | 0.00 |
| 5. Home interest expense | 0.00 | 0.00 | 0.00 |
| 6. Qualified mortgage insurance premiums | 0.00 | 0.00 | 0.00 |
| 7. Investment interest | 48,207.00 | 48,207.00 | 0.00 |
| 8. Other interest expense | 0.00 | 0.00 | 0.00 |
| 9. Total interest expense | 48,207.00 | 48,207.00 | 0.00 |
| 10. Contributions | 151,762.00 | 1,428,762.00 | (1,277,000.00) |
| 11. Casualty and theft losses | 0.00 | 0.00 | 0.00 |
| 12. Miscellaneous deductions | 89,810.00 | 89,810.00 | 0.00 |
| 13.  2% of adjusted gross income | 455,319.00 | 464,790.00 | |
| 14. Excess miscellaneous deductions | 0.00 | 0.00 | 0.00 |
| 15. Other miscellaneous deductions | 0.00 | 0.00 | 0.00 |
| 16. Total itemized deductions | | | |
| (Sum of lines 3, 4, 9, | | | |
| 10, 11, 14, and 15 less | | | |
| any applicable limitation) | 1,336,365.00 | 2,599,159.00 | (1,262,794.00) |

SCENARIO #3 - DO NOT PROCESS

## ITEMIZED DEDUCTIONS WORKSHEET - PER EXAM

| | | |
|---|---|---|
| A | Total of lines 3, 4, 9, 10, 11, 14, and 15 above | 3,287,047.00 |
| B | Total of lines 3, 7, and 11, (plus any gambling and casualty or theft losses on line 15 above) | 48,207.00 |
| C | Line A less line B | 3,238,840.00 |
| D | Multiply the amount on line C by 80% | 2,591,072.00 |
| E | Adjusted gross income | 23,239,508.00 |
| F | Itemized deduction limitation based on filing status | 309,900.00 |
| G | Line E less line F | 22,929,608.00 |
| H | Multiply the amount on line G by 3% | 687,888.00 |
| I | Enter the smaller of line D or line H | 687,888.00 |
| J | Total itemized deductions (Line A less line I, entered on line 16 per exam column above) | 2,599,159.00 |

000142

| Name of Taxpayer: | Kevin & Patricia Keefer | | 10/07/2021 |
|---|---|---|---|
| Identification Number: | 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 | Total | 22.20.00 |

### 2015 - SCHEDULE D - CAPITAL GAINS AND LOSSES

**Part I    Short-Term Capital Gains and Losses—Assets Held One Year or Less**

| | | |
|---|---|---:|
| 1 | Short-term capital gain or loss | (22,717.00) |
| 2 | Short-term capital loss carryover | 0.00 |
| 3 | Net Short-term Gain or Loss (Add line 1 and 2) | (22,717.00) |

**Part II    Long-Term Capital Gains and Losses—Assets Held More Than One Year**

| | | |
|---|---|---:|
| 4 | Long-term capital gain or loss | 18,434,916.00 |
| 5 | Long-term capital gain or loss carryover | 0.00 |
| 6 | Net long-term Gain or Loss (Add line 4 and 5) | 18,434,916.00 |

**Part III    Summary**

| | | |
|---|---|---:|
| 7 | Sum of lines 3 and 6 - Net Capital Gain or Loss | 18,412,199.00 |
| 8 | Capital loss limitation | 0.00 |
| 9 | Capital Gain or Loss - As Corrected | 18,412,199.00 |
| 10 | Capital Gain or Loss - Per Return | 17,938,646.00 |
| 11 | Line 9 less line 10 - Adjustment to Income | 473,553.00 |

SCENARIO #3 - DO NOT PROCESS

**CORRECTED CARRYOVER**

| | | |
|---|---|---:|
| 12 | Short-term Carryover to Subsequent Year | 0.00 |
| 13 | Long-term Carryover to Subsequent Year | 0.00 |

**28% RATE GAIN COMPUTATION**

| | | |
|---|---|---:|
| 1 | Tentative 28% rate gain (total of lines 1 thru 4 from worksheet) | 0.00 |
| 2 | Long-term capital loss carryover | 0.00 |
| 3 | Net short-term capital loss | (22,717.00) |
| 4 | Allowable 28% rate gain (sum of lines 1 thru 3) (if -0- or less, enter -0-) | 0.00 |

