UNITED STATES DISTRICT COURT
For The Northern District Of Texas
Dallas Division

| | | |
|---|---|---|
| KEVIN M. AND PATRICIA S. KEEFER, | § | |
| Plaintiffs | § | |
| | § | CIVIL ACTION NO. 3:20-CV-0836-B |
| v. | § | |
| | § | JURY TRIAL: __ YES  X NO |
| UNITED STATES OF AMERICA, | § | |
| Defendant | § | |

PLAINTIFFS' BRIEF IN SUPPORT OF THEIR RESPONSE TO
DEFENDANT UNITED STATES' AMENDED MOTION FOR SUMMARY JUDGMENT

**GLAST, PHILLIPS & MURRAY, P.C.**

Richard E. Young
Texas State Bar No. 22204800

14801 Quorum Drive, Suite 500
Dallas, Texas 75254-1449
972.419.8376
972.419.8329 facsimile
ryoung@gpm-law.com

COUNSEL FOR PLAINTIFFS
KEVIN M. and PATRICIA S. KEEFER

December 7, 2021

## TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................... ii

INDEX OF AUTHORITIES ................................................. v

DEFENDANT'S ISSUE A: Kevin Keefer's charitable contribution of a 4% partnership interest to the Pi charity was not an anticipatory assignment of income ............................................................... 1

1.  The transfer of an income-producing asset, as opposed to a transfer of the income later produced, does not trigger the anticipatory assignment of income doctrine................................................. 2

2.  The partnership's sale of its hotel property was not "practically certain to occur" at the time of Kevin Keefer's gift since no seller or buyer was legally bound to sell or buy at that time........................................... 4

3.  The participants' subjective views of probability of some sale of the hotel by the partnership, or even some control over the future sale, does not meet the "practically certain" test.............................................. 9

4.  Defendant's criticism of the Keefers' tax planning does not trigger the anticipatory assignment of income doctrine.....................................11

5.  Kevin Keefer's disclosure to Pi that the partnership had pre-existing liabilities to pre-existing partners for previously delayed distributions because of contractual cash reserve requirements was not a "carving out" of the donated partnership interest..................................13

DEFENDANT'S ISSUE B: The Keefers' appraisal of the donated partnership interest and the Keefers' Form 8283 both adequately complied with the government's statutory substantiation requirements.........................................19

1.  The Keefers' Form 8283 with its accompanying appraisal accurately described and valued the partnership interest donated ...........................19

2.  The Keefers' Form 8283 with its attached appraisal did include the tax identification number of the appraiser as required by the government ..................................................22

3.  The contemporaneous written acknowledgement from the donee, Pi, acknowledged that Pi had exclusive legal control of the donated interest after the donation .......................................................24

4.  Even if the Keefers are found not to have provided all the information technically required in their appraisal and Form 8283, the IRS was not allowed to deny the deduction because the Keefers substantially complied or are legally excused for such a failure as the IRS alleges here   .......................................................25

   a.  *Any omissions were de minimus, the Keefers had reasonable cause, reasonably relied on their tax experts, and had no willful neglect* ......25

   b.  *The government failed to allow the Keefers the required opportunity to correct any omissions as the government was duty bound to do* .....27

5.  The government tries to get the Court to ignore the government's own conduct in viewing the factual summary judgment evidence on the Keefer's reasonable reliance, the Keefer's substantial compliance, and the government's failure to allow the Keefers an opportunity to correct   .......................................................28

6.  The IRS's own form instructions are relevant to compliance with or justifiable excuse for non-compliance of treasury regulations ............31

DEFENDANT'S ISSUE C:  Defendant admits the Keefers are entitled to a refund if the Keefers prevail on their 4% partnership contribution, or on an assignment of income scenario, or a calculation of bargain gain scenario ........32

DEFENDANT'S ISSUE D: The doctrine of variance does not bar the Keefers' alternative Claim 2 or Claim 3 because the defendant itself belatedly took the unilateral action that creates any variance after the Keefers' filing of the initial claim for refund was closed ...........................................................32

CONCLUSION   ...............................................................34

CERTIFICATE OF SERVICE..........................................................................................35

# INDEX OF AUTHORITIES

**Cases**

*Bandera Drilling Co. v. Sledge Drilling*,
   293 S.W.3d 867 (Tex. App.—Eastland 2009, no pet.)........................................24

*Behrend v. United States*,
   No. 72-1153, 1972 U.S. App. LEXIS 6282, at *7,
   31 A.F.T.R.2d (RIA) 406 (4th Cir. 1972)..............................................5, passim

*Brown v. United States*,
   427 F.2d 57 (9th Cir. 1970)..........................................................................33

*Carrington v. Commissioner*,
   476 F.2d 704 (5th Cir. 1973)....................................................................2, 12

*Cave Buttes, L.L. C. v. Commissioner*,
   147 T.C. 338 (2016).....................................................................................29

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
   467 U.S. 837 (1984).....................................................................................27

*Dickinson v. Commissioner*,
   No. 9526-19, 2020 Tax Ct. Memo LEXIS 122, at *5 (T.C. 2020).........................2, passim

*El Paso CGP Co., L.L.C. v. United States*,
   748 F.3d 225 (5th Cir. 2014)........................................................................33

*Ferguson v. Comm'r*,
   174 F.3d 997 (9th Cir. 1999)......................................................................2, 4

*Gail Vento, LLC v. United States*,
   595 F. App'x 170 (3d Cir. 2014) ....................................................................5

*Grove v. Commissioner*,
   490 F.2d 241 (2d Cir. 1973)...............................................................5, passim

*Hudspeth v. United States*,
   471 F.2d 275 (8th Cir. 1972)....................................................................6, 10

*Humacid Co. v. Commissioner*,
   42 T.C. 894 (1964)...........................................................................2, passim

*Moore v. Commissioner*,
   70 T.C. 1024 (1978)........................................................................................3

*NetJets Large Aircraft, Inc. v. United States*,
   No. 2:11-cv-1023, 2014 U.S. Dist. LEXIS 58677, at *13,
   113 A.F.T.R.2d (RIA) 2014-1879 (S.D. Ohio 2014) .......................................31

*Palmer v. Commissioner*,
   62 T.C. 684 (1974) at 687 .......................................................................6, 10

*Rodgers v. United States*,
   843 F.3d 181 (5th Cir. 2016).........................................................................33

*Salty Brine I, Ltd. v. United States*,
    761 F.3d 484 (5th Cir. 2014)............................................................................2, passim
*Sheppard v. United States*,
    361 F.2d 972 (1966) ............................................................................................10, 12
*Shore v. United States*,
    26 Cl. Ct. 826 (1992) .................................................................................................33
*Tatum v. Commissioner*,
    400 F.2d 242 (5th Cir. 1968)....................................................................................12
*Trinity Industries, Inc. v. United States*,
    757 F.3d 400 (5th Cir. 2014)....................................................................................30
*United States v. Basye*,
    410 U.S. 441 (1973)...............................................................................................3, 16
*United States v. Shimer*,
    367 U.S. 374 (1961) .................................................................................................27

## Statutes

26 U.S.C. § 7701(a)(41) ..................................................................................................23
26 U.S.C. §7701 ..............................................................................................................23
26 USC § 170(f)(18)(b)...................................................................................................24
Tex. Bus. Org. Code, §154.002 .......................................................................................3

## Other Authorities

§ 170(f)(8)(B)(i); Pub. L. 98-369, § 155(a)(4)(A),
    as amended Pub. L. 99-514, § 2 (1986), 100 Stat. 2095 (codified as a note to 26 U.S.C. §
    170))............................................................................................................................22
'84 TRA, PL 98-369, 7112184.........................................................................................28
COMREP ¶ 66,591.005...................................................................................................27
Pub. L. 98-369, § 155(a)(4)(E), as amended Pub. L. 99-514,
    § 2 (1986), 100 Stat. 2095 (codified as a note to 26 U.S.C. § 170)....................23

## Rules

Fed. R. Evid. Rule 402....................................................................................................30
Revenue Rule 78-197, 1978 IRB LEXIS 489, *1 (I.R.S. January 1, 1978)................................11

## Regulations

26 CFR 1.170A-13(c)(4)(i) ..............................................................................................29
Section 1.170A-13(c) of the regulations .....................................................................27, 29
Section 1.170A-13(c)(3)(ii)(E .........................................................................................27

**UNITED STATES DISTRICT COURT**
**For The Northern District Of Texas**
**Dallas Division**

| | | |
|---|---|---|
| **KEVIN M. AND PATRICIA S. KEEFER,** | § | |
| Plaintiffs | § | |
| | § | **CIVIL ACTION NO. 3:20-CV-0836-B** |
| **v.** | § | |
| | § | **JURY TRIAL: _ YES  X NO** |
| **UNITED STATES OF AMERICA,** | § | |
| Defendant | § | |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR RESPONSE
TO DEFENDANT UNITED STATES' AMENDED MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Kevin M. Keefer and Patricia S. Keefer file this Plaintiffs' Brief In Support Of Their Response To Defendant United States' Amended Motion For Summary Judgment, responding to the arguments of defendant United States of America raised in defendant's United States' Brief in Support of Its Amended Motion For Summary Judgment Against Plaintiffs Kevin M. Keefer and Patricia S. Keefer (Doc. 68).

