IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KEVIN M. KEEFER & PATRICIA S. KEEFER,

    *Plaintiffs*,

v.

UNITED STATES OF AMERICA,

    *Defendant*.

§
§
§
§
§
§
§
§
§
§

Case No.: 3:20-cv-00836-B

———————————————————————

**UNITED STATES' RESPONSE AND BRIEF TO THE PLAINTIFFS'
AMENDED MOTION FOR SUMMARY JUDGMENT**

———————————————————————

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

 /s/ Moha P. Yepuri
Moha P. Yepuri
Texas State Bar No. 24046651
Christian A. Orozco
Texas State Bar No. 24107886
U.S. DEPARTMENT OF JUSTICE - TAX
DIVISION
717 N. Harwood St., Suite 400
Dallas, Texas 75201
(214) 880-9767/(214) 880-9757
(214) 880-9741 (Facsimile)
Moha.P.Yepuri@usdoj.gov
Christian.A.Orozco@usdoj.gov

ATTORNEYS FOR UNITED STATES

## TABLE OF CONTENTS

Table of Authorities ................................................................................................................ iii

United States' Response and Brief to the Plaintiffs' Amended Motion for Summary Judgment .. 1

PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON CLAIM 1 ........................................... 2

Claim 1 is barred by the Anticipatory Assignment of Income Doctrine ...................................... 3

    A.    Jurisdiction ..................................................................................................................... 6

    B.    The Appraiser's Identifying Number is neither on the Form 8283 nor on the Appraisal 6

           1.    The Keefers' Appraisal did not substantially comply with the Treasury Regulations ............................................................................................... 7

           2.    Substantial compliance does not apply because the Keefers cannot meet the requirements outlined by the Fifth Circuit......................................................... 7

           3.    The Congressional Committee Report cited by the Keefers is dated and additional statutory requirements apply to tax year 2015 .............................. 11

           4.    The IRS' thoughts, analyses or conclusions, on the administrative level are irrelevant to whether the appraisal included the identifying number of the appraiser. ................................................................................................... 12

           5.    The Keefers' proposition regarding the IRS recognizing substantial compliance is inapposite as their citations do not support this allegation ...... 14

           6.    The Keefers did not substantially comply in providing a qualified appraisal along with their 2015 tax return..................................................................... 14

    C.    The Keefers failed to provide the statutory-required document that they had relinquished exclusive legal control of their purported Pi donation ..................... 16

    D.    The Keefers have not met their burden to invoke the reasonable cause exception........ 19

           1.    Competent Adviser......................................................................................... 20

           2.    Provision of All Relevant Information ............................................................ 20

           3.    Good Faith Reliance on Advice ...................................................................... 22

    E.    The Keefers do not show any support in classifying the appraiser's lack of identifying number as *de minimums* ......................................................................................... 23

    F.    The Treasury Regulations regarding the requirements of a Qualified Appraisal have not been found to be unenforceable because they are arbitrary or capricious.............. 24

CLAIM 2 THE KEEFERS ARE NOT ENTITLED TO A REFUND BASED ON AN ALLEGED CONTRIBUTION OF CASH TO PI. ...................................................................................................... 25

CLAIM 3 THE KEEFERS MAY OR MAY NOT BE ENTITLED TO A REFUND ATTRIBUTABLE TO THE GAIN ON THE BARGAIN SALE. ................................................................................................ 29

Conclusion ............................................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

Cases:

*15 W. 17th St. LLC v. Comm'r*, 147 T.C. 557, 564 (2016)..................................17

*Addis v. Comm'r.*, 374 F.3d 881, 887 (9th Cir. 2004) ......................................16

*Alli v. Comm'r*, 107 T.C.M. (CCH) 1082 (T.C. 2014) ...........................10, 11, 23

*Allianz Versicherungs, AG v. Profreight Brokers Inc.*,
    99 F. App'x 10, 12 (5th Cir. 2004)..................................................................3

*Bessemer City Bd. of Educ. v. United States*, 576 F. Supp. 2d 1249, 1257–58
    (N.D. Ala. 2008) .........................................................................................29

*Biggs v. First Nat. Bank of Lubbock*, 808 S.W.2d 232, 237 (Tex. App.—El Paso 1991,
    writ denied) ...................................................................................................5

*Bingham v. United States*, No. 1:03-CV-783, 2015 WL 3606239, at *6–7 (E.D. Tex. Apr.
    23, 2015) ........................................................................................................27

*Bond v. Comm'r*, 100 T.C. 32, 41 (1993) ..............................................10, 14, 15

*Brinkley v. Comm'r*, 108 T.C.M. (CCH) 499 (T.C. 2014)................................21

*Brinkley v. Comm'r*, 808 F.3d 657, 669 (5th Cir. 2015).......................19, 20, 21

*Brown v. United States*, 427 F.2d 57 (9th Cir. 1970) .....................................29

*In re Canada*, 574 B.R. 620, 640 (N.D. Tex. 2017) .........................................19

*Campbell v. Comm'r*, 119 T.C.M. (CCH) 1266,*9, *10 n.16 (T.C. 2020).....................16

*Chamberlain v. Comm'r*, 66 F.3d 729, 732 (5th Cir. 1995) ............................22

*Chevron, USA., Inc. v. NRDC, Inc.,* 467 U.S. 837, 844 (1984) .......................24

*Consol. Invs. Grp. v. Comm'r*, 98 T.C.M. (CCH) 601 (T.C. 2009) .................10

*Crimi v. Comm'r*, 105 T.C.M. (CCH) 1330 (T.C. 2013)...................................19

*Davis v. United States*, No. CA 4-2430, 1977 WL 1172,
    at *3 (N.D. Tex. Apr. 12, 1977) ..................................................................12

*El Paso CGP Co., L.L.C. v. United States,* 748 F.3d 225, 229 (5th Cir. 2014) .........27, 28, 29

*Emanouil v. Comm'r of Internal Revenue*, 120 T.C.M. (CCH) 146 (T.C. 2020) ............11

*Est. of Evenchik*, 105 T.C.M. (CCH) 1231 (T.C. 2013) .............................10, 14

*Est. of Hudgins v. Comm'r*, 57 F.3d 1393, 1404 (5th Cir. 1995) ......................8

*Ferguson v. Comm'r*, 174 F.3d 997, 1003 (9th Cir. 1999)..............................3, 4

*French v. Comm'r*, 111 T.C.M. (CCH) 1241 (T.C. 2016).................................18

*Green v. Comm'r*, 507 F.3d 857, 872 (5th Cir. 2007) ......................................20

*Hatcher v. Comm'r*, 726 F. App'x 207, 218 (5th Cir. 2018)............................22

*Hewitt v. Comm'r*, 109 T.C. 258, 261 (1997), *aff'd*, 166 F.3d 332 (4th Cir. 1998) ..........10

*Kincaid v. United States*, 682 F.2d 1220, 1222–23 n.3 (5th Cir. 1982)........................3,12

*King v. United States*, 641 F.2d 253, 259 (5th Cir. 1981) ....................6, 12, 24

*Lewis v. Reynolds*, 284 U.S. 281 (1932) .................................3, 6, 12, 25

*Losantiville Country Club v. Comm'r*, 906 F.3d 468, 476 (6th Cir. 2018).......................22

*McAlpine v. Comm'r*, 968 F.2d 459, 462 (5th Cir. 1992)...................................8

*Neonatology Assocs., P.A. v. Comm'r*, 115 T.C. 43, 100 (2000), aff'd, 299 F.3d 221 (3d
    Cir. 2002) ......................................................................................................21

*Pankratz v. Comm'r*, 121 T.C.M. (CCH) 1178 (T.C. 2021)..............................20

*Prudhomme v. Comm'r*, 345 F. App'x 6, 11 (5th Cir. 2009)........................21, 22

*Rigas v. United States*, 486 F. App'x 491, 499 (5th Cir. 2012)..........................8

*Rodgers v. United States*, 843 F.3d 181, 195 (5th Cir. 2016). .............26, 27, 28

