**UNITED STATES DISTRICT COURT**
**For The Northern District Of Texas**
**Dallas Division**

| | | |
|---|---|---|
| **KEVIN M. AND PATRICIA S. KEEFER**, § | | |
| Plaintiffs § | | |
| § | **CIVIL ACTION NO. 3:20-CV-0836-B** | |
| **v.** § | | |
| § | **NON- JURY TRIAL** | |
| **UNITED STATES OF AMERICA**, § | | |
| Defendant § | | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF**
**PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT**

Richard E. Young
Texas State Bar No. 22204800
GLAST, PHILLIPS & MURRAY, P.C.
14801 Quorum Drive, Suite 500
Dallas, Texas 75254-1449
972.419.8376 office
972.419.8329 facsimile
ryoung@gpm-law.com

COUNSEL FOR PLAINTIFFS
KEVIN M. and PATRICIA S. KEEFER

December 21, 2021

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................... ii

INDEX OF AUTHORITIES ................................................................................................ iv

    I.  REPLY POINTS   ..............................................................................................1

        1. Kevin Keefer's charitable contribution of a 4% partnership interest to the Pi charity was not an anticipatory assignment of income from the later sale of the partnership hotel.. ....................................................................1

        2. Kevin Keefer's disclosure to Pi that the partnership had preexisting liabilities to pre-existing partners for previously delayed distributions because of contractual cash reserve requirements was not a "carving out" from the donatedpartnership interest**............................................................2

        3. The Keefers' appraisal of the donated partnership interest and the Keefers' Form 8283 both adequately complied with the government's statutory substantiation requirements. .............................................................................4

        4. Even if the Keefers are found not to have provided all the information technically required in their appraisal and Form 8283, the IRS was not allowed to deny the deduction because the Keefers substantially complied or are legally excused for such a failure  .......................................................5

        5. The government failed to allow the Keefers the required opportunity to correct any omissions as the government was duty bound to do......................6

        6. Any omissions were *de minimus*, the Keefers had reasonable cause, reasonably relied on their tax experts, and had no willful neglect....................7

        7. The Keefers' Form 8283 with its accompanying appraisal accurately described and valued the partnership interest donated...................................7

        8. The contemporaneous written acknowledgement from the donee, Pi, acknowledged that Pi had exclusive legal control of the donated interest after the donation .........................................................................................8

9. "Variance" does not bar the Keepers' alternative Claim 2 or Claim 3 because the defendant itself belatedly took the unilateral action that creates any variance now after the Keefers' filing of the initial claim for refund was closed……………………………………………………   10

10. No government response to the Keefers' summary judgment points – (1) government failed to give Keefers any opportunity to cure substantiation omissions, and (2) Keefers timely filed for refund….………………………….122

II.  RELIEF REQUESTED ........................................................................................... 12

CERTIFICATE OF SERVICE ................................................................................................ 13

# **INDEX OF AUTHORITIES**

**Cases**

*Grant Thornton LLP v. Prospect High Income Fund*,
    314 S.W.3d 913 (Tex. 2010) ......................................................................................... 3
*Hudgins v. Comm'r*,
    57 F.3d 1393 (5th Cir.) ............................................................................................. 5, 8

UNITED STATES DISTRICT COURT
For The Northern District Of Texas
Dallas Division

| | | |
|---|---|---|
| KEVIN M. AND PATRICIA S. KEEFER,<br>Plaintiffs | §<br>§<br>§ | CIVIL ACTION NO. 3:20-CV-0836-B |
| v. | §<br>§<br>§ | NON- JURY TRIAL |
| UNITED STATES OF AMERICA,<br>Defendant | §<br>§ | |

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT

Plaintiffs Kevin Keefer and Patricia Keefer files this Reply Brief in Support of Plaintiffs' Amended Motion for Summary Judgment (Doc. 64) as a reply to United States' Response and Brief to the Plaintiffs' Amended Motion for Summary Judgment (Doc. 72).