**SECTION 1250 GAIN COMPUTATION**

| | | | |
|---|---|---:|---:|
| 1 | Tentative Section 1250 gain (line 13 from worksheet) | | 3,320,748.00 |
| 2 | Tentative 28% rate gain | 0.00 | |
| 3 | Net short-term capital loss | (22,717.00) | |
| 4 | Long-term capital loss carryover | 0.00 | |
| 5 | Sum of lines 2 thru 4 (if less than -0-, enter as positive amount) (if -0- or greater, enter -0-) | | 22,717.00 |
| 6 | Allowable Section 1250 gain (line 1 less line 5) (if -0- or less, enter -0-) | | 3,298,031.00 |

000143

Name of Taxpayer:    Kevin & Patricia Keefer                                    10/07/2021
Identification Number: 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              Total                              22.20.00

## 2015 - Schedule D Tax Worksheet

| | |
|---|---|
| 1. Enter the taxable income from Form 1040, line 43, or the amount from Foreign Earned Income Tax Worksheet, line 3, if filing Form 2555 or 2555-EZ | 20,640,349.00 |
| 2. Enter the qualified dividends from Form 1040, line 9b | 138,190.00 |
| 3. Enter the amount from Form 4952, line 4g | 0.00 |
| 4. Enter the amount from Form 4952, line 4e | 0.00 |
| If applicable, enter the smaller of line 4e or the amount on the dotted line next to line 4e of Form 4952 | |
| 5. Subtract line 4 from line 3. If zero or less, enter -0- | 0.00 |
| 6. Subtract line 5 from line 2. If zero or less, enter -0- | 138,190.00 |
| 7. Enter the smaller of line 15 or line 16 of Schedule D | 18,412,199.00 |
| 8. Enter the smaller of line 3 or line 4 | 0.00 |
| 9. Subtract line 8 from line 7. If zero or less, enter -0- | 18,412,199.00 |
| 10. Add lines 6 and 9 | 18,550,389.00 |
| 11. Add lines 18 and 19 of Schedule D | 3,298,031.00 |
| 12. Enter the smaller of line 9 or line 11 | 3,298,031.00 |
| 13. Subtract line 12 from line 10 | 15,252,358.00 |
| 14. Subtract line 13 from line 1. If zero or less, enter -0- | 5,387,991.00 |
| 15. Enter: | |
|    $ 37,450 if single or married filing separately; | |
|    $ 74,900 if married filing jointly or qualifying widow(er), or | |
|    $ 50,200 if head of household | 74,900.00 |
| 16. Enter the smaller of line 1 or line 15 | 74,900.00 |
| 17. Enter the smaller of line 14 or line 16 | 74,900.00 |
| 18. Subtract line 10 from line 1. If zero or less, enter -0- | 2,089,960.00 |
| 19. Enter the larger of line 17 or line 18 | 2,089,960.00 |
| 20. Subtract line 17 from line 16. This amount is taxed at 0% | 0.00 |
| If lines 1 and 16 are the same, skip lines 21 through 41 and go to line 42. Otherwise, go to line 21. | |
| 21. Enter the smaller of line 1 or line 13 | 15,252,358.00 |
| 22. Enter the amount from line 20 (if line 20 is blank, enter -0-) | 0.00 |
| 23. Subtract line 22 from line 21. If zero or less, enter -0- | 15,252,358.00 |
| 24. Enter: | |
|    $ 413,200 if single; | |
|    $ 232,425 if married filing separately; | |
|    $ 464,850 if married filing jointly or qualifying widow(er); or | |
|    $ 439,000 if head of household | 464,850.00 |
| 25. Enter the smaller of line 1 or line 24 | 464,850.00 |
| 26. Add lines 19 and 20 | 2,089,960.00 |
| 27. Subtract line 26 from line 25. If zero or less, enter -0- | 0.00 |
| 28. Enter the smaller of line 23 or line 27 | 0.00 |
| 29. Multiply line 28 by 15% (.15) | 0.00 |
| 30. Add lines 22 and 28 | 0.00 |
| If lines 1 and 30 are the same, skip lines 31 through 41 and go to line 42. Otherwise, go to line 31. | |
| 31. Subtract line 30 from line 21 | 15,252,358.00 |
| 32. Multiply line 31 by 20% (.20) | 3,050,472.00 |
| If Schedule D, line 19, is zero or blank, skip lines 33 through 38 and go to line 39.  Otherwise, go to line 33. | |
| 33. Enter the smaller of line 9 above or Schedule D, line 19 | 3,298,031.00 |
| 34. Add lines 10 and 19 | 20,640,349.00 |
| 35. Enter the amount from line 1 above | 20,640,349.00 |
| 36. Subtract line 35 from line 34. If zero or less, enter -0- | 0.00 |
| 37. Subtract line 36 from line 33. If zero or less, enter -0- | 3,298,031.00 |
| 38. Multiply line 37 by 25% (.25) | 824,508.00 |
| If Schedule D, line 18, is zero or blank, skip lines 39 through 41 and go to line 42. Otherwise, go to line 39. | |
| 39. Add lines 19, 20, 28, 31, and 37 | |
| 40. Subtract line 39 from line 1 | |
| 41. Multiply line 40 by 28% (.28) | |
| 42. Figure the tax on the amount on line 19. If the amount on line 19 is less than $100,000, use the Tax Table to figure the tax.  If the amount on line 19 is $100,000 or more, use the Tax Computation Worksheet | 773,540.00 |
| 43. Add lines 29, 32, 38, 41, and 42 | 4,648,520.00 |
| 44. Figure the tax on the amount on line 1. If the amount on line 1 is less than $100,000, use the Tax Table to figure the tax.  If the amount on line 1 is $100,000 or more, use the Tax Computation Worksheet | 8,119,494.00 |
| 45. Tax on all taxable income (including capital gains and qualified dividends). Enter the smaller of line 43 or line 44. Also include this amount on Form 1040, line 44, or Foreign Earned Income Tax Worksheet, line 4, if applicable | 4,648,520.00 |