**DEFENDANT'S ISSUE A:**

**Kevin Keefer's charitable contribution of a 4% partnership interest to the Pi charity was not an anticipatory assignment of income.**

Using the rubric of the anticipatory assignment of income doctrine, defendant wants to re-characterize the Keefers' charitable contribution of a partnership interest to a charity as an anticipatory assignment of the income that the partnership later received from a later contract and sale of the partnership's major asset – a hotel. Defendant's Brief p. 16. Defendant misunderstands and then misapplies the assignment of income doctrine. The undisputed summary judgment evidence shows the assignment of income doctrine is not applicable to the facts here.

---

The anticipatory assignment of income doctrine has two major components. "Per *Humacid Co. v. Commissioner*, 42 T.C. 894, 913 (1964), we respect the form of this kind transaction if the donor (1) gives the property away absolutely and parts with title thereto (2) **before** the property gives rise to income by way of a sale." *Dickinson v. Commissioner,* No. 9526-19, 2020 Tax Ct. Memo LEXIS 122, at *5 (T.C. 2020).

Those *Humacid* two major components themselves each have a certain test. The test for the first component, did the donor give the property away absolutely and parted with title is tested by "whether the asset itself, or merely the income from it, have been transferred." *Salty Brine I, Ltd. v. United States*, 761 F.3d 484, 491 (5th Cir. 2014). The test for the second *Humacid* component, was the gift made **before** event that gives the rise to the income from the property, is test by whether the ""whether the receipt of income was practically certain to occur" considering "the realities and substance of events." *See Ferguson v. Comm'r*, 174 F.3d 997, 1003 (9th Cir. 1999).

## 1.
### The transfer of an income-producing asset, as opposed to a transfer of the income later produced, does not trigger the anticipatory assignment of income doctrine.

Defendant overall argues that the contribution of a partnership interest is an anticipatory assignment of income from the later sale of a partnership asset. Defendant's Brief p. 16. Defendant misunderstands the difference between a partnership interest and partnership property. The "income" here was from the partnership's later sale of its property (a hotel), not from the sale of the gifted property (a 4% partnership interest in the partnership that owned the hotel).

"[T]he transfer of income producing property (not of income) is not an event in which an appreciation of value is realized." *Carrington v. Commissioner*, 476 F.2d 704, 708 (5th Cir. 1973).

---

"[T]he transfer of a part of a partnership interest to a new partner prior to the close of the partnership taxable year is not any more an anticipatory assignment of income than is the transfer of such an interest by reallocation of the percentage interests among the existing partners. The latter is permitted by statute. Until the year is closed, there is no income of the partnership on an annual accounting basis as distinguished from specific items of receipts and deductions which go into the computation of income." *Moore v. Commissioner*, 70 T.C. 1024, 1037 (1978)(Scott, J., concurring).

The partnership is treated as an entity that owns its assets (here, the hotel). *See United States v. Basye*, 410 U.S. 441, 448 n.8 (1973)("partnerships are entities for purposes of calculating and filing informational returns . . . ."). The Keefers did not own the hotel, only a partnership interest in the partnership that owned the hotel. *See* TEX. BUS. ORG. CODE, §154.002 ("TRANSFER OF INTEREST IN PARTNERSHIP PROPERTY PROHIBITED. A partner does not have an interest that can be transferred, voluntarily or involuntarily, in partnership property.").

Here, defendant's undisputed summary judgment evidence shows in 2015 Kevin Keefer transferred to the charity not an interest in the hotel, but an interest in the partnership that owned the hotel. Defendant's Brief (Doc. 68) p. 6; Defendant's App. (Doc. 69-5) pp. 443 – 444. Over the next couple of months thereafter, the partnership contracted to sell and then sold its hotel. Defendant's App. 214-223 (Contract), 228-230 (Closing Statement); Defendant's Brief p. 6. Kevin Keefer's transfer of a partnership interest to the charity was not an anticipatory assignment of income from a later sale of the hotel owned by that partnership. *See Moore v. Commissioner*, 70 T.C. 1024, 1037 (1978)(Scott, J., concurring). Defendant's attempt to use the anticipatory assignment of income doctrine here fails *ab initio*.

**2.**

**The partnership's sale of its hotel property was not "practically certain to occur" at the time of Kevin Keefer's gift since no seller or buyer was legally bound to sell or buy at that time.**

Even if the Court were to apply the anticipatory assignment of income tests to the Keefers' contribution of the 4% partnership interest, defendant's arguments would still fail.

Defendant first addresses the second *Humacid* element, whether Kevin Keefer gave away the 4% partnership interest before the event that gave rise to the income occurred, and the test for that of was the event that gave rise to the income "practically certain." Defendant's Brief p. 16. Defendant admits the critical test for this second element is, at the time of Kevin Keefer's gift, the receipt of the income from the contributed asset was "practically certain to occur." *See Ferguson v. Comm'r*, 174 F.3d 997, 1003 (9th Cir. 1999); Defendant's Brief p. 16, 17. This "practically certain" test has a strict and refined requirement that is not met here.

Defendant first argues all that "practically certain" means is that parties to a contemplated sale of the hotel thought the sale of the partnership asset – the hotel – was "quite unlikely" to fail. Defendant's Brief p. 17. Defendant argues the income from the sale for the partnership was "practically certain" because the appraiser of the partnership interest, looking back on the date of the Keefers' contribution of the partnership interest, gave the future sale of the partnership's hotel a "95% chance" and "a very low . . . 5% probability of no sale." Defendant's Brief p. 16. Defendant seems to think that is all that is required to meet the "practically certain" test. Defendant is wrong for several reasons.

Defendant cites *Ferguson, supra,* for the "practically certain" test (Defendant's Brief p. 16). But defendant fails to inform the Court that the *Ferguson* court, in that same cited sentence, went on to explain what "practically certain" means -- to be " 'ripened' for tax purposes" under

---

the anticipatory assignment of income doctrine, at the time of the taxpayer's transfer of the asset to the charity, the taxpayer has to have a "fixed right" to income or cash. 174 F.3d at 1003.

Other courts have also explained what "practically certain" means in this context:

- The taxpayer's right to income had "already crystallized" at the time of the taxpayer's gift. *Dickinson v. Commissioner*, No. 9526-19, 2020 Tax Ct. Memo LEXIS 122, at *9 (T.C. 2020).

- The taxpayers' right to the income had to be "a *fait accompli*" at the time of the taxpayer's gift to the charity. *Id.* at *8.

- There had to be, at the time of the gift, a "binding obligation" on the parties that is "compellable" to carry through the steps that resulted in the income. *Behrend v. United States*, No. 72-1153, 72-1156, 1972 U.S. App. LEXIS 6282, at *7, 31 A.F.T.R.2d (RIA) 406 (4th Cir. 1972)("the gifts were absolutely perfected before the corporation redeemed the stock. Performance of none of the steps was compellable; there was no binding obligation on the parties to carry through any step.").

- The taxpayer's right to income from the sale of asset has to be "locked in" before the taxpayer transferred the asset. *Gail Vento, LLC v. United States*, 595 F. App'x 170, 174 (3d Cir. 2014).

- The prospective buyer of the asset must have assumed an "obligation" to buy the asset before the donation of the partnership interest. *See Grove v. Commissioner*, 490 F.2d 241, 247 (2d Cir. 1973)(with "no obligation . . . the Commissioner's contention that [the taxpayer's] initial donation was

only the first step in a prearranged series of transactions is little more than wishful thinking grounded in a shaky foundation.").