*Salty Brine I, Ltd. v. United States*, 761 F.3d 484, 491 (5th Cir. 2014)........................3, 5
*Schrimsher v. Commissioner*, No. 945-09, 2011 Tax Ct. Memo
    LEXIS 68 (T.C. 2011) ...............................................................................17
*Shore v. United States*, 26 Cl. Ct. 826, 828-29 (1992) ...........................................28
*Southgate Master Fund, LLC ex rel. Montgomery Cap. Advisors, LLC v. United States*,
    651 F. Supp. 2d 596, 668 (N.D. Tex. 2009) ...............................................22
*Trinity Indus., Inc. v. United States*, 757 F.3d 400, 413 (5th Cir. 2014) ......................12
*Vons Companies v. United States*, 51 Fed. Cl. 1, 6 (2001)..............................12, 24

Statutes:

26 U.S.C.:

§ 170...........................................................2, 5, 9, 10, 16, 17, 19, 19, 20, 23, 29
§ 170(f)...........................................................................................16
§ 170(f)(8)........................................................................................16
§ 170(f)(8)(B)(i)..........................................................................8, 9, 29
§ 170(f)(8)(C)....................................................................................9
§ 170(f)(11)(A)(ii)(II)..........................................................................19
§ 170(f)(11)(D)...................................................................................9
§ 170(f)(11)(E)(ii) .........................................................................8, 9
§ 170(f)(18)................................................................................16, 17
§ 6662...........................................................................................23
§ 6664...........................................................................................23
§ 7422(a) ......................................................................................26

Fed. R. Civ. P. 56(d) ..........................................................................2, 3

Treasury Regulations:

26 C.F.R.:

§ 1.170A–13(c)(3)(ii)(E)...................................................................9, 24
§ 1.170A-13(c)(5) ...............................................................................9
§ 1.170A-17(a)(3)(iv)(A) ......................................................................24

Miscellaneous:

Am. Bar Assoc. Section of Real Property.......................................................16

H.R. Conf. Rep. 109-455 (2006), 182, 2006 U.S.C.C.A.N. 234, 372 ...............................16

Tax-Exempt Charitable Organizations: Hearing Before the H. Comm. On Ways &
    Means, 110th Cong. 55 (2007) ..............................................................16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEVIN M. KEEFER & PATRICIA S. KEEFER, | § § § | |
| *Plaintiffs*, | § § | |
| | § | Case No.: 3:20-cv-00836-B |
| v. | § § | |
| UNITED STATES OF AMERICA, | § § | |
| *Defendant*. | § § | |

## UNITED STATES' RESPONSE AND BRIEF TO THE PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT

The United States responds to the Keefers' motion for summary judgment (ECFs 64 and 65) and would show that the Keefers are not entitled to a refund of income tax for 2015 for the reasons stated in the United States' Motion for Summary Judgment (ECFs 67 & 68) and in particular the following reasons:

The Keefer's primary summary judgment theory (Claim 1[1]) based on alleged donation of a 4% partnership interest is barred by the anticipatory assignment of income doctrine. Even if the anticipatory assignment of income doctrine does not apply, the Keefers are still not entitled to the entire refund they seek because they did not comply with the heightened substantiation

---

[1] The references to Claim 1, Alternative Claim 2 and Alternative Claim 3 herein is to track the language used by the Plaintiffs in their Motion for Summary Judgment for the Court's convenience, but are not intended to concede that they have filed a timely administrative claim for refund that includes the grounds argued in Claim 2. The Plaintiffs' administrative claim for refund (Form 1040X) did not assert any grounds that indicated they were seeking a refund based a cash donation to charity as argued in their Alternative Claim 2 of their Motion for Summary Judgment and for which they now seek a lesser refund of $327,520 in their recently amended complaint. As discussed below, any relief on Alternative Claim 2 is jurisdictionally barred by the doctrine of variance. The United States does not dispute that the Court has jurisdiction to consider the grounds for refund asserted in Claim 1 and Alternative Claim 3 of the Keefer's Motion for Summary Judgment.

1

requirements of Internal Revenue Code Section 170 for donations to a donor advised fund.  In particular, they did not submit a qualified appraisal of the limited partnership interest that they purport to have donated, and they do not possess a sufficient contemporaneous written acknowledgment.  The reasonable cause exception with respect to their appraisal is not available because they failed to inform their own tax advisors of material facts which would directly affect the appraisal and reporting of their transaction.

The Keefers are not entitled to any refund based on their alternative theory (Alternative Claim 2) for a charitable donation of cash because such relief jurisdictionally barred by the doctrine of variance and even if such relief were not jurisdictionally barred,  they still lack the statutorily required contemporaneous written acknowledgment.

Finally, the Keefer's are not entitled to any refund based on their alternative claim for reversal of the gain on the bargain sale (Alternative Claim 3) because the assignment of income doctrine applies to their alleged donation of a partnership interest to their donor advised fund.

## PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON CLAIM 1

Below, this Response addresses each of the topics asserted in the Plaintiffs' Motion for Summary Judgment following the same outline used in their Motion.  However, before doing so, it is important to point out that the Keefers' primary summary judgment theory based on alleged donation of a 4% partnership interest is barred by the anticipatory assignment of income doctrine.  Their Motion for Summary completely fails to address this issue even though it was raised by the United States at the beginning of this case.  *See* United States' Rule 56(d) Motion. (ECF 28).  The facts and legal arguments supporting the application of the anticipatory assignment of income doctrine are addressed in the United States' Motion for Summary Judgment (ECF 68 at ECF pps. 9-17, and 22-25).

**Claim 1 is barred by the Anticipatory Assignment of Income Doctrine**

"The assignment of income doctrine holds that one who earns income cannot escape tax upon the income by assigning it to another." *Salty Brine I, Ltd. v. United States*, 761 F.3d 484, 491 (5th Cir. 2014) (citation omitted). Two inquiries are critical to determine whether the assignment of income doctrine applies.[2] First, "whether the receipt of income was practically certain to occur" considering "the realities and substance of events." *See Ferguson v. Comm'r*, 174 F.3d 997, 1003 (9th Cir. 1999). Second, "whether the asset itself, or merely the income from it, has been transferred." *Salty Brine I, Ltd.*, 761 F.3d at 491 (citation omitted). "If the taxpayer carves income or a partial interest out of the asset, and retains something for himself, the doctrine applies." *Id*. (citation omitted).

Here, both inquiries are answered in the affirmative: the anticipatory of assignment of income doctrine applies. First, the sale to the Hotel was "practically certain to occur." *See Ferguson*, 174 F.3d at 1003. Indeed, the Appraisal itself pronounced a 95% chance of a sale would take place on the date Keefer donated his assignment. App. 389, Ex. 6, Marshall Dep., 80 ln 6-18, App. 412, Ex. 1 to Marshall Dep. ("The probability of the downside case appears to be very low . . . 5% probability of no sale . . . ."). Additionally, the Keefers had received several

---

[2] Plaintiffs incorrectly allege that the United States cannot bring a claim for anticipatory assignment of income because it was not raised at the administrative level by the IRS, and further incorrectly allege that the United States raised it late. The Government may assert at the trial of a refund suit a theory not previously presented in the course of the [administrative] proceedings. *Kincaid v. United States*, 682 F.2d 1220, 1223 (5th Cir. 1982) citing *Lewis v. Reynolds*, 284 U.S. 281, 283, (1932). Furthermore, it was raised in the United States' 56(d) motion, and pursuant to Fifth Circuit guidance, it is late if it is raised at a late stage and would be prejudicial to the non-raising party, i.e. if the non-raising party was unfairly surprised. *Allianz Versicherungs, AG v. Profreight Brokers Inc.*, 99 F. App'x 10, 12 (5th Cir. 2004). In *Allianz* an affirmative defense was non-prejudicial when raised for the first time in the Joint Pre-Trial Order, three months prior to trial. Here the theory that anticipatory assignment of income applies was raised in February 2021, during the midst of discovery, and well in advance of trial.

verbal offers as well as two written offers to purchase the Hotel.  Furthermore, Keefer outlined his plan to his tax advisors, and requested that CPA Weigand prepare tax projections for him in May 2015 – well before the August 2015 sale of the hotel.  Finally, as of the valuation date of the Keefers' appraisal, June 18, 2015, Keefer admitted that he was not aware of any material fact or condition that would change or derail the sale.  App. 028, Ex. 1, Keefer Dep., 111-113 at 22-11; App. 210, Ex. 15 to Keefer Dep.