## I.  REPLY POINTS

**1.  Kevin Keefer's charitable contribution of a 4% partnership interest to the Pi charity was not an anticipatory assignment of income from the later sale of the partnership hotel.**

The government argues that the Keefers' charitable contribution was really an assignment of income, and complains that the Keefers did not address that issue in the Keefers' Amended Motion for Summary Judgment.  Defendant's Response (Doc. 72) p. 2.  The Keefers did in fact address the government's lately asserted anticipatory assignment of income argument in three places:  (1) in the Keefers' Second Amended Complaint (Doc. 60, pp. 12-13); (2) in the Keefers' response (Doc. 70, pp. 1-2) to defendant's amended motion for summary judgment; and (3) in the Keefers' brief with their response to defendant's amended motion (Doc. 71, pp. 1-13).

In those three documents, among other things, the Keefers show the anticipatory assignment of income doctrine is not applicable to the Keefers' charitable contribution because

1

of two critical factors.

First, the Keefers' charitable contribution was of a minority 4% partnership interest, not of the later proceeds from the later sale of the partnership's property. Doc. 71, pp. 1-8, 11-18.

Second, the later sale by the partnership of the partnership property was not "practically certain to occur" on the date of the charitable contribution of the partnership interest since neither seller nor buyer were legally bound to sell or buy the property. Doc. 71, pp. 4-11. The government's argument that the participants thought the chances of the later sale not occurring were low, or that the taxpayers engaged in tax planning do not make the sale "practically certain" nor trigger the anticipatory assignment of income doctrine. *See* Doc. 71, pp. 1-18 where the Keefers address all these arguments.

2. **Kevin Keefer's disclosure to Pi that the partnership had preexisting liabilities to pre-existing partners for previously delayed distributions because of contractual cash reserve requirements was not a "carving out" from the donated partnership interest.**

The government repeatedly misrepresents that the Keefers "carved out" something from the donated partnership interest when a liability the partnership owed the pre-existing partners for prior unpaid partnership distributions was both disclosed to the charity before the donation and actually paid to the pre-existing partners by the partnership after the 4% partnership interest was transferred to the charity. *See* misrepresentations in Doc. 72, pp. 3, 4-5, 10, 14, 15, 18, 21, 22.

The government also repeatedly misrepresents that this "oral agreement" between the then existing partners was an agreement between Kevin Keefer and the charity, Pi. *See* the misrepresentations in Doc. 72, pp. 9, 10, 11, 14, 15, 18, 19, 21, 22, 23. But the undisputed evidence shows the "oral agreement" was between the pre-existing partners and the partnership, not between Pi and Kevin Keefer, and was not a "carve out" but was a pre-existing liability of the partnership when the 4% minority interest was donated by the Keefers to Pi. *See* Keefers'

2

evidence cited in Doc. 71, pp. 13-18.

The government also repeatedly misrepresents that information of the "oral agreement" concerning the pre-existing liability to the pre-existing partners was withheld by Keven Keefer from both his tax lawyer and appraiser. *See* misrepresentations in Doc. 72, pp. 9, 10, 11. But the undisputed evidence shows that Kevin Keefer disclosed the "oral agreement" not only to the charity (Pi), but also to Keefer's appraiser who was Keefer's tax attorney's agent (and thus disclosure to the attorney also, since disclosure to an agent is disclosure to the principal – "an agent's knowledge is generally imputed to its principal." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 924 (Tex. 2010)). *See* Doc. 71 at pp. 19-22. The government does not explain why the Keefers' CPA had to know of the "oral agreement" -- tax return information just needs to show the value with the contributed asset, which the return did with the appraisal attached to Form 8283. *See* Doc. 66 at pp. 3, 7, 34, 36, 66, 70.

The government continues its misrepresentations saying the charity, Pi, did not know of the "oral agreement" of the partners. *See* misrepresentations in Doc. 72 at pp. 18, 19, 23. But the undisputed evidence is that Kevin Keefer himself disclosed the terms of the "oral agreement" to Pi, and that Pi got a copy of the appraisal itself and Pi signed the Keefers' Form 8382 with the appraisal attached describing the relevant portions of the "oral agreement." *See* Keefers' evidence discussed in Doc. 71 at pp. 14-15, 20.

The government mispresents that the government itself "had no opportunity to learn" and did not know of the "oral agreement" assets until discovery in this case. *See* misrepresentation in Doc. 72 at p. 10, 11. But the undisputed evidence is that the Keefers' Form 8382, **filed with the government years ago**, attached the appraisal which expressly described the "oral agreement" to the government and the "assets not included." *See* Keefers' evidence cited in Doc. 71, pp. 20-

3

21.