FILED 10/07/23    DO NOT PROCESS

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service **Explanation of Items** | | Schedule number or exhibit |
|---|---|---|---|
| Name of taxpayer Kevin & Patricia Keefer | | Tax Identification Number *(last 4 digits)* 7478 | Year/Period ended 2015 |

**Statutory-Alt Min Tax**

| | Tax Period 2015 | Per Return $0.00 | Per Exam $70,026.00 | Adjustment $70,026.00 |
|---|---|---|---|---|

You have an alternative minimum tax liability only if your tentative minimum tax exceeds your regular tax liability. Tentative minimum tax is computed by first calculating your alternative minimum taxable income, which equals your regular taxable income increased by any tax preference items for the taxable year, and increased or decreased by adjustment items for the taxable year. Alternative minimum taxable income is then reduced by an exemption amount:

($53,600 for Single/Head of Household
 $83,400 for Married Filing Joint/Surviving Spouse; and
 $41,700 for Married Filing Separately) which is subject to phase-out depending on the amount of your alternative minimum taxable income.

For taxable years after 1992, the remaining amount is subject to a 26 percent tax rate on the first $175,000 and 28 percent tax rate on any amount in excess of $175,000. A tentative minimum tax is then computed by reducing the amount determined in the preceding sentence by any allowable foreign tax credit. The alternative minimum tax liability is the amount by which tentative minimum tax exceeds regular tax liability.

```
 1              CHANGES AND SIGNATURE

 2  WITNESS NAME: KENNETH M. HORWITZ

 3  DATE:   SEPTEMBER 9, 2021

 4  PAGE LINE      CHANGE          REASON

 5  pg 23, ln 4: last word → Treusch, misspelling of name

 6  pg 23, ln 9+10: my answer to the question was

 7  slightly incorrect. In the deposition the coursework

 8  was characterized as merely a course in my Master

 9  of Laws program. However, I note that the course

10  was paid for by the IRS because of my work in

11  a charitable contributions group, and was

12  regarded by my employer, the IRS, as continuing

13  education.

14  pg 87, ln 13+14: refer to a Court Case that is

15  misspelled. The name of the case is "Court

16  Holding Company" (A Supreme Court Case)

17  _____

18  _____

19  _____

20  _____

21  _____

22  _____

23  _____

24  _____

25  _____
```

```
 1  _____

 2  _____

 3  _____

 4        I, KENNETH M. HORWITZ, have read the

 5  foregoing deposition and hereby affix my signature

 6  that same is true and correct, except as noted

 7  above.

 8

 9

10

11                              _____

12               KENNETH M. HORWITZ

13

14

15

16  THE STATE OF Texas   )

17  COUNTY OF Dallas    )

18

19        Before me, Samantha Streit      , on

20  this day personally appeared KENNETH M. HORWITZ,

21  known to me (or proved to me under oath or through

22  _____) (description of

23  identity card or other document)) to be the person

24  whose name is subscribed to the foregoing

25  instrument and acknowledged to me that they
```

1   executed the same for the purposes and

2   consideration therein expressed.

3         Given under my hand and seal of office

4   this ___4th_____ day of OCTOBER_____,

5   2021_____.

6

7   SAMANTHA STREIT
    Notary Public, State of Texas
8   Comm. Expires 07-31-2023          Samantha Streit
    Notary ID 132109920           _____
9                                 NOTARY PUBLIC IN AND FOR
                                  THE STATE OF Texas_____
10                                COMMISSION EXPIRES: 7-31-2023

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25