The kind of transaction that does show a "fixed right," "locked in," "crystalized," "*fait accompli*," or "binding obligation" to receive income before the donation that triggers the assignment of income doctrine is shown by *Hudspeth v. United States*, 471 F.2d 275, 276 (8th Cir. 1972). In *Hudspeth*, the court recast a stock donation as a taxable stock sale and donation of the sale proceeds where the taxpayer donated stock **after** the issuing corporation's directors and shareholders had already adopted a plan of complete liquidation.

On the other hand, the kind of transaction that does **not** show a "fixed right," "locked in," "crystalized," "*fait accompli*," or "binding obligation" to receive income **before** the donation that triggers the assignment of income doctrine is shown by *Palmer v. Commissioner*, 62 T.C. 684 (1974) at 687-688, 695. In *Palmer*, even though all parties were related and anticipated the redemption of the donated stock before the donation, because "no vote for the redemption had yet been taken" when the shareholder donated the stock, there was no assignment of income because the redemption "was not a *fait accompli* at the time of the gift." *Dickinson v. Commissioner*, No. 9526-19, 2020 Tax Ct. Memo LEXIS 122, at *7-8 (T.C. 2020).

The *Dickinson* court said if the vote by company to redeem its stock has not actually occurred before the gift of the stock, even "a preexisting understanding among the parties that the donee would redeem donated stock does not convert a postdonation redemption into a predonation redemption" for purposes of anticipatory assignment of income. *Id.* at *6. The *Dickinson* court held that neither a prior repeated "pattern of stock donations followed by donee redemptions, a stock donation closely followed by a donee redemption, nor selection of a donee on the basis of the donee's internal policy of redeeming donated stock" would be enough to

trigger an anticipatory assignment of income where there was yet no actual vote to redeem at the time of the contribution. *Id*.

Here, instead of a "practically certain" transaction involving the Keefers having a "fixed right," "locked in," "crystalized," or "*fait accompli*" to receive income or another's "binding obligation" to pay such income before the donation was made, defendant's summary judgment evidence shows this:

- April 2015 -- the partnership received a letter of intent from a prospective buyer to buy the subject hotel plus another hotel. The partnership also received several verbal offers and two written offers in emails. Defendant's Brief pp. 2 - 3, 16; Defendant's App. 47-49, 54. The letters of intent were "never signed." Defendant's App. 209.

- The one April letter of intent was signed only by the offeror and expressly declared:

> 12. <u>Non-Binding Letter of Intent</u>. In this letter of intent, we have sought to address certain business issues in the hope that this will expedite the negotiation and finalization of a final Contract. This letter of intent is preliminary in nature, however, being sent at a time when AHR has not undertaken a complete examination of the Hotels. Accordingly, this letter of intent is not legally binding on the parties and is only an expression of the basic terms and conditions that may become incorporated in a formal written purchase contract. This letter does not obligate either party to continue to negotiate or to proceed to the completion of a formal written purchase contract. Either party may cease the negotiations at any time for any reason. The parties shall not be contractually bound unless and until they execute a formal written purchase contract, which must be in form and content satisfactory to each party and its counsel in their respective sole and absolute discretion. This letter of intent does not create any legal or equitable right or obligation of any kind with respect to the parties.

Defendant's App. 225.

- The partnership never signed the one letter of intent, but instead "began negotiating sales contracts." Defendant's App. 209. And, as defendant's own counsel elicited from the appraiser here, when asked if a hoped-for transaction "[c]an be continually negotiated until signed?," the appraiser

testified, "Sure. Until it's signed, anything can be negotiated." Defendant's App. 387 (at deposition p. 71, l. 6-7).

- June 18, 2015 -- Kevin Keefer transferred a 4% limited partnership interest in the partnership to the Pi Foundation. Defendant's Brief p. 6; Defendant's App. 443 – 444. Pi became a 4% limited partner in the partnership at that time.

- July 2, 2015 -- fifteen days after the transfer of the partnership interest by Kevin Keefer to Pi, the partnership and the prospective purchaser entered into a contract to sell the hotel. Defendant's App. 205, 215-223. The Purchase Contract even provided for a 30 day review period by the buyer, during which time the buyer could cancel the contract. Defendant's App. 221- 222.

- August 11, 2015 – only after about two months after Kevin Keefer transferred the 4% partnership interest to Pi, did the partnership actually sell the hotel to the buyer and the partnership receive the sale proceeds. Defendant's App. 229-230; Defendant's Brief p. 7.

- September 2015 – the partnership distributed net amounts to its then-partners, and wires "funds of $1,280,000 from the proceeds of the sale of the Hotel to Pi." Defendant's Brief p. 7; Defendant's App. 486 at deposition pp. 141 – 142.

Even defendant's own summary judgment evidence shows the risk of "no sale" was very real, not merely hypothetical. This risk was so real it affected the valuation of the partnership and the 4% partnership donated – the appraiser said the value of proceeds from the hotel sale

"should be discounted for . . . uncertainty," (App. 413) and "[a]llowing for a 5% probability of no sale" reduced the value of the partnership by $177,000 ("Net Proceeds" = $32,224,000, but after "Weighted Value" adjustment for "5%" of no sale, reduced to "Probability Weighted Value" of $32,047,000; *see* Defendant's App. 412 at table at bottom of page; *see also* Defendant's App. 408, 409, & 412 where appraiser deletes "000" from the end of his numbers.)

Thus, defendant's summary judgment evidence fails to show that, before the Keefers' donation was made, the sale of the hotel by the partnership was "practically certain," or a "fixed right," "locked in," "crystalized," "a *fait accompli*," or "binding obligation" to receive income. Moreover, defendant's own summary judgment evidence actually affirmatively shows the opposite -- the sale of the hotel, at the time of Kevin Keefer's gift of a partnership interest to Pi, was in fact **not** "practically certain," and any possible sale or the terms of any possible sale were not "fixed," "locked in," "crystalized," "a *fait accompli*," or a "binding obligation" as required by the "practically certain" test.

### 3.
### The participants' subjective views of probability of some sale of the hotel by the partnership, or even some control over the future sale, does not meet the "practically certain" test.

Defendant makes much of the subjective views of Kevin Keefer, the appraiser, and others that they "anticipated" or thought there was a "probability" that the partnership could sell hotel to someone. Defendant's Brief pp. 3, 5, 16, 17. Defendant misunderstands the strictness of the "practically certain" test -- a taxpayer's or other participant's subjective state of mind anticipating the future transaction, or even the taxpayer's intent to and ability to influence the later transaction, no matter how well founded, is not enough to meet the "practically certain" test.

In fact, as the court in *Sheppard* tell us, it is just the opposite -- in deciding whether the anticipatory assignment of income doctrine applies, the fact that a taxpayer "in his own mind . . .

felt confident" that a transaction would occur after the taxpayer made her or his gift to charity does not erase the "fact" which "remains" -- that the parties are "exposed to the possibility, however remote" the taxpayer may have considered it, that the anticipated sale of an asset "may not succeed" and thus there is no anticipatory assignment of income. *Sheppard v. United States*, 361 F.2d 972, 978 (1966)(anticipatory assignment of income doctrine not triggered when donor gifted a partial interest in a racehorse to charity, and the next day both the charity and the donor each sold their to a farm the donor was the president of pursuant to a prior written offer.) Another example -- the anticipatory assignment of income doctrine is not satisfied when no vote for the redemption of gifted stock had yet been taken at the time of the gift, even if "the vote was anticipated." *Palmer v. Commissioner*, 62 T.C. 684, 695 (1974), aff'd on other grounds, 523 F.2d 1308 (8th Cir. 1975)(citing *Hudspeth v. United States*, 471 F.2d 275, 276 (8th Cir. 1972), above).

In *Behrend v. United States*, No. 72-1153, 72-1156, 1972 U.S. App. LEXIS 6282, 31 A.F.T.R.2d (RIA) 406 (4th Cir. 1972), the taxpayers donated to a charity stock in a corporation the taxpayers actually controlled. The court noted there "was never any doubt in the minds of" taxpayers that the corporation would eventually redeem (or purchase) the stock they donated back from the charity because "they were planned from the start" and the same pattern had been followed each year for over ten years. *Id.* at * 5, 7. But in refusing to apply the anticipatory assignment of income doctrine, the court said "this factor did not convert into a constructive dividend the proceeds of the redemptions. Nor was the validity of the gifts impugned by the common identity of the donors and the foundation and the corporation" because none of the redemptions were "compellable." *Id.*

Even defendant itself, in one of defendant's own IRS revenue rulings recognizes that a taxpayer's subjective view of the likelihood of or even the taxpayer's actual prearranged planning for a later event to occur is not enough to invoke the anticipatory assignment of income doctrine:

> A taxpayer with voting control of a corporation and an exempt private foundation who donates shares of the corporation's stock to the foundation and, pursuant to a prearranged plan, causes the corporation to redeem the shares from the foundation does not realize income as a result of the redemption.