The Ninth Circuit addressed a similar case involving a donation to a charity during a transaction.  *See Ferguson*, 174 F.3d at 1003.  In *Ferguson*, the taxpayers transferred stock to charities after an agreement of a merger, but before that merger was technically effectuated. *Ferguson*, 174 F.3d at 1006.  In determining when the taxpayers' right to the income ripened, the *Ferguson* court focused on the time when "the surrounding circumstances were sufficient to indicate that the tender offer and the merger were practically certain to proceed by the time of their actual deadlines," rather than "mere formalities and remote hypothetical possibilities."  *Id*. at 1004. The *Ferguson* court found that before the taxpayers transferred their stock, it had become "quite unlikely" the merger would fail—much like the Hotel sale to Apple—noting the tender offer had gained significant momentum and all parties sought to benefit from the merger. *See id.* at 1005.

Similarly, the Hotel sale to Apple had become "quite unlikely" to fail as the Appraisal noted only a "5% probability of no sale."  *See id*.; *see also* App. 210, Ex. 15 to Keefer Dep.

Second, the Keefers carved out their share of the previously existing Partnership cash reserves from their donation to Pi.  App. 034, Ex. 1, Keefer Dep., 135 at 1-13.  They did not donate a true 4% interest in a partnership.  "[The Keefers] cannot slice up the scheme into a series of small parts; the thrust of the applicable law set out above is to look at the big picture."

4

*See Salty Brine I, Ltd.*, 761 F.3d at 493.  The "big picture" is that the Keefers cannot deny

another limited partner, like Pi, ownership to some of the Partnership's assets.  *See Biggs v. First*

*Nat. Bank of Lubbock*, 808 S.W.2d 232, 237 (Tex. App.—El Paso 1991, writ denied)

("regardless of which partner had legal title, no partner owns specific partnership property but

each owns a specific interest").  And the Partnership owned all of its assets—including the cash

reserves.  Since the Keefers carved a "partial interest out of the [Partnership] asset and retain[ed]

something for [themselves]," the anticipatory assignment of income doctrine applies.  *See Salty*

*Brine I, Ltd.*, 761 F.3d at 491.  On their 2015 tax return, the Keefers reported the flow-through

income from the sale of the Hotel, but only reported 21% of that income, having purportedly

donated a 4% interest in the Partnership to Pi before the date of sale.  App. 205, Ex. 15 to Keefer

Dep.  In doing so, the Keefers attempted to divert 4% of the gain on the sale of the Hotel.

However, because the anticipatory assignment of income doctrine applies, the Keefers are

required to pay tax on 25% of the flow-through income resulting from the sale of the Hotel.

Because the gain on the sale of the Partnership's assets is necessarily removed from Pi and

returned to the taxable income of the Keefer's under the anticipatory assignment of income rule,

there is no longer a donated partnership interest and Issue B becomes moot.

 Even if the anticipatory assignment of income doctrine does not apply, the Keefers are

still not entitled to the entire refund they seek because they did not comply with the heightened

substantiation requirements of Internal Revenue Code Section 170 for donations to a donor

advised fund.  In particular, they did not submit a qualified appraisal of the limited partnership

interest that they purport to have donated, and they do not possess a sufficient contemporaneous

written acknowledgment.  The reasonable cause exception with respect to their appraisal is not

available because they failed to inform their own tax advisors of material facts which would

directly affect the appraisal and reporting of their transaction.  The following responds to the arguments made in the Plaintiffs' Motion for Summary Judgment.

A. Jurisdiction

The United States does not dispute that the Court has jurisdiction to consider the grounds for refund asserted in Claims 1 and 3 of the Keefer's Motion for Summary Judgment.

B. The Appraiser's Identifying Number is neither on the Form 8283 nor on the Appraisal

The Keefers motion for summary judgment claims that the Keefers' appraisal gave the identifying number of the appraiser by attaching the appraisal to their Form 8283 and point to an IRS Examiner's notes regarding their Form 8283, within which they allege the IRS Examiner admitted that the Form 8283 met all the regulations.  [ECF 65 at 6-7].  The Keefers are incorrect that attaching an appraisal to their Form 8283 provides the identifying number of the appraiser to the IRS for at least two reasons.  First, this is a tax refund suit, that is afforded a *de novo* standard of review.  Citing a leading treatise, the Fifth Circuit further noted that "any record made in the Service, including the reasons for the [the tax] assessment, is irrelevant…." *Id*. at n. 33.  *See also King v. United States*, 641 F.2d 253, 259 (5th Cir. 1981) (IRS "theory" immaterial in subsequent refund suit); *3,4,11,12* (citing *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932)).  Not only are any internal analyses, thoughts and actions of the IRS during a prior audit or examination of a refund claim not binding on the United States in a refund case, but also that they are irrelevant, and of no consequence, in a refund case, as a matter of law.  [ECF 68 at 12-13].  Therefore, any conclusions of the IRS Examiner with respect to the Keefers' appraisal are irrelevant and immaterial.

Second the Keefers rely solely upon the standard of substantial compliance because they seek to hide the fact that the identifying number of David Marshall ("Marshall"), the appraiser, is not found on the Form 8283 nor within his appraisal.  Marshall confirmed the same testifying

6

that the only identifying number on the Form 8283 – reported as ending in "3011" – was not his Social Security Number.  App. 397, Marshall Dep., 111-112 ln 13-22 (ECF 69-4).  He also testified that his appraisal lacked his identifying number.  App. 379, Marshall Dep., 39 ln 1-15 (ECF 69-4).  Therefore, attaching an appraisal that lacked the appraiser's identifying number to a Form 8283 that lacked the appraiser's identifying number does not and cannot cure the statutory requirement that the appraiser's identifying number be included in the appraisal.

    1.  <u>The Keefers' Appraisal did not substantially comply with the Treasury Regulations</u>

The Keefers conflate requirements for the Form 8283 with those of the actual appraisal. The Keefers' appraisal itself was lacking the identifying number of the appraiser as well as the firm with whom he is employed.  Substituting Form instructions for Treasury Regulations as to the appraisal requirements has no basis.  The Keefers attach Instructions to Form 8283, as revised in November 2019, to their appendix and turn the Court's attention to the Form's requirements to substitute for requirements for the appraisal within Treasury Regulations.  While Form 8283 is published by the IRS, as well as its instructions, the instructions to Form 8283 do not serve as a substitute for the Treasury Regulations, and the requirements for qualified appraisals as defined therein.  Instead, the Instructions for Form 8283 are separate and distinct from the Treasury Regulations that address qualified appraisals.  Here, the Keefers' Form 8283 only includes the taxpayer identification number of Katzen, Marshall & Associates, Inc., and not of the appraiser, Marshall.  Furthermore, the appraisal lacks both.  In other words, neither Marshall's taxpayer identification number nor Katzen, Marshall & Associates, Inc.'s taxpayer identification number are listed in the appraisal.

    2.  <u>Substantial compliance does not apply because the Keefers cannot meet the requirements outlined by the Fifth Circuit</u>

7

The Keefers state that the substantial compliance test applies to determining whether or not the Keefers' Appraisal met the statutory requirements. They cite a series of Tax Court cases, but no district court cases. In doing so, they overlook the Fifth Circuit's guidance regarding the application of the standard of substantial compliance. The Fifth Circuit cautioned that courts should sparingly apply the doctrine of substantial compliance, and "The common law doctrine of substantial compliance should not be allowed to spread beyond cases in which the taxpayer had a good excuse (though not a legal justification) for failing to comply with either an unimportant requirement or one unclearly or confusingly stated in the regulations or the statute." *See Est. of Hudgins v. Comm'r*, 57 F.3d 1393, 1404 (5th Cir. 1995). This warning derives from the judicial doctrine's formlessness: "Distinctions between 'essential' requirements and 'procedural or directory' requirements . . . do not provide [courts] with much guidance" on how to apply substantial compliance. *See McAlpine v. Comm'r*, 968 F.2d 459, 462 (5th Cir. 1992); *but see Rigas v. United States*, 486 F. App'x 491, 499 (5th Cir. 2012) (determining in an unpublished opinion "if the regulatory requirements in question are procedural, rather than substantive, such that the doctrine of substantial compliance may be applied").

The Fifth Circuit refined the Tax Court's substantial compliance rule with three elements: "[S]ubstantial compliance is achieved where the [1] regulatory requirement at issue [2] is unclear [3] and a reasonable taxpayer acting in good faith and exercising due diligence nevertheless fails to meet it." *McAlpine v. Comm'r*, 968 F.2d 459, 462 (5th Cir. 1992).