The partnership's payment of pre-existing liability to its pre-existing partners is not a "carving out" from the 4% partnership interest contribution to Pi any more than the partnership paying a liability for a pre-existing light bill is a "carving out" from some partnership interest. A partnership has both assets and liabilities and the partnership must pay its liabilities before later partners are entitled to any distribution. The Keefers address this government argument in their response brief (Doc. 71 at pp. 13-18, 20-21).

> **3. The Keefers' appraisal of the donated partnership interest and the Keefers' Form 8283 both adequately complied with the government's statutory substantiation requirements.**

The government argues the Keefers did not comply with "heightened" substantiation requirements for donations to donor advised funds. (Doc. 72, p. 5). The government argues the "appraiser's" taxpayer identification number was not provided in the Keefers' Form 8283 and its attached appraisal (Doc. 72, pp. 6-7), saying the Keefers are not entitled to rely on the government's own interpretation of and own actions in reviewing its own forms, or on the government's own language in its forms, instructions, and regulations in providing the "appraiser's" identification number in the form and appraisal (Doc. 72 pp. 7, 11-13). The government is wrong.

The undisputed summary judgment evidence shows the Keefers did provide the identification number of the "appraiser," and followed the government's instructions: the government's own agents recognized and plainly said the Keefers' appraisal was attached to their Form 8283, the Form 8283 was signed by the appraiser, the attached appraisal expressly says it was performed by the firm of Katzen, Marshall & Associates, Inc., the IRS and Congress expressly instructed that the appraiser's tax ID number could be a social security number **or**

4

employer ID number, and the Form 8382 attached to the appraisal contained the employer ID number of that "appraiser" -- Katzen, Marshall & Associates, Inc. *See* the Keefers' evidence and authorities cited in their response brief (Doc. 71 pp. 19, 20-23).

4. **Even if the Keefers are found not to have provided all the information technically required in their appraisal and Form 8283, the IRS was not allowed to deny the deduction because the Keefers substantially complied or are legally excused for such a failure.**

The government argues the Keefers are not entitled to rely on the substantial compliance doctrine because, the government claims, the government's instructions and regulations were not confusing or unclear. Doc. 72 pp. 8-9. The government cites *Hudgins v. Comm'r*, 57 F.3d 1393, 1404 (5th Cir.), for the proposition that the substantial compliance doctrine "should not be allowed to spread" beyond good excuses for failure to comply with unimportant or unclear regulations or statutes. Doc. 72, p. 8. In *Hudgins*, the statute involved expressly required that a certain special use tax election had to be filed with the estate tax return, and that election had to contain a "Recapture Agreement." The *Hudgins* court held, using a "common sense" approach to substantial compliance, that because the tax return did not attach or contain *any* recapture agreement at all "or some reasonable facsimile thereof" "or other contractually sufficient substitute," and the taxpayer had an "unexcused omission" and showed "slipshod preparation of the necessary documentation" and "at most *a lick and promise*," the doctrine of substantial compliance was not applicable. 57 F.3d 1393, 1401, 1404-1405

Compare *Hudgins* with the government's instructions here and the Keefers' Form 8283 here:

- The IRS instructed to attach the appraisal itself to the Form 8283. Doc. 66, pp. 35, 85.

- The appraisal was attached to the Form 8283. Doc. 66, pp. 7, 36, 66, 70.

- The appraisal expressly declared it was performed by the firm of Katzen, Marshall &

5

- Associates, Inc.  Doc 69-1 at p. 205 ("Katzen, Marshall & Associates, Inc. ("KM") has completed its appraisal . . . .").

- IRS instructed the Keefer's Form 8283 (with its attached appraisal) could contain the appraiser's "social security number **or** employer identification number**."**  Doc. 66, p. 92 (emphasis added).

- The Form 8382 contained the employer identification number of the appraiser and was signed by the "Vice-President" of the appraiser.  Doc. 69-7, p. 541.

Again, *see* the Keefers' evidence and authorities cited in their response brief (Doc. 71 pp. 19, 20-23).