Revenue Rule 78-197, 1978 IRB LEXIS 489, *1 (I.R.S. January 1, 1978).

Defendant's heavy reliance on the parties' subjective views of likelihood of the partnership selling the hotel is not enough to invoke the anticipatory assignment of income doctrine here.

**4.**
**Defendant's criticism of the Keefers' tax planning does not trigger the anticipatory assignment of income doctrine.**

Defendant also makes much of the Keefers' tax planning surrounding their gift of a 4% partnership interest to Pi. Defendant walks us through the various steps that Kevin Keefer was involved in with the predicate partnership interest transfers and getting advice and assistance from his CPA, tax attorney, and appraiser. Defendant's Brief pp. 4–5, 10. Defendant tells us "Keefer outlined his plan to his tax advisors, and requested that Weigand [the CPA] prepare tax projections for him in May 2015 – well before the August 2015 sale of the hotel." Defendant's Brief 16-17. Defendant's apparent wish that taxpayers would not seek tax advice in business or charitable contribution transactions is understandable given the business defendant is in. But the courts recognize defendant's view is contrary to common sense and to the recognized law even in alleged anticipatory assignment of income cases.

" 'As is well established,' . . . Congress has not seen fit to tax unrealized appreciation in property value." *Tatum v. Commissioner*, 400 F.2d 242, 247 (5th Cir. 1968).

> The starting point is a long-established rule of tax law . . .:
> . . . Congress, in an effort to encourage contributions to charitable organizations, has seen fit to permit a donor to deduct the full value of any gift of appreciated property without reporting as income from an exchange the appreciation in the value of the property which is thereby transferred.
> This has been the law for decades. The taxpayer here was well aware of it, and the record is clear that he planned his charitable gifts so as to take full advantage of the rule.

*Sheppard v. United States*, 361 F.2d 972, 977-78 (Ct. Cl. 1966)(internal citations omitted).

"The law with respect to gifts of appreciated property is well established. A gift of appreciated property does not result in income to the donor so long as he gives the property away absolutely and parts with title thereto before the property gives rise to income by way of sale. The reasoning of these cases is that the transfer of income producing property (not of income) is not an event in which an appreciation of value is realized. As is well established, '. . . Congress has not seen fit to tax unrealized appreciation in property value.' " *Carrington v. Commissioner*, 476 F.2d 704, 708 (5th Cir. 1973)(internal citations omitted). "Per *Humacid Co. v. Commissioner*, 42 T.C. 894, 913 (1964), we respect the form of this kind of transaction if the donor (1) gives the property away absolutely and parts with title thereto (2) before the property gives rise to income by way of a sale." *Dickinson v. Commissioner*, No. 9526-19, 2020 Tax Ct. Memo LEXIS 122, at *5 (T.C. 2020).

"There was nothing deceptive or otherwise questionable in the design patterned by the [taxpayers]. They had the privilege to adopt any lawful method which could save taxes while attaining their wish to fund their charity. *Behrend v. United States*, No. 72-1153, 72-1156, 1972 U.S. App. LEXIS 6282, at *9, 31 A.F.T.R.2d (RIA) 406 (4th Cir. 1972).

In short, as the court in *Grove v. Commissioner*, 490 F.2d 241, 247 (2d Cir. 1973), observed: "We are not so naive as to believe that tax considerations played no role in [the taxpayer's] planning. But foresight and planning do not transform a non-taxable event into one that is taxable." Kevin Keefer's tax planning for a major financial transaction is neither unusual, suspicious or ill-advised, and does not make his charitable donation a taxable event.

### 5.
**Kevin Keefer's disclosure to Pi that the partnership had pre-existing liabilities to pre-existing partners for previously delayed distributions because of contractual cash reserve requirements was not a "carving out" of the donated partnership interest.**

Defendant next addresses the first *Humacid* element, did the donor give the property away absolutely and part with title thereto before the property gives rise to income by way of a sale. Defendant's Brief, pp. 17-18; *see Dickinson v. Commissioner,* No. 9526-19, 2020 Tax Ct. Memo LEXIS 122, at *5 (T.C. 2020). Defendant admits the test for this first requirement of the anticipatory assignment of income doctrine is "whether the asset itself, or merely the income from it, has been transferred," citing *Salty Brine I, Ltd. v. United States*, 761 F.3d 484, 491 (5th Cir. 2014). Defendant's Brief pp. 16-17. Defendant argues, "If the taxpayer carves income or a partial interest out of the asset, and retains something for himself, the doctrine applies." *Id.*

Here, the evidence is undisputed Kevin Keefer assigned the 4% partnership interest to Pi on June 18, 2015. Defendant's App. 443 – 444; Defendant's Brief p. 6. The assignment to Pi is plain on its face that it is of "all rights and interests pertaining" to the 4% partnership interest:

> 1. **Assignment of Transferred Interest**. Effective as of the Effective Date, Assignor hereby donates, gives, transfers, assigns and conveys to Assignee the Transferred Interest and all rights and interests pertaining thereto, economic and otherwise, free and clear of all liens, claims and encumbrances. Assignee hereby accepts the assignment of the Transferred Interest.

Defendant's App. 443.

Defendant fails to tell the court that it is also undisputed that before Kevin Keefer transferred the 4% partnership interest to Pi, the partnership owed money to the pre-existing partners for pre-donation earnings that had not been distributed to those pre-existing partners. The undisputed reason the distributions were delayed was because the partnership, as the owner of the hotel, was required under the partnership's loan and franchise agreements to maintain a certain amount of cash reserves, and the partners of the partnership agreed (described as an "oral agreement" by the parties) to hold back on the distributions so the partnership would have enough cash in reserve to comply with those loan and franchise obligations.  Defendant's Brief pp. 8-10; Defendant's App. 30 (at deposition p. 117, l. 5) to Defendant's App. 31 (at deposition p. 127 to l. l2).

Before Keefers contribution of the 4% partnership interest to the Pi Foundation, Kevin Keefer disclosed to Pi this "oral agreement" between the partners for this reserve and the pre-existing obligation that it was to be used for.  Kevin Keefer referred to this the agreement among the partners an "oral agreement" -- "So that's what – I consider it an oral agreement in how we were treating that."  Defendant's App. 30 (at deposition p. 120, ll. 18 – 20).  Kevin Keefer disclosed to Pi the substance of the "oral agreement" among the then-existing partners this way:

> "that certain 'reserve accounts' of the partnership would not be going to Pi in the gift transfer to Pi of the partnership interest.  The reason -- the partnership was going to distribute those reserves to a number of re -- effectively a distribu -- a liability at the time of the transfer to the partners . . . since those were amounts withheld from earnings prior to the date of the gift, that the general partner was going to distribute that to the partners in their percentage of ownership prior to that date of the gift."

Kevin Keefer went on to tell Pi the partnership "treated it as a liability at the time of the transaction, so all those reserves were distribution to the partners prior to June 13, that we had a liability to pay them, and that's why they weren't included in the valuation.  So effectively there

was liability on the books for those." Defendant's App. 30 - 31 (starting at pp. 119, l. 12) to Defendant's App. 32 (at p. 127, l. 12).

Defendant confuses the "oral agreement" between the partners and tries to finesse it into an agreement between Kevin Keefer and Pi about withholding some partnership asset. Defendant's Brief p. 9 ("an oral agreement that Pi made with Keefer"). Kevin Keefer expressly told defendant the "oral agreement" arose from the "general partner had made the decision that those . . . amounts withheld from earnings prior to the date of the gift, that the general partner was going to distribute that to the partners in their percentage of ownership prior to that date of the gift. It was his opinion and responsibility to pay those reserves in to the partners from the -- where the earnings had been prior to -- held back prior to the June 18th." Defendant's App. 30, deposition p. 120, l. 2 – 11. Kevin Keefer explained the partnership oral agreement was disclosed to Pi by describing that Pi was "provided" the "information" about it. When defendant's lawyer asked Kevin Keefer, "So your testimony is that **information was provided to** Scott McCullough [Pi's agent] regarding the oral agreement . . . ," he replied, "Correct. He was aware of the reserves that were being held." Defendant's App. 31, deposition p. 121, l. 17 – 22 (emphasis added). Kevin Keefer made an oral disclosure to Pi to make sure Pi knew to expect when the 4% partnership interest was transferred -- Pi should be aware that the partnership had some significant debt that had to be paid out of any assets according to their then-respective partnership interests, including the net hotel sale proceeds, before Pi, or any other partner for that matter, would receive a future distribution.