The Keefers cannot satisfy the first element; statutory requirements demand the property description and tax identification / social security number obligation. *See* 26 U.S.C. § 170(f)(8)(B)(i); § 155(a)(4)(A),(E), 100 Stat. 2095; 26 U.S.C. 170(f)(11)(E)(ii). The Keefers also fail to satisfy the second element. They cannot explain how "a description of the property

appraised" and "TIN of such appraiser" are "unclear." *See* § 170(f)(8)(B)(i); § 155(a)(4)(A),(E), 100 Stat. 2095; 26 C.F.R. 1.170A–13(c)(3)(ii)(E).

Finally, the Keefers cannot satisfy the third element that they acted in good faith and exercised due diligence. A simple review of Section 170 and its corresponding regulations would have easily revealed all of these requirements and that they must be provided with the tax return when it was filed. *See* 26 U.S.C. § 170(f)(8)(C) (contemporaneous written acknowledgment before return is filed or due); 26 U.S.C. § 170(f)(11)(D) (qualified appraisal submitted with returns); 26 U.S.C. § 170(f)(11)(E)(ii); 26 C.F.R. § 1.170A-13(c)(3)(B) (referring to definition of "qualified appraiser" in (c)(5)); 26 C.F.R. § 1.170A-13(c)(5) ("The term qualified appraiser means an individual …"); and 26 C.F.R. 1.170A–13(c)(3)(ii)(E) ("qualified appraisals" must contain appraiser's tax identification number).

The Keefers had both a CPA and a tax attorney who could have easily found these primary legal sources. However, they apparently were not asked to do so, or did not look for them. Moreover, even if the Keefers' had asked their tax advisors to thoroughly review all of their documents and the law on the charitable deduction they sought to claim, the Keefers failed to provide those tax advisors with all of the relevant facts. As such, the Keefers cannot claim that they acted in good faith. They did not inform their tax attorney, Horwitz, or their tax accountant, Weigand, that the Partnership was reserving its cash reserves from their purported donation, and that the cash reserves were to be excluded for purposes of the Appraisal. Neither Keefer nor the Partnership documented the oral agreement to reserve cash – thus it remained an oral agreement. While CPA Weigand's testimony is clear that he was not tasked with review of the Appraisal, it is equally clear that Horwitz was so tasked. Keefer cannot now claim that he acted in good faith, having failed to provide Horwitz all of the information that he needed to

9

review the Appraisal along with the Form 8283.  Horwitz testified he was fully unaware of such

an oral agreement at the time of the donation and later while the Appraisal was being prepared.

Aside from the issues that this lack of disclosure raises with respect to the Keefers' reliance upon

a reasonable cause defense, Keefer's failure to provide this information in the context of a good

faith analysis demonstrates that Keefer did not act in good faith with respect to the preparation of

their Appraisal.

A line of cases that have developed surrounding the adequacy of qualified appraisals as

required by Section 170 within the Tax Court.  Those cases – *Bond*, *Hewitt*, *Evenchik*, *Consol.*

*Invs. Grp.*  – speak to the intent of the regulations, and the purpose of the appraisal requirements.

*Bond v. Comm'r*, 100 T.C. 32 (1993); *Hewitt v. Comm'r*, 166 F.3d 332 (4th Cir. 1998) affirming

*Hewitt v. Comm'r*, 109 T.C. 258, 259 (1997), aff'd, 166 F.3d 332 (4th Cir. 1998); *Est. of*

*Evenchik*, 105 T.C.M. (CCH) 1231 (T.C. 2013); *Consol. Invs. Grp. v. Comm'r*, 98 T.C.M. (CCH)

601 (T.C. 2009).  Even if the Keefers are correct that the failure of Marshall to include his

identifying number on his Appraisal is *de minimis*, this is not the only failure of Marshall's

appraisal.  The Appraisal appraises different property than that which was reported donated on

the Keefers' Form 8283.  While the Keefers' return and attached Form 8283 claim they donated

a 4% partnership interest, the Appraisal references a 4% interest in the Partnership subject to an

oral agreement.  The Appraisal does not identify the oral agreement, and in fact the IRS had no

opportunity to learn what assets were being carved out and reserved by the Keefers prior to

making the alleged donation.  It was only during this litigation in the Keefers' July 2021

responses to its interrogatories that the United States learned that the oral agreement referenced

cash reserves.  The Keefers state that cash reserves were being held for the partners of the

Partnership prior to the donation to Pi.  In *Alli v. Commissioner*, T.C. Memo. 2014-15, at *56,

the Tax Court explained that the purpose of the appraisal requirements is to "ensur[e] that the correct values of donated property are reported". *Emanouil v. Comm'r of Internal Revenue*, 120 T.C.M. (CCH) 146 (T.C. 2020) citing *Alli v. Commissioner*, T.C. Memo. 2014-15. Here the IRS could not have ascertained the value of the donated property because the cash reserves were not quantified or explained within the appraisal. In totality, therefore the Keefers have not met their burden to invoke substantial compliance because they proceeded in bad faith – not even providing information about their oral agreement and cash reserves to their tax advisors – and their appraisal did not allow the IRS to evaluate the value of the property that they allege they donated.

   3.   <u>The Congressional Committee Report cited by the Keefers is dated and additional statutory requirements apply to tax year 2015</u>

The Keefers cite a committee history report from 1984 to support their position that Congress provided instructions to apply substantial compliance to determine the adequacy of appraisals. First, the sentence cited states that a taxpayer's deduction is not disallowed for a good faith failure to comply, and here the Keefers cannot make a showing of good faith. As discussed above, they failed to disclose to their tax attorney and their tax accountant the assets that they were proposing to donate. Second, as discussed in the United States' Motion for Summary Judgment (ECFs 67 and 68), the law surrounding the qualified appraisals has changed over time due to the various abuses noted by Congress, and the requirements surrounding appraisals have heightened over time. The Pension Protection Act of 2006 resulted in additional items that are now required to be included in an appraisal for it to meet the statutory requirements. As a result, since 1984, the requirements with respect to what makes a qualified appraisal have increased, and reference to a dated committee report is not persuasive because the law has changed, and the requirements have only heightened or increased since 1984.

11

4. <u>The IRS' thoughts, analyses or conclusions, on the administrative level are irrelevant to whether the appraisal included the identifying number of the appraiser.</u>

As briefed in the United States' motion for summary judgment, a court's review of a taxpayer's suit for refund is *de novo* and "any record made in the Service, including the reasons for the [the tax] assessment, is irrelevant…." *Id*. at n. 33. *See also King v. United States*, 641 F.2d 253, 259 (5th Cir. 1981) (IRS "theory" immaterial in subsequent refund suit); *Vons Companies v. United States*, 51 Fed. Cl. 1, 6 (2001) (citing *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932)). The Keefers, nonetheless, continue to cite the IRS Examiner's worksheets. Her conclusions, however, cannot cure the deficiencies that existed with the appraisal. The Government is free to challenge the request for refund on any grounds. *See Trinity Indus., Inc. v. United States*, 757 F.3d 400, 413 (5th Cir. 2014) ("In tax refund actions, the district court reviews *de novo* the Commissioner's decision regarding a taxpayer's tax liability." As a result, "[t]he Government may assert at the trial of a refund suit a theory not previously presented in the course of the proceedings." *Kincaid v. United States*, 682 F.2d 1220, 1222–23 n.3 (5th Cir. 1982) (citations omitted). Similarly, in a refund suit, the Government can assert other adjustments to the taxpayer's return such as additional unreported income or disallowance of other deductions that have the effect of eliminating any overpayment of tax claimed as a result of the theories asserted by the taxpayer seeking a refund. *Lewis v. Reynolds*, 284 U.S. 281 (1932); *see also Davis v. United States*, No. CA 4-2430, 1977 WL 1172, at *3 (N.D. Tex. Apr. 12, 1977). Therefore, while the IRS Examiner may have analyzed the Keefers' appraisal, her conclusions have no bearing on whether the appraisal met the statutory requirements.

The Keefers also point to a portion of the federal register from 2018 that addresses changes made to the instructions for Form 8283, stating that the appraiser's identifying number may be his social security number or his employer's identification number. The 2018 change to

12

the form instructions seeks to address privacy concerns on behalf of an appraiser, reluctant to divulge his personal social security number to protect his privacy. The register states that an appraiser may apply for an employer identification number and use this number instead of his social security number on an appraisal. It does not, however, state that an appraisal does not need an identification number. Here Marshall's appraisal included no identifying number – neither his social security number nor his employer identification number. In this manner, the 2018 federal register comments do not apply to Marshall's appraisal.