The government's instructions and regulations either expressly allowed the Keefers' documentation here, or at worst, were unclear.  The Keefers are entitled to rely on substantial compliance and did substantially comply as shown both in the Keefer's brief in support of their amended motion for summary judgment (Doc. 65, pp. 7-15) and in the Keefers' response brief (Doc. 71, pp. 19, 25-31).

### 5. The government failed to allow the Keefers the required opportunity to correct any omissions as the government was duty bound to do.

Critically, the government never addresses its failure to allow the Keefers an opportunity to cure any appraisal deficiency as commanded by Congress.  S*ee* Keefers' amended motion for summary judgment ground, Doc. 64 at pp. 4-5; brief Doc. 65 at pp. 24-25; response brief Doc. 71 at pp. 25-28; *compare* government's amended motion for summary judgment (Doc. 67), government's brief in support of that motion (Doc. 68), and in the government's response and brief (Doc. 72).

The government does mention in passing a phrase in Congress' admonition to allow an opportunity to cure -- the phrase "to the extent administratively practicable."  Doc. 72, p. 25; *see*

6

Doc. 66, p. 95, for Congress' instruction. But the government nowhere shows why, in the government's combined 31 pages of reports to the Keefers (Doc. 66, pp. 4-20, 64-77, 80-83), it was administratively impractical to add even a single sentence offering the Keefers an opportunity to correct any failure to attach a proper qualified appraisal. Common sense tells us it is administratively practical for the IRS to do so. Therefore the government's disallowance of the donation was still improper without this offer of an opportunity to cure and must be reversed to allow the Keefers an opportunity to cure any omissions.

6. **Any omissions were *de minimus*, the Keefers had reasonable cause, reasonably relied on their tax experts, and had no willful neglect.**

The government says the Keefers did not act in good faith and with diligence in trying to comply with the disclosures and in hiring a CPA and tax attorney to prepare the disclosures. Doc. 72, pp. 8-10. The Keefers address this argument in their response brief (Doc. 71, pp. 25-27) to the government's amended motion for summary judgment.

7. **The Keefers' Form 8283 with its accompanying appraisal accurately described and valued the partnership interest donated.**

The government argues the Keefers' appraisal was not adequate because the contributed partnership interest was subject to an "oral agreement" between the partners and the government "could not have ascertained" what that was. Doc. 72 pp. 10-11. The government also complains the Keefers' appraisal appraised "different property" because the appraisal appraised the 4% partnership interest "subject to an oral agreement." But the government ignores that this description was the very thing donated -- a 4% interest, subject to the "oral agreement" that the partnership owed and had to pay a pre-existing partnership debt to pre-existing partners. Doc. 72 p. 14-15. And in fact, the appraisal adequately described and valued the 4% partnership interest donated including the effect of the "oral agreement" -- all the government had to do was read the

7

plain language and charts of appraisal and its attachments – "the Foundation would only share in the proceeds from the Seller's Closing Statement; the Foundation would not receive its pro rata share in the other net assets of the Partnership." Doc. 69-4, p. 411. The Keefers have addressed this government argument in the Keefers' brief (Doc. 71 pp. 13-18, 19-22) in support of their response to the government's amended motion for summary judgment.

**8.   The contemporaneous written acknowledgement from the donee, Pi, acknowledged that Pi had exclusive legal control of the donated interest after the donation.**

The government argues the Keefers failed to get a contemporaneous written acknowledgement from Pi that, after the donation, Pi has exclusive control of the 4% partnership interest. Doc. 72, pp. 16-19. The government argues the acknowledgement must contain magic words -- "exclusive legal control" – to comply with the rules. Doc. 72, pp. 16.

Interestingly, after all its arguments about how its own regulations and interpretations are meaningless in the face of a statute (see Doc. 72 at pp. 11, 12, 13), the government now changes its tune and says the American Bar Association can tell taxpayers what is required, citing an ABA Section of Real Property paper that the acknowledgement must "specifically state" the charity has exclusive legal control." Doc. 72, p. 17.) Notwithstanding the ABA's Real Property Section's attempt to promulgate federal law, the federal regulation is plain – it nowhere says the acknowledgment must contain some magic words.