Defendant has latched onto Kevin Keefer's layman's use of the phrase "oral agreement" to describe the disclosure to Pi of this partnership liability. Repeatedly clinging to the phrase "oral agreement," defendant now argues the fact that Kevin Keefer orally disclosed the

partnership pre-existing liability that the partnership would have to pay that was owed to the pre-existing partners before the transfer to Pi shows that "the Keefers carved a 'partial interest' " out of the 4% partnership interest Kevin Keefer conveyed to Pi, thereby triggering the anticipated assignment of income doctrine.  Defendant's Brief p. 18.  Defendant not only misunderstands that the "oral agreement" was between the partnership and the then-partners, but also misunderstands the nature of liabilities of a partnership and its natural effect on the partnership and the fair market value of a partnership interest.

As we note above, a partnership is treated as an entity that owns its assets.  *See United States v. Basye*, 410 U.S. 441, 448 n.8 (1973)("partnerships are entities for purposes of calculating and filing informational returns . . . .").  A partnership has assets and it also has liabilities – debts it owes to others, whether it is the light bill or previously scheduled distributions owed to the then-partners which the partnership deferred paying because of cash flow for reserves.  As Kevin Keefer told defendant about his verbal disclosure to Pi, "I believed it just to be a clarification of what was reflected on the financial statements."  Defendant's App. 31 at deposition p. 122, l. 18 – 20.  The appraiser in his appraisal also took into account the partnership holding cash because of the "reserves" requirement delayed already earned distribution payments like Kevin Keefer disclosed – "The 2013 distribution was impacted by an increase in reserves of approximately $650,000."  Defendant's App. 408.

Here, the Keefers did not carve anything out of the 4% partnership interest they transferred to Pi.  "When a taxpayer gives away earnings derived from an income-producing asset, the crucial question is whether the asset itself, or merely the income from it, has been transferred. If the taxpayer gives away the entire asset, with accrued earnings, the assignment of income doctrine does not apply."  *Salty Brine I, Ltd. v. United States*, 761 F.3d 484, 491 (5th Cir.

---

2014). Here, the Keefers completely transferred the 4% partnership interest to Pi. As the appraiser declared in his appraisal, after the transfer, Pi became a 4% partner in the partnership – "If the sale to [the hotel buyer] had not occurred, the holder [Pi] would have owned a minority closely-held interest in the Partnership." Defendant's App. 412. Nothing in the record shows that the Keefers were to receive anything back from the 4% interest the Keefers donated to Pi.

> 1. **Assignment of Transferred Interest**. Effective as of the Effective Date, Assignor hereby donates, gives, transfers, assigns and conveys to Assignee the Transferred Interest and all rights and interests pertaining thereto, economic and otherwise, free and clear of all liens, claims and encumbrances. Assignee hereby accepts the assignment of the Transferred Interest.

As we state above, Kevin Keefer's assignment to Pi is plain on its face:

Defendant's App. 443. There are no reservations, no "carve outs." Kevin Keefer assigned "all rights and interests pertaining thereto." Of course, the partnership owed bills and had to pay its debts, whether owed to partners or others. Pi's 4% interest, like the other 96% interests held by the other partners, was subordinate to the partnership paying its pre-existing debts, whether the light bill or previously earned but yet not distributed partner distributions that were payable.

Particularly instructive in the instant case is *Grove v. Commissioner*, 490 F.2d at 242-245 (2d Cir. 1973). The *Grove* court refused to apply the anticipatory assignment of income doctrine where, for over ten years, both the taxpayer consistently donated shares in a corporation he controlled and the donee charity consistently redeemed the annual donations of stock. The *Grove* court held the anticipatory assignment of income doctrine was not invoked even though the donor's vote alone was sufficient to insure the redemption each year. *Id.* at 247. In *Grove,* the government took the position, exactly as defendant does here, that the transaction there should have been characterized as a redemption by the corporation of the taxpayer's stock, not a redemption of the charity's shares, followed by a cash gift to the charity by the taxpayer. The government argued this result reflected "economic reality," just at defendant argues here. *Id.* at

245 – 246; *see* Defendant's Brief at p. 16 ("considering 'the realities and substance of events'"). The *Grove* court called the government's view "the purest fiction" -- "If [the taxpayer] made a valid, binding, and irrevocable gift of the Corporation's shares to [the charity], it would be **the purest fiction** to treat the redemption proceeds as having actually been received by [the taxpayer]." *Id.* at 246 (emphasis added). And so it is here – the government's view that Kevin Keefer did not totally and absolutely divest himself of the 4% partnership interest and plainly gift it to Pi is "the purest fiction."

Defendant's motion for summary judgment that defendant, based on defendant's new-found position of anticipatory assignment of income, claiming the IRS properly disallowed the Keefers' deduction for a donation of the 4% partnership interest to the charity should be denied because:

- The anticipatory assignment of income doctrine does not apply because the asset contributed was an income producing partnership interest, not the later sold hotel or income from the hotel sale.

- The income to the partnership from the hotel sale was not "practically certain" as the time of the donation because no one was bound to the sale at that time.

- The participants' subjective views of the likelihood of the sale does not meet the test "practically certain" test.

- The Keefers' tax pre-planning and work is proper and does not trigger the anticipatory assignment of income tests.

- The disclosure to the charity of an oral agreement among the partners to the partnership to pay partnership liabilities does not meet the test of a "carving out" of the gift.

<u>D</u>EFENDANT'S <u>I</u>SSUE <u>B</u>:

**The Keefers' appraisal of the donated partnership interest and the Keefers' Form 8283 both adequately complied with the government's statutory substantiation requirements.**

**1.**
**The Keefers' Form 8283 with its accompanying appraisal accurately described and valued the partnership interest donated.**

Defendant, apparently not reading its own summary judgment evidence, complains that the Keefers' Form 8283 does not accurately describe the property Kevin Keefer donated to Pi. Defendant's Brief pp. 19.  Let us examine the Keefers' Form 8283 found at Defendant's Appendix (Doc. 69-7) 541 – 542 and its attachments found at Defendant's Appendix (Doc. 69-4) 407 – 415.

In Form 8283, on its second page (Defendant's App. 541) in Part I, immediately above section 5, the government instructs "Note.  In certain cases, you must attach a qualified appraisal of the property."  Then, in column (a) the government instructs, "Description of donated property (if you need more space, attach a separate statement)."  Immediately below, in line A, the preparer typed "SEE ATTACHED PDF."  In column (c), the government asks for "Appraised fair market value," and the preparer typed in "1,257,000."  On the second page (Defendant's App. 542), the "ATTACHMENT" reads "DESCRIPTION OF DONATED PROPERTY: THE TAXPAYER DONATED A 4% LIMITED PARTNERSHIP INTEREST IN A REAL ESTATE PARTNERSHIP- BURBANK HHG HOTEL LP" and "VALUATION PER APPRAISAL FOR 4.00% INTEREST  1,257,000."

And, as its instructions above required, defendant admits a copy of the qualified appraisal (Defendant's App. 407 – 415) was attached to the Keefers' Form 8283.  *See* Plaintiff's Appendix to Plaintiffs' Amended Motion for Summary Judgment ("Plaintiffs' App.") (Doc. 66) at p. 66 ("Taxpayers filed return included an attached appraisal report as prepared by Katzen, Marshall & Associates, Inc [sic] and dated February 19, 2016.").