Finally the Keefers again refer to the Form 8283 instructions and not to the requirements of the Treasury Regulations. The Treasury Regulations provide the requirements for an appraisal, and not the form instructions. Additionally, the Keefers argument could be more persuasive if an identifying number was placed on the actual appraisal, but it was not. Neither Marshall's nor his firm's identification number are located within the appraisal. This shows that taxpayer confusion was not the basis for their failure, rather it was a lack of attention to detail to the entire Appraisal overall. Their tax accountant stated that he was not tasked at all with reviewing the Appraisal. The Keefers' tax attorney testified that he did not realize that the Form 8283 described property that is different than that which was appraised. And the Keefers' own appraiser admits that the exclusion of cash reserves from the appraisal would have changed his opinion as to the value of the asset that the Keefers purport they donated. While the evidence produced suggests that the Keefers were communicating with their tax advisors and with their appraiser, it is inexplicable that their Appraisal lacked the minimum statutory requirements and failed to accurately describe the property they claim to have donated.

5. <u>The Keefers' proposition regarding the IRS recognizing substantial compliance is inapposite as their citations do not support this allegation</u>

The Keefers further allege that the IRS recognized the standard of substantial compliance with respect to appraisals. Their citations in this regard, however, cite to Tax Court cases and not IRS publications. Furthermore, the list of essential requirements listed by the Keefers from the *Evenchik* court is not exhaustive they were provided to be examples. *Estate of Evenchik v. Commissioner*, T.C. Memo. 2013-34, 105 T.C.M. (CCH) 1231. The Keefers cannot now change their appraisal to accurately describe the property that they allege they donated, properly define and explain the cash reserves that were carved out of the alleged donation, or include the appraiser's identifying number.

6. <u>The Keefers did not substantially comply in providing a qualified appraisal along with their 2015 tax return</u>

The Keefers allege that they substantially complied, as to their appraisal, as a matter of law and rely upon the holding in *Bond*. *Bond v. Commissioner*, 100 T.C. 32, 41(1993). In *Bond*, the Tax Court opined that there was **<u>no question</u>** that a donation of the two airships was made during the taxable year, that the subject of the donation was appraised at the amount claimed by petitioners as a charitable deduction during the taxable year by a qualified appraiser, and that the donee was qualified to receive a charitable contribution. *Bond v. Commissioner*, 100 T.C. 32, 41-42 (1993), emphasis added. The Keefers actions are distinguishable from the Bond taxpayers.

First, there is a question as to what property was donated in the Keefers' case, and this was not an issue within the *Bond* case. As discussed in the United States' Motion for Summary Judgment, the property described to have been donated in the Keefers' 2015 tax return, on Form 8283, was a limited Partnership Interest. The appraisal that the Keefers attached to their return appraised different property – it described the donation to be a limited Partnership interest, subject to an oral agreement. The oral agreement is not defined in either the Form 8283, its attachment, or in

14

the appraisal. When Marshall was asked about the terms of the oral agreement, he stated that Keefer told him that Pi would only receive assets resulting from the sale of the property and not other assets in the Partnership. Keefer testified stating that the oral agreement was made among several of the Partnership's partners through which they had orally agreed to carve out cash reserves, not intending to donate the cash reserves to Pi. Nonetheless the information provided in the Keefers' filings is inconsistent and, on its face, creates a question as to what property was donated.

Additionally, the Keefers case is further distinguishable from the *Bond* facts in that the valuation is in question based on this lack of consistency. When asked whether the excluded assets – the cash reserves -- could affect the valuation within his appraisal, Marshall said that including the other assets would change his opinion as to the amount stated in his appraisal. App. 411, Ex. 1 to Marshall Dep. In *Bond*, however, there was no issue as to whether the subject of the donation was appraised at the amount claimed by petitioners as a charitable deduction during the taxable year by a qualified appraiser. Here there is a discrepancy regarding whether the subject of the Keefers' appraisal was appraised at the amount claimed by petitioners, or whether that amount should have been different because of the value of the excluded assets.

Therefore, the *Bond* case is distinguishable from the Keefers case.

C.  <u>The Keefers failed to provide the statutory-required document that they had relinquished exclusive legal control of their purported Pi donation</u>

In addition to the inadequate Appraisal submitted for their alleged charitable contribution to their donor advised fund, the Keefers' contemporaneous written acknowledgment ("CWA") fails to comply with the statutory requirements for a charitable deduction.[3]  Without a valid CWA, the Court can deny their deduction.  *See Addis v. Comm'r*., 374 F.3d 881, 887 (9th Cir. 2004) ("The deterrence value of section 170(f)(8)'s total denial of a deduction comports with the effective administration of a self-assessment and self-reporting system.").

To qualify for a charitable contribution exceeding $250, a taxpayer must obtain a CWA from the donee.  26 U.S.C. § 170(f)(8).   But in 2006, Congress amended Section 170 by inserting the new requirement for contributions to donor advised funds: "the taxpayer obtains a [CWA] . . . of such donor advised fund that such organization ***has exclusive legal control*** over the assets contributed."  *Id*. § 170(f)(18) (emphasis added); *see also* H.R. Conf. Rep. 109-455 (2006), 182, 2006 U.S.C.C.A.N. 234, 372 (noting that contributions to donor advised funds must have "[i]n addition to satisfying present-law substantiation requirements under section 170(f), a donor must obtain . . . a [CWA] from the [donor advised fund] has exclusive legal control over the assets contributed").

The Keefers' claim for charitable contribution deduction fails because they did not provide a CWA that contains the "exclusive legal control" language.  Donor advised funds, like Pi, must place the "exclusive legal control" language within the CWA.  *See* § 170(f)(18).  While

---

[3] The Keefers cannot invoke their substantial compliance and reasonable cause defenses to overcome a deficient CWA.  *See Campbell v. Comm'r*, 119 T.C.M. (CCH) 1266, *9, *10 n.16 (T.C. 2020) ("we have held on numerous occasions that the doctrine of substantial compliance does not apply with respect to the CWA requirements"); ("[T]his reasonable cause exception does not apply to the requirement of sec. 170 and the regulations thereunder that the taxpayer obtain a CWA").

no court has addressed whether taxpayer can omit this statutory requirement, the general

statutory purpose to even have such an acknowledgment is "to assist the Internal Revenue

Service in processing tax returns on which charitable contribution deductions are claimed." *See*

*15 W. 17th St. LLC v. Comm'r*, 147 T.C. 557, 564 (2016) (citation omitted). Indeed, a year after

passing the law, Congress entertained hearings on Section 170(f)(18)'s impact where the

American Bar Association voiced its concerns about the written requirement. *See* Tax-Exempt

Charitable Organizations: Hearing Before the H. Comm. On Ways & Means, 110th Cong. 55

(2007) (statement of Am. Bar Assoc. Section of Real Property) (quoting 26 U.S.C. § 170(f)(18))

("[The latest law] amended I.R.C. Sec. 170 to deny a charitable income tax deduction for a

contribution to a [donor advised fund] unless the charity's acknowledgment to the donor

***specifically states*** that the sponsoring organization 'has exclusive legal control over the assets

contributed.'" (emphasis added)). Therefore it is understood that the specific language stating

that the charitable organization has exclusive legal control over the assets contributed is required.

The Keefers nonetheless cite *Schrimsher v. Commissioner*, No. 945-09, 2011 Tax Ct.

Memo LEXIS 68 (T.C. 2011) for the proposition that the CWA need not take any particular

form. While the *Schrimsher* court did state that CWAs may be made by letter, postcard, or

computer-generated forms, it was referring to the form of the document, and not the substance of

the language included in the document. This is clear from its holding – that the charitable

contribution deduction was denied to Schrimsher because the language in the CWA was not clear

and did not specifically define what consideration, if any, Schrimsher was paid in exchange for

the façade easement that he alleged that he donated. Since there is no dispute as to the type of

document upon which the Keefers' alleged CWA appears upon, the *Schrimsher* case does not

support the Keefers' allegation that the language of the document need not include the language that exclusive legal control of the Partnership interest was donated to Pi.