This is not a "mother-may-I" game. The only requirement is that there be an acknowledgment, in writing, in some form or fashion that acknowledges the fact that the charity has legal exclusive control of the contributed asset (here a minority 4% partnership interest) after the donation. *Cf. Hudgins, supra*, at 57 F.3d at 1405, (discussed at p. 6, above) (where the statute required a certain "Recapture Agreement" had to attached to a return but the court said

8

that could be satisfied by attaching the named document "or some reasonable facsimile thereof" "or other contractually sufficient substitute.") The Keefers meet that standard here with the plain reading of the multiple page document from Pi that repeatedly declares all the elements of exclusive legal control. *See* Keefers' response brief (Doc. 71 pp. 24-25); Keefer's Brief in Support of Plaintiffs' Amended Motion for Summary Judgment (Doc. 65 pp. 15-19); and plaintiffs' appendix to their amended motion for summary judgment (Doc. 66, pp. 38-49 at highlights). That document contains 5 exhibits that are specifically incorporated by reference and are therefore plainly integral parts of the requisite contemporaneous written acknowledgement.

The government flat-out misrepresents that the charity, Pi, "was not even aware that it was not being given 4% of the Partnership's cash reserves" that was the subject of the "oral agreement" and from that argues therefore Pi "had no way" of exercising control over the donated asset, the minority partnership interest. Doc. 72, p. 18. The government, yet again, ignores its own summary judgment evidence where the government shows Pi knew it was getting the minority interest that was subject to, just like all the other partnership interests of the other partners, a pre-existing partnership indebtedness – the "oral agreement" between the then-existing partners that the partnership had to pay the pre-existing deferred distribution liability.

The government admits a copy of the qualified appraisal (Defendant's App. [Doc. 69-4] at pp. 407-415) was attached to the Keefers' Form 8283. *See* Plaintiff's Appendix to Plaintiffs' Amended Motion for Summary Judgment ("Plaintiffs' App.") (Doc. 66 at p. 66) ("Taxpayers filed return included an attached appraisal report as prepared by Katzen, Marshall & Associates, Inc [sic] and dated February 19, 2016."). And the appraiser plainly declared he was valuing "the Interest" (the "Subject Interest" - a 4% partnership interest "subject to an oral agreement") as of

9

the date Kevin Keefer donated the "Interest" to Pi. Defendant's App. 407 (Doc 69-4 at p. 407). The government actually shows us the Keefers' Form 8283 was signed by both the appraiser and by Pi so we know Pi knew and agreed with the description of what was being donated to Pi -- (the "Subject Interest" - a 4% partnership interest "subject to an oral agreement"). Defendant's App. 541 (Doc. 69-7 p. 541); s*ee* plaintiffs' brief in support of their response to defendant's motion for summary judgment (Doc. 71 at p. 20).[1]

The government also complains the Keefers have not met the reasonable cause standard here, claiming the Keefers did not have competent advisors or tell the advisors the relevant facts. Doc. 72, pp. 19-23. The Keefers address these contentions and show the evidence in the Keefers' response brief (Doc. 71, pp. 25-28, 31), and show the advisors and those assisting the advisors did in fact know all the relevant facts, including the "oral agreement," and were competent, and the Keefers relied upon them in good faith. *Also see* discussion at pp. 3-4, above. The government shows us no evidence to the contrary.

9. **"Variance" does not bar the Keefers' alternative Claim 2 or Claim 3 because the defendant itself belatedly took the unilateral action that creates any variance now after the Keefers' filing of the initial claim for refund was closed.**

The government finally argues the Keefers are not entitled to an alternative relief, if the Court finds the donation was an assignment of income, because of the doctrine of variance. Doc. 72 pp. 25-29.

The parties do not appear to dispute what a variance is. But the Keefers' summary judgment point is that the doctrine does not bar them from now asserting their alternative Claim 2 or 3 because the government itself now raised this late argument of assignment of income only

---

[1] And again on this point, the government misunderstands or misrepresents what a merger clause is. Doc. 72, p. 18. *See* plaintiffs' brief (Doc. 71 at p. 24 and note 1) where the correct contract merger rule is given and the Court here is allowed to consider all the Pi transaction documents together.