And in the attached appraisal, the appraiser plainly declared three separate times he was "estimating the fair market value of a 4.000% limited partnership interest, **subject to an oral agreement**, (the "**Subject Interest**".)"  Defendant's App. 407 (emphasis added); Defendant's App. 411 ("**By oral agreement**, the Foundation and Donor agreed that the Foundation would only share in the proceeds from the Seller's Closing Statement; the Foundation would not receive its pro rata share in the other net assets of the Partnership.");  Defendant's App. 413 ("It is our opinion that ONE MILLION TWO HUNDRED FIFTY THOUSAND DOLLARS ($1,257,000) reasonably represents the fair market value, **excluding Other Assets of the Partnership** . . . .")(emphasis added).  And the appraiser plainly declared he was valuing "the Interest" (the "Subject Interest" – a 4% partnership interest "subject to an oral agreement") as of the date Kevin Keefer donated the "Interest" to Pi.  Defendant's App. 407.

Moreover, the Form 8283 was signed by both the appraiser and Pi so we know Pi agreed with the description of what was being donated.  Defendant's App. 541.

The evidence shows the Form 8283 was also reviewed by defendant's own agents, and that the defendant's own staff did not disagree with the description because they never raised any issue with it.  Then some years later, defendant now lately raises the argument, at the last moment when all of defendant's prior positions are now failing, that the appraisal was of something different.  *See* Plaintiff's App. at 66 (where defendant's agent shows the agent

reexamined the Keefers' Form 8283 and its attachments and raised no complaint from 2018 onward about an description defect, and further admits, "The return as filed did include Form 8283 and it was signed by both the appraiser and receiving institution."); *and see* Defendant's Brief at pp. 12-15, where defendant feels compelled to explain to the Court why defendant has the unusual power to "assert at the trial of a refund suit a theory not previously presented in the course of the proceedings," and that the government's own "actions" in the audit are now globally immaterial in this refund case (we will address these issues below).

Moreover, even if there was any ambiguity in the evidence raised between the language of the assignments and appraisal (which the Keefers deny), that ambiguity was to the benefit of defendant, not the Keefers. The charitable deduction was the amount of the 4% partnership interest's share of the net proceeds from the partnership's sale of its hotel, not the 4% partnership total value, even accounting for partnership liabilities or not. The appraisal shows this: The hotel sale was for "$54 million." Defendant's App. 411 under "Valuation of Partnership Interest." The "net to the seller," the partnership, would have been "approximately $32.2 million." *Id.* The "Subject Interest" is shown as 4% of that net, "net $1,289,000, rounded ($32,224,000 x 4.000%)." *Id.* The appraisal then discounted that amount for the risk of no sale and the time value of money (Defendant's App. 412 – 413), and concluded the value of the "Subject Interest" was "$1,257,000." Defendant's App. 413. The appraisal expressly declared, "All assets not included in the $54 million have been excluded," (Defendant's App. 411) and the $1,257,000 value reasonably represented the "the fair market value, excluding Other Assets of the Partnership, of a 4.000%" interest. And the Keefers then only deducted for the charitable contribution the amount of "$1,257,000." Defendant's Brief, p. 1. The defendant is illogically

arguing the 4% interest appraised was actually worth more than the Keefers deducted and therefore the lesser amount should be disallowed. This makes no sense.

In short, the defendant's own summary judgment evidence shows the Keefers Form 8283, as a package with all its detail, all of which was required by the Commissioner and his regulations and forms, plainly contained "a description" (*see* § 170(f)(8)(B)(i); Pub. L. 98-369, § 155(a)(4)(A), as amended Pub. L. 99-514, § 2 (1986), 100 Stat. 2095 (codified as a note to 26 U.S.C. § 170)) to anyone who took the time to read it, whether it be the appraiser, Pi, the Commissioner of Internal Revenue, or the defendant United States of America, of what was being appraised, and what was being donated, and what was being claimed as a charitable deduction – "a 4.000% limited partnership interest, **subject to an oral agreement**, (the "**Subject Interest**".)" Defendant's App. 407 (emphasis added). The appraisal was not flawed.

Defendant's sophistry in its motion on the grounds the donation, the appraisal, and Form 8283 lack proper descriptions of the asset donated should be denied.

### 2.
### The Keefers' Form 8283 with its attached appraisal did include the tax identification number of the appraiser as required by the government.

Defendant argues that the Keefers' Form 8283 was deficient because the "appraiser failed to include his tax identification number." Defendant's Brief pp. 1, 9, 11, 15, 21-25. The Keefers' Form 8283 included the tax identification number of the "appraiser" and the Keefers sufficiently complied with the statute.

The Keefers' have already addressed this issue in their own amended motion for summary judgment brief. *See* Plaintiffs' Brief in Support of Plaintiffs' Amended Motion for Summary Judgment ("Plaintiff's MSJ Brief")(Doc. 65) at pp. 2, 6-14 (argument showing included appraiser firm's tax ID number, substantial compliance, followed Congress instructions,

reasonable cause and no willful neglect, social security number omission *de minimus*, IRS failure to give opportunity to correct any omission). The IRS expressly instructed the Keefers that the appraiser's taxpayer identification number can be either a "social security number **or** employer identification number." Plaintiff's MSJ Brief p. 7 (emphasis added).

Now defendant tries to get around this fact by saying the statute controls over IRS instructions and cites "Pub. L. 98-369, § 155(a)(4)(E), as amended Pub. L. 99-514, § 2 (1986), 100 Stat. 2095 (codified as a note to 26 U.S.C. § 170)" saying the requirement for tax identification number of the appraiser is "directly supported" by that statute and that "Congress has directly spoken" on this issue. Defendant's Brief p. 23. But all that Congress said in Section 155(a)(4)(E) says is that "the signature and **TIN** of such appraiser" is required. Defendant argues 26 U.S.C. § 7701(a)(41) defines "TIN" as ""the identifying number assigned to a **person** under section 6109," (emphasis added) Defendant then represents that this means "the Social Security number issued to an individual." Defendant's Brief p.23, at note 3. Defendant misleads us by failing to disclose that Congress has expressly defined "person" in the Internal Revenue Code as:

> "a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—
>
> **(1) Person**
> The term "person" **shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation**.

26 U.S.C. §7701 – Definitions (emphasis added). And here, the Keefers' appraisal was done, as repeatedly stated in the appraisal, by the corporation "Katzen, Marshall & Associates, Inc." Keefers' Form 8283 to which the appraisal was attached. Defendant's App. 541. The Form 8382 sufficiently showed the appraiser's tax identification number.

**3.**

**The contemporaneous written acknowledgement from the donee, Pi, acknowledged that Pi had exclusive legal control of the donated interest after the donation.**

Again, apparently not reading its own summary judgment evidence, defendant claims the Pi written acknowledge of the contribution did not show Pi had exclusive legal control of the contributed asset. Defendant's Brief pp. 26 – 28. The Keefers have addressed this issue in their own amended motion for summary judgment brief. *See* Plaintiffs' MSJ Brief (Doc. 65) at pp. 2, 15-19.

The acknowledgement is not required to have any "magic" language – this is not a "mother-may-I" exercise. The Court does not have "to guess" or rely on defendant's confused view of a "merger" clause[1] to determine what documents or language within documents are to be considered in determining this. *See* Defendant's Brief p. 28. The twelve page June 8, 2015 document from Pi contains all the terms required by 26 USC § 170(f)(18)(b) to show "a contemporaneous written acknowledgment" from Pi showing that Pi, after the contribution, "has exclusive legal control over the assets contributed." (*See* Plaintiffs' App. at pp. 38 – 49). The court should grant the Keefers' requested summary judgment saying so.

**4.**

---

[1] Defendant completely misunderstands or misrepresents what a merger clause is. Defendant represents, "while a court can consider several documents collectively to form a valid CWA, they must contain a merger clause." Defendant's Brief p. 28. A merger clause does exactly the opposite of what defendant says it does – the doctrine says, with a merger clause, the parties intended that only the last written document control over all prior documents and a written instrument presumes that all of the parties' earlier agreements relating to the transaction have merged into the written instrument (*Bandera Drilling Co. v. Sledge Drilling*, 293 S.W.3d 867, 871–872 (Tex. App.—Eastland 2009, no pet.)). The absence of a merger clause here proves the opposite of what defendant argues – it is evidence the parties did not intend for the latest document to exclude any other document, including the contemporaneous written acknowledgement of Pi here. Defendant is nonsensical on this point.

**Even if the Keefers are found not to have provided all the information technically required in their appraisal and Form 8283, the IRS was not allowed to deny the deduction because the Keefers substantially complied or are legally excused for such a failure as the IRS alleges here.**

If the Court finds the Keefers complied with the statutory and regulatory requirements for the charitable deduction, the Court does not reach the Keefers' substantial compliance and lack of opportunity to correct claims. The Keefers show their substantial compliance in their brief in support of their amended motion for summary judgment (Doc. 65, pp. 7 – 15). The Keefers believe that ends the relevant inquiry.