Additionally, the Keefers list several alphabetically enumerated items from the two documents that they claim constitute their CWA. Not a single item, however, states that Pi has or shall have exclusive legal control over the Partnership interest, less the cash reserves, that the Keefers allege that they donated to Pi. The Keefers' tax attorney admitted that these two documents lack the phrase when testifying in his deposition as well. App. 342, Ex. 5, Horwitz Dep. 134-135, ln 4-5.

Even if the Court were inclined to give credence that the words "exclusive legal control" are not statutorily required, the Keefers' Acknowledgment still fails to show that Pi had exclusive legal control. Clearly, Pi was not even aware that it was not being given 4% of the Partnership's cash reserves that were carved off by the alleged "oral agreement", or how much that value might have been. Without that knowledge, Pi had no way of demanding control, much less exercising exclusive legal control, over that part of the property purportedly being donated but excluded from the appraisal.

Moreover, while a court can consider several documents collectively to form a valid CWA, they must contain a merger clause. *See French v. Comm'r*, 111 T.C.M. (CCH) 1241 (T.C. 2016) (holding that multiple documents can form a CWA when "the deed contains a provision stating that the deed is the entire agreement of the parties"). Here, the Keefer Advisor Fund Documents include no mention that they constitute the entire agreement between the Keefers and Pi. App. 084-098, Exs. 11 and 12 to Keefer Dep. The lack of this merger clause is dispositive. Without this merger clause, the IRS must guess whether another document exists that could wrestle the purported "exclusive legal control" from Pi and transfer it to the Keefers.

18

And that is precisely the case here. Keefer and Pi allegedly entered into an oral agreement. *See* App. 030-031, Ex. 1, Keefer Dep. 119-124 ln 12-7. At least that is what Keefer says. However, Pi was unaware of the terms of that oral agreement. App. 464, Ex. 7, McCollough Dep., 53-54 ln 10-18. So, the question becomes whether there was even a meeting of the minds on "exclusive legal control" and if there was, which assets or partnership assets such control applied. The Government does not know the terms of this oral agreement and whether Pi would obtain "exclusive legal control." Thus, the Keefers failed to provide a valid CWA.

The Keefers are therefore not entitled to a charitable contribution of $1,257,000, as they reported on their 2015 tax return, or a refund of income tax corresponding to this deduction, because their CWA does not meet the statutory requirements.

D. The Keefers have not met their burden to invoke the reasonable cause exception

Section 170(f)(11)(A)(ii)(II) contains a "reasonable cause" exception when a taxpayer skirts the qualified appraisal requirements. *See* 26 U.S.C. § 170(f)(11)(A)(ii)(II) (providing a defense when the "failure to meet such requirements is due to reasonable cause and not to willful neglect"). Since § 170 does not define reasonable cause, courts consider other tax code provisions and cases that apply the "concept of 'reasonable cause.'" *See Crimi v. Comm'r*, 105 T.C.M. (CCH) 1330 (T.C. 2013); *see also In re Canada*, 574 B.R. 620, 640 (N.D. Tex. 2017).

While taxpayers, like the Keefers, can rely on an attorney's or accountant's advice to invoke the reasonable cause defense, such invocation is not absolute. "Reliance on the advice of a professional tax adviser does not necessarily demonstrate reasonable cause and good faith; rather, the validity of this reliance turns on the quality and objectivity of the professional advice which they obtained." *Brinkley v. Comm'r*, 808 F.3d 657, 669 (5th Cir. 2015) (citation and alteration omitted).

When taxpayers, like the Keefers, claim to have relied on the advice of a professional, they must show that:

1. "the professional was a competent tax adviser with sufficient expertise to justify reliance,

2. [they] provided necessary and accurate information to the professional who gave [them] advice, and

3. [they] actually relied in good faith on that advice."

*See Pankratz v. Comm'r*, 121 T.C.M. (CCH) 1178 (T.C. 2021).

Above all, "[t]he most important factor is the extent of the taxpayer's effort to assess his proper liability in light of all the circumstances." *Brinkley v. Comm'r*, 808 F.3d 657, 669 (5th Cir. 2015). The Keefers bear the burden of proof. *See Brinkley*, 808 F.3d at 668.

1. <u>Competent Adviser</u>

While "no precise threshold of competence that a tax adviser must have to justify reliance" exists, Weigand ("the Accountant"), and Horwitz ("the Lawyer") should be at least familiar with § 170: the statute addressing charitable contributions. *See Pankratz v. Comm'r*, 121 T.C.M. (CCH) 1178 (T.C. 2021). Although the Lawyer attests reading § 170, the Accountant does not.

2. <u>Provision of All Relevant Information</u>

The Keefers have the burden of proving what they told the tax adviser and what the tax adviser told them. *See Green v. Comm'r*, 507 F.3d 857, 872 (5th Cir. 2007) (affirming the denial of the defense where, *inter alia*, "there was no evidence as to what [the taxpayer] told the preparer, what the preparer told [the taxpayer], and whether or not [the taxpayer's] reliance on any advice from the preparer was reasonable"). The Keefers cannot rely on a tax professional's

20

advice if they fail "to disclose a fact that [they] know[ ], or reasonably should know, to be relevant to the proper tax treatment of an item." *See Prudhomme v. Comm'r*, 345 F. App'x 6, 11 (5th Cir. 2009) (citation omitted). The Keefers failed to disclose to both their Lawyer and their Accountant that there were cash reserves being carved out of the partnership interest that they allege to have donated. The cash reserves being held is a material fact which the Keefers failed to disclose to its tax advisors, and they cannot therefore rely upon a defense of reasonable cause.

*Accountant*: The Keefers did not make their Accountant aware of the oral agreement between Keefer and Pi. App. 511-512, Ex. 8, Weigand Dep., 85-89 ln 9-18. The Keefers do not explain how they could have relied on the Accountant and Lawyer's advice, as they allege in their dispositive motion [ECF #65 at 26], regarding the proper tax treatment of their Pi-donation if they failed to provide the Accountant with the information of the oral agreement. "It is not reasonable for [the Keefers] to rely on [their] tax advisers where [they] had knowingly obscured the complete picture of [their] tax situation from them." *See Brinkley v. Comm'r*, 108 T.C.M. (CCH) 499 (T.C. 2014), aff'd, 808 F.3d 657 (5th Cir. 2015). The Accountant was not aware of the oral agreement, nor he did review the Appraisal. The oral agreement related to the cash that was being reserved and carved out of the donation to Pi and would have directly impacted the valuation stated on Marshall's appraisal. The Accountant did not ever inquire about the oral agreement, however, because he was never made aware of it or is impact on the Appraisal.

Furthermore, the Accountant testified that he did not provide an opinion letter. App. 533, Ex. 8, Weigand Dep. 171 at 10-15. "The mere fact that a certified public accountant has prepared a tax return does not mean that he or she has opined on any or all of the items reported therein." *Neonatology Assocs., P.A. v. Comm'r*, 115 T.C. 43, 100 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

*Lawyer*: The Keefers did not make their Lawyer aware of the oral agreement between Keefer and Pi.  App. 351-352, Ex. 5, Horwitz Dep. 168-172 ln 13-3.  The Keefers "submitted no opinion letters, and no correspondence detailing advice or suggestions that [their] accountants [and Lawyer] provided.  *See Losantiville Country Club v. Comm'r*, 906 F.3d 468, 476 (6th Cir. 2018) (finding no reasonable cause defense); App. 553, Ex. 9 (RFP #17)).  *Compare Southgate Master Fund, LLC ex rel. Montgomery Cap. Advisors, LLC v. United States*, 651 F. Supp. 2d 596, 668 (N.D. Tex. 2009) (finding reasonable cause when that the taxpayer "sought legal advice from qualified accountants and tax attorneys concerning the legal implications of their [sic] investments and the resulting tax deductions and hired professionals to write *two* detailed tax opinions" (emphasis in original)).

    3.  <u>Good Faith Reliance on Advice</u>

The Keefers cannot claim they reasonably relied on the advice of professionals in good faith.  "The reliance must be objectively reasonable." *Chamberlain v. Comm'r*, 66 F.3d 729, 732 (5th Cir. 1995) (citation and footnote omitted).  The Court "may consider the taxpayer's experience, knowledge, and education" in evaluating whether good faith reliance took place.  *See Hatcher v. Comm'r*, 726 F. App'x 207, 218 (5th Cir. 2018); *Prudhomme v. Comm'r*, 345 F. App'x 6, 11 (5th Cir. 2009).  Here, the Keefers have significant experience, both having practiced as accountants, and Keefer in operating and managing several businesses in the hospitality sector since 2005.  App. 004, Ex. 1, Keefer Dep., 13-14 at 3-8; App. 243, Ex. 2, Patricia Keefer Dep., 9-12 at 13-18.