10

after the Keefers' tax audit was over and this lawsuit was filed. If the Keefers' contribution was really an assignment of income as the government now claims after the government's audit is long over, then the Keefers are entitled to an alternative deduction of the resultant cash income. The government's own witness undisputedly admits that the Keefers' donation resulted in a cash payment to the charity of $1,277,000, an amount that under the government's theory of assignment of income, would have been paid to the Keefers of there had been no charitable contribution. Doc. 66, pp. 126-127. The government's theory is that the deduction for this undisputed donation amount, undisputedly received by the charity, is just lost to the Keefers.

The government's position appears to be that, like the wild, wild West, in a tax matter the government can lay behind the log in the exam period, wait for the taxpayer to pay the IRS incorrectly assessed tax then have to sue for a refund, then the IRS can ambush the taxpayer in this Court with a novel theory never raised before and not reasonably foreseeable by the taxpayer under the circumstances so that the taxpayer automatically loses without the right to controvert the issue. The government believes it can fail to timely raise a particular claim at a time when the taxpayers can respond to it in the exam process, and, then when the government does raise it later in federal court, the government can bar the taxpayers from responding even though neither the taxpayers nor anyone else anticipated, during the exam process, one of the multitude of arguments or positions the government court later create after getting into this Court. As the Keefers show in their response brief (Doc. 71 pp. 32-34), that is not the law -- when the government's conduct itself creates the situation where the "variance" arises, taxpayers "cannot be foreclosed from responding" to new issues raised by the government after the filing of the initial refund claim. *See* authorities cited Doc. 71 p. 33.

11

**10.** **No government response to the Keefers' summary judgment points – (1) government failed to give Keefers any opportunity to cure substantiation omissions, and (2) Keefers timely filed for refund.**

Finally, the government has failed to respond at all to two of the Keefers' grounds for summary judgment:

1. Contrary to the IRS's assertion that the Keefers' request for refund was untimely, the Keefers timely filed their claim for refund of the tax within two years of paying the tax. *See* Plaintiffs' Brief in Support of Plaintiffs' Amended Motion for Summary Judgment (Doc. 65) pp. 5 – 6. Defendant does not address this ground for plaintiffs' amended motion for summary judgment.

2. As discussed above, if in fact the Keefers failed to substantiate their donation, the IRS was required to but failed to notify the Keefers that the appraisal summary in the form required by the regulations with the "identifying number" was not attached to their return and give the Keefers an opportunity to correct the claimed error as IRS is required to do by law. S*ee* Keefers' amended motion for summary judgment ground in Doc. 64 at pp. 4-5; brief Doc. 65 at pp. 24-25, Doc. 71 at pp. 25-28; *see also*, above, p. 7 at 6.

## II. RELIEF REQUESTED

The Keefers request the Court enter judgment against the US on the issues as set out the Keefers' amended motion for summary judgment (Doc. 64) and in the accompanying proposed order (Doc. 64-1):

1. The relief requested under Claim 1, including item A, B, C, D, E, and F under that claim, the sum of at least $507,964.80.

2. Alternatively, the relief requested under Claim 2 and US for the sum of $327,520.

3. Alternatively, the relief requested under Claim 3 and the sum of $136,875.

4. In any event, deny the U.S. lately raised defense of variance as a matter of law.

5. Relief under Rule 56(g) as applicable.

6. Cost of court.

7. Prejudgment and post judgment interest at the highest rates allowed by law.

8. General relief.

Respectfully submitted,

**GLAST, PHILLIPS & MURRAY, P.C**.

by: _____
Richard E. Young
Texas State Bar No. 22204800

14801 Quorum Drive, Suite 500
Dallas, Texas 75254-1449
972.419.8376
972.419.8329 facsimile
ryoung@gpm-law.com
COUNSEL FOR PLAINTIFFS
KEVIN M. and PATRICIA S. KEEFER

### CERTIFICATE OF SERVICE

I certify that on December 21, 2021, a copy of this document was served upon counsel for Defendant as follows: Moha Yepuri Moha.Yepuri@usdoj.gov; Christian A. Orozco Christian.A.Orozco@usdoj.gov.; Attorneys for Defendant United States of America.

_____
Richard E. Young