### a.
### *Any omissions were de minimus, the Keefers had reasonable cause, reasonably relied on their tax experts, and had no willful neglect.*

But even if the Court finds the Keefers did not substantially comply, the defendant attacks the Keefers efforts to show the government's own regulations and the courts' holdings any failure is excused here, defendant saying any attempts to explain and cure the defects are "futile." Defendant's Brief p. 29, under defendant's "Issue B" at item 4. The defendant's arguments against the Keefers' justifiable excuse (Defendant's Brief pp. 29-33) fail for these reasons discussed below.

First, defendant attacks the Keefers' reliance on tax professionals and says the professionals should have done something more or different in evaluating the contribution, or the Keefers should have told the professionals more of what defendant claims was needed. *See* Defendant's Brief pp. 31-33. For example, defendant claims the Keefers' tax attorney was "unaware" of the "oral agreement" - disclosure with Pi. Defendant's Brief p. 32. But defendant fails to disclose the summary judgment evidence that shows the attorney and the attorney's agent

-- the appraiser -- were both aware of the disclosure.  Defendant's App. 351 (attorney: "I am aware that there were reserves for – as we discussed in my last part of this deposition – where previously -- funds were previously allocated for distribution payable to partners, but were not distributed because of other obligations of Burbank to lenders and franchisors."); Defendant's App. 407 – 415 at 407 (appraiser – "Dear Mr. Horwitz: Pursuant to your request, Katzen, Marshall & Associates, Inc. ("KM") has completed its appraisal . . . ." and the "oral agreement"-disclosure described by the appraiser at Defendant's App. 407, 411, 413).  Moreover, the correction changes and signature page to the Keefers' tax attorney's deposition shows the attorney was experienced in this area and did work for the IRS "in a charitable contributions group."  Plaintiffs' App. (Doc. 66)146.

The record shows what the Keefers' attorneys and accountant advised the Keefers to do what was done here.  *E.g.*, Defendant's App. 5 (depo. p. 17, 18), 6 (depo. p. 21, 24), 20 (depo. p. 80), 22 (depo. p. 85), 39 (depo. p. 154).

The plain summary judgment evidence shows the professionals' qualifications and expert testimony on this issue.  Plaintiff's App. 99 – 100; 101 – 102; 103 – 105; 106 – 107.  Defendant presents no lay or expert testimony to show the Keefers experts' were not competent, or the quality or objectivity of the experts' advice was not sufficient, or that the Keefers did not provide adequate information to the experts that were reasonably necessary or accurate, or any other argued shortcoming defendant now raises.

Second, the test is whether the Keefers reasonably relied upon the experts' advice in good faith, not whether the experts' advice was correct.  In fact, the issue of reasonable reliance is never ever reached in any case if the experts' advice was correct, because reasonable reliance is invoked as a defense only if the taxpayer's acts were in fact incorrect in the first place.   The

Keefers present unrebutted summary judgment evidence that they did so rely in good faith. Plaintiff's App. 99 – 100; 101 – 102; 103 – 105; 106 – 107. Defendant presents no summary evidence to the contrary. Even in a summary judgment setting, the evidence seems conclusive.

Third, the omission of the individual appraiser's tax ID is *de minimus* and does not degrade the quality of the appraisal, the paramount purpose of the appraisal. Section 1.170A-13(c) of the regulations has over eighteen subsections of requirements for a "qualified appraisal," all of which deal with the quality of the appraisal and any conflict of interest of the appraiser, save this one – the inclusion of the individual appraiser's tax ID number as described in Section 1.170A-13(c)(3)(ii)(E). The IRS made no complaint here about either the quality of the appraiser, any conflicts of interest of the appraiser, or the quality of the appraisal. There is no suggestion the failure to include the individual appraiser's tax ID number affected the quality of the appraisal.

### b.
### The government failed to allow the Keefers the required opportunity to correct any omissions as the government was duty bound to do.

An agency regulation can be unenforceable as arbitrary or capricious or manifestly contrary to the statute. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984). Congress can leave the agency with a power to choose regulations to enforce a statute. "If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *United States v. Shimer*, 367 U.S. 374, 382, 383 (1961).

Congress does not sanction the IRS's enforcement conduct here. Congress told the IRS that charitable deductions are not to be disallowed for a "good faith failure" to comply with the

"substantiation regulations."  *See* COMREP ¶ 66,591.005 Changes in valuation overstatement penalty; appraisal requirements. ('84 TRA, PL 98-369, 7112184).  Congress told the IRS, "If the IRS, in processing returns as filed, finds that the taxpayer claimed deductions on the separate line relating to donations of property for which a qualified appraisal is required but failed to attach the summary appraisal, ***then the IRS (to the extent administratively practicable) is to so notify the taxpayer and request the filing of the summary.***" *Id.* (emphasis added).  Here, the IRS violated this Congressional command, never even attempted to notify the taxpayer and request the complained of missing or erroneously placed information, and instead just disallowed the charitable deduction in total.

In short, defendant fails to present any summary judgment evidence to raise a fact issue in the face of the Keefers' plain summary judgment evidence that they, the Keefers, reasonably relied upon their professionals, and are entitled to the substantial compliance doctrine, and the IRS failed to allow the Keefers an opportunity to correct any *de minimus* omission.  *See* Plaintiffs' Amended Motion for Summary Judgment Brief (Doc. 65) pp. 24-25.  The summary judgment evidence shows the Keefers complied with the statute, the Code, and the IRS instructions and either complied with or, alternatively, substantially complied with the requirements for the charitable deduction appraisal and disclosures.

## 5.
**The government tries to get the Court to ignore the government's own conduct in viewing the factual summary judgment evidence on the Keefer's reasonable reliance, the Keefer's substantial compliance, and the government's failure to allow the Keefers an opportunity to correct**.

The Keefers have shown the Court summary judgment evidence of the government's own presumably trained and supervised agents showing the Keefers, in the government's agents' own

view, did comply with the substantiation requirements as shown in Plaintiffs' Amended Motion for Summary Judgment Brief (Doc. 65 pp. 10-12), where the government admits:

1. The Keefers "Met" the appraisal taxpayer ID requirements.

2. The Keefers' Form 8283 "Met" all sixteen all sixteen specific requirements of Section 1.170A-13(c), save a portion of one - a reporting statement in subsection (3)(ii)(E) calling for the "identifying number" of the qualified appraiser who signs the appraisal summary.

3. In 2018 the IRS needed to modify its Form 8283 instructions to "make clear" even though "the regulations require an appraiser to use a taxpayer identification number on an appraisal.. . that number does not need to be the appraiser's social security number. An appraiser may use an employer identification number. . . .".

4. The IRS expressly instructs the public that the "Identifying number" in the "Appraiser's Declaration" on Form 8283 can be either the appraiser's social security number or the appraiser's employer identification number.

5. The regulation in 26 CFR 1.170A-13(c)(4)(i) commands, "the term appraisal summary means a summary of a qualified appraisal that (A) Is made on the form prescribed by the Internal Revenue Service. . . ." Form 8283 is that form.

6. The IRS's Form 8283 has only a single line for the "Identifying number" under "Declaration of Appraiser," not two.

7. As the Tax Court said about Form 8283 in another case, "Although we recognize that instructions to forms are not binding sources of law, they are useful in illustrating understandable taxpayer confusion. Why else would the

IRS have changed the instructions to be more clear?" *Cave Buttes, L.L. C. v. Commissioner*, 147 T.C. 338, 353 (2016).

(Doc. 65 pp. 10-12).

Defendant now wants to hide from that evidence, claiming the Court cannot consider the government's own conduct in deciding whether the Keefers reasonably relied upon tax expertise, substantially complied or were harmed by the government's failure to give the Keefers an opportunity to correct any omission. Defendant says "any record made in the Service, including reasons for the tax assessment, is irrelevant," citing *Trinity Industries, Inc. v. United States*, 757 F.3d 400, 413 (5th Cir. 2014). Defendant's Brief p. 13. The government fails to read the entire opinion in *Trinity Industries*.