It is not objectively reasonable for the Keefers to have relied on tax advisors who they failed to provide information about a side oral agreement that purportedly carved off the Partnership's existing cash reserves from a partnership interest allegedly being donated to a

22

charity.  As persons with accounting and business experience, they knew or should have known that the exact nature property for which a charitable contribution deduction is taken will have an impact on its value and the amount of deduction they may be entitled to claim on their tax return. Cash reserves are material to the valuation in the appraisal, as confirmed by appraiser Marshall. Their failure to disclose the oral agreement to Pi, their Lawyer, and their Accountant is inexcusable as to the standard of good faith because Pi was the recipient and should have known precisely what it was receiving, and the Lawyer and Accountant could not in good faith advise and opine on a transaction without knowledge of all its material facts.

For the same reasons that the Keefers are not entitled to the reasonable cause exception to the statutory substantiation requirements in Section 170 for the claimed deduction for a charitable contribution to their donor advised fund, they are also not entitled to a reasonable cause defense under Section 6664 for the Section 6662 penalties asserted against them as a result of the tax deficiency that resulted when the IRS denied that deduction.   The Keefer's assertion to the contrary without any supporting authority (ECF 65 at pp. 28-29 of 38) must be rejected.

E.  <u>The Keefers do not show any support in classifying the appraiser's lack of identifying number as *de minimums*</u>

The Keefers classify the lack of the appraiser's identifying number in the appraisal as *de minimums* without any supporting law or cases.  To support their proposition, they unilaterally state that the other requirements of qualified appraisals all speak to the quality of the appraisal except the requirement to include the appraiser's identifying number, again with no case law to support their further claims.  The United States disagrees with their unsupported proposition and would note that the appraiser's identifying numbers is important.  As explained by one court, the tax identification number "requirement is important because it allows the IRS to readily ascertain the identity of the appraiser and whether he is in good standing with the IRS."  *Alli v. Comm'r*,

107 T.C.M. (CCH) 1082 (T.C. 2014) (finding that an appraisal was invalid because it did not comply with, among other things, 26 C.F.R. 1.170A–13(c)(3)(ii)(E)).

Additionally, the requirements with respect to qualified appraisals have increased and heightened over time. If the Marshall was acting in his capacity as a partner in a partnership, an employee of any person, whether an individual, corporation, or partnership, or an independent contractor engaged by a person other than the donor, then his appraisal should have included the name, address, and taxpayer identification number of the partnership or the person who employed or engaged him. Treas. Reg. § 1.170A-17(a)(3)(iv)(A). Neither Marshall's identifying number, nor that of his firm, is found within his appraisal. It seems the Keefers would have the Court find that each deficiency in their appraisal was *de minimums*, despite the fact that there are several deficiencies in his appraisal, and at least one court has explained why specifically such an identifying number is important within an appraisal.

F.   The Treasury Regulations regarding the requirements of a Qualified Appraisal have not been found to be unenforceable because they are arbitrary or capricious.

Citing *Chevron*, the Keefers allege that the Treasury Regulations with respect to appraisals should be unenforceable as they are arbitrary and capricious. *Chevron, USA., Inc. v. NRDC, Inc.,* 467 U.S. 837, 844 (1984). Again, they show not support for their proposition, and only cite one Supreme Court case that does not address the Treasury Regulations with respect to appraisals. They continue alleging that Congress' 1984 committee report includes instructions or commands on how the IRS should have administratively proceeded by notifying the Keefers that their appraisal was deficient. They are incorrect for the following reasons.

First, tax refund suits are afforded a *de novo* standard of review, and the IRS' actions taken at the administrative level are not at issue. *See also King v. United States*, 641 F.2d 253, 259 (5th Cir. 1981) (IRS "theory" immaterial in subsequent refund suit); *Vons Companies v.*

*United States*, 51 Fed. Cl. 1, 6 (2001) (citing *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932)).

Furthermore, as discussed above, the 1984 committee report states that a taxpayer's deduction is

not disallowed for a good faith failure to comply, and here the Keefers cannot make a showing of

good faith because, as discussed above, they failed to disclose to their tax attorney and their tax

accountant specifically the assets that they were proposing to donate.  Additionally, even

Congress acknowledged the obvious difficulties with respect to IRS administration – the

paratheses state "to the extent administratively practicable" – realizing that it may be wholly

impractical for the IRS to reach out to taxpayers who had failed to attach an appraisal.  And

finally, this committee report addresses the failure to attach an appraisal and does not apply in

the Keefers' circumstance in which they attach an appraisal that does not meet the requirements

of the applicable Treasury Regulations, by not describing accurately the property to be donated,

and which fails to include the appraiser's identifying number on any document submitted to the

IRS.

### CLAIM 2 THE KEEFERS ARE NOT ENTITLED TO A REFUND BASED ON AN ALLEGED CONTRIBUTION OF CASH TO PI.

The Keefers are not entitled to any refund based on their alternative theory (Alternative

Claim 2) for a charitable donation of cash because such relief jurisdictionally barred by the

doctrine of variance and even if such relief were not jurisdictionally barred, they still lack the

statutorily required contemporaneous written acknowledgment.

In Alternative Claim 2 the Keefers contend that they are entitled to a partial refund of

$327,520 if the Court finds that the anticipatory assignment of income theory applies to their

transaction.  This alternative theory assumes that the Keefers are entitled to a refund based on a

cash contribution to Pi in the amount of $1,277,000 rather than a donation of a partnership

interest.  However, this alternative theory for a refund is jurisdictionally barred by the doctrine of

variance.[4]  Second, they still do not have a contemporaneous written acknowledgement (CWA) that states that they donated cash to Pi.  Third, in reporting a cash donation they would have would have been forced to recognize gain on the sale of their entire interest in the Partnership's asset, which they did not do.

At the request of counsel for the United States, IRS Revenue Agent Amy Dunford ("Agent Dunford") completed computations for amounts that might be due to the Keefers in three potential outcomes that might arise if the Court decides issues raised by the parties in a way that do not result in the full refund sought by the Keefers.  Scenario #3 forms the basis of the Keefers' argument here.  Although Agent Dunford computed a theoretical amount of refund that an alternative claim for a cash donation would have generated in her Scenario 3, that calculation is by no means an admission that the Keefer's are entitled to such relief.

Based on the doctrine of variance, this Court lacks jurisdiction to grant the Keefers a refund arising from a donation of cash. 26 U.S.C. § 7422(a) requires that tax refund claims comply with "the regulations of the Secretary established in pursuance thereof."  *Rodgers v. United States*, 843 F.3d 181, 195 (5th Cir. 2016).  26 C.F.R. § 301.6402–2(b)(1) (emphasis added) provides:

> The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof ... A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

"[T]his regulation codifies the variance doctrine."  This means that "[a]bsent a waiver by the Government, a taxpayer is barred from raising in a refund suit grounds for recovery which had

---

[4] The Keefers allege incorrectly in their Brief supporting their motion for summary judgment that the doctrine of variance was "lately raised" as defense.  [ECF 65 at 37].  The United States raised the defense of variance in its initial answer, its Answer to the Keefers' Amended Complaint on October 13, 2020.  [ECF 19 at 1].

not previously been set forth in its claim for a refund." *Rodgers*, 843 F.3d at 195.  The Keefers are similarly not entitled to a charitable contribution deduction for their alternative claim that they donated $1,280,000 cash to Pi because they did not include that ground in their administrative claim for refund, their Form 1040X Amended Income Tax Return for 2015.