The *Trinity Industries* court said the "any 'record' made in the Service, including the reasons for its assessment, is irrelevant" and that the "action involves a de novo determination of the correct tax and is not a review of the administrative processing of the case" (*Id.* at n. 33), but in the same breath the court showed it did not mean the government's actions are globally irrelevant because the court also expressly said the government's report was "admissible evidence." *Id.* at 413. Since the Rules of Evidence expressly declare "[i]rrelevant evidence is not admissible," and the court expressly declared evidence of the government's conduct is in fact "admissible," it necessarily follows that evidence of the government's conduct, properly used, means only the IRS's conclusion on the specific issue of whether the government used the correct method for deciding the tax "is neither binding on the Government nor presumptively correct", but that evidence of the government's conduct is admissible for other purposes. *Id.* at 413; FED. R. EVID. Rule 402. Indeed, another court has expressly held "because internal IRS deliberations would inform the question of whether Plaintiffs' actions were reasonable in light of

the published guidance . . . the Court determines that those deliberations are within the proper scope of discovery." *NetJets Large Aircraft, Inc. v. United States*, No. 2:11-cv-1023, 2014 U.S. Dist. LEXIS 58677, at *13, 113 A.F.T.R.2d (RIA) 2014-1879 (S.D. Ohio 2014).

The government's view that, in a tax refund case, a federal court is the wild, wild west for the government and the government is not affected by the rules of evidence or procedure, is not proper. Thus, this Court can and should consider the above evidence of the government's conduct on the issue of the Keefers' summary judgment grounds of their reasonable reliance, their substantial compliance, and the government's failure to allow the Keefers an opportunity to correct any deficiencies in their contribution documentation and their resulting refund claim. The government's attempt to hide from this evidence should be rejected.

**6.**
### The IRS's own form instructions are relevant to compliance with or justifiable excuse for non-compliance of treasury regulations.

Defendant argues the Court should ignore the government's conduct in its own Form 8283 instructions in determining whether the Keefers complied or substantially complied with the regulations for substantiation of the Keefers' charitable contribution. Defendant's Brief pp. 37-38. The Keefers believe this argument is addressed above at heading 2 (pp.22-23 above); heading 4 (pp. 24-27 above); and heading 5 (immediately above at pages 28-31). It is fundamentally illogical and unfair for the government to formulate regulations, next to issue instructions to taxpayers that are different (claims the government) from the regulations, and then, when the taxpayers follow the government's instructions, for the government to play "heads-I-win, tails-you-lose" with the taxpayers. And that is not the law. See items 2, 4, and 5, above.

## DEFENDANT'S ISSUE C:

**Defendant admits the Keefers are entitled to a refund if the Keefers prevail on their 4% partnership contribution, or on an assignment of income scenario, or a calculation of bargain gain scenario.**

Defendant admits the Keefers are entitled to a refund of overpaid taxes in either of three scenarios:

- If the court allows the Keefers' 4% partnership donation to stand, the Keefers are entitled to a refund "they have alleged they are entitled." Defendant's Brief p. 38.

- Defendant's alternative "Scenario 1" – denial of charitable contribution and removal of bargains sale gain "results in a refund of $136, 875." *Id.*

- Defendant's alternative "Scenario 3" – assignment of income, no bargain sale, allow cash charitable contribution results in overpayment of "$327,520." Defendant's App. p. 675.

*See* Defendant's Answer to Second Amended Complaint (Doc. 63) at pp. 2-3. The only defendant's scenario in which the Keefers are not entitled to any refund, defendant claims, is defendant's "Scenario 2) – if the Court finds an assignment of income, fails to make the IRS recalculate the bargain sale element, and then also refuses to allow the Keefers any charitable deduction at all for the "$1,280,000" given to Pi. *See* Defendant's Brief pp. 7, 38. These three different possible results would end up with one of results the Keefers have requested in their requested relief in their amended motion for summary judgment (Doc. 64 at pp. 6-7 at items 1, 2, and 3).

## DEFENDANT'S ISSUE D:

**The doctrine of variance does not bar the Keefers' alternative Claim 2 or Claim 3 because the defendant itself belatedly took the unilateral action that creates any variance after the Keefers' filing of the initial claim for refund was closed.**

Defendant argues that the Keefers cannot now alternatively "allege a cash contribution as a ground for their refund claim" if the Court finds the contribution was really an assignment of income. Defendant's Brief 39-41. Defendant bases this argument on the "variance" doctrine -- a taxpayer is barred from raising in a refund suit grounds for recovery which had not previously been set forth in its claim for a refund, citing *Rodgers v. United States*, 843 F.3d 181, 195 (5th Cir. 2016). Defendant's Brief p. 39.

> Defendant ignores common sense and courts' express exception to this rule –
>
> Sensibly, courts have explicitly carved out an exception in cases where the Government's unilateral action itself creates the substantial variance. *See, e.g., Shore v. United States*, 26 Cl. Ct. 826, 828-29 (1992) (rejecting a variance doctrine argument where the Government created the substantial variance from the initial claim); *Brown v. United States*, 427 F.2d 57, 62 (9th Cir. 1970) (holding that taxpayers "cannot be foreclosed from responding" to new issues created by the Government after the filing of the initial refund claim).

*El Paso CGP Co., L.L.C. v. United States*, 748 F.3d 225, 229 (5th Cir. 2014). And that is exactly what the defendant has done here.

Defendant globally pled a general prophylactic affirmative defense of no variance in its original answer here, long after the IRS audit of the Keefers' return and the Keefers' ability to respond had passed (Doc. 19, filed Oct. 13, 2020, p. 1). But defendant did not then and had never before raised that issue or argument in any of its audit work papers or notices of defendant's new anticipatory assignment of income doctrine argument. *See* Plaintiffs' App. at 4 – 20, 64 – 73, 80 – 83. Then in February 2021, for the first time, defendant said it needed time to discovery on whether the anticipatory assignment of income doctrine applied to the Keefers' suit. [Docs. 27, 28 at p. 2]. Then in September 2021 defendant disclosed an IRS witness who defendant said had done "calculations". *See* Doc. 47 at ¶ 9.

Thereafter on October 8, 2021, defendant produced that witness' calculations of alternative tax refunds dues to the Keefers based on different "Scenarios" never before raised during the audit of before this lawsuit was filed, including one if there was an anticipatory of assignment of income by the Keefers' contribution. Plaintiffs' App. 108-145. Then, in February 2021, defendant in its Motion for Summary Judgment (Doc. 49, filed Oct. 12, 2021, p. 1) raised its unpled defense of "the anticipatory assignment of income doctrine." Then, without objection by defendant, the Keefers on November 2, 2021 filed their Second Amended Complaint adding an alternative claim for a deduction for the cash contribution if the Court finds the initial contribution was an assignment of income to meet this lately disclosed position of the defendant. *See* Doc. 60 at ¶ 1 footnote 1, & ¶ 38.

The Keefers cannot be foreclosed from responding to new issues created by the Government after the filing of the initial refund claim Defendant's new defense of variance, and defendant's defense of variance and motion for summary judgment should be denied.

## CONCLUSION

The Keefers request the Court:

1. Deny defendant United States' Amended Motion for Summary Judgment (Doc. 67).

2. Grant the Keefers' Amended Motion for Summary Judgment (Doc. 64).

3. Alternatively, grant the Keefers relief under Rule 56(g) as applicable.

4. Grant the Keefers cost of court.

5. Grant the Keefers prejudgment and post judgment interest at the highest rates allowed by law.

6. Grant the Keefers general relief.

Respectfully submitted,

**GLAST, PHILLIPS & MURRAY, P.C**.

by: _____
Richard E. Young
Texas State Bar No. 22204800

14801 Quorum Drive, Suite 500
Dallas, Texas 75254-1449
972.419.8376
972.419.8329 facsimile
ryoung@gpm-law.com

and

by: /s/ Kenneth M. Horwitz_____

Kenneth M. Horwitz
Texas State Bar No. 10026500

14801 Quorum Drive, Suite 500
Dallas, Texas 75254-1449
972.419.8383
972.419.8329 facsimile
kmh@gpm-law.com

COUNSEL FOR PLAINTIFFS
KEVIN M. and PATRICIA S. KEEFER

### CERTIFICATE OF SERVICE

I certify that on December 7, 2021, a copy of this document was served upon counsel for Defendant as follows: Moha Yepuri Moha.Yepuri@usdoj.gov ; Christian A. Orozco Christian.A.Orozco@usdoj.gov. Attorneys for Defendant United States of America

_____
Richard E. Young