Citing *El Paso CGP Co., L.L.C. v. United States,* 748 F.3d 225, 229 (5th Cir. 2014), the Keefers argue that there is an exception to the doctrine of variance when the government. However, *El Paso* is distinguishable because there the IRS had made untimely assessments that it offset against the taxpayer's refund claim after the claim had been filed.  The taxpayer filed a refund claim in 2002 for tax year 1986. *Id*.  The IRS took action in 2005, refunding some of the taxpayer's overpayment, but not all because deficiencies in other years were offset against the amount due. *Id*.  In response, the taxpayer brought suit to obtain the entire amount that it claimed in its 2002 refund claim. *Id*. The IRS argued that the district court had no jurisdiction to raise its claim because it had not previously been raised before the IRS. *Id*. Indeed, because the claim was filed in 2002, the taxpayer could not possibly have raised an issue that would arise from the IRS's conduct in 2005. The district court held that the variance doctrine stripped the court of jurisdiction to consider the claim. *Id. at 228*. The Fifth Circuit reversed that finding, holding that the district court had jurisdiction to consider the claim because "the variance doctrine [did] not bar this action when the only variance in [the taxpayer's] claim [arose] from alleged IRS failures to follow proper procedures of which [the taxpayer] was unaware when those failures occurred." *Id. at 229*.  Later in distinguishing *El Paso*, a district court noted that the critical inquiry is whether the taxpayer could have asserted the ground for the claim or if government took "unilateral action" that "itself create[d] the substantial variance." *See Bingham v. United States*,

27

No. 1:03-CV-783, 2015 WL 3606239, at *6–7 (E.D. Tex. Apr. 23, 2015), aff'd sub nom. *Rodgers v. United States*, 843 F.3d 181 (5th Cir. 2016).

This case does not involve procedural defects in offsets being applied to the taxpayer's refund and the government unilaterally causing the substantial variance. Nor does it involve a government counterclaim for additional tax like that asserted in the *Shore*[5] case cited by *El Paso*. Such a counterclaim to collect additional tax would have given the Court jurisdiction to hear such an alternative argument by the Keefers. Instead, the United States has merely asserted the Keefers are not entitled to a refund for an alleged charitable contribution of an interest in their Partnership which was allegedly received by Pi, their donor advised fund, in the form of a cash payment after the Partnership had completed a previously arranged sale of its hotel. The Keefers were certainly aware of all of the details of their transactions with their Partnership, their transaction with Pi and the events leading up to those transactions – including their communications about trying to reduce anticipated taxes on income from the sale of a hotel that was virtually assured to happen. Nothing the government did prevented them from including an alternative argument in their administrative claim for a smaller refund based on a cash contribution to Pi. However, had the Keefers donated cash, they would have also been required to recognize full gain on the sale of their entire interest in the Partnership's hotel. The Keefers specifically did not do so because as Mr. Keefer testified, one of the goals was the reduce his anticipated tax liability on the sale of the hotel, while also obtaining the benefit of a charitable contribution deduction. In other words, they knew that if they were not successful their alleged donation of a partnership interest, they would be taxed on the entire gain on the sale of the Partnership's hotel, but they could still claim a charitable deduction for cash they received and

---

[5] *Shore v. United States,* 26 Cl. Ct. 826, 828-29 (1992).

paid income tax on.   The court in *El Paso* also cited *Brown v. United States*, 427 F.2d 57 (9th Cir. 1970).  However, *Brown* is also distinguishable because, as at least one other court has held, the exception to the doctrine of variance does not apply if the government's position in litigation was predictable.  In *Bessemer City Bd. of Educ. v. United States*, 576 F. Supp. 2d 1249, 1257–58 (N.D. Ala. 2008), the court refused to follow *Brown* because the taxpayer's new arguments were effectively the opposite of the taxpayer's own arguments, were not surprises and did not prevent the taxpayers raising its alternative claims earlier.  Nothing the government has done in this case prevented the taxpayers from raising this alternative ground for relief at the administrative level.

Furthermore, even if the doctrine of variance does not apply, the Keefers' transfer of net cash of $1,277,000 to their Keefer Donor Advised Fund with Pi does not entitle them to a deduction for a cash contribution under Section 170 because they do not have a contemporaneous written acknowledgement describing the property that they donated was cash, and without specifying the amount.  A CWA is required whether the purported donation was one of cash or non-cash property.  26 U.S.C. § 170(f)(8)(B)(i). The Keefers have not provided a CWA for either a partnership interest or a cash donation.

### CLAIM 3   THE KEEFERS MAY OR MAY NOT BE ENTITLED TO A REFUND ATTRIBUTABLE TO THE GAIN ON THE BARGAIN SALE.

Finally, the Keefer's are not entitled to any refund based on their alternative claim for reversal of the gain on the bargain sale (Alternative Claim 3) because the assignment of income doctrine applies to their alleged donation of a partnership interest to their donor advised fund.  However, if the Court finds that the assignment of income doctrine does not apply, they may be entitled to part of the refund they seek.

As part of its audit determination, the IRS assessed an additional tax for the gain on the bargain sale portion of the donation of a 4% partnership interest.  The Keefer's paid that

additional tax when they paid the rest of the audit deficiency.  Based on Agent Dunford's

computations completed as the request of the undersigned counsel for the United States it is now

clear that the gain on the bargain sale will need to be reversed under all potential scenarios

regardless of which party wins Issues, A, B, C or D as described in the United States' Motion for

Summary Judgment.  However as shown in Agent Dunford's computations the removal of the

gain on the bargain sale does not always equate to a tax refund for the Keefers.  This is the case

in Government Scenario 2 (Plaintiffs lose their Claim 1 and Alternative Claim 2) where no

refund is allowed because there is a larger adjustment in the other direction for anticipatory

assignment of income and no benefit of a cash contribution.  App. 656.  This is also partially true

for her Government Scenario 1 computation where the denial of the charitable donation and

removal of the bargain sale gain results in a partial refund of only $136,875.  App. 640.  In other

words, Government Scenario 1 is the only way the Keefers can recover anything on their

Alternative Claim 3.

The Keefers are not entitled to any relief under Government Scenario 3 (their Alternative

Claim 2) for a cash contribution, but if the Court were to disagree, Agent Dunford's computation

for Government Scenario 3 removes the gain on the bargain sale and results in a $327,520

refund.  App. 673.  Finally, if the Keefers were to prevail on their Claim 1 for a charitable

donation of a 4% partnership interest, the United States agrees that they computed the gain and

corresponding tax on the bargain sale correctly and any IRS's adjustment to that gain should be

reversed which would in turn generate the $507,964 refund they have alleged they are entitled.

**CONCLUSION**

For the reasons given, the United States moves the Court to deny the Keefers' Amended

Motion for Summary Judgment.  The Keefers are not entitled to any income tax refund for tax

year 2015 because the Keefers' purported charitable contribution of a limited Partnership interest

was a transaction to which the anticipatory assignment of income doctrine applies.

Alternatively, if the Court finds that the assignment of income doctrine does not apply, the Court should still find that the Keefers are not entitled to a charitable deduction because they donated property different from what they appraised, the appraisal of their purported donation does not comply with statutory substantiation requirements, and their purported donation is not supported by the statutorily required contemporaneous written acknowledgment of "exclusive legal control" language nor contained a merger clause. If the Court makes this alternative finding, the Keefers will be entitled to only $136,875 of the refund they seek because the United States acknowledges in this alternative scenario the gain from the bargain sale previously imposed by the IRS should be reversed. However, in no circumstance should the Court find that the Keefers are entitled to any refund based on their recently plead alternative theory that they contributed cash to the Pi Foundation. A refund based on such an alternative theory is barred by the doctrine of variance and the Court lacks jurisdiction to grant it. A cash donation also fails for the same substantiation requirements mentioned above.

Dated:  December 7, 2021

DAVID A. HUBBERT
Deputy Assistant Attorney General

Moha P. Yepuri
Texas State Bar No. 24046651
Christian A. Orozco
Texas State Bar No. 24107886
U.S. DEPARTMENT OF JUSTICE - TAX DIVISION
717 N. Harwood St., Suite 400
Dallas, Texas 75201
(214) 880-9767/(214) 880-9757
(214) 880-9741 (Facsimile)
Moha.P.Yepuri@usdoj.gov
Christian.A.Orozco@usdoj.gov

ATTORNEYS FOR UNITED STATES

### CERTIFICATE OF SERVICE

I certify that on December 7, 2021, a copy of the forgoing was electronically filed on the CM/ECF system, which will automatically service a Notice of Electronic Filing on the following attorney in charge for Plaintiffs:

GLAST, PHILLIPS & MURRAY, P.C.
Kenneth M. Horwitz
kmh@gpm-law.com
Richard E. Young
ryoung@gpm-law.com
14801 Quorum Drive, Suite 500
Dallas, Texas 75254

/s/  Moha P. Yepuri
Moha P. Yepuri
Trial Attorney, Tax Division

32